1   BINGHAM MCCUTCHEN LLP
    Geoffrey M. Howard (SBN 157468)
2   geoff.howard@bingham.com
    Thomas S. Hixson (SBN 193033)
3   thomas.hixson@bingham.com
    Kyle Zipes (SBN 251814)
4   kyle.zipes@bingham.com
    Kevin M. Papay (SBN 274161)
5   kevin.papay@bingham.com
    Three Embarcadero Center
6   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
7   Facsimile:  415.393.2286

8   ORACLE CORPORATION
    Dorian Daley (SBN 129049)
9   dorian.daley@oracle.com
    Deborah K. Miller (SBN 95527)
10  deborah.miller@oracle.com
    500 Oracle Parkway
11  M/S 5op7
    Redwood City, CA  94065
12  Telephone:  650.506.4846
    Facsimile:  650.506.7114
13
    ORACLE CORPORATION
14  Jeffrey S. Ross (SBN 138172)
    jeff.ross@oracle.com
15  10 Van de Graaff Drive
    Burlington, MA  01803
16  Telephone:  781.744.0449
    Facsimile:  781.238.6273
17
    Attorneys for Plaintiff
18  ORACLE AMERICA, INC.

19              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
20                  SAN JOSE DIVISION

21  ORACLE AMERICA, INC., a Delaware          No. 5:13-cv-03385 PSG
    corporation,
22                                            **PLAINTIFF ORACLE AMERICA,**
23              Plaintiff,                    **INC.'S OPPOSITION TO TERIX**
                                              **COMPUTER COMPANY, INC.'S**
24          v.                                **MOTION TO DISMISS**

25  TERIX COMPUTER COMPANY, INC., a           Date:      November 5, 2013
    California corporation; MAINTECH          Time:      10:00 a.m.
26  INCORPORATED, a Delaware corporation;     Place:     Courtroom 5, 4th Floor
    and DOES 1-50,                            Judge:     Hon. Paul Singh Grewal
27
                Defendants.
28

A/75727047

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND STATEMENT OF ISSUES ........................................................ 1

II.   FACTUAL BACKGROUND ........................................................................................ 1

III.   LEGAL STANDARD ................................................................................................ 3

IV.   THE COURT SHOULD DENY TERIX'S MOTION IN ITS ENTIRETY ..................... 3

    A.   Oracle Properly Alleges Claims Under the CFAA ................................................ 3

        1.   Rule 9(b) Does Not Apply to Oracle's CFAA Claims ............................. 5

            a.   Most Courts Do Not Apply Rule 9(b) to CFAA Claims ............... 5

            b.   Oracle's CFAA Claims Are Not Fraud Claims ........................... 6

            c.   *Kearns* Does Not Require the Application of Rule 9(b) to Oracle's CFAA Claims ................................................................ 7

        2.   Even if Rule 9(b) Applies, Oracle's CFAA Claims Satisfy Rule 9(b)'s Heightened Pleading Standards ..................................................... 9

        3.   Oracle Sufficiently Alleges Violations of CFAA Sections 1030(a)(2)(C) and 1030(a)(4) ..................................................... 10

            a.   *Nosal* Does Not Bar Oracle's Claims .................................... 11

            b.   Oracle Properly Alleges that Terix Lacked Authorization to Access Oracle's Website ....................................................... 11

        4.   Oracle Sufficiently Alleges Violations of CFAA Section 1030(a)(6)(A) ........................................................................... 13

        5.   If Necessary, Oracle Can Plead Additional Facts to Support its CFAA Claims ................................................................................ 14

    B.   Oracle Properly Alleges a Breach of Contract Claim ......................................... 15

V.   CONCLUSION ........................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Barker v. Riverside Cnty. Office of Educ.*,
    584 F.3d 821 (9th Cir. 2009)........................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 3

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009).......................................................................... 3

*Craigslist, Inc. v. 3Taps, Inc.*,
    2013 WL 4447520 (N.D. Cal. Aug. 13, 2013)................................................ 7

*Dental Health Prods., Inc. v. Ringo*,
    2009 WL 1076883 (E.D. Wis. Apr. 20, 2009)................................................ 5

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995)........................................................................... 3

*eBay, Inc. v. Digital Point Solutions, Inc.*,
    608 F. Supp. 2d 1156 (N.D. Cal. 2009) .......................................................... 5

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003)....................................................................... 3

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ........................................................................................ 3

*Facebook, Inc. v. MaxBounty, Inc.*,
    274 F.R.D. 279 (N.D. Cal. 2011) ................................................................... 5

*Gridiron Mgmt. Grp. LLC v. Wranglers*,
    2012 WL 5187839 (D. Neb. Oct. 18, 2012) ................................................... 5

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).......................................................... 6, 7, 10

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993)......................................................................... 9, 10

*Oracle Am., Inc. v. Service Key, LLC*,
    No. 4:12-cv-00790-SBA ................................................................................ 5

*Oracle America, Inc. v. Service Key, LLC*,
    2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ............................................ 5, 6, 11

*Sealord Holdings, Inc. v. Radler*,
    2012 WL 707075 (E.D. Pa. Mar. 6, 2012) ................................................................ 5

*SFK USA, Inc. v. Bjerkness*,
    636 F. Supp. 2d 696 (N.D. Ill. 2009) ...................................................................... 5

*Sprint Nextel Corp. v. Simple Cell, Inc.*,
    2013 WL 3776933 (D. Md. July 17, 2013) ............................................................ 5, 6

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ......................................................................... 1, 4, 11

*Verigy US, Inc. v. Mayder*,
    2008 WL 4820755 (N.D. Cal. Nov. 4, 2008) .......................................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................ 9, 14

*Weingand v. Harland Fin. Solutions, Inc.*,
    2012 WL 2327660 (N.D. Cal. June 19, 2012) ........................................................ 12

*Weingand v. Harland Fin. Solutions, Inc.*,
    2012 WL 3763640 (N.D. Cal. Aug. 29, 2012) ......................................................... 4

**STATUTES**

18 U.S.C. § 1030 .......................................................................................................... 3, 5

**RULES**

Federal Rule of Civil Procedure 8(a) ........................................................................ 5, 6, 7

Federal Rule of Civil Procedure 9(b) ........................................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 3, 14

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS

Plaintiff Oracle America, Inc. ("Oracle") submits this opposition to Defendant TeRiX Computer Company, Inc.'s ("Terix") motion to dismiss Oracle's Second Claim for Relief and part of Oracle's Fourth Claim for Relief (the "Motion"), Dkt. 18.

## I.   INTRODUCTION AND STATEMENT OF ISSUES

Terix challenges Oracle's CFAA claims on three grounds.  First, Terix argues that Federal Rule of Civil Procedure 9(b) applies to CFAA claims.  That is wrong.  The weight of authority, including in this district, takes the opposite view.  It is also irrelevant.  Even if Rule 9(b) applies, Oracle has pled sufficiently detailed allegations to state valid CFAA claims. Second, Terix argues that its unauthorized access of Oracle's support website is "not actionable" under subsections (a)(2)(C) and (a)(4) of the CFAA because it used a customer's technically "working" access credentials to access the site.  This argument – based on a factual dispute that has no place in a motion to dismiss – misstates the law.  Contrary to Terix's argument, neither the Ninth Circuit's recent decision in *United States v. Nosal*¸ 676 F.3d 854 (9th Cir. 2012) (*en banc*), nor any other case, precludes a claim where Terix had no authority at all to access Oracle's website.  Oracle properly has alleged that Terix accessed Oracle's secure support website without authorization, which is what the CFAA prohibits.  Third, Terix argues that Oracle has not pled enough facts to state a valid claim for password trafficking under subsection (a)(6)(A).  However, Oracle has alleged both that Terix received (and used) login credentials from an Oracle customer, and that Terix and co-defendant and co-conspirator Maintech exchanged such login credentials.

Finally, Terix seeks to dismiss or strike one sentence of Oracle's breach of contract claim that it says it cannot understand.  The sentence in question is a valid and factually supported component of Oracle's valid breach of contract claim that the Court should let stand.

## II.   FACTUAL BACKGROUND

Oracle develops and sells the hardware at issue in this case.  *See, e.g.*, Complaint ¶¶ 2, 5, 19.  Since its 2010 acquisition of Sun Microsystems, Inc. ("Sun"), Oracle has been one of the world's leading suppliers of integrated enterprise hardware and software systems and related technical support and consulting services for those systems.  *Id*. ¶¶ 2, 19.  Oracle also licenses

the operating system and firmware at issue in this case (collectively, "Solaris") at the same time that the customer purchases the hardware device from Oracle.  *Id*. ¶¶ 2, 20, 21.

A customer must have an active, separately purchased Oracle support contract to access patches and updates that Oracle makes available for the Solaris version that ships with the hardware device.  *Id*. ¶¶ 1-3, 21.  Oracle regularly develops, at significant expense, these patches and updates ("Solaris Updates") to improve the quality and performance of the Solaris software.  *Id*. ¶¶ 2, 21.  A customer that does not have an active Oracle support contract for its hardware system has no entitlement at all to Solaris Updates for that system.  *Id*. ¶ 38.

In most instances, Oracle makes its Solaris Updates available to authorized customers for download through Oracle's secure technical support website.  *Id*. ¶ 3.  Customers that purchase a technical support agreement from Oracle receive a "Customer Support Identification" number linked to the products covered by the support contract.  *Id*.  The CSI number allows customers to create login credentials for individual customers that permit them to access Oracle's secure support website on their behalf.  *Id*.  Using those credentials, a customer on active support may download critical Solaris Updates needed to maintain the functioning of that customer's hardware systems.  *Id*.  Only customers that pay for and maintain a technical support agreement with Oracle may download Solaris Updates, and only for their own permitted business use on licensed computers.  *Id*.

While most do, customers are not required to purchase technical support services from Oracle, or at all.  *Id*. ¶ 4.  They can choose to support themselves, and they can also choose to engage a third party to provide support services.  *Id*.  Third parties and customers without an Oracle support contract can support only the physical hardware device, such as by obtaining replacement parts or making repairs to the device.  *Id*. ¶ 38.  Customers with a valid Oracle support contract can also employ third parties to install Solaris Updates on the supported device that the customer lawfully obtains.  *Id*. ¶ 4.  But a third party cannot lawfully access Oracle's password-protected support website to download Solaris Updates (or provide credential access to Oracle's support website to others to do so) for itself or customers that are not on Oracle support.  *Id*. ¶¶ 3-5, 38, 40.  Those updates, patches, and fixes are Oracle's proprietary intellectual

property and can only be accessed by a customer with a valid support contract with Oracle. *Id.*

Defendant Terix provides third party support services to customers that use Oracle/Sun hardware products. *Id.* ¶ 8. Terix has no licenses or agreements of any kind with Oracle regarding any of Oracle's intellectual property – meaning it has no right to access Oracle's support website or to provide customers with access to Oracle's support website. *Id.* ¶¶ 5, 6. Despite having none of these rights, Terix has helped itself to Oracle's intellectual property by accessing Oracle's support website and downloading Solaris Updates from Oracle's support website. *Id.* ¶¶ 1, 4-6, 34, 40, 60-64. This conduct violates both the Computer Fraud and Abuse Act ("CFAA") and applicable terms of use, and has harmed Oracle substantially. *Id.* ¶¶ 1, 4-6, 34, 40, 60-64, 76-79.

## III.   LEGAL STANDARD

On a motion to dismiss, the Court takes all allegations of material fact in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). All reasonable inferences from the facts alleged are drawn in the non-moving party's favor. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice"); *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (same). So long as the complaint states "enough facts to state a claim for relief that is plausible on its face," the Court should deny a motion to dismiss. *Twombly*, 550 U.S. at 570. If a court dismisses a complaint for failure to state a claim, "unless it determines that the pleading could not possibly be cured by the allegation of other facts," it should grant leave to amend "with extreme liberality." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citations omitted).

## IV.   THE COURT SHOULD DENY TERIX'S MOTION IN ITS ENTIRETY

### A.   Oracle Properly Alleges Claims Under the CFAA

Oracle properly has alleged that Terix violated three subsections of the Computer Fraud and Abuse Act ("CFAA"). Compl. ¶¶ 60-62 (alleging violations of 18 U.S.C. § 1030(a)(2)(C), (a)(4), and (a)(6)(A)). Notwithstanding Terix's characterizations of it as a criminal, anti-hacking

statute, the CFAA creates an oft-used private right of action for persons injured by the conduct that it prohibits. *See* Mot. at 6 (citing 18 U.S.C. § 1030(g)). This prohibited conduct includes the intentional, unauthorized access of data on protected computer systems and password trafficking, as Oracle alleges against Terix. *See* Mot. at 5 (quoting 18 U.S.C. §§ 1030(a)(2)(C), (a)(4), and (a)(6)(A)). Terix repeatedly invokes the terms "hackers" and "hacking" to suggest that the CFAA should not apply here, Mot. at 5-6, 9, but as the Ninth Circuit explained in *Nosal*, these terms simply refer to someone who "accesses unauthorized data or files." *United States v. Nosal*, 676 F.3d at 856-57. That is precisely what the CFAA prohibits, what this case concerns, and what Oracle has alleged: Terix's intentional, unauthorized access of Oracle's protected computer systems and the sensitive information they contain.

In its Motion, Terix does not dispute that it accessed and obtained information from Oracle's password-protected support website without direct authorization to do so. Rather, Terix falls back to a *factual* argument about whether its otherwise unauthorized access was permissible because an off-support customer had "working" login credentials that Terix – not the customer – used to access My Oracle Support. *See* Mot. at 2. Such a factual dispute has no place in a motion to dismiss. *See, e.g.*, *Weingand v. Harland Fin. Solutions, Inc.*, 2012 WL 3763640, at *2 (N.D. Cal. Aug. 29, 2012) (denying plaintiff's motion to dismiss a CFAA counterclaim, and emphasizing that plaintiff "invite[s] the Court to consider factual questions such as, *e.g.*, the nature and scope of [the plaintiff's] authorization . . . and whether [his] conduct could be construed to exceed [the defendant's] authorization," which are "factual questions appropriate for summary judgment," not a motion to dismiss.). Aside from this improper factual dispute, Terix has three arguments for why Oracle's CFAA claims should be dismissed: (1) Oracle has not pled its CFAA claims with sufficient specificity; (2) *Nosal* bars Oracle's unauthorized access CFAA claims; and (3) Oracle fails to state a valid CFAA claim for password trafficking. None of these arguments has merit.

//

//

//

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS

1             **1.**      **Rule 9(b) Does Not Apply to Oracle's CFAA Claims**

2        Terix begins by arguing that Oracle's CFAA claims must meet Federal Rule of Civil

3 Procedure 9(b)'s heightened pleading standards. As the Ninth Circuit has not held that Rule 9(b)

4 applies to CFAA claims, Terix relies heavily on one district court opinion. *See* Mot. at 7-9

5 (citing *Oracle America, Inc. v. Service Key, LLC*, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012)

6 (Armstrong, J.)[1]).

7               **a.**      **Most Courts Do Not Apply Rule 9(b) to CFAA Claims**

8        The *Service Key* opinion contradicts the balance of authority in this district and other

9 jurisdictions, which holds that Rule 9(b) does *not* apply to CFAA claims. *See, e.g.*, *Facebook,*

10 *Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 284 (N.D. Cal. 2011) (Fogel, J.) (Rule 9(b) does not

11 apply to CFAA claims brought under CFAA Section 1030(a)(4)); *eBay, Inc. v. Digital Point*

12 *Solutions, Inc.*, 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009) (Fogel, J.) (applying Rule 9(b) to

13 the plaintiff's RICO claim and state law claims, but not its CFAA claim, because "'fraud' under

14 the CFAA only requires a showing of unlawful access; there is no need to plead the elements of

15 common law fraud to state a claim under the Act"); *Sprint Nextel Corp. v. Simple Cell, Inc.*, 2013

16 WL 3776933, at *6 (D. Md. July 17, 2013) (rejecting the defendants' argument that Rule 9(b)

17 should apply to the "intent to defraud" and "further[ing] the intended fraud" elements of a CFAA

18 claim: "[t]he balance of authority . . . appears to support the view that Rule 9(b) does not apply to

19 § 1030(a)(4)"); *Gridiron Mgmt. Grp. LLC v. Wranglers*, 2012 WL 5187839, at *10 n.7 (D. Neb.

20 Oct. 18, 2012) (Rule 9(b) does not apply to CFAA claims brought under section 1030(g));

21 *Sealord Holdings, Inc. v. Radler*, 2012 WL 707075, at *6-7 (E.D. Pa. Mar. 6, 2012) (a plaintiff

22 "need only aver the intent to defraud generally" and "satisfy the notice-pleading requirements of

23 Rule 8(a)(2)" to maintain a CFAA claim under subsection 1030(a)(4)); *SFK USA, Inc. v.*

24 *Bjerkness*, 636 F. Supp. 2d 696, 719 n.13 (N.D. Ill. 2009) ("The heightened pleading standards

25 of Rule 9(b) do not apply to the Computer Fraud and Abuse Act."); *Dental Health Prods., Inc. v.*

26 

---

27 [1] The defendants in *Service Key* stipulated to judgment against them for, among other things, violation of Oracle's copyrights. *See Oracle Am., Inc. v. Service Key, LLC*, No. 4:12-cv-00790-SBA, N.D. Cal., Dkt. 252 (Stipulated Judgment against Service Key); *id.*, Dkt. 288 ([Proposed] Stipulated Judgment against DLT-FBS).

28 

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS

*Ringo*, 2009 WL 1076883, at *8 (E.D. Wis. Apr. 20, 2009) (Rule 9(b) does not apply to a CFAA claim brought under section 1030(a)(4)).

Further, as discussed in Section 3(b), below, Oracle's allegations in this case are not "virtually identical" to the allegations in *Service Key* that Judge Armstrong deemed subject to Rule 9(b).  *See* Mot. at 6; *Service Key*, 2012 WL 6019580 at *18.  Because Oracle's allegations substantively differ from those at issue in *Service Key*, and because the *Service Key* opinion is contrary to the balance of authority on this issue, the Court should not follow that opinion here.

### b.    Oracle's CFAA Claims Are Not Fraud Claims

Most courts hold that Rule 9(b) does not apply to CFAA claims like Oracle's because fraud is not a necessary element of those claims.  Even in the *Service Key* decision upon which Terix relies, Judge Armstrong acknowledged that none of the elements required to plead a violation of subsection 1030(a)(2) concern fraud.[2]  *See Service Key*, 2012 WL 6019580 at *10 n.2 ("[S]ubsection 1030(a)(2) does not require a showing of fraud or an intent to defraud.").  Subsection 1030(a)(6) requires an "intent to defraud," but Rule 9(b) does not require a plaintiff to plead elements of intent with specificity.  *See id.* at *6 (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007)) ("the intent to defraud (or 'scienter') may be alleged generally"); Fed. R. Civ. P. 9(b).  Subsection 1030(a)(4) also requires an "intent to defraud," plus conduct that "furthers the intended fraud," but "the [CFAA] is more logically read as prohibiting 'wrongdoing' to obtain something of value and not, specifically, only acts that sound in common law fraud," and "the balance of authority . . . support[s] the view that Rule 9(b) does not apply to § 1030(a)(4)."  *Sprint*, 2013 WL 3776933 at *6.  To the extent that Oracle "does not aver fraud" as part of its CFAA claims, its allegations "need only satisfy the requirements of Rule 8(a)(2)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

//

//

//

---

[2] Terix's co-defendant, Maintech, asserts that Rule 9(b) only applies to Oracle's subsection (a)(6) and subsection (a)(4) claims, not its subsection (a)(2) claim.  *See* Maintech Mot., Dkt. 19, at 16.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c. *Kearns* Does Not Require the Application of Rule 9(b) to Oracle's CFAA Claims

Terix misplaces its reliance on *Kearns* as a basis for applying Rule 9(b).  *See* Mot. at 7.  *Kearns* discusses general principles with no reference to the CFAA.  *See* 567 F.3d at 1124-27.  Judge Armstrong's application of *Kearns* to CFAA claims is novel and unsupported.  In the four years that have passed since the *Kearns* decision, no other court has cited *Kearns* as a basis for applying Rule 9(b) to CFAA claims.  By contrast, as recently as a month ago, Judge Breyer applied the standard Rule 8(a) pleading requirements in denying a motion to dismiss a CFAA claim.  *See Craigslist, Inc. v. 3Taps, Inc.*, 2013 WL 4447520 (N.D. Cal. Aug. 13, 2013).

*Kearns* does not require Oracle to satisfy Rule 9(b)'s particularity requirements in pleading its CFAA claims because (1) fraud is not a necessary element of those claims (as explained in the preceding section), and (2) Oracle does not "allege a unified course of fraudulent conduct and *rely entirely* on that course of conduct as the basis of" its CFAA claims.  *Kearns*, 567 F.3d at 1125 (emphasis supplied).  Terix mischaracterizes the law by failing to mention that a plaintiff must "rely entirely" on an alleged unified course of fraudulent conduct in order for a claim to be "grounded in fraud" or "sound in fraud."  *See* Mot. at 7.  In *Kearns*, the Ninth Circuit held that the plaintiff's non-fraud claims were "grounded in fraud" only because the court disagreed with the plaintiff's contention that not all of his allegations were "averments in fraud."  *Id*. at 1126.  The court did so because Kearns' contention was based on the incorrect legal premise that "nondisclosure claims" are not "claims of fraud."  *Id*. at 1127 (noting that, under California law, "nondisclosure is a claim for misrepresentation in a cause of action for fraud").

Here, unlike in *Kearns*, Oracle does not rely entirely, if at all, upon allegations involving fraudulent conduct and/or misrepresentations to sufficiently plead the claims that Terix moves to dismiss.  Oracle's non-fraud-related allegations in support of its CFAA claims include, but are not limited to, the following:

- Oracle's secure My Oracle Support website is hosted by Oracle's computer systems, which are protected computers within the meaning of the CFAA (Compl. ¶ 59);

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS

- Oracle's computer systems are used in and affect interstate commerce (*id.* ¶ 59);

- Only customers with active Oracle support contracts may download Oracle's proprietary Solaris Updates from Oracle's support website (*id.* ¶¶ 3, 38, 40)

- Terix did not have any right to download or access Solaris Updates from Oracle's support website (*id.* ¶¶ 5, 40);

- The Oracle.com Terms of Use prohibit the unauthorized access of secure areas of Oracle's website (*id.* ¶ 25);

- The My Oracle Support Terms of Use prohibit the unauthorized access of Oracle's support website (*id.* ¶ 29);

- Terix agreed to the Oracle.Com Terms of Use and the My Oracle Support Terms of Use (*id.* ¶ 34);

- On at least one occasion, Terix accessed Oracle's support website without Oracle's permission (*id.* ¶ 34);

- On information and belief, Terix agreed to the Oracle.com Terms of Use, agreed to the My Oracle Support Terms of Use, and accessed Oracle's support website without Oracle's permission on other occasions (*id.* ¶ 34); and

- Defendants engaged in this wrongful conduct as part of a deliberate scheme and with the intent to defraud Oracle (*id.* ¶¶ 1, 60);[3]

- On at least one occasion, Terix persuaded a customer to provide Terix with that customer's My Oracle Support access credentials so that Terix could access Oracle's secure support website (*id.* ¶ 39); and

- Terix's wrongful conduct caused Oracle damages in excess of $5,000 (*Id.* ¶ 64).

If the Court finds that the subset of allegations in Oracle's Complaint that concern fraudulent conduct must be pled with specificity under Rule 9(b) – and that Oracle has failed to do so – Oracle still has sufficiently pled CFAA claims based on its non-fraud-related factual allegations of Terix's unauthorized access and password trafficking.

---

[3] As discussed above, a plaintiff need not plead an intent to defraud with specificity under Rule 9(b). It therefore does not follow that a CFAA claim – which otherwise does not rely on allegations of fraudulent conduct – would "sound in fraud" simply because it involves an element of intent that itself does not require specific pleading.

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS

1

2.    **Even if Rule 9(b) Applies, Oracle's CFAA Claims Satisfy Rule 9(b)'s Heightened Pleading Standards**

2

3          Even if Rule 9(b) applies, which it does not, Oracle has alleged its CFAA claims with the

4    requisite specificity to withstand a motion to dismiss.  Terix asserts that Oracle only pleads

5    "conclusory" and "boilerplate allegations of 'fraud.'" Mot. at 8.  That is wrong.  A review of

6    Oracle's Complaint reveals that, to the extent it can do so without the benefit of fact discovery,

7    Oracle's has alleged the "who, what, when, where, and how" of Terix's conduct in violation of

8    the CFAA (whether characterized as fraudulent or not), as would be required if Rule 9(b)

9    applies.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Specifically,

10   Oracle pleads:

11   - how access to Oracle's support website is restricted, which contracts impose such restrictions, and who is authorized to access that website (Compl. ¶¶ 3, 23-25, 29, 59, 61, 62);

12   - that Defendants lacked such authorization (*id*. ¶¶ 4, 38, 39, 61, 62, 65);

13   - that Defendants persuaded customers – who themselves were not authorized to access the relevant content on Oracle's support website – to provide Defendants with credentials to access that support website (*id*. ¶¶ 5, 38, 39);

14   - the identities of Defendants, as well as at least five relevant customers implicated in Defendants' wrongful conduct (*id*. ¶¶ 41, 42) (Dominion Resources, Royal Bank of Canada, Bank of New York - Mellon, Comcast, and Sony Corporation of America);

15   - that Defendants accessed Oracle's support website (*id*. ¶ 34, 61, 62, 65); and

16   - that this conduct furthered Defendants' efforts to induce customers to cancel their support services with Oracle (*id*. ¶¶ 1, 5);

17          To the extent that Oracle pleads any of these allegations on "information and belief,"

18   Oracle has stated a factual basis for such allegations to the best of its ability without the benefit

19   of discovery.  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[T]he general rule

20   that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed

21   with respect to matters within the opposing party's knowledge.  In such situations, plaintiffs can

22   not be expected to have personal knowledge of the relevant facts. . . . However, this exception

23   does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state

9

1    the factual basis for the belief.").  Oracle's allegations on information and belief are based on

2    either inferences drawn from other alleged facts or Oracle's communications with relevant

3    customers, the details of which Oracle could plead in an amended complaint if required to do so.[4]

4              Finally, applying Rule 9(b) in these circumstances and requiring Oracle to simply re-

5    plead its allegations with more detail would waste judicial resources and undercut the rationale

6    for Rule 9(b)'s heightened pleading standard.  The Ninth Circuit explained that Rule 9(b) serves

7    three purposes:  (1) provide defendants with adequate notice to allow them to defend against

8    allegations of fraud and deter the filing of pre-textual complaints; (2) protect defendants'

9    reputations; and (3) prohibit plaintiffs from filing baseless claims.  *See Kearns*, 567 F.3d at 1125.

10   None of those concerns exist here.  Terix does not claim that Oracle's allegations are fabricated,

11   pre-textual, or unexpected.  Nor can it, as counsel for the parties exchanged letters about at least

12   one instance of Terix's alleged misconduct before Oracle filed its Complaint.  *See* Compl. ¶ 40

13   ("When Oracle became aware of Defendants' conduct with regards to one of their Oracle

14   hardware customers, it demanded an explanation from them.  Defendants admitted they 'do not

15   have, nor have they ever claimed' to 'have a license with Oracle, or any third party' that would

16   authorize these downloads.").  Moreover, Terix often made misstatements to customers and

17   involved them in its misconduct.  Because of those techniques, Oracle does not yet know all the

18   details behind Terix's misconduct.  Penalizing Oracle for that lack of knowledge would only

19   validate Terix's strategy.  *See Neubronner*, 6 F.3d at 672.  Rule 9(b) does not and should not

20   apply.

                    **3.      Oracle Sufficiently Alleges Violations of CFAA Sections
                              1030(a)(2)(C) and 1030(a)(4)**

22             Regardless which pleading standard applies, Oracle has sufficiently pled the elements

23   necessary to state claims under subsections (a)(2)(C) and (a)(4) of the CFAA (collectively, the

24   "CFAA Access Claims").  Terix mischaracterizes the relevant facts and legal bases for these

25   claims as alleged in Oracle's Complaint.  Oracle's CFAA Access Claims are based on Terix's

26   intentional, unauthorized *access* of Oracle's computer systems and the sensitive information they

28   _____
     [4] See Section (IV)(A)(5), below.

1    contain, not *how* that information was *used*.[5]

2

                        **a.**        ***Nosal* Does Not Bar Oracle's Claims**

3           The Ninth Circuit's recent decision in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012)

4    (*en banc*), does not bar Oracle's CFAA Access Claims.  Terix correctly states that the CFAA

5    Access Claims require Oracle to allege that Terix accessed its support websites "without

6    authorization" or that it "exceeded authorized access."[6]  *See* Mot. at 9.  But Terix wrongly states

7    that *Nosal* stands for the proposition that Terix's *unauthorized* access of Oracle's support

8    websites using a third party's "working" access credentials is "not actionable under the CFAA."

9    *Id*.  Terix either ignores or overlooks a crucial distinction:  *Nosal*'s holding was based on the fact

10   that the employees who obtained the information from Nosal's former employer and gave it to

11   Nosal "*had permission to access* the company database *and obtain* the information contained

12   within." *Nosal*, 676 F.3d at 864 (emphasis supplied).  In short, the parties that accessed the

13   content in *Nosal* were authorized to do so.  That is not the case here, where as discussed below,

14   Oracle has alleged that Terix had no such authorization.

15

                        **b.**        **Oracle Properly Alleges that Terix Lacked**

16                                  **Authorization to Access Oracle's Website**

17           With respect to Terix itself (and co-defendant Maintech), a comparison to the defendant

18   in *Service Key* – the case on which Terix relies so heavily – is instructive.  In *Service Key*, Judge

19   Armstrong emphasized that Oracle alleged defendant "DLT was *authorized to access* [Oracle's]

20   websites" as an Oracle partner, but had accessed those websites for an "*unauthorized purpose*."

21   *Service Key*, 2012 WL 6019580 at *5 (emphasis supplied).  Judge Armstrong held that Oracle

22   failed to state valid CFAA Access Claims under *Nosal* because Oracle had alleged only the

23   unauthorized *use* of data, not the unauthorized *access* of that data.  *See id*.  Here, Defendants

24   were neither Oracle partners nor licensed Oracle customers.  Compl. ¶¶ 4, 38.  They "had no

25   authorization to log in to [My Oracle Support] at all."  *Id*. ¶ 39.  Despite that lack of

26   [5] Oracle's allegations concerning the use of the intellectual property that Terix downloaded from
My Oracle Support are relevant to Oracle's copyright and breach of contract claims.

27

28   [6] Terix does not challenge the validity of Oracle's pleadings with respect to any of the other
elements that Oracle is required to allege to state valid CFAA Access Claims.

1  authorization – and despite agreeing to terms of use that expressly prohibited them from doing so

2  – Defendants logged into My Oracle Support ("MOS") and accessed Oracle's Solaris Updates.

3  *Id.* ¶¶ 25, 34, 61-62, 65.

4          With respect to the former Oracle support customers on whose purported authorization

5  Terix bases its agency argument, *see* Mot. at 2, 9-10, Terix claims that "Oracle fails to allege

6  critical facts regarding what circumstances might limit or terminate any user's ability to access

7  MOS after properly obtaining the MOS login credential (including, for example, whether access

8  is terminated for a former Oracle customer upon cancellation of an annual support agreement)."

9  *Id.* at 2 n.1.  That is false.  Oracle alleges that customers without active support contracts have no

10  authorization to access the relevant content on MOS.  *See* Compl. ¶ 38 ("Oracle's technical

11  support policies provide, and provided at all relevant times, that 'Customers with unsupported

12  hardware systems are not entitled to download or receive updates, maintenance releases, patches,

13  telephone assistance, or any other technical support services for unsupported hardware

14  systems.'"); ¶ 40 ("[O]nce customers terminate their support with Oracle, they are not authorized

15  to use their credentials to access MOS and obtain Solaris Updates, and thus Defendants are not

16  either.")

17          *Nosal* does not require Oracle to impose technological barriers to prevent Terix or

18  customers from accessing MOS; it is sufficient that it prohibited such *access*.  This nullifies

19  Terix's argument that it used a customer's "*working* access credentials" to access MOS.[7]  Mot. at

20  2 (emphasis in original).  *See Weingand v. Harland Fin. Solutions, Inc.*, 2012 WL 2327660, at *3

21  (N.D. Cal. June 19, 2012) (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir.

22  2009)) ("Previous Ninth Circuit authority (un-altered by *Nosal*) indicates that if a former

23  employee accesses information without permission, *even if his prior log-in information is still

24  operative as a technical matter*, such access would violate the CFAA.") (emphasis supplied).

25

26  [7] As described in Section (IV)(A), above, to the extent that Terix's motion asks the Court to
   consider disputed questions of fact about the scope of Terix's or customers' authorization to
27  access My Oracle Support, such factual disputes have no place in a motion to dismiss.  Oracle
   responds here to demonstrate the falsity of Terix's contention that Oracle has failed to plead
28  sufficient factual allegations to state a valid CFAA claim.

1   Just like having a key to someone's house does not authorize that person to enter the house

2   without permission, having a working credential does not authorize access to a computer system,

3   particularly where the system owner contractually has prohibited that access.

4           **4.      Oracle Sufficiently Alleges Violations of CFAA Section 1030(a)(6)(A)**

5           Oracle also sufficiently has pled the elements necessary to state a claim under subsection

6   (a)(6)(4) of the CFAA (the "CFAA Trafficking Claim"). Terix argues that Oracle's factual

7   allegations in support of its CFAA Trafficking Claim fail to give Terix sufficient notice of the

8   claim. *See* Mot. at 11. That argument fails because Oracle contacted Terix's counsel, months

9   before it filed its Complaint, and the parties exchanged correspondence about this very issue.

10  *See* Compl. ¶ 40 (discussing the parties' correspondence); ¶ 42 (identifying Bank of New York -

11  Mellon ("BNYM"), the customer discussed in the parties' correspondence, as one of the relevant

12  customers at issue here). At that time, Oracle raised Terix's use of a customer's support login

13  credentials as one issue of concern. In response, Terix did not deny having used such

14  credentials. To the extent that Oracle has focused its CFAA trafficking claim on one known

15  instance of password trafficking about which Terix is unquestionably aware, that does not mean

16  Oracle's claim is insufficient or should be dismissed. Subsection (a)(6)(A) does not require

17  Terix to have trafficked in multiple passwords or with respect to multiple customers. Based on

18  its knowledge of facts supporting at least one instance of such password trafficking, Oracle has a

19  valid basis for bringing this claim and has pled the requisite elements under subsection (a)(6)(A).

20  Oracle expects it will learn through discovery that Terix engaged in similar behavior on other

21  occasions, and Oracle should be given the opportunity to do so.

22          As for Terix's assertion that Oracle has failed to allege that Terix ever transferred a

23  password or access credential to another party, Oracle has alleged that the two defendants –

24  Terix and Maintech – "conspired to perform these illegal acts," including the trafficking of one

25  or more passwords. Compl. ¶ 43. Based on Oracle's allegations about Defendants' symbiotic

26  working relationship and common plan to provide illegal third-party support using Oracle's

27  intellectual property, *id*. ¶¶ 1, 13, Oracle has alleged that Defendants exchanged passwords – i.e.,

28  transferred them to one another – as part of that process. *See Verigy US, Inc. v. Mayder*, 2008

WL 4820755, at *6 (N.D. Cal. Nov. 4, 2008) ("By participation in a civil conspiracy, a co-conspirator effectively adopts as his or her own the torts of other co-conspirators within the ambit of the conspiracy. In this way, the co-conspirator incurs tort liability equal with the immediate tortfeasors.") (internal citation omitted). If the Court finds this allegation of exchanging passwords insufficiently clear, Oracle can amend to state it more clearly.

### 5.   If Necessary, Oracle Can Plead Additional Facts to Support its CFAA Claims

If the Court were to find that any of the CFAA claims challenged by Terix's Motion warranted dismissal, it should grant Oracle leave to amend and give Oracle the opportunity to plead additional facts. *See Vess*, 317 F.3d at 1107-08 ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.") (internal citation omitted). If granted leave to amend, Oracle could plead additional facts in support of each of its CFAA claims.

As to Oracle's CFAA Access Claims, Oracle could plead additional facts including, but not limited to, the following. On January 24, 2013, Oracle sent a letter to Terix alleging the misuse of Oracle's intellectual property by Terix and Maintech in conjunction with their support of customer BNYM. Terix responded to Oracle's letter in a letter dated January 30, 2013 (the "January 30 Letter"). In the January 30 Letter, Terix: (1) did not dispute having used a login assigned to BNYM to access My Oracle Support; (2) admitted that Terix and Maintech "do not have, nor have they ever claimed . . . to have a license with Oracle, or any third party" that would authorize its provision of support services to BNYM using content downloaded from My Oracle Support; and (3) admitted that Terix and Maintech "have agreed contractually to abide by the same terms and conditions . . . as to which BNY-M must comply," which would include the Oracle.com Terms of Use and the My Oracle Support Terms of Use.

As to Oracle's CFAA Trafficking Claim, Oracle could plead additional facts including, but not limited to, the following. In the January 30 Letter, Terix did not dispute having received a "solarisvendorsupport@bnymellon.com" login assigned to BNYM to access My Oracle

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS

1    Support, and stated its belief that BNYM "authorizes Terix and Maintech to use BNY-M's

2    credentials to access Oracle Intellectual Property."  Based upon the statements made in the

3    January 30 letter, Oracle believes that Terix transferred the login credentials that it received from

4    BNYM to Maintech, and that it did so knowingly and with the intent to defraud Oracle.  In

5    addition, on June 12, 2013, Oracle sent a letter to Comcast regarding its use of Terix to support

6    its Sun servers and unauthorized access of My Oracle Support to download patches for off-

7    support Sun servers.  In email correspondence responding to the allegations in that letter,

8    Comcast admitted to its support relationship with Terix and to having downloaded Solaris

9    Patches from Oracle's support website.  On June 21, 2013, Oracle sent a letter to Dominion

10   Resources, Inc. regarding its use of Terix to support its Sun servers and unauthorized access of

11   My Oracle Support to download patches for off-support Sun servers.  On August 5, 2013,

12   Dominion sent a response letter in which it admitted to its support relationship with Terix and to

13   having downloaded Solaris Server patches as late as June 19, 2013.  Based on these exchanges,

14   Oracle believes that Terix has transferred log in credentials back and forth with both Comcast

15   and Dominion (and likely other customers) to log into Oracle's password-protected support sites

16   after its relevant Oracle support contracts had expired.

17                **B.       Oracle Properly Alleges a Breach of Contract Claim**

18          Terix's final request, to strike a sentence from Oracle's breach of contract claim, lacks

19   merit.  Terix complains that it cannot understand the reference to "unauthorized third parties,"

20   and theorizes that the allegation is a remnant of another pleading.  Mot. at 12.  It is not.  The

21   "unauthorized third parties" are Oracle's hardware customers and former support customers that

22   allowed their Oracle support contracts to elapse and thereby lost their entitlement to Solaris

23   Updates and their authorization to log into MOS and Oracle.com.  *See, e.g.*, Compl. ¶¶ 38, 40

24   (describing loss of authorization).  The allegation was intentional and makes perfect sense in the

25   context of the Complaint, and should not be stricken.

26   //

27   //

28   //

1   **V.      CONCLUSION**

2          For the foregoing reasons, the Court should deny Terix's motion to dismiss.  If the Court

3   is inclined to grant any part of the motion, Oracle respectfully requests leave to amend.

4   DATED:  September 20, 2013

5

6                                                    BINGHAM MCCUTCHEN LLP

7

8                                                    By: _____/s/ Thomas S. Hixson_____

9                                                                Thomas S. Hixson
                                                             thomas.hixson@bingham.com
10                                                            Attorneys for Plaintiff
                                                              Oracle America, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO TERIX'S MOTION TO DISMISS