UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., | Case No. 5:13-cv-03385-PSG |
| Plaintiff, | **ORDER RE: DISCOVERY DISPUTES** |
| v. | |
| TERIX COMPUTER COMPANY, INC. and MAINTECH INC., | **(Re: Docket Nos. 55-56, 62, 66, and 73-76)** |
| Defendants. | |

Plaintiff Oracle America, Inc. stands at odds with two third-party vendors, Defendants TERiX Computer Company, Inc. and Maintech Inc., that provide support and consulting for Oracle software. In this case, Oracle alleges that TERiX and Maintech duped Oracle's customers into providing them with access to updates to Oracle's Solaris operating system – access to which Oracle says TERiX and Maintech had no right. Now before the court are (1) Oracle's motion to compel TERiX and Maintech to disclose more fulsome customer information and (2) Oracle's motion to relax some of the AEO designations in this case. The parties appeared for a hearing. After reviewing the parties' joint letter briefs the court GRANTS the motions IN-PART.

In the interest of providing timely guidance to the parties on these issues, the court turns directly to the motions before it. Unfamiliar readers are directed to the court's recent order

1

granting-in-part Defendants' motion to dismiss.[1]

## A. TERiX's Customers

Because this dispute centers on Defendants' alleged abuse of their customers' credentials, knowledge of who the customers are is central to this litigation. Defendants have already identified some customers:

> Terix provided under oath (per agreed protocols) the crucial information that Oracle seeks in this action: a comprehensive list of the 75 customers for which Terix has accessed MOS and downloaded Solaris Updates, along with revenue information relating to such access customers. And in response to Oracle's second set of interrogatories, Terix provided the precise credentials (CSI numbers) used for such access.[2]

But Oracle wants more. In particular,

> Terix refused to identify its other customers, including its Oracle 'software service customers,' for which Terix provides other software services, or its Oracle 'hardware customers,' for which Terix asserts it provides Oracle hardware support only.[3]

The sticking point, as the court sees it, is that TERiX's customer list represents a valuable trade secret that, all other things being equal, it is entitled to keep from its rival.

And thus the court must strike an appropriate balance:

- Oracle shall have access to the identity of the customers TERiX has already conceded accessed MOS and downloaded Solaris Updates.

- Oracle and TERiX shall select a limited sample of 25 additional "software service customers" to "to test Terix's assertions that it downloaded only for the access customers, and also Oracle's assertion that Terix's conduct extends to all its customers through cross-use and induced infringement."[4] The parties shall meet and confer on the selection method.

- TERiX need not disclose the identity of any "hardware only" customers.

If this discovery buttresses Oracle's theories that TERiX's alleged activities go beyond the 75 customers that it concedes accessed MOS, the court is willing to revisit whether additional discovery is warranted.

---

[1] *See* Docket No. 61.

[2] Docket No. 55 at 4.

[3] *Id.* at 1.

[4] *Id.*

2
Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

### B. Maintech's Customers

Maintech stands in a different posture. It "does only hardware 'break/fix' support on Oracle/Sun equipment."[5] Maintech represents:

> For 68 of these 500+ customers, Maintech has subcontracted software support to Terix ('Prime Customers'). On another 235 customers, Terix has subcontracted Oracle/Sun hardware break/fix support for its customers to Maintech ("Sub Customers"). The remaining 200+ customers receive only Oracle/Sun hardware support from Maintech and Maintech is not contractually involved or necessarily knowledgeable about what, if anything, these customers do for Oracle/Sun software support ("Non-Software Customers"). Some of these customers may have contracts with Oracle for software support or may not need software support because they are running stable legacy Sun systems that do not need it.[6]

The court believes a similar balance is warranted as to Maintech's customers:

- Oracle shall have access to the identity of Maintech's "Prime Customers" that were subcontracted to TERiX for software support.

- Of the 235 customers TERiX subcontracted hardware break/fix support to Maintech, Oracle may "choose 25 Tier 2 customers for identification and further discovery."[7] The parties shall meet and confer on the selection method.

- Oracle shall not have access to Maintech's hardware-only/non-software customers.

Again, the court is willing to revisit whether additional discovery is warranted in light of what the discovery ordered here reveals.

### C. Attorney's Eyes Only Designations

Oracle also moves to de-designate certain customer information provided in discovery. Oracle is right that the "AEO" label on Defendants' customer lists is unduly restrictive. Although the court appreciates the value of the customer lists and the potential difficulty Oracle employees may have in compartmentalizing appropriate and improper uses of the information, the customer lists still may only be used for the purposes of this litigation even when designated with the

---

[5] *See* Docket No. 56 at 4 (citing Docket No. 57, Coscia Decl. at ¶¶ 2-3). "Maintech never has provided any operating system support, Solaris or otherwise, for Oracle/Sun equipment. Since January 2010, Maintech has had just over 500 end customers for hardware break/fix support on Oracle/Sun systems." *Id.*

[6] *Id.* (citing Docket No. 57, Coscia Decl. at ¶¶ 4-8).

[7] *Id.*

3

Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

lower-level "Confidential" label. Oracle also is on notice that its employees must be particularly vigilant not to use such information illicitly. The court will not hesitate to step in to police abuse.

The parties shall meet and confer on the selection method of discovery addressed above without delay. Defendants shall produce appropriate customer information within ten days of this order.

**D.      Briefing Schedule**

Separately, the parties dispute how best to present further discovery disputes to the court. Before bringing any motion, all shall meet and confer, culminating in an in-person meeting between lead counsel. If this meeting does not resolve the dispute a party may request a briefing schedule on the dispute. The other party/ies must agree to a briefing schedule within two court days of that request. If the parties do not agree within that time, the requesting party may file its opening brief, and ask within that brief that the court set a schedule for the opposing party/ies to respond.

As for the two further disputes already submitted, the court orders the following briefing schedules:

**1.      Dorian Daley's Access to AEO Materials**

- January 30, 2014: Oracle shall provide Defendants with up to 3 pages on its request.
- February 3, 2014: Each Defendant shall provide Oracle with up to a 3 pages in response.
- February 5, 2014: The parties shall file the joint brief.
- February 6, 2014: The court will hold a hearing on the issue at 4:30 pm. Telephonic appearances are permitted.

2. **Definition of AEO in the Protective Order**

- February 10, 2014: Oracle shall provide Defendants with up to 3 pages on its request.
- February 12, 2014: Each Defendant shall provide Oracle with up to 3 pages in response.
- February 13, 2014: The parties shall file the joint brief.  No hearing will be held.

**IT IS SO ORDERED.**

Dated: January 29, 2014

PAUL S. GREWAL
United States Magistrate Judge