REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   BINGHAM MCCUTCHEN LLP
    Geoffrey M. Howard (SBN 157468)
2   geoff.howard@bingham.com
    Thomas S. Hixson (SBN 193033)
3   thomas.hixson@bingham.com
    Kyle Zipes (SBN 251814)
4   kyle.zipes@bingham.com
    Three Embarcadero Center
5   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
6   Facsimile:  415.393.2286

7   ORACLE CORPORATION
    Dorian Daley (SBN 129049)
8   dorian.daley@oracle.com
    Deborah K. Miller (SBN 95527)
9   deborah.miller@oracle.com
    500 Oracle Parkway
10  M/S 5op7
    Redwood City, CA 94065
11  Telephone: 650.506.4846
    Facsimile: 650.506.7114

    LATHAM & WATKINS LLP
    Daniel M. Wall (SBN 102580)
    dan.wall@lw.com
    Christopher B. Campbell (SBN 254776)
    christopher.campbell@lw.com
    505 Montgomery Street, Suite 2000
    San Francisco, California  94111-6538
    Telephone:  415.391.0600
    Facsimile:  415.395.8095

    ORACLE CORPORATION
    Jeffrey S. Ross (SBN 138172)
    jeff.ross@oracle.com
    10 Van de Graaff Drive
    Burlington, MA 01803
    Telephone: 781.744.0449
    Facsimile: 781.238.6273

    Attorneys for Plaintiffs
    Oracle America, Inc., and Oracle
    International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a Delaware corporation <br><br> Plaintiff, <br><br> v. <br><br> TERIX COMPUTER COMPANY, INC., a California corporation; MAINTECH INCORPORATED, a Delaware corporation; VOLT DELTA RESOURCES, LLC, a Nevada limited liability company; SEVANNA FINANCIAL, INC.,  a Nevada corporation; WEST COAST COMPUTER EXCHANGE, INC., a Nevada corporation; and DOES 1–50, <br><br> Defendants. | No. 5:13-cv-03385 PSG <br><br> **ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES** <br><br> Date:       July 8, 2014 <br> Time:      10:00 a.m. <br> Location:  Courtroom 5, 4th Floor <br> Judge:     Hon. Paul S. Grewal |

1

2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

3

I.      INTRODUCTION ................................................................................................. 2

4

II.     ARGUMENT ....................................................................................................... 4

5

        A.      Twombly/Iqbal and the Two Step Heightened Pleading Standard ........... 4

        B.      Twombly and Iqbal Apply to Affirmative Defenses............................... 5

6

        C.      Defendants' Affirmative Defenses All Fail the Twombly/Iqbal Standard ........... 6

7

                1.      Most of Defendants' Affirmative Defenses Fail Step 1 ............................ 6

                1.      The Rest of Defendants' Affirmative Defenses Fail Step 2..................... 8

8

9

                        a.      Waiver (Maintech defense 1, Terix defense 14, WEX and
                                Sevanna defense 10)................................................................. 8

10

                        b.      Estoppel (Maintech defense 1, Terix defense 15, WEX and
                                Sevanna defense 11)................................................................. 11

11

                        c.      Laches (Maintech defense 2, Terix defense 13, WEX and
                                Sevanna defense 9)................................................................... 12

12

                        d.      Unclean Hands (Maintech defense 11, Terix defense 16,
                                WEX and Sevanna defense 12)................................................. 13

13

14

                        e.      Copyright Misuse (Maintech defense 3, Terix defense 4,
                                WEX and Sevanna defense 3)................................................... 14

15

                        f.      Express or Implied License (Maintech defense 12, Terix
                                defenses 7 and 8)..................................................................... 15

16

                        g.      Fair Use (Maintech defense 8, Terix defense 6, WEX and
                                Sevanna defense 5)................................................................... 19

17

                        h.      Failure to Mitigate, Contributory Negligence (Maintech
                                defenses 15 and 16, Terix defenses 11, 12 and 17, WEX
                                and Sevanna defenses 7, 8 and 13)......................................... 21

18

19

                2.      Terix, WEX and Sevanna's Illegitimate Attempt to Cross-
                        Reference Terix's Counterclaims............................................................. 22

20

                3.      Defenses That Are Not Affirmative Defenses ........................................ 23

21

        D.      The Court Should Deny Leave to Amend................................................ 24

III.    CONCLUSION .................................................................................................. 25

22

23

24

25

26

27

28

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001)........................................................................................ 9, 10, 20

5

*Allen v. AVT Event Techs., Inc.*,
6
   No. C-13-1922, 2013 WL 3157905 (N.D. Cal. June 20, 2013) ........................................... 2, 6

7

*Ansari v. Electronic Document Processing, Inc.*,
8
   No. 5:12-CV-01245, 2012 WL 3945482 (N.D. Cal. Sept. 10, 2012) .................................. 2, 6

9

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011)......................................................................................... 14, 15

10

*Ashcroft v. Iqbal*,
11
   556 U.S. 662 (2009) ..................................................................................................... *passim*

12

*Avaya Inc. v. Telecom Labs, Inc.*,
13
   No. 06-2490, 2014 WL 97335 (D.N.J. Jan. 7, 2014) ............................................................ 16

14

*Barnes & Noble, Inc. v. LSI Corp.*,
   849 F. Supp. 2d 925 (N.D. Cal. 2012) .................................................................................... 5

15

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
16
   718 F. Supp. 2d 1167 (N.D. Cal. 2010) ....................................................................... *passim*

17

*Bell Atlantic Corp. v. Twombly*,
18
   550 U.S. 544 (2007) ..................................................................................................... *passim*

19

*Bhandari v. Capital One*,
   No. 5:12-cv-04533, 2013 WL 5423707 (N.D. Cal. Sept, 27, 2013) ..................................... 24

20

*Bottoni v. Sallie Mae, Inc.*,
21
   No. C 10-03602, 2011 WL 3678878 (N.D. Cal. Aug. 22, 2011) .................................. 5, 8, 25

22

*Broadcast Music, Inc. v. Evie's Tavern Ellention, Inc.*,
23
   No. 8:11-cv-2056, 2011 WL 6012201 (M.D. Fla. Nov. 30, 2011) ....................................... 16

24

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) .............................................................................................................. 19

25

*Campion v. Old Republic Int'l Corp.*,
26
   No. C 12-0443, 2012 WL 2838738 (N.D. Cal. July 10, 2012) ............................................. 19

27

*Carmichael Lodge No. 2013 v. Leonard*,
   No. CIV S-07-2665, 2009 WL 2985476 (E.D. Cal., Sept. 16, 2009) ................................... 11

28

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
    497 F.3d 546 (5th Cir. 2007)........................................................................ 19

*In re Century Aluminum Co. Secs. Litig.*,
    729 F.3d 1104 (9th Cir. 2013)....................................................................... 8

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
    No. C 09-02429, 2009 WL 3517617 (N.D. Cal. Oct. 26, 2009) .............................. 5

*Dion v. Fulton Friedman & Gullace LLP*,
    No. 11-2727, 2012 WL 160221 (N.D. Cal. Jan. 17, 2012) ........................... 5, 6, 17

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009)....................................................................... 13

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    __ F.3d __, No. 12-16526, 2014 WL 1797676 (9th Cir. May 7, 2014)........................ 4, 5, 6

*Hampton v. Paramount Pictures Corp.*,
    279 F.2d 100 (9th Cir. 1960)..................................................................... 9, 11

*Hernandez v. Dutch Goose, Inc.*,
    No. C 13-03537, 2013 WL 5781476 (N.D. Cal. Oct. 25, 2013) ................... 1, 6, 24

*J&J Sports Productions, Inc. v. Barwick*,
    No. 5:12-CV-05284, 2013 WL 2083123 (N.D. Cal. May 14, 2013) ................... 16

*J&J Sports Productions, Inc. v. Mendoz-Govan*,
    No. C 10-05123, 2011 WL 1544886 (N.D. Cal. April 25, 2011) ........................ 6

*Jamison v. Capello*,
    No. 1:10-cv-01633, 2013 WL 618203 (E.D. Cal. Nov. 25, 2013)........................ 25

*Marchi v. Board of Cooperative Educational Servs. of Albany*,
    173 F.3d 469 (2d Cir. 1999)....................................................................... 19

*Michael v. Internet Ent't Group, Inc.*,
    5 F Supp. 2d 823 (C.D. Cal. 1998)............................................................. 16

*Micro Star v. Formgen, Inc.*,
    154 F.3d 1107 (9th Cir. 1998)..................................................................... 10

*Monge v. Maya Magazines*,
    688 F.3d 1164 (9th Cir. 2012)..................................................................... 24

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Oracle USA, Inc. v. Rimini Street, Inc.,*
4         No. 2:10-CV-00106, 2010 WL 4386957 (D. Nev. Oct. 29, 2010) ........................................ 15

5
*Oracle USA, Inc. v. Rimini Street, Inc.,*
          No. 2:10-CV-00106, 2014 WL 576097 (D. Nev. Feb. 13, 2014) .................................... 15, 16
6

7
*Perez v. Gordon & Wong Law Grp., P.C.,*
          No. 11-CV-03323, 2012 WL 1029425 (N.D. Cal. March 26, 2012) ............................... 5, 24
8

9
*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
          __ U.S. __, No. 1201315, 2014 WL 2011574 (U.S. May 19, 2014) ............................. 12, 13

10
*Polo v.Shwiff,*
          No. C 12-04461, 2013 WL 1797671 (N.D. Cal. April 29, 2013) ............................................ 6
11

12
*Practice Mgmt. Info. Corp. v. AMA,*
          121 F.3d 516 (9th Cir. 1997).................................................................................................. 14

13
*Qarbon.com Inc. v. eHelp Corp.,*
          315 F. Supp. 2d 1046 (N.D. Cal. 2004) .................................................................................. 5
14

15
*Salameh v. Tarsadia Hotel,*
          726 F.3d 1124 (9th Cir. 2013)................................................................................................ 24

16

17
*Starbuzz Tobacco, Inc. v. Saeed,*
          No. C 13-3837, 2013 WL 6354438 (N.D. Cal. Dec. 5, 2013) ................................................ 6

18
*Sun Microsystems, Inc. v. Datarm Corp.,*
          No. CIV. 96-20708, 1997 WL 50272 (N.D. Cal. Feb. 4, 1997) ...................................... 18, 19
19

20
*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,*
          786 F.2d 1400 (9th Cir. 1986)................................................................................................ 13

21

22
*Surface Supplied, Inc. v. Kirby Morgan Dive Systems, Inc.,*
          No. C-13-0575, 2013 WL 5496961 (N.D. Cal. Oct. 3, 2013) ................................................. 6

23
*Triad Systems Corp. v. Southeastern Express Co.*
          64 F.3d 1330 (9th Cir. 1995).................................................................................................. 15
24

25
*Ujhelyi v. Vilsack,*
          No. C 12-04282, 2013 WL 6174491 (N.D. Cal. Nov. 25, 2013) ............................................ 5

26
*Velez v. Bank of America,*
          No. 5:13-cv-02834, 2014 WL 1422972 (N.D. Cal. April 11, 2014) ...................................... 25
27

28

# TABLE OF AUTHORITIES
### (continued)

Page(s)

**Federal Statutes**

17 U.S.C. § 102 ........................................................................................................... 7

17 U.S.C. § 107 ......................................................................................................... 20

17 U.S.C. § 410 ........................................................................................................... 7

17 U.S.C. § 507 ......................................................................................................... 13

18 U.S.C. § 1030 ................................................................................................... 13, 24

Computer Fraud and Abuse Act ............................................................................... 24

Lanham Act ............................................................................................................. 7, 9

**State Statutes**

Cal. Bus. & Prof. Code § 17208 ............................................................................... 13

Cal. Code Civ. Proc. § 337 ....................................................................................... 13

Cal. Code Civ. Proc. § 338 ....................................................................................... 13

**Rules**

Fed. R. Civ. Proc. 8 ............................................................................................. 1, 4, 5

Fed. R. Civ. Proc. 12 ....................................................................................... 1, 5, 8, 25

Fed. R. Civ. Proc. 15 ............................................................................................... 19

**Other Authorities**

4 Nimmer on Copyright § 13.06 ................................................................................. 9

4 Nimmer on Copyright § 13.07 ............................................................................... 11

4 Nimmer on Copyright § 13.08 ............................................................................... 24

4 Nimmer on Copyright § 13.09 ............................................................................... 13

Restatement (Second) of Torts § 463 ....................................................................... 21

Restatement (Second) of Torts § 464 ....................................................................... 21

Restatement (Second) of Torts § 465 ....................................................................... 22

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page(s)**

3    Restatement (Second) of Torts § 918 ....................................................................... 21, 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

## NOTICE OF MOTION TO STRIKE

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE that on July 8, 2014 at 10:00 a.m., in courtroom 5 of the above-listed Court, Plaintiffs Oracle America, Inc. and Oracle International Corporation (together, "Oracle" or "Plaintiffs") will, and hereby do, move for an order pursuant to Federal Rule of Civil Procedure 12(f), striking each and every affirmative defense alleged by Defendants TERiX Computer Company, Inc. ("Terix"), Maintech, Incorporated and Volt Delta Resources, LLC (both together, "Maintech"), Sevanna Financial, Inc. ("Sevanna"), and West Coast Computer Exchange, Inc. ("WEX") (collectively, "Defendants"). This motion is based on this Notice and Motion, the Defendants' amended answers to Oracle's First Amended Complaint ("FAC"), the accompanying motion to shorten time and request for judicial notice, the pleadings on file in this matter, and such oral argument as the Court permits.

## MOTION TO STRIKE

Pursuant to Federal Rule of Civil Procedure 12(f), Oracle moves to strike all of the Defendants' affirmative defenses alleged in their amended answers to the FAC. *See* D.I. 181 (Terix's amended answer), D.I. 178 (Maintech's amended answer), D.I. 180 (Sevanna's amended answer), D.I. 179 (WEX's amended answer). These defenses fail the requirement in Federal Rule of Civil Procedure 8(b)(1) to "state in short and plain terms [the] defenses to each claim asserted" because they are threadbare and conclusory and lack factual content that would allow the Court to infer that the defenses have plausibility, in violation of the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which apply to affirmative defenses. *See Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) ("Rule 8's requirements with respect to pleading defenses in an answer parallel[] the Rule's requirements for pleading claims in a complaint.") (Patel, J.); *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537, 2013 WL 5781476, *4 (N.D. Cal. Oct. 25, 2013) (Beeler, J.) ("[T]here is widespread agreement among courts in this district that the *Iqbal-Twombly* pleading standard for claims for relief also applies to affirmative defenses"). In addition, several of the Defendants' affirmative defenses are not an

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

affirmative defenses at all and should be stricken for that reason as well.  *See Barnes*, 718 F.
Supp. 2d at 1174.  Accordingly the Court should grant Oracle's motion and strike all of the
Defendants' affirmative defenses without leave to amend.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

Oracle's First Amended Complaint alleges six claims for relief against Defendants
related to their scheme to misappropriate and distribute Oracle's copyrighted software code.  D.I.
110.  Oracle stated its claims by providing detailed factual support for the allegations that it
made regarding Defendants' longstanding, unlawful conduct that has resulted in significant harm
to Oracle.  In stark contrast, Defendants' original answers to the FAC asserted a litany of
affirmative defenses that contained no factual content needed to satisfy *Twombly* and *Iqbal*'s
plausibility requirement.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.  The plausibility standard . . .  asks for more than
a sheer possibility that a defendant has acted unlawfully.") (citations omitted).

As a result, Oracle moved to strike all of the Defendants' affirmative defenses, D.I. 158,
relying on more than a dozen decisions by the Northern District of California granting motions to
strike defenses based on the *Twombly* and *Iqbal* standards.  *E.g., Allen v. AVT Event Techs., Inc.*,
No. C-13-1922, 2013 WL 3157905, *2 (N.D. Cal. June 20, 2013) (Chesney, J.) (striking all of
defendant's affirmative defenses because they all failed the *Twombly-Iqbal* pleading standards);
*Ansari v. Electronic Document Processing, Inc.*, No. 5:12-CV-01245, 2012 WL 3945482, *5
(N.D. Cal. Sept. 10, 2012) (Koh, J.) (same).  Defendants chose not to oppose Oracle's motion,
and Oracle stipulated for them to have leave to amend but reserved its right to move to strike
affirmative defenses contained in Defendants' amended complaint.  D.I. 176, ¶¶ 1, 2, 4.

As demonstrated below, Defendants have done little to correct the deficiencies in their
original answers.  Despite the parties' having engaged in fairly extensive early discovery and
Defendants having the burden of proof on their affirmative defenses, Defendants continue either
to litter their answers with boilerplate defenses that have no merit or relevance to this case (such

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  as the "essential step" defense, or that the works are unregistered), or state substantive defenses

2  (such as copyright fair use, express license and implied license) without the required factual

3  allegations to show that the defense applies.  While Oracle will conduct discovery on

4  Defendants' defenses should they remain in effect, it should not have to suffer the burden and

5  expense of doing so simply to comprehend what the foundation of the defenses are, nor of

6  having to move for summary judgment on those that have no obvious basis at all.  *Barnes*, 718 F.

7  Supp. 2d at 1173 (striking defenses because "[i]f the court were to permit legally unsustainable

8  affirmative defenses to survive, [Plaintiff] would be required to conduct expensive and

9  potentially unnecessary and irrelevant discovery.").  Granting this motion will "serve to weed out

10  the boilerplate listing of affirmative defenses which is commonplace in most defendants'

11  pleadings where many of the defenses alleged are irrelevant to the claims asserted."  *Id*.

12      These policy concerns are especially important in this case.  Defendants largely have

13  admitted to Oracle's factual allegations.  Terix's witnesses have admitted to password trafficking

14  and large-scale copying and distribution of Oracle's copyrighted software in a manner clearly

15  designed to avoid detection by Oracle.  Maintech's documents show that it has provided Solaris

16  patches to its customers, despite its counsel's repeated statements to the Court that Maintech is

17  supposedly only in the hardware support business.  Defendants' litigation strategy is essentially

18  obstruction and delay, the only purpose being to increase the cost of the litigation for Oracle and

19  put off a public trial of their knowingly unlawful activities.  They filed lengthy motions to

20  dismiss Oracle's original complaint, and – with one exception that Oracle cured through

21  amendment – the Court rejected those motions as baseless.  They dragged their feet for half a

22  year on any meaningful document production, and then leveraged that delay into further delaying

23  additional fact witness depositions.  Consistent with this approach, Defendants' answers reflect a

24  kitchen sink approach by listing every affirmative defense imaginable, including some that do

25  not even exist, with no attempt to meet the governing pleading standards.  Under *Twombly* and

26  *Iqbal*, this type of excess and drag on the litigation is improper and, consequently, the Court

27  should strike all of the Defendants' affirmative defenses as Oracle has requested.

28      As a roadmap to this motion, the attached Exhibit A is a chart listing all 87 affirmative

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    defenses asserted by Defendants, together with the reason each should be stricken and where the

2    defenses are addressed in this motion.  Because Defendants have already had the opportunity to

3    amend their answers, and it is clear that their defenses come nowhere near satisfying the

4    governing pleading standards, the Court should deny Defendants further leave to amend.

5    **II.    ARGUMENT**

6            **A.    *Twombly/Iqbal* and the Two Step Heightened Pleading Standard**

7            In *Twombly*, the Supreme Court held that plaintiff's lengthy complaint did not have

8    enough factual content to satisfy Rule 8's standard that a complaint "must contain . . . a short and

9    plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc.

10   8(a)(2).  The complaint's defect was that its attempt to allege an antitrust conspiracy relied on

11   facts that were also consistent with no conspiracy; that is, the key allegation that there was a

12   conspiracy was a mere conclusion.  550 U.S. at 555-57.  The Court explained that a complaint

13   "requires . . . enough factual matter" to provide "plausible grounds" to let the Court "infer" that

14   the alleged wrongdoing actually happened.  *Id*. at 556.  "The need at the pleading stage for

15   allegations *plausibly suggesting* (not merely consistent with)" wrongdoing "reflects the threshold

16   requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to '*sho[w]* that the

17   pleader is entitled to relief."  *Id*. at 557 (emphasis supplied).  This plausibility standard "calls for

18   enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal"

19   conduct.  *Id*.

20           The Supreme Court expanded on the plausibility standard in *Iqbal*.  In that case, the

21   Court explained that a claim has "plausibility when the plaintiff pleads factual content that

22   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

23   alleged."  556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported

24   by mere conclusory statements, do not suffice."  *Id*.  Instead, the "well-pleaded facts" must

25   "show" that the plaintiff is entitled to relief, not merely suggest it.  *Id*. at 679.

26           The Ninth Circuit has interpreted *Twombly* and *Iqbal* to require "a two-step process" in

27   evaluating the legal sufficiency of a pleading, *Eclectic Properties East, LLC v. Marcus &

28   Millichap Co.*, __ F.3d __, No. 12-16526, 2014 WL 1797676, *2 (9th Cir. May 7, 2014):

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Step 1*:  "First, a court should 'identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

*Step 2*:  "Then a court should 'assume the[] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**B.     *Twombly* and *Iqbal* Apply to Affirmative Defenses**

"Rule 8's requirements with respect to pleading defenses in an answer parallel[] the Rule's requirements for pleading claims in a complaint."  *Barnes*, 718 F. Supp. 2d at 1172; *see also Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323, 2012 WL 1029425, *7 (N.D. Cal. March 26, 2012) (Koh, J.) (applying *Twombly* and *Iqbal* to affirmative defenses because "'[a]ffirmative defenses are governed by the same pleading standards as complaints…'") (quoting *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004)).

Accordingly, "courts in this district consistently have applied the *Twombly-Iqbal* pleading standard to the pleading of affirmative defenses, requiring a defendant to allege enough facts to state a claim to relief that is plausible on its face."  *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602, 2011 WL 3678878, *1 (N.D. Cal. Aug. 22, 2011) (Beeler, J.); *see also Barnes*, 718 F. Supp. 2d at 1171-72 ("the vast majority of courts [in this district] presented with the issue have extended *Twombly*'s heightened pleading standard to affirmative defenses") (citing, among other cases, *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. C 09-02429, 2009 WL 3517617, *7-8 (N.D. Cal. Oct. 26, 2009) (Alsup, J.)); *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 928 (N.D. Cal. 2012) (Chen, J.); *Dion v. Fulton Friedman & Gullace LLP*, No. 11-2727, 2012 WL 160221, *2 (N.D. Cal. Jan. 17, 2012) (Conti, J.) (citing *Barnes*, 718 F. Supp. 2d at 1172; *Ujhelyi v. Vilsack*, No. C 12-04282, 2013 WL 6174491, *2 (N.D. Cal. Nov. 25, 2013) (White, J.) ("the majority of courts within this District have applied *Twombly* and *Iqbal* to affirmative defenses").

Courts in this District have also observed that "[a] showing of prejudice is not required" by the Plaintiff "to strike an 'insufficient'" affirmative defense Rule 12(f), while also observing that "in any event, the obligation to conduct expensive and potentially unnecessary and irrelevant discovery is a prejudice."  *Bottoni*, 2011 WL 3678878, at *2; *Barnes*, 718 F. Supp. 2d at 1173.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    Courts in this District have frequently granted motions to strike all affirmative defenses

2    where the defendant fails to comply with the *Twombly-Iqbal* pleading standards.  *See Starbuzz*

3    *Tobacco, Inc. v. Saeed*, No. C 13-3837, 2013 WL 6354438, *2 (N.D. Cal. Dec. 5, 2013) (Illston,

4    J.) (striking all affirmative defenses); *Hernandez*, 2013 WL 5781476, at *7 (same); *Surface*

5    *Supplied, Inc. v. Kirby Morgan Dive Systems, Inc.*, No. C-13-0575, 2013 WL 5496961, *8-9

6    (N.D. Cal. Oct. 3, 2013) (Chesney, J.) (same); *Allen*, 2013 WL 3157905, at *2 (same); *Polo*

7    *v.Shwiff*, No. C 12-04461, 2013 WL 1797671, *5 (N.D. Cal. April 29, 2013) (White, J.) (same);

8    *Ansari*, 2012 WL 3945482, at *4-5 (same); *Dion*, 2012 WL 160221, at *4 (same); *J&J Sports*

9    *Productions, Inc. v. Mendoz-Govan*, No. C 10-05123, 2011 WL 1544886, *7 (N.D. Cal. April

10   25, 2011) (Alsup, J.) (same); *Barnes*, 718 F. Supp. 2d at 1176 (same).

11   This Court should do the same here.

12   **C.      Defendants' Affirmative Defenses All Fail the *Twombly/Iqbal* Standard**

13   **1.      Most of Defendants' Affirmative Defenses Fail Step 1**

14   Most of Maintech's affirmative defenses, and about half of Terix's, WEX's and

15   Sevanna's affirmative defenses, fail the *Twombly/Iqbal* pleading standard at step one.  That is,

16   once the Court identifies the allegations that are not entitled to the assumption of truth because

17   they are conclusory, *see Eclectic Properties*, 2014 WL 1797676, at *2, there is simply nothing

18   left of the defenses.  This is true for Maintech defenses 4-7, 9, 10, 13, 14, 17-24, Terix defenses

19   2, 3, 5, 9, 10, 18-20, 22, 24, 25, WEX defenses 1, 2, 4, 6, 14-16, 18, 19, and Sevanna defenses 1,

20   2, 4, 6, 14-16, 18, 19.[1]  Each of these defenses refers to a statute or legal doctrine and then

21   contains one or two sentences asserting its applicability in a conclusory fashion.  A complaint

22   drafted in such a manner would be dismissed under *Twombly/Iqbal* simply for the lack of non-

23   conclusory factual allegations, and these defenses should be stricken for the same reason.

24   For example, Maintech's fourth affirmative defense asserts that "one or more" of the

25

---

26   [1] Terix defense 2, WEX defense 1 and Sevanna 1 defense 1 – which assert that the copyrights at
issue do not contain copyrightable subject matter – each contain a statement that Solaris has *lost*
27   copyright protection because it was made open source.  That assertion has nothing to do with
whether the software was copyrightable, which is the purported defense.  Accordingly, Oracle
28   addresses the open source assertion in its discussion of the waiver defense below.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1 | copyright registrations at issue is invalid, and then recites the language of 17 U.S.C. § 102(b):

> One or more of the copyright registrations that are allegedly
> infringed by Answering Defendants are invalid for failure to
> comply with the requirements for copyrightable subject matter set
> forth in 17 U.S.C. § 102. With respect to the versions of Solaris
> subject to the copyright registrations and application identified in
> the First Amended Complaint, Answering Defendants are informed
> and believe, and based thereon allege, that the Solaris source and
> object code consists of functional, efficiency-driven and structural
> elements. These "idea[s], procedur[es], process[es], system[s],
> method[]s of operation, concept[s], principles, or discover[ies] are
> not protectable under 17 U.S.C. § 102(b).

The legal standard to show invalidity is especially high for the registrations at issue in this case,

which are entitled to the presumption of validity under 17 U.S.C. § 410(c). Yet all Maintech

provides is a threadbare recitation of the elements of a defense. This does not satisfy the first

step of the *Twombly*/*Iqbal* pleading standard. *See Iqbal*, 556 U.S. at 680-81 ("These bare

assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a

constitutional discrimination claim") (citations omitted).

As another example, Terix's twenty-second affirmative defense for nominative fair use

states: "Oracle's claim for relief under the Lanham Act fails because Oracle's Solaris Updates

and firmware are products and/or services that are not readily identifiable without reference

thereto, and TERiX's use constitutes use reasonably necessary to identify the product or service,

and TERiX has taken no action that would, in conjunction with references to Oracle's products

and services, suggest sponsorship or endorsement by Oracle." That is just a formulaic recitation

of the elements of a nominative fair use defense. It does not have any factual content to it or

demonstrate how it can be a defense to any of Terix's conduct.

As another example, WEX and Sevanna's sixteenth affirmative defense of statute of

limitations states: "Each of Oracle's claims for relief is barred by the applicable statutes of

limitations. Oracle, through its predecessor Sun, was aware of or on notice of the activities of

which it now complains as early as 2008. TERiX and Oracle, through its predecessor Sun,

communicated regarding, *inter alia*, TERiX and others' activities in assisting its customers with

server maintenance and specifically regarding Solaris Updates. Oracle, through its predecessor

Sun, did not timely file suit after such notice. As a result, Oracle was aware of TERiX's and

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  others' alleged conduct before the acquisition of Sun by Oracle in January 2010."

2          That defense pleads the conclusion that Oracle was on notice of something and should

3  have sued earlier, but once the Court strips away that conclusion there is no factual content left

4  on which the Court could perform step two's plausibility analysis.  WEX and Sevanna do not

5  allege what Oracle was told, or when, or even whether it was told anything or was supposed to

6  have been "on notice" of something.  Recall that allegations do not survive step two's

7  plausibility analysis when "plaintiffs' explanation is merely *possible* rather than plausible.  To

8  render their explanation plausible, plaintiffs must do more than allege facts that are merely

9  consistent with both their explanation and defendants competing explanation."  *In re Century*

10  *Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (emphasis original).  Here, the

11  affirmative defense is so conclusory there are no factual allegations to evaluate to determine if

12  the defense is merely possible as opposed to plausible.

13          This lack of factual content forecloses all of these affirmative defenses.  Between them,

14  Defendants have alleged a total of 87 affirmative defenses.  Many of the defenses overlap, but by

15  Oracle's count Defendants have alleged at least 31 distinct affirmative defenses, and most of

16  them have essentially no factual content and are far beyond the scope of the issues raised by

17  Oracle's six claims for relief.  "'[A] district court must retain the power to insist upon some

18  specificity in pleading before allowing a potentially massive factual controversy to proceed,"

19  *Twombly*, 550 U.S. at 558 (citation omitted).  "The purpose of a Rule 12(f) motion is to avoid

20  spending time and money litigating spurious issues."  *Bottoni*, 2011 WL 3678878, at *1.  The

21  Court should strike these spurious defenses.

                    **1.      The Rest of Defendants' Affirmative Defenses Fail Step 2**

23          Defendants' other affirmative defenses fail the second step of the *Twombly/Iqbal*

24  pleading standard.  For these defenses, the briefly stated affirmative defenses either have nothing

25  to do with what the defense is under governing legal standards, or they come nowhere close to

26  pleading facts that would satisfy the elements of the defense.  For some of these defenses, one or

27  more of the Defendants also fails step one of the *Twombly/Iqbal* standard.

                    **a.      Waiver (Maintech defense 1, Terix defense 14,
                              WEX and Sevanna defense 10)**

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    Defendants assert waiver as an affirmative defense.  Maintech asserts it as a defense to

2    "Oracle's copyright claim."  Terix, WEX and Sevanna do not specifically identify what claims

3    they assert a waiver defense for, but all three state that "Oracle knowingly waived its right to sue

4    regarding Solaris Updates," and they make assertions concerning how Oracle licensed and

5    distributed its software.  That sounds like they are asserting a waiver defense only to the

6    copyright claim, as those assertions about software licensing and distribution do not have

7    anything to do with, for example, the Lanham Act.

8    Defendants do not plead facts that plausibly suggest a waiver defense.  "[S]trictly

9    speaking, 'waiver' itself does not serve as a defense to copyright infringement."  4 Nimmer on

10   Copyright § 13.06.  "Instead, *abandonment* of the copyright . . . constitutes an effective defense

11   in an infringement action."  *Id*.  "Abandonment of the copyright occurs only if there is an intent

12   by the copyright proprietor to surrender rights in his work.  There is, moreover, strong authority

13   holding that an overt act evidencing such an intent is necessary to establishment abandonment."

14   *Id*.  The Ninth Circuit follows the Nimmer treatise on these points.  *See A&M Records, Inc. v.*

15   *Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  Importantly, "lack of action" to enforce a

16   copyright cannot amount to abandonment.  *Hampton v. Paramount Pictures Corp.*, 279 F.2d

17   100, 104 (9th Cir. 1960).

18   Defendants' allegations come nowhere close to plausibly suggesting that Oracle

19   abandoned its rights in Solaris to the public.  Terix, WEX and Sevanna argue that customers that

20   purchased "licensed copies of Solaris 7, 8, 9, and/or 10" received from Sun/Oracle "perpetual

21   license rights to that version" and to updates to it.  These Defendants contend that "[t]hose

22   license rights are set forth in original Solaris license documents."  But *licensing* customers to use

23   Solaris does not plausibly suggest that Oracle *abandoned* its copyrights.  It shows the opposite,

24   as there would be no need for a license if Oracle had abandoned its copyrights.

25   These Defendants and Maintech also assert that Oracle failed to take adequate steps to

26   prevent them from stealing its software, and that Oracle has launched an "aggressive litigation

27   campaign for allegations of copyright infringement."  However, those allegations do not show

28   abandonment, *see Hampton*, 279 F.2d at 104, and certainly litigation to enforce copyrights

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   negates a showing of abandonment.  Maintech also asserts that in December 2012 "a blogger

2   noticed" that "someone" had posted a .tar file on the internet that contained the source code for

3   Solaris 11, and "[t]his event was covered extensively in the media."  That does not show that

4   Oracle abandoned its copyrights, or even that Oracle did anything to contribute to this improper

5   posting by an unauthorized third party.

6          Maintech asserts that Sun "released Solaris 10 between 2005 and 2010 in open source

7   form under the CDDL," which stands for the Common Development and Distribution License.

8   Maintech states that "[t]hese open source and/or publicly available releases of Solaris were

9   readily available at no cost over the Internet."  However, distributing a source code version of

10  Solaris under a broad *licensing* regime does not show abandonment of the copyright, and indeed

11  the licensing regime itself shows the opposite.  Further, Oracle is not suing Defendants for

12  distributing source code versions of Open Solaris; it is suing them for distributing object code

13  Solaris Updates and firmware updates regarding the commercial version of Solaris that was

14  installed on its servers, i.e., the updates that Oracle provides to its paying customers.  *E.g.*, FAC

15  ¶¶ 1, 8.  Maintech's allegations concerning source code distribution under the CDDL have no

16  relevance to nor plausibly suggest a license defense applicable to, the accused conduct.  *See*

17  *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998) ("Given that it overtly

18  encouraged players to make and freely distribute new levels, FormGen may indeed have

19  abandoned its exclusive right to do the same.  But abandoning some rights is not the same as

20  abandoning all rights, and FormGen never overtly abandoned its rights to profit commercially

21  from new levels.") (citation omitted).

22         Defendants' allegations do not plausibly suggest a waiver defense to Oracle's copyright

23  claim and therefore fail the *Twombly*/*Iqbal* pleading standards.  If Defendants contend their

24  waiver defense somehow relates to other claims, then the defense is merely conclusory because

25  nothing in it shows "the intentional relinquishment of a known right with knowledge of its

26  existence and the intent to relinquish it," *A&M Records*, 239 F.3d at 1026 (citation and quotation

27  marks omitted), for Oracle's other claims either.  The Court should strike the defense.

28

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

b.    **Estoppel (Maintech defense 1, Terix defense 15,
WEX and Sevanna defense 11)**

There are four "necessary elements" to the defense of estoppel:  (1)  the plaintiff must

know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct

shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3)

the defendants must be ignorant of the true facts; and (4)  the defendant must rely on the

plaintiff's conduct to its injury.  4 Nimmer on Copyright § 13.07[A] (following *Hampton*, 279

F.2d at 104); *see also Carmichael Lodge No. 2013 v. Leonard*, No. CIV S-07-2665, 2009 WL

2985476, *15 (E.D. Cal., Sept. 16, 2009) (test is the same for non-copyright claims).

Defendants plead no facts to establish any of these elements.  Maintech pleads its

estoppel defense together with its waiver defense, discussed above.  Those allegations have

nothing to do with, and do not establish the elements of, estoppel.

Terix's estoppel defense asserts, without any factual support for the conclusion, that

Oracle is estopped from suing Terix because Oracle itself engages in similar conduct with

respect to *other* software companies.  Terix defense 11 ("On information and belief, Oracles

accesses other OEM websites and downloads patches in its capacity as a software service

provider.  Oracle knew or should have known that TERiX and others would and did rely on such

facts, *inter alia*, to engage in the conduct Oracle now complains of as being unlawful.").  Terix

fails to provide any specifics regarding this alleged conduct, such as who the other OEMs are,

what patches Oracle has downloaded or when such conduct occurred, if at all.  Terix also says

nothing about what these other OEM's policies are with respect to downloading patches, whether

Oracle had authorization for other OEM software, or whether "Oracle accesses other OEM

websites and downloads patches" in a manner that is similar to or different from the admittedly

covert and fraudulent methods in which Terix acquires Oracle's software.  Terix's "you do it

too" assertion is speculative, not factual.  Regardless, even aside from the lack of factual content,

it is just not an estoppel defense.  For example, Terix has no allegations that satisfy elements 1

and 3 of the estoppel defense.

WEX and Sevanna contend that Oracle is estopped because Sun "previously provided

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  Updates for free and/or made them open source" and "Oracle knew or should have known that

2  Defendants and others would and did rely on these facts to engage in the conduct Oracle now

3  complains of as being unlawful." Those allegations are deficient. They are a conclusory (and

4  knowingly false based on allegations in Terix's and Maintech's separately pleaded

5  counterclaims[2]) – and therefore defective – assertion of element 4 of the defense, not quite even

6  a conclusory allegation of element 2, and nothing in even the most conclusory form concerning

7  elements 1 and 3.

8                              c.      **Laches (Maintech defense 2, Terix defense 13,**
                                        **WEX and Sevanna defense 9)**
9

10        Defendants assert a laches defense for Oracle's claims relating to their distribution of

11  Solaris Updates and firmware.[3] However, the Supreme Court's recent decision in *Petrella v.*

12  *Metro-Goldwyn-Mayer, Inc.*, __ U.S. __, No. 1201315, 2014 WL 2011574 (U.S. May 19, 2014),

13  disposes of Defendants' laches defense. In that case, the Court considered whether laches could

14  serve as a defense to a copyright infringement case. However, the answer the Court provided

15  sweeps far broader than just copyright claims. The Court held that "laches is a defense

16  developed by courts of equity; its principal application was, and remains, to claims of an

17  equitable cast for which the Legislature has provided no fixed time limitation." *Id*. at *9.

18  Accordingly, "we adhere to the position that, in [the] face of a statute of limitations enacted by

19  Congress, laches cannot be invoked to bar legal relief." *Id*. Because the Copyright Act has a

20  three-year statute of limitations that starts running each time a new infringing act is discovered,

21  *id*. at *9 & *6 n.4, the Court held that laches could not bar the claim. The Court was clear that its

22  reasoning applies beyond the copyright context, stating that "[t]here is nothing at all 'different'

23

24  _____

25  [2] *See, e.g.*, D.I. 144, ¶ 51, 52 (Terix counterclaim alleging that Oracle does not make Solaris
    patches available for free and that before Oracle acquired Sun, some percentage of Solaris
26  patches had always been restricted).
    [3] None of the allegations in Maintech defense 2, Terix defense 13, and WEX and Sevanna
27  defense 9 relate to false advertising, so Defendants do not plead laches as a defense to Oracle's
    Lanham Act claim. FAC ¶¶ 87-95. For that matter, WEX and Sevanna are not defendants on
28  Oracle's Lanham Act claim. *See id*.

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   about copyright cases in this regard." *Id*. at *9.[4]

2        Here, all of Oracle's claims to which Defendants assert a laches defense are subject to

3   explicit statutes of limitations.  17 U.S.C. § 507(b); 18 U.S.C. § 1030(g); Cal. Code Civ. Proc.

4   §§ 337(1), 338; Cal. Bus. & Prof. Code § 17208.  Under *Petrella*, laches cannot bar Oracle's

5   claims.  Further, Defendants make no factual allegations that would support limiting Oracle's

6   requested injunctive relief.  Oracle seeks an injunction against Defendants' ongoing illegal

7   conduct.  There is nothing extraordinary about that; it's what every copyright plaintiff seeks.

8   Under *Petrella*, Defendants have no laches defense.

9                    **d.      Unclean Hands (Maintech defense 11, Terix**
10                              **defense 16, WEX and Savanna defense 12)**

11       "Plaintiff's action will be dismissed under the theory of unclean hands if defendant

12   establishes that plaintiff's evidence was false and that plaintiff was involved in a scheme to

13   defraud the public."  *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786

14   F.2d 1400, 1408 (9th Cir. 1986).  The Ninth Circuit has rejected broader application of the

15   unclean hands defense to the illegal use of a copyrighted work.  *Dream Games of Arizona, Inc. v.*

16   *PC Onsite*, 561 F.3d 983, 991 (9th Cir. 2009) ("illegal operation of a copyrightable work neither

17   deprives the work of copyright protection nor precludes generally available remedies"); *see also*

18   4 Nimmer on Copyright § 13.09[B] ("such a defense is recognized only rarely," such as "when

19   the plaintiff misused the process of the courts by falsifying a court order, by falsifying evidence,

20

21   _____
     [4] The Court did acknowledge that "[i]n extraordinary circumstances, however, the consequences
22   of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of
     the litigation, curtailment of the relief equitably awardable." *Id*. at *13.  The Court then gave as
23   an example a case decided by the Sixth Circuit in which "the defendants were alleged to have
     used without permission, in planning and building a housing development, the plaintiffs'
24   copyrighted architectural design." *Id*.  Finding that laches could *not* bar a copyright infringement
     brought within the three-year limitations period, the Court of Appeal nevertheless held that "[t]he
25   plaintiffs, even if they might succeed in proving infringement of their copyrighted designs,
     would not be entitled to an order mandating destruction of the housing project." *Id*.  The
26   Supreme Court cited this example with approval as an illustration of extraordinary circumstances
     that could limit injunctive remedies.  The Court then remanded the case, instructing the lower
27   courts to "closely examine MGM's alleged reliance" on plaintiffs' delay. *Id*. at *14.  No similar
     concerns are present in this case.
28

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   or by misrepresenting the scope of his copyright to the court and opposing party”).

2          Defendants make no allegations to support an unclean hands defense.  Maintech asserts

3   that Oracle has engaged in anticompetitive conduct “by attempting to leverage copyright

4   monopoly over the market for support of Oracle/Sun software and related hardware” and that

5   Oracle “is attempting through litigation to unilaterally change the terms of its agreements with its

6   customers.”  (Maintech defense 11.)  Terix, WEX and Sevanna assert that Sun gave away Solaris

7   Updates for free and Oracle “changed these policies without adequate or fair notice to customers

8   or ISPs” and that Oracle itself engages in the conduct as to other software companies “of which

9   it accuses TERiX.”  (Terix defense 16, WEX and Sevanna defense 11.)  However, those

10  allegations simply have nothing to do with an unclean hands defense.  They do not show, or

11  attempt to show, that Oracle falsified a court order, falsified evidence, misrepresented the scope

12  of its copyrights to the Court or the Defendants, or submitted false evidence and participated in a

13  scheme to defraud the public.  The Court should strike the defense.

14                          e.      **Copyright Misuse (Maintech defense 3, Terix**
15                                  **defense 4, WEX and Sevanna defense 3)**

16          Defendants’ copyright misuse defense is legally defective for the same reasons that

17  Maintech and Terix’s counterclaims for copyright misuse are defective, as explained in Oracle’s

18  motion to dismiss.  D.I. 173 at 22-24.

19          As Oracle explained, the copyright misuse doctrine does not prohibit using conditions to

20  control the use of a firm’s copyrighted material.  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150,

21  1159 (9th Cir. 2011).  To the contrary, it is used “sparingly” and applies only where a copyright

22  is used to stifle competition.  *Id.* at 1157.  To date, the Ninth Circuit has only upheld its

23  application in situations where a customer is *prohibited* from using the products of any other

24  competitors.  *See Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 521 (9th Cir. 1997) (finding

25  misuse where the copyright holder “[c]ondition[ed] the license on [the customer’s] promise not

26  to use competitors’ products”); *see also Psystar*, 658 F.3d at 1157 (noting that the “decision in

27  *Practice Management* is the only case in which we upheld a copyright misuse defense”).

28          On the other hand, the Ninth Circuit has rejected copyright misuse theories on facts

ORACLE’S NOTICE AND MOTION TO STRIKE DEFENDANTS’ AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   similar to those asserted here.  For example, in *Triad Systems Corp. v. Southeastern Express Co.*,

2   the plaintiff (Triad) designed computers for use in the automotive industry, and licensed unique

3   diagnostic software to service those computers.  64 F.3d 1330, 1333 (9th Cir. 1995).  The

4   defendant was an independent service organization that serviced Triad computers.  *Id.*  Triad

5   sued the defendant for copyright infringement, asserting that, in servicing Triad computers, the

6   defendant necessarily copied Triad's proprietary software to the computer's random access

7   memory and thereby infringed Triad's copyright.  *Id.*  Affirming a preliminary injunction, the

8   Ninth Circuit rejected the defendant's copyright misuse claim because "Triad did not attempt to

9   prohibit [the defendant] or any other ISO from developing its own service software to compete

10  with Triad."  *Id.* at 1337.  As the Ninth Circuit recently explained, *Triad* stands for the

11  proposition that a "software licensing agreement may reasonably restrict use of the software as

12  long as it does not prevent the development of competing products."  *Psystar*, 658 F.3d at 1159.

13          Here, Defendants do not allege that Oracle prohibits its customers from accepting Solaris

14  software or hardware services from Maintech, Terix or any other ISO that those companies

15  develop on their own.  Defendants also do not allege that Oracle prohibits Defendants from

16  developing any "competing products" that might help them provide such services – except of

17  course from using Oracle's proprietary, copyrighted software.  Absent alleged facts showing, for

18  example, that Oracle prohibits customers from doing business with Defendants or otherwise

19  prohibits its licensees from participating in the software and hardware service markets in which

20  Defendants compete, Defendants' copyright misuse defense fails as a matter of law.  *See Oracle*

21  *USA, Inc. v. Rimini Street, Inc.*, No. 2:10-CV-00106, 2010 WL 4386957, *5 (D. Nev. Oct. 29,

22  2010) (striking copyright misuse defense because Oracle's "licensing agreement does not

23  preclude a customer from using either a competing company or no company at all to access its

24  support materials").

25                              **f.      Express or Implied License (Maintech defense**
                                        **12, Terix defenses 7 and 8)**
26

27          "As the party alleging the affirmative defense," each Defendant "has the initial burden to

28  identify any license provision(s) that it believes excuses its infringement."  *Oracle USA, Inc. v.*

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  *Rimini Street, Inc.*, No. 2:10-CV-00106, 2014 WL 576097, *4 (D. Nev. Feb. 13, 2014) (citing

2  *Michael v. Internet Ent't Group, Inc.*, 5 F Supp. 2d 823, 831 (C.D. Cal. 1998); *Broadcast Music,*

3  *Inc. v. Evie's Tavern Ellention, Inc*., No. 8:11-cv-2056, 2011 WL 6012201, *2 (M.D. Fla. Nov.

4  30, 2011) (Defendants must "plead and prove the [license] defense.") (emphasis supplied).

5       A license defense has to be asserted on a customer by customer basis.  *See Oracle USA*,

6  2014 WL 576097, *4 ("As each customer's software licensing agreement is different, the court

7  must evaluate [defendant's] express license affirmative defenses separately for each customer at

8  issue); *cf. Avaya Inc. v. Telecom Labs, Inc.*, No. 06-2490, 2014 WL 97335, *5 (D.N.J. Jan. 7,

9  2014) (party "failed to prove the software licensing agreements entered into by TLI/C's 470

10  customers upon purchasing their" equipment, where it "introduced only two incomplete sets of

11  the unknown number of licensing agreements").  At the pleading stage this requires enough

12  factual content to move the defense "across the line from conceivable to plausible," *Iqbal*, 556

13  U.S. at 680.  Without sufficient "factual allegations," a license "defense fails and must be

14  stricken."  *J&J Sports Productions, Inc. v. Barwick*, No. 5:12-CV-05284, 2013 WL 2083123, *3

15  (N.D. Cal. May 14, 2013) (Koh, J.).

16       **Terix.**  Terix's seventh defense for express license contains a three-sentence assertion

17  that licenses exist that authorized Terix's conduct, but does not identify any of those licenses or

18  any of their terms, or indicate which licenses apply to its hundreds of customers and their

19  thousands of servers even after months of discovery on this very issue.  Its eighth defense for

20  implied license also contains a three sentence assertion that unspecified industry customs

21  authorized Terix's conduct.  These defenses are devoid of factual information which is

22  remarkable given that Terix, in particular, has touted the alleged existence of such licenses as the

23  cornerstone of its response to Oracle's claims.  *Iqbal*'s examples of allegations that are so

24  conclusory they "are not entitled to the assumption of truth" look positively detailed compared to

25  Terix's threadbare license defenses.  *See* 556 U.S. at 680-81

26       Further, Oracle pointed out this defect in Terix's license defense in its prior motion to

27  strike, D.I. 168 at 8, and Oracle then stipulated to give Terix leave to amend to try to allege a

28  license defense, D.I. 176.  In response, Terix made only one change to its seventh and eighth

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

defenses:  It added a sentence to the end of each, saying "[f]urther factual allegations in support of this affirmative defense are set forth in TERiX's Counterclaim, Docket No. 144, *including at Paragraphs 25 through 30.*"  (emphasis supplied)

First, giving Oracle a non-exhaustive list of places to go look in search of Terix's license defense does not give Oracle fair notice of what the defense is.  *See Dion*, 2012 WL 160221, at *3 ("Defendants must give Plaintiff fair notice of" what their affirmative defenses are "rather than leaving it to Plaintiff, and this Court, to guess").  Second, the cited paragraphs 25 through 30 of Terix's counterclaim do not add any relevant factual content identifying licenses or their terms.  Paragraph 26 of the counterclaim is essentially a copy of Terix's seventh affirmative defense, and paragraphs 25 and 27-30 do nothing further to identify any licenses or their terms.  Terix's license defenses are threadbare and conclusory, and the gambit of telling Oracle to look in Terix's counterclaims is both unreasonable and ultimately fruitless because the factual information is not there either.

**Maintech.**  Maintech alleges in conclusory fashion that "[c]ustomers who obtained licensed copies of Solaris" or who "otherwise obtain[e]d a licensed version of Solaris" received an entitlement to perpetual updates.  But Maintech provides no factual content to show what licenses any of its customers obtained or were operating under regarding their use of Solaris or, more importantly, what licenses apply to the versions of Solaris supported by Maintech that grant the incredibly broad right to use not only the version of Solaris licensed but all future patches and updates that Sun/Oracle may ever release.  Maintech asserts that Oracle "impliedly" granted a license "for continued support and updates," but Maintech does not identify what conduct impliedly did that, or to whom Oracle somehow granted these unwritten licenses.

Maintech refers to one license in its affirmative defense – "Sun's Binary Code License Agreement" ("BCL") – but provides no factual content concerning:  which of its customers, if any, licensed anything under the BCL; what time period the BCL existed; what versions of Solaris the BCL applied to; or whether the BCL is applicable to any of the servers for which Maintech provides support.  Maintech is well aware, and has alleged in its counterclaims, that Solaris has existed since the early 1990s (D.I. 145, ¶ 14) and that there have been many versions

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  of Solaris released over the years. D.I. 145, ¶ 17.  That Maintech refers to only one BCL version

2  for Solaris, which has been in commercial release for over twenty years, merely underscores the

3  lack of any factual basis that Maintech has regarding its license defense.  Moreover, Maintech is

4  asserting a license defense in response to Oracle's allegations that Maintech has provided illegal

5  support services to hundreds of customers over the span of several years.  FAC ¶¶ 55-63.

6  Maintech itself alleges in its counterclaims that is has "over 500 customers" on Oracle hardware

7  and that Oracle's licensing practices changed over time. D.I. 145, ¶¶ 12, 25, 27-29.  Yet

8  Maintech's affirmative defense identifies only one license agreement and does not identify any

9  customers who were parties to it or the servers that are running version of Solaris covered by it.

10      As to the BCL, Maintech quotes language that customers who were parties to it had a

11  license to the underlying Solaris program and "any error corrections provided by Sun."

12  Maintech quotes a Sun policy document stating that customers could obtain patches "when they

13  are rolled into a complete OS release."  Neither statement comes close to saying that the BCL or

14  any other unidentified license entitled a customer to any and all free-standing Solaris patches

15  (i.e., what Oracle alleges Defendants copied and distributed) in perpetuity.  In fact, completely

16  inconsistent to this conclusory assertion in Maintech's license defense is Defendants' allegation

17  in their counterclaims that Sun always had "private" patches for which a support agreement was

18  required. *E.g.*, D.I. 144, ¶ 52.

19      Maintech's (and Terix's) license defense would have failed even before *Twombly* and

20  *Iqbal* were decided and courts applied the former notice pleading standard.  For example, in *Sun*

21  *Microsystems, Inc. v. Dataram Corp.*, No. CIV. 96-20708, 1997 WL 50272 (N.D. Cal. Feb. 4,

22  1997), Sun sued Dataram for patent infringement concerning single in-line memory modules

23  ("SIMMS").  Similar to Defendants' license defense here, Dataram asserted a license defense

24  claiming that "it is selling its products to end users of Sun computers who have a license from

25  Sun to use Dataram's SIMMs." *Id*. at *3.  Dataram contended that customers need SIMMs

26  "because Sun sells customers computer equipment with insufficient memory in reliance upon

27  memory manufacturers such as Dataram." *Id*.  Dataram then went further and alleged that Sun

28  "tell[s] customers that they could obtain memory modules from independent manufacturers."

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1 The Court struck the license defense for lack of sufficient "factual allegations." *Id.* at *4. "The

2 legal conclusion that Sun customers have a license to use Dataram SIMMS is inadequate." *Id.*

3 Defendants' license defense is no different here.

4     **Denial of leave to amend.** It is also clear that the license defense cannot be saved by

5 amendment. Oracle deposed Terix and Maintech's Rule 30(b)(6) witnesses concerning their

6 license defense. *See* Oracle's Request for Judicial Notice ("RJN"), Ex. A (Depo. Ex. 52, topic

7 13), Ex. B (Quinn Depo. at 14:1-7), Ex. C (Depo Ex. 1, topic 12), Ex. D (Coscia Depo. at 16:5-

8 10). *See Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 556 (5th

9 Cir. 2007) (in determining whether leave to amend should be granted under Rule 15 when a

10 pleading is defective, it is proper to consider a party's deposition testimony to determine if

11 amendment would be futile, and upholding denial of leave to amend because it was futile);

12 *Marchi v. Board of Cooperative Educational Servs. of Albany*, 173 F.3d 469, 477-79 (2d Cir.

13 1999) (same); *Campion v. Old Republic Int'l Corp.*, No. C 12-0443, 2012 WL 2838738 (N.D.

14 Cal. July 10, 2012) (denying leave to amend pleading because "[g]iven that testimony under

15 oath, Campion cannot now allege in good faith" the required elements of his claim) (Seeborg, J.).

16     Maintech's 30(b)(6) deponent had ███████████████████ and had ███████

17 ████████████████. RJN, Ex. D (Coscia Depo. at 144:17-145:14, 184:13-185:9). Terix's

18 30(b)(6) witness testified that he had ███████████████, and that Terix usually

19 ████████████████████████████████████████████████████████

20 ██████████████████████████████. *Id.*, Ex. B (Quinn Depo. at

21 80:23-81:8, 83:16-85:14). Defendants cannot allege facts to show that a license defense is

22 plausible, rather than merely possible – which is their burden under *Twombly* and *Iqbal* –

23 because they do not know, and never knew, of any such facts.

24         **g.**     **Fair Use (Maintech defense 8, Terix defense 6,**

25                       **WEX and Sevanna defense 5)**

26     The Supreme Court has explained that "the heart of the fair use" doctrine is whether the

27 defendant "adds something new" to the copyrighted work: "it asks, in other words, whether and

28 to what extent the new work is 'transformative.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    569, 579 (1994).  17 U.S.C. § 107 lists the factors a court considers in determining whether the

2    defendant's use of a copyrighted work is fair use, which include the purpose and character of the

3    defendant's use of the work, the portion of the work the defendant used in relation to the work as

4    a whole, and the effect of the defendant's use on the market for the copyrighted work.  *See*

5    *generally A&M Records*, 239 F.3d at 1015-19 (discussing section 107 requirements).

6          Maintech's fair use defense does not have any allegations that are even relevant to the

7    fair use doctrine.  Maintech asserts that Oracle "expressly or impliedly granted a license" to

8    owners of Oracle hardware, and that Maintech operates under those licenses; that Oracle

9    permitted Solaris software to "to be 'open source' and freely available over the internet"; and

10   that "Oracle is attempting to use its copyright monopoly over the operating software" and

11   software patches "to try to drive competing ISOs out of business."  (Maintech defense 8.)  Those

12   allegations relate to Oracle's conduct, not Maintech's use of the software.  They are irrelevant

13   because a fair use defense relates to the defendant's conduct.

14         Terix, WEX and Sevanna's fair use defense is threadbare and conclusory and fails step

15   one of the *Twombly/Iqbal* pleading standard.  For these defendants, the entire defense is six

16   sentences long.  (Terix defense 6, WEX and Sevanna defense 5.)  The first sentence refers to 17

17   U.S.C. § 107 and states that the Defendant invokes the fair use defense – a pure legal conclusion.

18   The next two sentences recite some of the elements of the defense listed in section 107 and assert

19   they have been satisfied.  The fourth sentence states that Oracle made portions of the Solaris

20   software available as "open source," which has nothing to do with section 107.  The fifth

21   sentence recites the remaining elements of the section 107 defense.  And then the sixth sentence

22   tells Oracle to look through Terix's counterclaims, including but not limited to more than 40

23   paragraphs, to see if more information can be found there about fair use.  Oracle has done so, and

24   there is nothing, which is not surprising, as Terix's counterclaims have nothing whatever to do

25   with the fair use doctrine.

26         A complaint that pleaded conclusions in what is really only three sentences would never

27   survive a motion to dismiss under *Twombly/Iqbal*.  Again, Terix's threadbare allegations are

28   much less detailed than what the Supreme Court held inadequate in *Iqbal*.  556 U.S. at 680-81.

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

1

**h.** **Failure to Mitigate, Contributory Negligence (Maintech defenses 15 and 16, Terix defenses 11, 12 and 17, WEX and Sevanna defenses 7, 8 and 13)**

2

3

Defendants also plead failure to mitigate damages and contributory negligence. Terix

4

calls contributory negligence "invitation to/inducement of conduct" (Terix defense 12) and "acts

5

or omissions of others" (Terix defense 17). However, those are not real affirmative defenses,

6

and in both Terix asserts that Oracle is responsible for the harm it has suffered (in defense 17 –

7

for "acts or omissions of others" – Terix explicitly refers to "Oracle's negligence"), so in

8

substance those are a contributory negligence defense. WEX and Sevanna do the same in their

9

defenses 7 and 8.

10

Those defenses are conclusory and do not survive the *Twombly/Iqbal* pleading standard.

11

The defense of failure to mitigate damages is set forth in section 918 of the Restatement

12

(Second) of Torts: "1. Except as stated in Subsection 2, one injured by the tort of another is not

13

entitled to recover damages for any harm that he could have avoided by the use of reasonable

14

effort or expenditure after the commission of the tort. 2. One is not prevented from recovering

15

damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was

16

aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the

17

danger of the harm intentionally or heedlessly failed to protect his own interests."

18

The standard for contributory negligence is defined in section 463 of the Restatement

19

(Second) of Torts: "Contributory negligence is conduct on the part of the plaintiff which falls

20

below the standard to which he should conform for his own protection, and which is a legally

21

contributing cause co-operating with the negligence of the defendant in bringing about the

22

plaintiff's harm." Section 464 clarifies that "the standard of conduct to which he must conform

23

for his own protection is that of a reasonable man under like circumstances."

24

Defendants make no factual allegations that would allow the Court to infer that Oracle

25

could have avoided any harm after the tort was committed through the use of reasonable effort or

26

expenditure, or that Oracle's conduct fell below the standard to which Oracle should conform for

27

its own protection. Defendants say that Sun used to make Solaris Updates available for free, and

28

that portions of the Solaris source code have been available open source (Terix defenses 11, 12,

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

17, WEX defenses 7, 8, 13, Sevanna defenses 7, 8, 1, Maintech defenses 15, 16).  But

Defendants do not allege that they obtained from Sun for free any of the Solaris Updates that

Oracle has sued them for distributing.  Nor do Defendants allege that any of their conduct was

caused or influenced by the open source availability of some versions of Solaris.  Defendants

allege that "all other original equipment manufacturers ('OEM') of licensed operating systems

provide similar such patches for free."  (Terix defense 11; *see also* WEX defense 7, Sevanna

defense 7).  But so what?  Defendants do not allege facts showing the required causal nexus, *see*

Restatement (Second) of Torts §§ 465, 918, between any of these things and Oracle's damages.

Defendants also say that Oracle should have redesigned its website to make it harder for

Defendants to steal Oracle's software.  In other words, it was supposedly Oracle's fault that

Defendants unlawfully accessed Oracle's password-protected support website and then

wrongfully downloaded thousands upon thousands of propriety software patches over the past

several years, all the while concealing this conduct from Oracle through the use of fictitious

entities and individuals.  Terix defense 11 states:  "By failing to take steps to prevent customers

and/or others to access materials for allegedly unsupported Oracle hardware, Oracle has failed to

mitigate its alleged losses."  *See also* Terix defense 17, WEX and Sevanna defense 7, Maintech

defenses 15, 16.  Presumably, "and/or others" is the meaningful part of that sentence, referring to

Defendants.  However, that defense is a threadbare conclusion, with no factual content, and

certainly no alleged facts or conduct that shows the defense to be plausible.

## 2.       Terix, WEX and Sevanna's Illegitimate Attempt to Cross-Reference Terix's Counterclaims

Terix, WEX and Sevanna attempt an end run around *Twombly* and *Iqbal* by ending

several of their threadbare defenses with a generic statement that "[f]urther factual allegations in

support of this affirmative defense are set forth in TERiX's Counterclaim, Docket No. 144."

They do this in Terix defenses 2, 4-8, 12-16, 23, 25, WEX defenses 3-5, 8-12, 17, 18, and

Sevanna defenses 3-5, 8-12, 17, 18.  In every case, they give a non-exhaustive list of paragraphs

to read in the counterclaim – usually paragraphs 25 through 66 (*see*, *e.g.*, Terix defense 12) – but

they always clarify that this is a non-exhaustive list, and they are incorporating *all* of the

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

paragraphs in the 141-paragraph counterclaim *including* the specifically identified ones.

The one affirmative defense where this is arguably appropriate is copyright misuse, since that is also a claim that Terix alleges in its counterclaim. It is possible for Oracle to read Terix's counterclaim and figure out what Terix thinks it copyright misuse defense is. But for the rest of the defenses, this is just a snow job. Terix's counterclaims are for antitrust violations, false advertising, business torts and unfair competition. There is no logical connection between those claims and Defendants' defenses. The counterclaims of course do not say which allegations within them relate to which of Defendants' defenses, and read fairly, the answers do not either, since they simply incorporate by reference *all* of the allegations in the counterclaims "including" a large subset of them. The purposes of the *Twombly/Iqbal* pleading standard are to give Oracle notice of what the defenses are and to allow the Court to determine if they have enough factual heft to get past the pleading stage. *Iqbal*, 556 U.S. at 678-80. Generically incorporating Terix's counterclaims into 33 affirmative defenses by these three Defendants defeats both purposes. It is the equivalent of handing the Court and Oracle a telephone directory and saying, "Go rummage through here and see if you can find anything relevant to our defenses."

And, of course, there is nothing relevant in Terix's counterclaims. Why would there be? One would not expect Terix's Lanham Act claim to contain factual allegations showing that Oracle filed its interference claim against Terix after the statute of limitations had lapsed. Likewise, one would not expect Terix's allegations of attempted monopolization to show how laches could apply to Oracle's copyright infringement claim against Terix. These subjects are simply unrelated to each other. Accordingly, Terix, WEX and Sevanna's incorporation by reference of Terix's counterclaims into their affirmative defenses does nothing to satisfy the *Twombly/Iqbal* pleading standard.

### 3. Defenses That Are Not Affirmative Defenses

In addition, several of the Defendants' defenses are not actually affirmative defenses. Terix defense 1 is that "Oracle's allegations in its complaint fail to state a claim upon which relief can be granted." However, that is not an affirmative defense. *See Barnes*, 718 F. Supp. 2d

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  at 1174, 1176 (striking this defense); *Hernandez*, 2013 WL 5781476, at *7 (same).

2        Terix defense 23, and WEX and Sevanna defenses 17 assert that the Defendants had

3  "innocent intent" because they had no reason to believe their "acts constituted infringements."

4  However, "[i]n actions for statutory copyright infringement, the innocent intent of the defendant

5  constitutes no defense to liability." 4 Nimmer on Copyright § 13.08[B][1]; *see also Monge v.*

6  *Maya Magazines*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("'the innocent intent of the defendant

7  constitutes no defense to liability.'") (quoting Nimmer).

8        Maintech defense 9 and Terix defense 21 assert that Oracle's claims "for violations of the

9  Computer Fraud and Abuse Act are barred" because Defendants were authorized to access

10  Oracle's support website. However, proving unauthorized access is an element of Oracle's

11  claim; it is not an affirmative defense. *See* 18 U.S.C. § 1030(a)(2), (a)(4), (a)(6).

12        These non-affirmative defenses should be stricken. *See Perez*, 2012 WL 1029425, *11

13  (striking defenses that are not actually affirmative defenses).

14        **D.        The Court Should Deny Leave to Amend**

15        The Court should deny Defendants leave to amend their affirmative defenses. *See*

16  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to

17  dent leave to amend is 'particularly broad' where" the party "has previously amended");

18  *Bhandari v. Capital One*, N.A., No. 5:12-cv-04533, 2013 WL 5423707, *5 (N.D. Cal. Sept, 27,

19  2013) (Grewal, J.) (denying leave to amend where plaintiff had previously amended, was on

20  notice of what was defective in the pleading, and the amendment failed to cure it).

21        Defendants' affirmative defenses cannot be saved by amendment because the substantive

22  governing legal standards make clear the defenses have no merit. For example, Defendants'

23  "waiver" defense (Maintech defense 1, Terix defense 14, WEX and Sevanna defense 10)

24  requires factual allegations showing that Oracle abandoned its copyrights in Solaris.

25  Defendants' assertions that Oracle could have taken unspecified steps to protect its intellectual

26  property even more than it already did are not only conclusory and threadbare, they are simply

27  aiming at the wrong legal standard. Likewise, Defendants' fair use defense (Maintech defense 8,

28  Terix defense 6, WEX and Sevanna defense 5) has no factual content because all Defendants did

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   was steal Oracle's software and distribute it. They did not transform it or add to it in any way.

2   All of Defendants' affirmative defenses are legally defective; that is why there are no adequate

3   factual allegations to support them. *See, e.g., Velez v. Bank of America*, No. 5:13-cv-02834,

4   2014 WL 1422972, *2-3 (N.D. Cal. April 11, 2014) (Grewal, J.) (where amendment failed to

5   cure the flaws in the original pleading, denial of leave to amend was warranted).

6          Defendants have already been given leave to amend to attempt to address these problems.

7   Common sense indicates that the "failure to correct the deficiencies" in a pleading "reasonably

8   suggests" the inability to do so, and therefore "[l]eave to amend" should be "denied." *Jamison v.*

9   *Capello*, No. 1:10-cv-01633, 2013 WL 618203, *5 (E.D. Cal. Nov. 25, 2013).

10         In addition, Oracle would be prejudiced by giving Defendants' further leave to amend

11  their affirmative defenses. "The purpose of a Rule 12(f) motion is to avoid spending time and

12  money litigating spurious issues." *Bottoni*, 2011 WL 3678878, at *1. "[T]o permit legally

13  unsustainable affirmative defenses to survive" requires the plaintiff "to conduct expensive and

14  potentially unnecessary and irrelevant discovery." *Barnes*, 718 F. Supp. 2d at 1173. This *is* a

15  "showing of prejudice" to Oracle. *Id.*; *see also Bottoni*, 2011 WL 36788678, at *2 ("the

16  obligation to conduct expensive and potentially unnecessary and irrelevant discovery is a

17  prejudice," warranting the grant of a motion to strike). The only way to cure this prejudice, after

18  Defendants have already been given leave to amend and failed to cure the deficiencies in their

19  affirmative defenses, is to deny further leave to amend these meritless defenses.

20  **III.   CONCLUSION**

21

22         The Court should strike Defendants' affirmative defenses without leave to amend.

    DATED: June 6, 2014

23                                              Bingham McCutchen LLP

24

25                                              By:_____/S/ Geoffrey M. Howard_____
                                                      Geoffrey M. Howard
26                                                    Attorneys for Plaintiffs
                                                      Oracle America, Inc. and
27                                                    Oracle International Corporation

28

ORACLE'S NOTICE AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES