Redacted Version of Document Sought to be Sealed

BINGHAM MCCUTCHEN LLP
Geoffrey M. Howard (SBN 157468)
geoff.howard@bingham.com
Thomas S. Hixson (SBN 193033)
thomas.hixson@bingham.com
Kyle Zipes (SBN 251814)
kyle.zipes@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

ORACLE CORPORATION
Dorian Daley (SBN 129049)
dorian.daley@oracle.com
Deborah K. Miller (SBN 95527)
deborah.miller@oracle.com
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114

LATHAM & WATKINS LLP
Daniel M. Wall (SBN 102580)
dan.wall@lw.com
Christopher B. Campbell (SBN 254776)
christopher.campbell@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095

ORACLE CORPORATION
Jeffrey S. Ross (SBN 138172)
jeff.ross@oracle.com
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273

Attorneys for Plaintiffs
Oracle America, Inc., and Oracle
International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>TERIX COMPUTER COMPANY, INC., a California corporation; MAINTECH INCORPORATED, a Delaware corporation; VOLT DELTA RESOURCES, LLC, a Nevada limited liability company; SEVANNA FINANCIAL, INC., a Nevada corporation; WEST COAST COMPUTER EXCHANGE, INC., a Nevada corporation; and DOES 1–50,<br><br>Defendants. | No. 5:13-cv-03385 PSG<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT;**<br>**(2) FRAUD;**<br>**(3) VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT;**<br>**(4) VIOLATIONS OF THE LANHAM ACT;**<br>**(5) BREACH OF CONTRACT;**<br>**(6) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; AND**<br>**(7) UNFAIR COMPETITION** |

1         Plaintiffs Oracle America, Inc. ("Oracle America"), and Oracle International

2 Corporation ("OIC") (together, "Oracle" or "Plaintiffs") for their Second Amended Complaint

3 against Defendants TERiX Computer Company, Inc. ("Terix"), Maintech, Incorporated

4 ("Maintech"), Volt Delta Resources, LLC ("Volt Delta"), Sevanna Financial, Inc. ("Sevanna"),

5 and West Coast Computer Exchange, Inc. ("WEX") (together, "Defendants") allege as follows

6 based on their personal knowledge as for themselves, and on information and belief as to the acts

7 of others:

8 **I.       INTRODUCTION**

9         1.       Terix and Maintech have engaged in a deliberate scheme to

10 misappropriate and distribute copyrighted, proprietary Oracle software[1] code.  They have

11 employed front companies (defendants Sevanna and WEX) and made up fake people – based on

12 the names of ███████████ – to contract with Oracle using fictitious email addresses, all so

13 they can illegally download Oracle's software and use it to steal Oracle's customers.  Through

14 false representations to their customers who are also current or former Oracle customers, Terix

15 and Maintech have taken or facilitated the taking of large quantities of software patches, updates

16 and bug fixes for Oracle's proprietary Solaris operating system, and other technical support files

17 used on Oracle's Sun-branded computers (collectively, "Solaris Updates").  Terix and Maintech

18 falsely have told unwitting end users that they are authorized to access and distribute Solaris

19 Updates to the end users and/or that the end users are entitled to perpetual support on the Solaris

20 operating system, including to receive Solaris Updates, based on their original purchase of the

21 hardware on which the operating system was installed.  To the contrary, Oracle, and Sun before

22 it, have long required customers to purchase an annual support agreement from them to receive

23 that support.

24         2.       Terix, with Maintech's knowledge, has also misrepresented itself to

25 unwitting third parties as an Oracle partner authorized to provide support on the Solaris operating

26 ───────────────────

27 [1] As used throughout this Complaint, the term "software" includes, without limitation, the Solaris
operating system, Solaris Updates, Oracle System Firmware, and firmware updates.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   system. Terix says this status allows it to provide Solaris Updates. In truth, Terix is not (and has

2   never been) an Oracle partner and has no such authorization. Even if it were an Oracle partner,

3   that status alone would not provide such authorization. After Terix and Maintech contract with

4   customers based on these false representations, they, either directly or through the customers or

5   others, then unlawfully acquire and use Solaris Updates for the customers' desupported Oracle

6   hardware. Oracle brings this lawsuit to stop this illegal activity.

7          3.      Defendants know their conduct is unlawful and have fraudulently

8   concealed it. Terix's CEO and COO, who co-own Terix, also own Sevanna, and Terix also owns

9   WEX. Terix uses its effective control over Sevanna and WEX to create access credentials to

10  Oracle's support website under the fictitious names of non-existent people. Sevanna and WEX

11  then traffic these credentials to Terix so Terix can access Oracle's support site (without

12  disclosing its true identity) to download Solaris Updates and firmware updates without

13  authorization and provide them to Terix's customers. Terix even uses the trafficked Sevanna

14  access credential to create an entire, generic library of stolen Oracle firmware updates, which

15  Terix distributes to its customers in competition with Oracle. In addition, Terix created a d/b/a

16  named "Summit Technologies." Using the "Summit Technologies" name, which it created for

17  this sole purpose, Terix acquired Oracle access credentials under the fabricated name of a non-

18  existent person. Terix uses those fraudulently obtained credentials to access Oracle's support

19  site (again without disclosing its true identity), to download Solaris Updates and firmware

20  updates without authorization, and to provide those copyrighted materials to Terix's customers.

21  By using front companies and fake contact people at those companies, Terix tried to escape

22  detection and ensure that "Terix" did not download software from Oracle, or enter into contracts

23  with Oracle, under its own name.

24         4.      Maintech likewise acquired access credentials to Oracle's support website

25  through password trafficking by its co-Defendant Volt Delta. Maintech used Volt Delta's

26  credential to download Solaris Updates and firmware updates without authorization and then to

27  distribute those materials to its customers, and Maintech also trafficked in those access

28  credentials to its own customers.

5.     Terix and Maintech have engaged in this misconduct together, individually, and with other unauthorized support providers.  For purposes of pleading, Oracle often refers to both Terix and Maintech throughout this Complaint, as both Defendants have committed the wrongdoing in question.  These allegations include situations where Terix and Maintech each committed the acts independently of each other, and when they acted together, and when either or both acted together with another unauthorized support provider.

6.     Oracle is the world's leading supplier of enterprise hardware and software systems, and related technical support and consulting services for those systems.  Customers who own Oracle hardware have the option to purchase an annual contract for technical support services to be performed by Oracle for those hardware systems.  As part of those support services, Oracle makes available to customers Solaris Updates for the proprietary firmware and operating system software that ships with and runs the hardware systems.

7.     In most instances, Oracle delivers its technical support services for this software and firmware over the internet.  Customers that purchase a technical support agreement from Oracle – either directly from Oracle or through a reseller authorized by Oracle to sell Oracle support renewal contracts – receive a "Customer Support Identification" number ("CSI number") linked to the products covered by the support contract.  The CSI number allows customers to create login credentials to access Oracle's secure support website.  Using those credentials, the licensed customer on active support may download Solaris Updates and firmware updates for the hardware systems that are covered by the support agreement.  The customer may not share or use its access credentials for the benefit of others or for the benefit of unsupported Oracle hardware – only customers who pay for and maintain a technical support agreement with Oracle for the hardware at issue may download Oracle's proprietary Solaris Updates and firmware updates, and only for their own internal business use on specified computers.

8.     Terix and Maintech purport to offer support services related to Oracle's Sun-branded hardware systems.  Each company sometimes contracts directly with customers to provide this support, and at other times contracts indirectly as a subcontractor to another entity, such as its co-Defendant and other partners and resellers.  While a customer may engage a third

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   party – instead of Oracle – to provide support services on Oracle hardware, neither the third

2   party nor the customer can access or use Oracle's support website to support that hardware.  In

3   particular, neither the third party nor the customer may use official, Oracle-authored Solaris

4   Updates and firmware updates to support the Oracle software running the hardware because

5   those Solaris Updates and firmware updates are Oracle's copyrighted and/or proprietary

6   intellectual property.  Terix and Maintech, as third party support providers not authorized or

7   licensed by Oracle, have no rights to use Oracle's proprietary software as part of their support

8   service offerings.

9           9.     Terix and Maintech ignored these fundamental rules and restrictions as

10   part of their scheme to sell their own support services for Oracle hardware to customers that

11   needed access to Oracle's proprietary updates and updates.   Neither Terix nor Maintech nor the

12   customers that contracted with them directly or indirectly had any right to access, download,

13   copy or distribute Solaris Updates or firmware updates from Oracle for these illicit purposes.

14   Oracle is nevertheless informed and believes that Terix and Maintech falsely told their customers

15   that (i) Terix and Maintech could lawfully provide that access and support (including in the case

16   of Terix a false statement that it was an Oracle partner and authorized to provide this support)

17   and/or (ii) customers were entitled to obtain Solaris Updates and firmware updates even without

18   an active support contract with Oracle by virtue of their licenses to use the Solaris operating

19   system in conjunction with their purchase of Oracle hardware.  To provide their services, Terix

20   and Maintech either obtained access credentials to Oracle's secure support website under false

21   pretenses or directed others with access credentials to download Oracle's intellectual property

22   unlawfully.  With respect to dozens of customers known to Oracle, Terix and/or Maintech also

23   copied and distributed Oracle's copyrighted software, without authorization, as part of the

24   services they provided to their customers.  Based on Terix and Maintech's consistent

25   misrepresentations to their customers about the customers' entitlements to receive Solaris

26   Updates and firmware updates for desupported servers and/or these Defendants' ability to

27   provide operating system support for Solaris, Oracle is informed and believes that Terix and

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Maintech have copied and distributed Oracle's copyrighted software, without authorization, as part of their illegal support services for other customers as well.

10.   Defendants do not have permission from Oracle to distribute copies of Oracle's copyrighted software to anyone, nor to induce others, including their customers, to copy and distribute Oracle's copyrighted software. Defendants' activities infringe Oracle's intellectual property rights, violate the laws governing website and computer access, breach certain agreements with Oracle, including the Oracle website Terms of Use, violate the Lanham Act, interfere with Oracle's prospective economic relations, and are fraudulent. Oracle brings this lawsuit to stop Defendants' wrongful conduct.

## II.   THE PARTIES

11.   Plaintiff Oracle America is a Delaware corporation duly authorized to do business in the State of California, with its principal place of business in Redwood City, California. Oracle develops and licenses certain intellectual property, including copyrighted software programs, and provides related support and consulting services to its licensed customers. Sun Microsystems, Inc. ("Sun")[2] changed its name to Oracle America, into which Oracle USA, Inc. was then merged. Plaintiff Oracle America continues to hold all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9 and 10 and the rights to bring claims for infringement of those copyrights.

12.   Plaintiff OIC is a California corporation with its only place of business in Redwood City, California. OIC owns and licenses certain intellectual property, including copyrighted software programs. OIC and Oracle America together hold all interest, right and title to the copyright for Solaris 11 and the right to bring claims for infringement of that copyright. OIC, either on its own or together with Oracle America (depending on the

---

[2] Sun developed and sold computer hardware and the Solaris operating system which runs that hardware. Sun computers, which Oracle continues to sell under the Sun brand name, may be referred to as Oracle or Sun computer hardware interchangeably throughout this Complaint.

registration), holds all interest, right and title to the copyrights for Oracle System Firmware and the right to bring claims for infringement of those copyrights.

13. Terix is a California corporation with its principal place of business in Sunnyvale, California.  Terix holds itself out as a third party maintenance provider that provides support for, among other things, Oracle hardware and Oracle's proprietary Solaris operating system.

14. Sevanna is a Nevada corporation with its principal place of business in Sunnyvale, California, in the same building as Terix.  Sevanna has two shareholders, Bernd Appleby and James Olding, who are the President/CEO and COO respectively of Terix.  Appleby holds all of Sevanna's corporate officer positions – President, Secretary, Treasurer and Director.  Although the two companies are technically separate legal entities, Terix effectively controls Sevanna.

15. WEX is a Nevada corporation with its headquarters and principal place of business in Rancho Cordova, California.  WEX was acquired by Terix in 2007.  As with Sevanna, although WEX and Terix are technically separate legal entities, Terix effectively controls WEX.

16. Maintech is a Delaware corporation with its headquarters in Cranford, New Jersey and a network operations center in Orange, California.  Maintech holds itself out as a third party maintenance provider that provides support for Oracle hardware and the Solaris operating system.

17. Volt Delta is a Nevada limited liability company with its headquarters in Cranford, New Jersey.  Volt Delta holds itself out as a cloud-based contact center for enterprises to manage customer relationships.  Volt Delta is a corporate affiliate of Maintech's and has effective control over it.  On information and belief, Maintech is a different legal entity from Volt Delta, and Maintech bears direct liability for all conduct alleged against it in this Complaint.  To the extent Maintech is, or at any relevant time was, a division of Volt Delta, and Volt Delta bears some or all of the direct liability for Maintech's alleged acts, then pursuant to Federal Rule of Civil Procedure 8(d), Oracle alternatively alleges these acts were committed by Volt Delta.

1    To the extent Maintech is today a different legal entity from Volt Delta but was previously a

2    division of Volt Delta, and Maintech bears some or all of the direct liability for Volt Delta's acts,

3    the pursuant to Federal Rule of Civil Procedure 8(d), Oracle alternatively alleges that these acts

4    of Volt Delta were committed by Maintech.

5                18.    Oracle is currently unaware of the true names and capacities of Does 1

6    through 50, inclusive, whether individual, partnership, corporation, unincorporated association,

7    or otherwise.  Due to the surreptitious nature of Defendants' actions, and the complicated nature

8    of their scheme, the identities of Does 1 through 50 have been concealed from Oracle, preventing

9    Oracle from identifying them by name.  After discovery, which is necessary to ascertain the true

10   names and capacities of Does 1 through 50, Oracle will amend its complaint to allege the

11   necessary identifying details.

12               19.    Defendants have agreed to personal jurisdiction and venue in this District

13   in contracts with Oracle, which by this action Oracle alleges Defendants breached.

14               20.    Defendants are also subject to personal jurisdiction in California because

15   they are subject to general jurisdiction in this forum.  Terix, Sevanna and WEX are

16   headquartered in Sunnyvale and Rancho Cordova, California, and their contacts with the state

17   are substantial, continuous and systematic.  Maintech has a network operations center in Orange,

18   California, where its employees perform real time monitoring of Maintech's customers' installed

19   product bases 24 hours a day and trouble shoot and address customer support requests – a

20   significant part of Maintech's business.  Accordingly, Maintech's contacts with the state are

21   substantial, continuous and systematic.  Volt Delta has a corporate campus and regional

22   headquarters in Orange, California, and a call center in Irvine, California, and through both

23   offices conducts a substantial amount of the company's overall business.  Volt Delta's contacts

24   with the state are substantial, continuous and systematic.  In addition, Defendants are subject to

25   specific jurisdiction here because they have committed wrongful intentional acts in this state,

26   expressly aimed at Oracle, which Defendants knew or should have known is also a resident of

27   California, and caused harm that they knew or should have known was likely to be suffered by

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Oracle in Redwood City, California.  For example, some of the customer servers for which

2    Defendants provide unlawful support are in California.

3          21.    At all material times, each of the Defendants, including Does 1 through

4    50, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent,

5    affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial

6    assistance to the alleged activities, and in so doing the things alleged, each was acting within the

7    scope of such agency, service, employment, partnership, joint venture, representation, affiliation,

8    or conspiracy, and each is legally responsible for the acts and omissions of the others.

9    **III.   JURISDICTION**

10          22.    Oracle's first claim for relief arises under the Federal Copyright Act,

11   17 U.S.C. §§ 101 *et seq*., its second claim for relief arises under the Computer Fraud and Abuse

12   Act, 18 U.S.C. §§ 1030 *et seq*., and its third claim for relief arises under the Lanham Act, 15

13   U.S.C. §§ 1051 *et seq*.  Accordingly, this Court has subject matter jurisdiction over this action

14   pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

15          23.    This Court has supplemental subject matter jurisdiction over the pendant

16   state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims

17   under federal law that they form part of the same case or controversy and derive from a common

18   nucleus of operative facts.

19   **IV.   VENUE**

20          24.    Venue in this District is appropriate because Defendants have consented to

21   venue in this District in at least one of the contracts on which Oracle sues in this case.

22          25.    Venue in this District is also appropriate because Terix and Sevanna are

23   based here and Defendants committed a substantial amount of the wrongful intentional acts here,

24   which they also expressly aimed at Oracle.  Defendants knew or should have known Oracle

25   resides in this District, and caused harm that they knew or should have known Oracle would

26   likely suffer in this District.  As a result, Defendants would be amenable to personal jurisdiction

27   if this District were a separate state, and therefore venue in this District is appropriate under 28

28   U.S.C. § 1400(a).

**V.    INTRADISTRICT ASSIGNMENT**

26.    Because this action alleges, among other things, claims for copyright infringement, it is an intellectual property action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c).

**VI.    FACTUAL ALLEGATIONS**

**A.    Oracle's Computer Systems and Support Materials**

27.    Oracle develops, manufactures, markets and distributes enterprise business hardware and software systems, and provides related technical support and consulting services. The hardware systems that Oracle develops and distributes involve several components, all of which Oracle supplies.  In a simplified view, the foundation of the system (or "stack" as it is sometimes called) is typically storage and servers, such as Oracle's Sun servers.  The server requires an operating system to run it, such as Oracle's Solaris operating system, which is an analog to Microsoft's Windows operating system for personal computers.  A typical configuration would also employ a database to manage business data, middleware to allow the database to interact with various applications that provide the business logic to be performed by the system, and the applications themselves, such as human resources software for payroll processing or financials software for financial reporting.

28.    Oracle's comprehensive line of Sun server systems provides world-class performance for businesses of all sizes, and includes some of the most reliable, scalable, and powerful systems in the industry.  Oracle also develops and licenses the Solaris operating system and related "firmware" to run its Sun servers.  Solaris is one of the most advanced operating systems available for enterprise use.  It provides innovative, built-in features that allow for high availability, advanced security, efficiency, and industry-leading scalability/performance, and are targeted at business and public sector customers.

29.    As is typical in the computer industry, Oracle offers technical support services for its hardware systems, including the Solaris operating system.  For example, customers who own Oracle/Sun hardware may also purchase technical support services from Oracle which entitle those customers to Solaris Updates for their Oracle/Sun hardware, operating

No. 5:13-cv-03385 PSG

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   systems and firmware that run on that hardware.  Solaris Updates and firmware updates are

2   available to customers with active support contracts with Oracle to download from Oracle's

3   password-protected, secure customer support website.  Customers choose the Solaris Update or

4   firmware updates to apply based on the issues that they seek to address and the status of their

5   particular system at the time the issue arises.

6          30.    Typically, Oracle's technical support service agreements are for annual

7   periods of twelve months.  The customer may renew the agreement for additional twelve-month

8   terms subject to Oracle's then current pricing and support policies.

9          **B.    Oracle's Support Websites and Terms Of Use**

10         31.    After the Oracle/Sun combination, Oracle placed the support resources for

11  Sun's computer hardware products on the My Oracle Support ("MOS") website, a password-

12  protected, web-based support portal.  MOS provides a single, integrated support platform for

13  most Oracle products.  After approximately December 12, 2010, Oracle customers could access

14  Solaris Updates and firmware updates through MOS.  Before that, Oracle or Sun customers

15  could access Solaris Updates and firmware updates through Sun Solve, which was also a

16  password-protected web-based support portal.  Regardless of the system used to acquire support

17  services on the Solaris operating system, both Sun and Oracle at all times charged customers a

18  fee to have full access to Solaris Updates, typically through the customers' purchase of an annual

19  support contract as noted above.  At no time since Solaris has been licensed for use by customers

20  has either Sun or Oracle provided customers with the right to access and/or use, by license or

21  otherwise, all Solaris Updates developed by Sun or Oracle for free.

22         32.    In order to obtain a MOS login credential, a customer must create an

23  Oracle.com account.  To do this, a customer must submit certain information, and to agree to

24  certain terms and conditions, including the Oracle.com and MOS Terms of Use.  The Oracle.com

25  Terms of Use apply to all users of Oracle's websites, and state:

26         *By accessing or using the Site or the Content provided on or*
           *through the Site, you agree to follow and be bound by the*
27         *following terms and conditions concerning your access to and use*
           *of the Site and the Content provided on or through the Site*
28         *("Terms of Use") and our Privacy Policy.*

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

33.     The Oracle.com Terms of Use state that only authorized users may access secure areas of Oracle's website.  They further state that registered users may not allow others to use their passwords or account information to access Oracle's websites:

> *You agree not to attempt to gain unauthorized access to any parts of the Site or any Oracle accounts, computer systems or networks.*
>
> *[…]*
>
> *Access to and use of password protected or secure areas of the Site is restricted to authorized users only. You agree not to share your password(s), account information, or access to the Site. You are responsible for maintaining the confidentiality of password(s) and account information, and you are responsible for all activities that occur under your password(s) or account(s) or as a result of your access to the Site. You agree to notify Oracle immediately of any unauthorized use of your password(s) or account(s).*

34.     The Oracle.com Terms of Use also state that users may not use automated means to access Oracle's website or any Oracle systems:

> *You agree not to use any robot, spider, scraper or other automated means to access the Site or any Oracle accounts, computer systems or networks without Oracle's express written permission.*

35.     Through the Oracle.com Terms of Use, users of Oracle's websites also agree to submit to California law and the jurisdiction of California courts for legal actions relating to the access to, or use of, Oracle's websites and/or the content they contain, and agree that venue for any such actions in proper in this District:

> *All matters relating to your access to, and use of, the Site and Content provided on or through or uploaded to the Site shall be governed by U.S. federal law or the laws of the State of California. Any legal action or proceeding relating to your access to, or use of, the Site or Content shall be instituted in a state or federal court in San Francisco, San Mateo or Santa Clara County, California. You and Oracle agree to submit to the jurisdiction of, and agree that venue is proper in, these courts in any such legal action or proceeding.*

36.     To the extent more than one version of the Oracle.com Terms of Use was in effect during the time period relevant to the allegations in this Complaint, each version contained provisions identical or substantially similar to those cited above.

37.     Once a customer has established an account with Oracle.com, that customer may also, if authorized to do so, sign up for MOS access, which has additional Terms of Use.

38.     When a customer signs up for MOS access, that customer must accept and agree to abide by the My Oracle Support Terms of Use ("MOS Terms of Use").  The MOS Terms of Use apply to all users of MOS.  They specify, among other things, that only authorized users may access MOS, and only for authorized purposes, that those authorized users may not use the material available through MOS other than for "internal business operations," and that users may not use automated means to download:

> *By using the My Oracle Support web-based technical support service ("My Oracle Support"), Customer (hereinafter "you") agree to the following terms and conditions...*
>
> *You agree that access to My Oracle Support, including access to the service request function, will be granted only to your designated Oracle technical support contacts and that the Materials may be used only in support of your authorized use of the Oracle programs and/or hardware for which you hold a current support contract from Oracle. Unless specifically provided in your agreement with Oracle, the Materials may not be used to provide services for or to third parties and may not be shared with or accessed by third parties. However, the Materials may be shared with or accessed by third parties who are your agents or contractors acting on your behalf solely for your internal business operations and you are responsible for their Compliance with these My Oracle Support Terms of Use. You agree that you will not access or use My Oracle Support in any manner that could damage, disable, overburden, impair, or otherwise result in unauthorized access to or interference with, the proper functioning of any Oracle accounts, systems, or networks.  For example, you may not use any software routines commonly known as robots, spiders, scrapers, or any other automated means, to access My Oracle Support or any other Oracle accounts, systems, or networks.*

39.     The MOS Terms of Use further prohibit a user from using, disclosing, transmitting, or copying any of the materials contained on the website other than to support an authorized customer's own use of those materials for which that customer holds a current support contract from Oracle:

> *[T]he information contained in the [My Oracle Support] Materials is the confidential proprietary information of Oracle. You may not*

*use, disclose, reproduce, transmit, or otherwise copy in any form
or by any means the information contained in the Materials for any
purpose, other than to support your authorized use of the Oracle
programs and/or hardware for which you hold a current support
contract from Oracle, without the prior written permission of
Oracle.*

40.    To the extent there was more than one version of the MOS Terms of Use
in effect during the time period relevant to the allegations in this Complaint, each version
contained provisions identical or substantially similar to those cited above.

41.    Furthermore, at all relevant times, the main MOS web page – which all
users must visit to access MOS – stated that "Use of this site is subject to the Legal Notices and
Terms for Use and Privacy Statement located on this site," which include the MOS Terms of
Use.  Therefore, any use of MOS is governed by the MOS Terms of Use.

42.    The Oracle.com Terms of Use and the MOS Terms of Use are valid,
enforceable contracts between Oracle and all customers or other users who register for, or access
MOS.

43.    In the course of providing support to many of their customers, Terix and
Maintech accessed MOS and agreed to the MOS and Oracle.com Terms of Use.  Terix and
Maintech have accessed MOS without Oracle's permission and agreed to the MOS and
Oracle.com Terms of Use on numerous occasions and in support of many unauthorized
customers.

44.    Sevanna is an Oracle customer with an active support contract for a single
Sun SPARC Enterprise M3000 server that runs the Solaris operating system.  Sevanna has
accessed MOS and agreed to the MOS and Oracle.com Terms of Use.

45.    WEX is an Oracle customer with an active support contract for a Sun
X4200 server and a Sun NT5220 server that run the Solaris operating system.  WEX has
accessed MOS and agreed to the MOS and Oracle.com Terms of Use.

46.    Volt Delta purchased a multi-year Solaris support contract with Sun in
2009 through a former Sun Value Added Distributor ("VAD"), Serverware.  Volt Delta used that
support contract to set up an account on the Sun Solve support website, and in so doing, agreed

to the Sun.com Terms of Use.  The then-applicable Sun.com Terms of Use contained provisions that were similar to the MOS and Oracle.com Terms of Use quoted above.  For instance, paragraph 14.3 of the Sun.com Terms of Use provided that "California law and controlling U.S. federal law govern any action related to the Terms and/or Your use of the Website," and that "You and Sun agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California, U.S.A."

**C.      Defendants Accessed Oracle's Software And Support Websites Without Authorization And Provided Oracle Software To Others Who Were Not Entitled To It**

**1.      Defendants' Unlawful Business Models**

47.      Terix advertises itself as "the leading independent provider of flexible and innovative hardware and software maintenance service offerings."  Terix claims that it is "an industry leader for hardware and OS [operating system] maintenance services in the global datacenter market place."  Terix states it can save customers "an average of 20% off the maintenance fees charged by OEMs [original equipment manufacturers] for equivalent" service levels.

48.      Terix boasts that the service it provides goes "far beyond the bare metal break-fix of other third party maintainers."  Instead, Terix states that it also provides "Operating System Support" on Oracle's Solaris.  Differentiating itself from these other third party maintainers, Terix contends that "[y]our maintenance solution can only be complete with a firm understanding of the OS and IOS operating systems running on your hardware, and at TERiX, our support includes both hardware and UNIX operating system support" and specifically on "Solaris."  Terix asserts that it "offers operating system support on Solaris 10 and prior versions. TERiX provides swift recommendations and action plans acting as an agent of end-user rights and license."

49.      Maintech advertises itself as an "Independent Service organization (ISO) serving the global corporate IT enterprise marketplace."  Maintech claims that it provides "data center services" for "server farm[s]" and "storage architecture" for "Sun/Oracle" products, and that it supports "UNIX based platforms," which for Oracle products is a reference to Solaris.

14

1    Maintech states that its "remote managed services" include providing "Patch Management and

2    Software Distribution."

3        50.    The Solaris operating system is copyrighted, and Solaris Updates include

4    protectable expression contained in the registered works.  In addition, Oracle's firmware updates

5    are proprietary software.  Further, Oracle's System Firmware is copyrighted.  Defendants have

6    copied protectable expression contained in the registered works.  Customers may have access to

7    Solaris Updates and firmware updates only if they have a valid support agreement with Oracle

8    for the servers at issue.  Terix and Maintech nevertheless falsely tell Oracle hardware customers

9    that they do not need to purchase an annual support agreement with Oracle to obtain Solaris

10   Updates or firmware updates.  Oracle is informed and believes that Terix and Maintech tell their

11   customers that they can provide Solaris and firmware support based on the following false

12   assertions:  (i) that customers' original purchase of the Oracle hardware, which included a

13   license to use the installed version of Solaris on that hardware, also provides a perpetual

14   entitlement to access and use Solaris Updates and firmware updates, (ii) that Terix and Maintech

15   can provide Solaris support including Solaris Updates, as well as firmware updates, and (iii) in

16   the case of Terix, that Terix can provide Solaris support and firmware updates because Terix is a

17   member of Oracle's "partner" program (which it is not) and that this authorizes Terix to provide

18   Solaris support and firmware updates (which it does not, even to legitimate Oracle partners).  In

19   reality, customers that have canceled support for Oracle on hardware and contracted with Terix

20   and Maintech for support on that hardware do not have entitlement to obtain Solaris Updates or

21   firmware updates for that hardware.  Oracle's technical support policies provide, and provided at

22   all relevant times, that "Customers with unsupported hardware systems are not entitled to

23   download or receive updates, maintenance releases, updates, telephone assistance, or any other

24   technical support services for unsupported hardware systems."  Moreover, prior to Oracle's

25   acquisition of Sun, Sun at all times had restricted Solaris patches that customers could access

26   only if they had an active support contract.

27       51.    Terix's false representations to customers are documented in, among other

28   places, onboarding documents that Terix refers to as "Clearvision."  In general, when Terix,

---

15                           <span>No. 5:13-cv-03385 PSG</span>

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

either on its own or in conjunction with Maintech or others, induces a customer to end its support contract with Oracle and instead contract for support with Terix and/or one of its partners or resellers, such as Maintech, Terix employees have an onboarding phone call with the customer, the content of which largely follows, and is documented in, the Clearvision script.  Maintech provides equivalent information to customers through its onboarding process.  Terix and Maintech falsely represent to customers that their initial purchase of Oracle hardware and the license to use the version of Solaris that was installed on the hardware gives the customer the right to receive Solaris Updates and firmware updates in perpetuity for free.  Terix and Maintech specifically tell customers to disregard Oracle's written policies, to which the customers have previously agreed, that a customer may obtain Solaris Updates and firmware updates only for servers that are under a support contract with Oracle.  For litigation purposes, Terix and Maintech take the position that it is the customer's responsibility to have the appropriate licenses in place and that Terix and Maintech act solely as the customer's agent, but that position is a sham and knowingly false.  In reality, Terix and Maintech falsely tell the customers that they do not need to have their servers on support contracts with Oracle in order to obtain Solaris Updates and firmware updates for those servers, and relying on this and other misrepresentations, customers contract with Terix and Maintech and renew their support contracts with them instead of renewing support with Oracle.  At no point in the onboarding process or subsequently does Terix or Maintech advise the duped customer to request from Oracle ongoing access to MOS based on the alleged license that the customer supposedly possesses.  Instead, Terix and Maintech, and the customer at their behest, conceal this entire process from Oracle such that Oracle is unable to alert the customer to Terix and/or Maintech's misrepresentations and confirm that the customer's license to Solaris does not include a license to use Solaris Updates or firmware updates without an Oracle support contract on the relevant servers.

52.     Terix and Maintech falsely have represented to customers with some servers on Oracle support and others that have been removed from Oracle support (because the customer has contracted with Terix and/or Maintech instead) that they may use MOS access credentials that they possess either for other, supported servers or other Oracle products entirely,

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   to obtain Solaris Updates and firmware updates for the desupported hardware, contrary to

2   Oracle's technical support policies.  Terix and Maintech regularly instruct customers that need

3   Solaris Updates or firmware updates to put a single server on Oracle support so that the customer

4   can obtain MOS access credentials, which Terix and Maintech then use to obtain Solaris Updates

5   and firmware updates for other, unsupported servers.  On dozens of occasions, Terix and

6   Maintech persuaded customers to provide them or create for them the customers' MOS access

7   credentials so that Terix and Maintech could access MOS and obtain the Solaris Updates and

8   firmware updates for the desupported hardware, which they did.  Terix and Maintech had no

9   authorization to log in to MOS at all.

10          53.     In litigation, Maintech has asserted that it does not provide Solaris

11  Updates and firmware updates to its customers, or even provide software support at all on

12  Solaris, but this is untrue.  Its contracts with customers routinely state that Maintech provides

13  "███████████████████████████████████████████████████████████████████"

14  and that "███████████████████████████████████████████████████

15  ███████████████████████████████████████████"

16          54.     In situations where Maintech subcontracts software support to Terix,

17  Maintech still remains actively involved in ████████████████████████████████

18  ██████████████████ to Terix's doing so.  This is evidenced in, among other places,

19  Maintech's ████████████████████████ many instances in which customers

20  ████████████████████████████████████████████, and

21  then Maintech either ████████████████████████ doing so.  For example, on May

22  17, 2012, ████████████████ stating that it "█████████████████" Maintech's

23  records state that "██████████████████████████████████

24  ████████████████████████████████████████" As another example, on

25  April 20, 2010, ████████████████████████████████

26  ████████████" Maintech's records state that the outcome of this request was "█████

27  ██████" and there is no indication that Terix was involved.  Indeed, in its discovery responses

28  Terix does not identify ████████ as even being one of its customers.

1

**2.    Defendants' Efforts to Conceal Their Business Models**

2      55.    Terix and Maintech went to elaborate lengths to conceal their wrongful

3    conduct from Oracle, an effort that ultimately failed.  When MOS users register an access

4    credential, they create a user ID (in the form of an email address) linked to one or more Oracle

5    CSI numbers.  Users commonly choose email addresses that contain or reflect the name of their

6    company.  Terix, however, carefully never employs a user ID that has the word "Terix" in it.

7    Instead, Terix often obtains Solaris Updates and firmware updates with user IDs that reflect the

8    name of Terix's customer but not Terix itself (e.g., ██████████████████████████████████

9    ██████████████████████).

10      56.    Terix's and Maintech's use of deception to avoid detection is illustrated in

11    many documents and in witness testimony, including for example Terix's June 2013 "Terix

12    Software Support" manual ("the Manual"), ████████████ Terix employee ██████████ at the

13    ████████████████████████████████████████.  The Manual outlines the standard

14    process Terix follows "████████████████████████████████████" i.e., who need

15    software updates and not just break fix support.  The Manual states that once this process is

16    completed, Terix will "████████████████████████████████████████████

17    ████████" that is, patches that can only be accessed by customers that have a support agreement

18    with Oracle.  At its root, the process is for the customer, at Terix's instruction, to put one server

19    on support with Oracle and then obtain access credentials that Terix then uses to download

20    Solaris Updates and firmware updates from MOS for all of the customer's servers on support

21    with Terix.  This clearly and knowingly (hence the subterfuge) violates Oracle's technical

22    support policies.  The Manual contains ████████████████ that Terix employees are ████████

23    ████████████████████████████████████████████████████████████████████

24    ████████.  The Manual instructs Terix employees to tell the customer "██████████████████

25    ████████████" so that Oracle will not be aware that Terix is inducing the customer to commit this

26    misconduct.  The Manual instructs Terix employees to "████████████" sections of the form

27    customer email "████████████████████████████████" Joyce ██████████████████

28    ████████████████████████████████████████████████████.  Pursuant to the

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



1    Manual, Terix obtains a ████████████████████████ – not Terix's – that is

2    provided to the customer to ███ the support contract with Oracle, again to prevent Oracle

3    from knowing of Terix's involvement.  Because the ██████████ Terix procures are all ████████

4    ████████, the support contracts with Oracle need to have a U.S. address.  The Manual

5    instructs that ████████████████████████, Terix employees should ████████

6    █████████████████████ address – one that is either completely "██████" or

7    that belongs to a "████████████"

8            57.    The Manual also instructed Terix employees to ████████████████████

9    █████████████████, which the co-author of the manual admitted ████████

10   ███████████████████.

11           58.    The Manual also has talking points for Terix employees to use when

12   customers "████████████████████████████████████

13   ████████████████████"  The Manual acknowledges that Terix's "████████

14   ████" approach can "████████████████" who might "████████████████

15   ████"  Terix has admitted that these ████████████ efforts were implemented ████

16   ████████████████.

17           59.    One example of Terix's fraud on Oracle pursuant to the process described

18   in the Manual concerns Terix's 2013 acquisition of ██████████ as a customer.  In an email

19   sent by Terix's ██████████ at 8:14 am on March 27, 2013 to ██████████ at ██████████,

20   ████ explained Terix's onboarding process and attached a form email for ██████████ to send

21   to Oracle to order support for one server.  The form email ████ sent had the customer stating

22   "████████████████████████████████████████████" and

23   listed a single Sun V240 server with the serial number ██████████.  In fact, that representation

24   to Oracle was false, as Terix intended to use the ██████████ on support contract to obtain Solaris

25   Updates and firmware updates on all ██████████ servers under support with Terix, not just the

26   one listed.  ██████████ pointed out this discrepancy in a responding email at 10:16 am on

27   April 15, 2013, in which ██████ stated to ████ "████████████████████████

28   ████████████████████████████████████████

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   ████████████ responded in a 10:45 am email to █████ that "███████████████" In fact,

2   telling Oracle that ████████████ wanted to enter into a support contract for one server –

3   identified by serial number no less – was simply fraudulent, since from the beginning Terix fully

4   intended to use the ████████████ access credentials to provide Solaris Updates and firmware

5   updates on all █ servers. Joyce testified that ████████████████████████████████████████

6   ████████████ .

7           60.   Consistent with the Manual, █████ emails were fraudulent in other ways

8   as well. For example, when ████████████ initially requested Solaris patches, it lodged the

9   request with ████ , with which Terix was acting as a partner to support █████████ . Terix

10  refused to involve ████ in providing the patches, insisting the request must come to Oracle from

11  the customer. In a March 27, 2013 email at 7:43 am, █████ stated to █████ that the requirement

12  that the support request from the customer directly "████████████████████████████ ,"

13  Oracle. That email was then forwarded to ████████████ employees. Subsequently, in his

14  March 27, 2013 8:14 am to █████████ , █████ stated "████████████████████████" to Oracle

15  ordering the support contract. Joyce admitted ████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████

17  ████████████████████████ in having the customer obtain a support contract with Oracle for

18  one server when from the beginning Terix intended to use the access credentials for that server to

19  obtain software updates for all servers ████████████ had under support with Terix. Joyce also

20  admitted that this was a "████████████████████" that was used with "e████████████████████

21  ████████████ ."

22          61.   Terix's fraud succeeded. On April 21, 2013 ████████████ entered into

23  support contract number 5895689 with Oracle for Solaris Premier Support on one server. This

24  fraudulent contract injured Oracle. If Terix and ████████████ truthfully had disclosed that the

25  purpose of the support contract was to obtain Solaris Updates and firmware updates for ██

26  servers, rather than a single server, Oracle would not have entered into a support contract for

27  only one server. Instead, Oracle would have required that any support contract apply to all ██

28  ████████████ servers, at █ times the price that Terix and ████████████ actually paid for the

1    support contract.  In other words, this fraud deprived Oracle of 90% of revenue it would earn on

2    a legitimate and non-fraudulent support contract for ███████████.  Further, because this

3    support contract was procured by fraud, it is legally void and did not authorize any of Terix's

4    conduct.  The same is true for each of the Solaris Premier Support contracts Oracle entered into

5    with Terix's customers, as Terix used the same process for each customer.

6              **3.    Defendants' Fraudulent Efforts to Acquire Oracle
                       Software**

7    
8              62.    On other occasions, Defendants obtain and provide to their customers

9    Solaris Updates and firmware updates that Defendants or their affiliates obtained through fraud

10   on Oracle.  Maintech's affiliate and co-Defendant Volt Delta entered into a multi-year support

11   contract with Sun in 2009 through a former Sun Value Added Distributor ("VAD"), Serverware.

12   Volt Delta's ███████████ and ███████████ made the false statements at issue.  Volt Delta's

13   July 10, 2009 purchase order stated that the support was for "███████████████████████████

14   ███████████████████████████"  The purchase order listed the quantity of servers to be

15   supported as "1," identified the "final price" of ███████ as being the same as the "unit price,"

16   further indicating that Volt Delta was purchasing support for one server.  At the time of the July

17   10, 2009 order, Sun's support policies stated, in relevant part that "Sun's service offerings grant

18   only limited access to Software and Information.  Specifically, pursuant to a service offering,

19   Software and Information are provided by Sun only to you, only to the extent expressly required

20   by the corresponding service offering, and only for the systems and instances of software

21   identified in the service offering."

22             63.    Volt Delta's entering into this support agreement constituted a promise to

23   perform the contract according to its terms.  More specifically, in context, Volt Delta's act of

24   submitting a purchase order for Solaris support on one server, identified by serial number, and

25   paying the unit price for only one unit, was a representation that Volt Delta intended to comply

26   with the terms of the support contract by using that support only for the listed server.  Internal

27   Maintech documents reveal that this contract was a sham.  Volt Delta directed that "█████████

28   ███████████████████████████"  The purpose of the contract was "████████

1    █████████████████████████████████" not for Maintech's own use but to

2    "███████████████"

3          64.    However, contemporaneous documents show that Volt Delta never

4    intended to perform the support contract in compliance with its terms.  A July 10, 2009 internal

5    memo to file by Volt Delta's ████████ stated that "██████████████████████

6    ██████████████████████████████████████████████████

7    ██████████████████████████████████████" The

8    attached purchase order is the July 10, 2009 purchase order discussed above.  In other words,

9    from the very day that Volt Delta submitted this purchase order, it had no intent to perform the

10   contract in compliance with its terms but instead intended for Maintech to use the Solaris support

11   "████████████████████" Maintech did indeed use the support contract to

12   support its own customers.  It used the login credentials associated with that account to download

13   Solaris Updates and firmware updates to provide to customers, it trafficked in those access

14   credentials by giving them to Maintech's customers, and Maintech used those credentials in

15   other unauthorized ways as such, such as to access SunSolve and MOS to obtain copies of the

16   ███████████████ for the purpose of providing support to customers with servers not on Sun

17   or Oracle support.  Oracle did not discover this fraud, and had no way to discover it, until

18   Maintech produced documents revealing this fraud as part of this litigation in 2014.

19         65.    Volt Delta also obtained a support contract from Oracle by fraud in 2012,

20   in contract number 5552211 with the effective start date of July 2, 2012.  Volt Delta's false

21   statements in connection with this support contract were made by ████████████ and ███

22   ████.  At Volt Delta's request, on June 1, 2012 at 11:26 am, ████████████ at Volt Delta's

23   partner ████████ emailed ████████████ at █████, an Oracle partner, stating that "██████

24   ██████████████████████████" and then quoting an excerpt from an email

25   from Volta Delta stating "██████████████████████████████

26   ██████████████████" Volt Delta's excerpted email continued:  "██████████████

27   ██████████████" and "██████████████████████████

28   ██████" Volt Delta's email excerpt stated "██████████████████████" At the

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1 | time of this email, Oracle's technical support policies provided that customers with unsupported

2 | servers were not permitted to download Solaris Updates or firmware updates, or use any other

3 | technical support serviced from Oracle.

4 |     66.    Oracle initially was suspicious of the support request.  On June 6, 2012 at

5 | 11:24 am, ███████████████████████ stated, relaying Oracle's concerns, that ██████████

6 | ████████████████████████████████████████████████████████████████████████████

7 | ████████████████████████" She asked "████████████████████████████████████████

8 | ████████████████████████████████████" Volt Delta ████████████ of the server and

9 | emailed it to ██████████████████, who forwarded it to ██████ in a June 6, 2012 1:36 pm

10 | email.

11 |     67.    Oracle was unsatisfied with ████████.  In a June 26, 2012 email, ████████

12 | ████████████████████ emailed Volt Delta/Maintech's ████████████ and ████████

13 | ████████, stating "████████████████████████████████████████████████████

14 | ████████████████████████████" ████████████ then emailed ██████ on June 26,

15 | 2012 at 5:38 pm stating "████████████████" ██████ responded in a June 27, 2012 email at

16 | 10:00am, asking "██████████████████████████████████████" In a June 27,

17 | 2012 email at 10:01 am, ████████████ responded "████████████████████████████

18 | ████████████████████" In a 10:03 am email the same day ██████ suggested "██████

19 | ██████" and then listed the ████████████████████████████ as a Volt Delta

20 | address, which is the information Volt Delta provided to Oracle.

21 |     68.    When Volt Delta acquired this support contract with Oracle effective July

22 | 2, 2012, it was promising to perform the contract according to its terms, including that the

23 | contract would be for Volt Delta as the end user and for the server that Volt Delta and Maintech

24 | identified by serial number.  In reality, as Maintech's witnesses now have testified under oath,

25 | Volt Delta entered into that support contract ████████████████████████████████

26 | ██████████████████████████████████████████████████. In fact, the M5000

27 | server that ostensibly was the subject of the contract did not even have ████████████████

28 | ████████████████████. Volt Delta entered into the support contract with no intention of

No. 5:13-cv-03385 PSG

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    performing it according to its terms.  Instead, it induced Oracle to enter the contract solely so

2    Maintech could (a) download Solaris Updates and firmware updates to provide to customers; (b)

3    traffic in those access credentials by giving them to Maintech's customers; and (c) use those

4    credentials in other unauthorized ways, such as to access SunSolve and MOS to obtain copies of

5    the ███████████████ for the purpose of providing support to customers with servers not on

6    Sun or Oracle support.  Volt Delta's 2009 and 2012 support contracts were both void and did not

7    authorize anything because Volt Delta acquired them through fraud.

8                69.    Volt Delta's fraud in entering into the 2009 and 2012 support contracts

9    harmed Oracle.  The access credentials associated with these contracts were used without

10   authorization by Volt's affiliate Maintech to unlawfully acquire and provide to its customers

11   Solaris Update and firmware updates, and to provide other support without authorization.  This

12   unauthorized conduct facilitated Maintech's scheme to poach Oracle's customer base and

13   deprive Oracle of revenue it would otherwise have earned from those customers.

14               70.    Sevanna also entered into support contracts through fraud on Oracle.

15   Bernd Appleby and James Olding, or others acting under their direction, made the fraudulent

16   statements described here for Sevanna.  Sevanna entered into a support contract effective June 1,

17   2010, for a term of approximately one year, under the number SUN-US1085284, and then

18   effective May 14, 2011 entered into another support contract for a term of two years under the

19   same contract number.  For both the 2010 and 2011 contracts, Sevanna contracted under the

20   name of "Tony Martin," which is a completely made up name that is based on a ███████████

21   name, not anyone working for Sevanna.  In entering into the contracts, Sevanna stated in its

22   purchase orders that it submitted to Oracle shortly before the effective date of each contract that

23   it was ordering Oracle Premier Support for Systems for a quantity of 1 server, which Sevanna

24   specifically identified as a "SPARC Enterprise M3000 server" that was "[i]nstalled at:  Sevanna

25   Financial - 388 Oakmead PKWY Sunnyvale Santa Clara CA 94085."  For both contracts,

26   Sevanna tendered payment equal to the price of Oracle Premier Support for Systems for one such

27   server.  For both contracts, the purchase orders stated that "[t]echnical support is provided under

28   Oracle's technical support policies in effect at the time the services are provided."  At all

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    relevant times, including when Sevanna entered into the contracts, Oracle's technical support

2    policies stated that Oracle's technical support, including the provision of any software, could not

3    be used to support servers not under support with Oracle.

4          71.    Sevanna's entering into the contracts constituted a promise to perform

5    them, including the promise by Sevanna to use Oracle's technical support on the single,

6    specifically identified server being placed under support, and not on other, unsupported servers.

7    In fact, Sevanna never intended to perform these contracts according to their terms.  Sevanna

8    entered into the support agreement and the renewal as a pretext to gain access credentials to

9    MOS, so it could traffic them to Terix, so Terix could use them to support its customers by

10   downloading copyrighted materials from Oracle's website.  As noted above, while Sevanna is a

11   distinct legal entity from Terix, it is owned by Terix's President/CEO and COO and is therefore

12   under Terix's effective control.  Terix performs downloading using a credential

13   (███████████████) – a credential based on the fake name Sevanna used in its

14   contracts with Oracle – that was created against the Sevanna account with Oracle.  This

15   repository is essentially a library of bootleg copies of firmware updates that Terix distributes to

16   its customers on Oracle hardware.  In addition, Terix has used the Sevanna access credential to

17   unlawfully obtain Solaris Updates to provide to its customers, including many Updates that are

18   not for M3000 servers at all but are for other models of servers.  The purpose of this fraud and

19   password trafficking was to trick Oracle by disguising Terix's access to MOS in the hope that

20   Oracle would not detect Terix's illegal conduct.  Sevanna's contracts for Oracle support were a

21   fraud and did not authorize and of Sevanna or Terix's conduct.

22         72.    Terix committed a similar fraud using the make believe Summit

23   Technology name.  Bernd Appleby and James Olding, or others acting under their direction,

24   made the fraudulent statements described here for Summit Technology.  Effective each

25   September 3 from 2010 forward, Terix entered into annual support contracts with Oracle

26   ostensibly for a single T2000 server, under the contract number 4398838.  Terix entered into

27   these contracts under the name "Summit Technology Group LLC" to conceal Terix's

28   involvement.  As Terix's own witnesses have testified, there is no Summit Technology entity and

25

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   never was.  Terix went to the added length of calling a non-existent entity an "LLC" in its

2   purchase orders that it submitted to Oracle shortly before the effective date of each contract to

3   falsely convey that Summit Technology was an actual, existing legal entity, when it was not – it

4   was just a d/b/a for Terix itself.  For all of these support contracts, the make believe "Summit

5   Technology" contract through its imaginary employee "Shayne Wallace," who does not exist and

6   never did; that name, too, is based on a ███████████ name.  Joyce testified that he ███████

7   ████████████████████████████████████████████████████████████████████████

8   ███████████, who called Joyce on the phone, ████████████████████████████████

9   ██████████████████████████████████████████████.  Appleby told

10  Joyce that ████████████████████████████████████████████████████████

11  ██.

12          73.    In identical fashion to the Sevanna fraud described above, in each

13  purchase order for a support contract, "Summit Technology" falsely stated that it was purchasing

14  Oracle Premier Support for 1 T2000 server located at 337 W Bridge Street, Dublin, Ohio, 43017.

15  Each purchase order stated that Oracle's technical services were subject to Oracle's technical

16  support policies, and at all times those policies stated that technical services were not authorized

17  for servers not under support with Oracle.  For each purchase order, "Summit Technology"

18  tendered the fee associated with Oracle Premier Support for support on the single T2000 server

19  listed.

20          74.    Terix's entering into these support contracts was a promise to perform

21  them according to their terms, including a promise to use the support only for the one listed

22  server on the purchase order.  In reality, these contracts were entirely a fraud.  Terix entered into

23  these contracts to obtain access credentials to MOS – ██████████████, based on the fake

24  name in the contract – which Terix then used to access MOS without authorization to support

25  Terix's own customers, and to download Solaris Updates and firmware updates, use them for

26  testing purposes to provide support to Terix's customers, and to provide Solaris Updates and

27  firmware updates to Terix's customers.  These annual support contracts were the product of

28  fraud and did not authorize any of Terix's conduct.  These fraudulent contracts, as well as the

                                          26

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Sevanna fraudulent contracts, harmed Oracle by facilitating Terix's scheme to unlawfully copy

2   and distributed Solaris Updates and firmware updates, and provide other technical support, to

3   poach Oracle's customers and deprive Oracle of revenue from those customers.

4            75.     On still other occasions, Terix performs downloading using a credential

5   (███████████) that is actually owned by its co-Defendant WEX.  As with Sevanna:

6   WEX is a separate corporation but owned by Terix; the access credential uses a fake name and

7   does not correspond to any actual person; WEX trafficked the access credential to Terix; and

8   Terix then used it to download Solaris Updates and firmware updates to distribute to its

9   customers.

10           76.     When Terix uses these passwords that are trafficked to it by its co-

11  defendants or provided to it by its customers, Terix often uses an automated download tool called

12  Wget because the scope of Terix's unauthorized downloading is so vast that no human being

13  could do it in the time Terix desires.  For example, between 8:27 am on September 9, 2011 and

14  1:06 am on September 12, 2011, Terix used the access credentials it received from a customer to

15  download 4,080 Solaris Updates and firmware updates – downloading around the clock, without

16  stop, at an average rate of approximately one Update or patch per minute.  This automated

17  downloading violated the Oracle.com and MOS Terms of Use.

18           **4.      Defendants Know Their Conduct Is Unlawful, and It Is
                        Also Widespread**

19

20           77.     Defendants realize that their acquisition, copying and distribution of

21  Oracle's Solaris Updates and firmware updates is unlawful.  As noted, Defendants went to great

22  lengths to conceal their conduct from Oracle.  Terix also puts its Clearvision documents under

23  the cloak of non-disclosure agreements with its customers – and has designated them all

24  confidential when producing them in this litigation – even though the only thing Clearvision

25  states is Terix's unsupportable legal theory that the customer's original purchase of the Sun

26  hardware entitles the customer to free Solaris Updates and firmware updates forever.  Since the

27  customers (and for that matter, Oracle) already have the actual language of the Solaris licenses,

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    the only thing Terix could plausibly have been trying to keep secret was its unlawful business

2    model.

3            78.     Maintech also realizes that it cannot lawfully copy and distribute Oracle's

4    Solaris Updates and firmware updates.  One of Maintech's resellers, ███████████, has

5    advised Maintech that "███████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████████████████████

8    █████████████████"  Indeed, one of Maintech and Terix's customers, ████████████

9    ████████████████████████████████████████████████████████████████████

10   █████████████████████████  with both companies.

11           79.     When Oracle at last became aware of Terix and Maintech's conduct

12   regarding one of their Oracle hardware customers, it demanded an explanation from them.  Terix

13   and Maintech admitted they "do not have, nor have they ever claimed" to "have a license with

14   Oracle, or any third party" that would authorize these downloads.  Rather, Terix and Maintech

15   stated their false theory that they act "as an agent of" the customer, which they asserted is "a

16   holder of valid Solaris licenses and Oracle contracts," authorizing them "to use" the customers'

17   "credentials to access Oracle Intellectual Property."  In fact, once customers terminate their

18   support with Oracle, they are not authorized to use their credentials to access MOS and obtain

19   Solaris Updates or firmware updates, and thus Terix and Maintech are not either.

20           80.     Terix has also falsely represented to customers that it is a "partner" of

21   Oracle and therefore authorized to provide support on the Solaris operating system, including

22   providing Solaris Updates, as well as firmware updates.  For example, Oracle is informed and

23   believes that Terix represented to Dominion Resources ("Dominion") and the Royal Bank of

24   Canada ("RBC") that it was authorized to provide them with Solaris Updates and firmware

25   updates because Terix is an Oracle partner.  Terix is not an Oracle partner.  Moreover,

26   membership in the Oracle Partner Network does not authorize any partner to distribute Solaris

27   Updates or firmware updates.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

81.     This wrongful conduct reflects Terix and Maintech's general business model for soliciting Oracle hardware customers to contract with them to provide unauthorized and illegal support services for their Oracle hardware.  As detailed above, Terix and Maintech falsely represent to customers that their original purchase of the hardware entitles them to perpetual support on Solaris, and/or that Terix and Maintech have authorization to provide Solaris Updates and firmware updates.  Terix and Maintech provide or facilitate the provision of unauthorized Solaris Updates and firmware updates.  For dozens of customers, Terix and Maintech obtained Solaris Updates and firmware updates by using trafficked Oracle access credentials and other improper methods.  On information and belief, they induced certain of their customers to improperly obtain unauthorized Solaris Updates and firmware updates, including by using login credentials to Oracle's password-protected support sites after their Oracle support on the relevant servers had expired.  These unwitting customers include Bank of New York - Mellon ("BNYM"), Comcast, Dominion, Sony Corporation of America ("Sony"), RBC, ███ ████████████████████████████████████████  and others.  Terix and Maintech induced these and other customers of Oracle's support services to cancel their support contracts with Oracle by falsely representing that they could legally provide service and support for their Oracle computer products less expensively than Oracle.

82.     With respect to hundreds of customers (including those referenced above), Terix and Maintech conspired to perform these illegal acts.

**D.     Defendants' Wrongful Conduct Injured Oracle**

83.     Defendants willfully, intentionally, and knowingly engaged in the wrongful conduct alleged in this Complaint, including copyright infringement, violations of the Computer Fraud and Abuse Act, breaches of contract, intentional interference with prospective economic relations, violations of the Lanham Act, fraud, and other unfair business practices.

84.     As a direct and proximate result of these acts, Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from sales to current and potential customers of Oracle support services and/or licenses for Oracle software programs.

**First Claim for Relief**

**(Against All Defendants)**

**Copyright Infringement**

85.     Oracle incorporates each of the allegations in preceding paragraphs 1-84 of this Complaint as though fully set forth here.

86.     Oracle owns valid and enforceable copyrights in all of its software and support materials, including the Solaris Updates and firmware updates, which are creative works of original authorship.  Oracle has, and will obtain from the Register of Copyrights, Certificates of Registration that cover many of the Solaris Updates and firmware updates taken and copied by Defendants and others acting in concert with them.[3]  Throughout this Complaint, including in this claim for relief, the term "software" includes without limitation the Solaris operating system, Solaris Updates, Oracle System Firmware, and firmware updates.

87.     Oracle holds all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9, and 10, and all interest, rights and title to the copyright for Solaris 11.  Oracle holds all interest, rights and title to the copyrights for Oracle System Firmware.

88.     Oracle owned one or more exclusive rights in certain copyrights at issue in this case, including but not limited to the works listed in paragraph 89, at a point in time during which Defendants infringed those exclusive rights.

89.     Defendants have infringed copyrights in Oracle software, including the software covered by the certificates of registration identified, dated, and numbered as follows:

---

[3] Oracle reserves the right to amend its Complaint to include additional registered works as it continues to analyze the scope of Defendants' wrongful downloading, and in the event that it obtains additional copyright registrations for software and support materials taken and copied by Defendants beyond the registrations it has already.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Solaris 8 (SPARC Platform Edition) | June 19, 2000 | TX 5-138-319 |
| Solaris 8 (Intel Platform Edition) | June 19, 2000 | TX 5-196-384 |
| Solaris 9 operating system | August 7, 2002 | TX 5-586-147 |
| Solaris 10 operating system | April 19, 2005 | TX 6-086-753 |
| Solaris 11 operating system | February 19, 2014 | TX 7-808-942 |
| Oracle System Firmware 6.7.10 | June 19, 2014 | TX 7-851-653 |
| Oracle System Firmware 7.3.0.a | June 19, 2014 | TX 7-851-666 |
| Oracle System Firmware 8.0.0.e | June 19, 2014 | TX 7-851-615 |
| Oracle System Firmware 8.0.4.b | June 19, 2014 | TX 7-851-695 |
| Oracle System Firmware 8.1.4.h | June 19, 2014 | TX 7-851-710 |
| Oracle System Firmware 9.0.0.d | June 19, 2014 | TX 7-851-699 |
| Oracle System Firmware 9.0.1.f | June 19, 2014 | TX 7-851-513 |
| Oracle System Firmware 9.0.0.i | June 19, 2014 | TX 7-851-509 |
| Oracle System Firmware 9.1.0.i | June 19, 2014 | TX 7-851-514 |

90.     These registrations and pending registrations generally cover versions of Oracle's Solaris operating system and other software, including the Solaris Updates thereto, as well as versions of Oracle System Firmware, including firmware updates.  Defendants and others acting in concert with them copied and distributed versions of Oracle's Solaris operating system and other software, including the Solaris Updates thereto, as well as versions of Oracle System Firmware, including firmware updates, without a license.

91.     Through the acts alleged above, Defendants and those acting in concert with them have violated Oracle's exclusive rights to reproduce and make copies of its copyrighted software, including materials covered by the registrations and pending registrations listed above by, among other things, downloading, copying and distributing Oracle's copyrighted software onto their and Defendants' customers' computers in violation of 17 U.S.C. § 106.

92.     Defendants and those acting in concert with them were not authorized to copy, download, reproduce, create derivative works from, or distribute Oracle's copyrighted software except as authorized by and in support of a specifically licensed use, and with respect only to software for which they had a current right to have and use.

93.     In addition to directly infringing Oracle's exclusive rights, Defendants have contributorily and/or vicariously infringed Oracle's exclusive rights in the software by controlling, directing, intentionally encouraging, inducing, or materially contributing to the copying, distribution, and/or creation of derivative works from Oracle's copyrighted software.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Defendants also obtained a direct financial benefit from the above alleged infringing activities

2    while declining to exercise their right to stop it or limit it.

3            94.     Defendants knew or should have known that copying, distributing, and

4    creating derivative works of and from Oracle's software, which Defendants had no license to

5    copy, distribute, or create derivative works from; or controlling, directing, intentionally

6    encouraging, inducing, or materially contributing to others' efforts to do so, infringed Oracle's

7    exclusive rights in that software.

8            95.     Oracle is entitled to damages from Defendants in an amount to be proven

9    at trial, including profits attributable to the infringement not taken into account in computing

10   actual damages under 17 U.S.C. § 504(b).  Oracle is entitled to statutory damages under

11   17 U.S.C. § 504(c) based on Defendants' infringements after the dates of copyright registration.

12           96.     Defendants' infringement of Oracle's exclusive rights has also caused

13   Oracle irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit

14   such acts.  Oracle's remedies at law are not adequate to compensate it for these inflicted and

15   threatened injuries, entitling it to remedies, including injunctive relief as provided by 17 U.S.C.

16   § 502, and an order impounding or destroying any and all infringing materials pursuant to 17

17   U.S.C. § 503.

18                              **Second Claim for Relief**

19                      **(Against Volt Delta, Sevanna and Terix)**

20                                    **Fraud**

21           97.     Oracle incorporates each of the allegations in preceding paragraphs 1-84

22   of this Complaint as though fully set forth here.

23           98.     Volt Delta, Sevanna and Terix fraudulently induced Oracle to enter into

24   support contracts with them.  Each Defendant entered into support contracts promising to

25   perform them according to their terms, which included that Oracle's technical support would be

26   only for the one server listed under support.  Each Defendant represented that its purchase order

27   was for one specifically identified server.  In each case, those representations were lies – from

28   the beginning each Defendant intended to use, and/or traffic for another to use, the access

**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  credentials associated with each support contract to provide support to Maintech's and Terix's

2  own customers, including providing those customers Solaris Updates and firmware updates as

3  well as other unauthorized technical support.

4        99.   Defendants went to elaborate lengths to deceive Oracle, as described

5  above.  Volt Delta supplied Oracle ███████████████████████████████████████

6  ████████████████████████████████████████████████████.  In

7  fact, the ████████████████████████████████████████████

8  ████████████████████.  The whole point of the contract was not to support the random

9  server that Volt Delta ████████████ but to unlawfully support servers not under support with

10  Oracle.

11        100.   Sevanna and Terix went further, entering into contracts under the names of

12  fictitious, non-existent people.  Sevanna is basically a fiction itself, a shell company owned by

13  Terix's CEO and COO for the purpose of obtaining these support contracts with Oracle without

14  revealing that Sevanna is wholly under the control of Terix.  Terix went still further in creating

15  an imaginary name of a separate legal entity – "Summit Technology Group LLC" – solely to

16  trick Oracle into thinking it was doing business with someone other than Terix.

17        101.   Oracle's reliance on Defendants' misrepresentations was reasonable.

18  Defendants were careful to submit purchase orders that looked correct, and certainly no different

19  from many purchase orders submitted by thousands of legitimate customers all the time.

20        102.   Oracle was damaged by Defendants' fraud.  Volt Delta trafficked in its

21  access credentials to Maintech, and Sevanna trafficked in its access credentials to Terix, so that

22  Maintech and Terix could use those credentials to obtain Solaris Updates, firmware updates and

23  provide other technical support without authorization to Maintech and Terix's customers.

24  Likewise, Terix used the fraudulently obtained Summit credentials for similar purposes.  This

25  fraud facilitated Maintech's and Terix's scheme to provide unlawful software support, steal

26  Oracle's customers, and deprive Oracle of support revenue from customers.

27        103.   In addition, Terix fraudulently induced Oracle to enter into support

28  contracts with Terix's customers on a single server, when Terix intended to use the access

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   credentials for those support contracts to support multiple customer servers that were under

2   support with Terix.  Terix's fraudulent practices in this respect are described above concerning

3   the Manual and the specific case of ███████ as one example.  In each case, Terix, with

4   knowingly falsity, induced the customer to place a purchase order for support on one server and

5   to conceal Terix's involvement in the deal because it knew that Oracle would not do the deal if

6   Terix were involved.  Oracle's reliance on the customers' purchase orders was reasonable

7   because they resembled the many legitimate purchase orders that Oracle receives all the time.

8   Indeed, Terix went to elaborate lengths -- including the instructed rearrangement of stock

9   language by the customer itself -- to make sure that these purchase orders did not stand out as

10  unusual.  These fraudulently induced contracts harmed Oracle because they deprived it of the

11  revenue it would legitimately have earned if Terix and the customers had disclosed the true

12  number of servers on which support for the customers was to be provided.

13          104.    Oracle was damaged by the Defendants' fraud in an amount to be proven

14  at trial.

15                          **Third Claim for Relief**

16  **(Against Sevanna, WEX, Volt Delta and Maintech as to 18 U.S.C. § 1030(a)(6)(A), and**

17      **Against Terix and Maintech as to 18 U.S.C. § 1030(a)(2)(C) and (a)(4))**

18              **Violation of the Federal Computer Fraud and Abuse Act**

19                  **(18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(6)(A))**

20          105.    Oracle incorporates each of the allegations in the preceding paragraphs of

21  this Complaint as though fully set forth here, including without limitation paragraphs 1-104.

22          106.    Oracle's secure MOS website is (and Sun Solve was) hosted by, and

23  allows access to, certain of Oracle's computers, computer systems, and computer networks,

24  which are protected computers within the meaning of 18 U.S.C. § 1030(e)(2).  Those computers,

25  computer systems, and computer networks are data storage facilities directly related to and

26  operating in conjunction with Oracle's computers, which are used in and affect interstate and

27  foreign commerce, including by providing access to worldwide communications through

28  applications accessible through the Internet.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

107.    Sevanna, WEX, Volt Delta and Maintech have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6)(A), by knowingly and with the intent to defraud Oracle, trafficking in passwords or similar information through which Oracle's computers and support websites may be accessed without authorization.  As alleged above, Sevanna has an active support contract with Oracle for a single Sun SPARC Enterprise M3000 server.  This contract provides Sevanna a user ID and password to access MOS to obtain Solaris Updates and firmware updates for use solely on this server.  However, Sevanna has trafficked that user ID and password to Terix, which has used them to access MOS without authorization to obtain Solaris Updates and firmware updates, which Terix then copied and distributed to its customers.  Indeed, Terix used the Sevanna access credentials to create an entire repository of firmware on its system that it uses to support customers.  Similarly, WEX has an active support contract with Oracle, and WEX trafficked the user ID and password access to MOS to Terix, which used those access credentials to access MOS and download Solaris Updates and firmware updates.  Likewise, Volt Delta entered into a multi-year support contract with Sun and acquired user IDs and passwords to access Sun Solve and then MOS to obtain Solaris Updates and firmware updates solely for the server under support.  However, Volt Delta trafficked its user IDs and passwords to Maintech, which used them to access Sun Solve and MOS without authorization to obtain Solaris Updates and firmware updates, which Maintech then copied and distributed to its customers.  In addition, Maintech trafficked in those user IDs (███████████████████████) and associated passwords by providing them to Maintech's customers, including for example ██, which used them to access MOS without authorization, including to obtain Solaris Updates and firmware updates.

108.    Terix and Maintech have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing Oracle's support websites, and the computers which host the information available on those websites, without authorization or by exceeding authorized access, and by obtaining information, including Oracle software, from Oracle's support websites.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

109.     Terix and Maintech have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud Oracle, accessing Oracle's support websites, and the computers which host the information available on those websites, without authorization or by exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including, but not limited to, Oracle's software.

110.     As a proximate result of Defendants' fraudulent conduct, Oracle was damaged by, among other things, the unauthorized use of MOS and its software by parties who had not paid Oracle for it, in an amount to be proven at trial.

111.     As a result of Defendants' actions, Oracle has suffered damage and loss in an amount to be proven at trial, but, as to the conduct of each defendant, aggregating at least $5,000 in value during a one-year period, including, without limitation the cost of investigating, conducting a damage assessment, and responding to Defendants' actions.

112.     Terix and Maintech's unlawful access to and theft from Oracle's computers have caused Oracle irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.  Oracle's remedies at law are not adequate to compensate them for these afflicted and threatened injuries, entitling Oracle to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

**Fourth Claim for Relief**

**(Against Terix and Maintech)**

**False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**

113.     Oracle incorporates each of the allegations in preceding paragraphs of this Complaint as though fully set forth here, including without limitation paragraphs 1-112.

114.     Terix and Maintech have engaged in unlawful false, misleading, deceptive, and confusing advertising and promotion in interstate commerce in connection with their computer support products or services as alleged above in an effort to gain unfair competitive advantage over Oracle.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

115.     As alleged above, Terix and Maintech falsely represented on their public websites and to actual and potential customers that Defendants could provide legal copies of Solaris Updates and firmware updates for their Oracle computer products if those customers or potential customers canceled their support contracts with Oracle.  These Defendants also falsely represented on their public websites and to actual and potential customers that the customers could legally obtain Solaris Updates and firmware updates for their Oracle computer products without a support agreement with Oracle.  For example, the statements on Terix and Maintech's websites about their ability to provide "patch management" for Solaris as part of operating system support, and their statements that they can provide operating system support as an agent of the customer's under a claimed "right to use" that is actually beyond the scope of any rights the customer has, are misrepresentations.

116.     Terix also falsely represented to actual and potential customers that it was a "partner" of Oracle's and as such is entitled to provide Solaris Updates and firmware updates . In reality, Terix is not an Oracle partner, and being an Oracle partner would not authorize that conduct anyway.

117.     Terix and Maintech's statements were false and misleading representations of fact in commercial advertising and promotion that misrepresented the nature and qualities of both Defendants' products and services, and also those of Oracle.

118.     These Defendants' false, misleading, deceptive, and confusing advertising and promotion of their services has caused, influenced, and induced customers to purchase support services from Terix and Maintech rather than Oracle's support services.  Terix and Maintech's conduct has thus influenced, and is likely to influence, the purchasing decisions of customers who purchase support services that include full access to Solaris Updates and firmware updates and Oracle's Premier Support for Oracle/Sun computers.

119.     Terix and Maintech have injured Oracle, and will likely injure it in the future, by this false, misleading, deceptive, and confusing promoting and advertising which diverts support services revenue for Oracle computers from Oracle to Terix and Maintech.

No. 5:13-cv-03385 PSG

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

120. Terix and Maintech's false, misleading, deceptive, and confusing promoting and advertising has been deliberate and willful. Among other things, these Defendants have continued to represent to their customers that they may receive Solaris Updates and firmware updates without an Oracle support contract after Oracle warned Terix and Maintech in writing that their promoting and advertising of their support services were false and misleading, and were causing actual injury to Oracle.

121. By reason of this false, misleading, deceptive, and confusing promoting and advertising by Terix and Maintech, Oracle has also suffered irreparable injury, and will continue to suffer irreparable injury, for which Oracle has no adequate remedy at law, entitling Oracle to injunctive relief.

**Fifth Claim for Relief**

**(Against All Defendants)**

**Breach of Contract**

122. Oracle incorporates each of the allegations in preceding paragraphs of this Complaint as though fully set forth here, including without limitation paragraphs 1-121.

123. Defendants agreed to be bound by the terms of use on Oracle's support websites, including the Oracle.com Terms of Use, the MOS Terms of Use, and the Sun.com Terms of Use when they accessed or downloaded software from the MOS website.

124. Oracle has performed all conditions, covenants, and promises required on its part to be performed in accordance with the Oracle.com Terms of Use the My Oracle Support Terms of Use, and the Sun.com Terms of Use.

125. Defendants have breached Oracle's customer support websites' terms of use, including the Oracle.com Terms of Use, the MOS Terms of Use, and the Sun.com Terms of Use, including the provisions cited in paragraphs 32, 33, 34, 35, 38, 39 and 46 above, by among other things:

- Obtaining and using Oracle's software in support of Oracle hardware for which neither Defendants nor the customer holds a current support contract from Oracle;
- Gaining unauthorized access to MOS and the software on MOS;

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1        •      Sharing software from MOS with unauthorized third parties, and/or using

2              software from MOS to advertise, recruit and provide services for or to

3              unauthorized third parties, and not disclosing to the third parties that Defendants

4              had no right to provide that software or those services;

5        •      And, in the case of Terix, using automated means to download software from

6              MOS.

7            126.     As a result of Defendants' breach of the Oracle.com Terms of Use, the

8 MOS Terms of Use, and the Sun.com Terms of Use, Defendants have caused damage to Oracle

9 in an amount to be proven at trial. Oracle has also suffered irreparable injury, and will continue

10 to suffer irreparable injury, for which Oracle has no adequate remedy at law, entitling Oracle to

11 injunctive relief.

12 **Fifth Claim for Relief**

13 **(Against All Defendants)**

14 **Intentional Interference With Prospective Economic Relations**

15           127.     Oracle incorporates each of the allegations in preceding paragraphs 1-84

16 and 97-126 of this Complaint as though fully set forth here.

17           128.     Oracle was in an economic relationship with customers, including BNYM,

18 Comcast, Dominion, RBC and Sony, that, if not impeded by Defendants, would have resulted in

19 an economic benefit to Oracle.  Namely, these customers owned Oracle/Sun computer hardware,

20 were long-time customers of support services from Oracle for that hardware, and would

21 otherwise have renewed their support services agreements with Oracle.

22           129.     Defendants knew of these economic relationships between Oracle and its

23 customers, and intended to disrupt them.  Defendants engaged in wrongful conduct by, among

24 other things, violating the Computer Fraud and Abuse Act; engaging in unfair competition; in the

25 case of Terix and Maintech, violating the Lanham Act, misrepresenting their ability to lawfully

26 provide support services that were equivalent to Oracle's, fraudulently misrepresenting to their

27 customers their entitlement to obtain Oracle's intellectual property after they ended their support

28

1    contracts with Oracle; in the case of Terix, fraudulently misrepresenting its relationship with

2    Oracle; and in the case of Volt Delta, Sevanna and Terix, engaging in fraud.

3          130.    Oracle's relationship with these customers was disrupted when these

4    customers decided not to renew support agreements with Oracle and instead entered into support

5    agreements with Terix and Maintech.  Oracle was damaged as a result of the disruption of these

6    relationships in an amount to be proven at trial.  Defendants' wrongful conduct was a substantial

7    factor in causing this harm to Oracle.

8                           **Seventh Claim for Relief**

9                            **(Against All Defendants)**

10          **Unfair Competition – Cal. Bus. & Prof. Code § 17200**

11          131.    Oracle incorporates each of the allegations in preceding paragraphs 1-84

12    and 97-130 of this Complaint as though fully set forth here.

13          132.    Defendants have engaged in unlawful and unfair business acts or

14    practices, including violating the Computer Fraud and Abuse Act and the Lanham Act, breach of

15    contract, intentional interference with prospective economic relations, intentional

16    misrepresentation, fraud, and other illegal acts and practices as alleged above, all in an effort to

17    gain unfair competitive advantage over Oracle.

18          133.    These unlawful and unfair business acts or practices were committed

19    pursuant to business activity related to providing maintenance and support services for Oracle's

20    computer hardware and software.

21          134.    Defendants' acts and conduct constitute unlawful and unfair competition

22    as defined by California Bus. & Prof. Code §§ 17200, *et seq.*

23          135.    Defendants' conduct constitutes violations of state and federal laws ,

24    including, but not limited to, violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030

25    *et seq.*, the Lanham Act, and the common law.  Defendants' conduct is also unfair.

26          136.    Defendants devised their scheme involving access credential trafficking

27    and misrepresenting to customers the support that Defendants could lawfully provide for the

28    purposes of inducing owners of Oracle/Sun computer hardware not to enter into support

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

agreements with Oracle, but rather to enter into profitable support contracts with Defendants, or other parties affiliated with Defendants. Defendants executed this scheme by means of false pretenses, representations, or promises, and intentionally accessing Oracle's computer systems without authorization and/or in excess of authorized access, thereby obtaining information from Oracle's computer systems, in violation of 18 U.S.C. § 1030.

137.    As described above, Oracle has lost money and property and suffered injury in fact as a result of Defendants' unlawful business acts and practices.

138.    Defendants have improperly and unlawfully taken commercial advantage of Oracle's investments in its computers, support delivery infrastructure, and customer relationships. In light of Defendants' conduct, it would be inequitable to allow Defendants to retain the benefit of the funds obtained through the unauthorized and unlawful use of that property.

139.    Defendants' unfair business practices have unjustly minimized Oracle's competitive advantages and have caused and are causing it to suffer damages.

140.    As a result of such unfair competition, Oracle has also suffered irreparable injury and, unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, and Oracle has no adequate remedy at law.

141.    Defendants should be compelled to restore any and all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*., and should be enjoined from further unlawful and unfair business practices.

### Prayer for Relief

WHEREFORE, Oracle respectfully prays for the following:

A.    For a preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them, from the following:

(1)    Copying, distributing, using, or creating derivative works from Oracle's software, firmware or support materials in any way, including for any business purpose,

41

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    except as allowed by express license from Oracle;

2              (2)    Facilitating or encouraging the downloading or copying of any

3    Oracle software, firmware or support materials from any Oracle website for, or on behalf of, any

4    customer or party that does not have a valid, existing, and currently-Oracle-supported license for

5    the specific materials being downloaded from Oracle entitling the customer to have and use that

6    software, firmware or support materials;

7              (3)    Facilitating or encouraging the access to, use of, or downloading

8    from any Oracle support website for, or on behalf of, any customer or party other than by using

9    that specific customer's or party's valid login credentials;

10             (4)    Facilitating or encouraging the copying, distribution, or use of any

11   Oracle software, firmware or support materials by, for, or on behalf of, any customer or party

12   who did not have a current, valid, existing support license from Oracle entitling that customer or

13   party to have and use the software, firmware and support materials at the time they were

14   downloaded or obtained by or on behalf of the customer or party;

15             (5)    Accessing Oracle's support websites without authorization or in

16   excess of authorization;

17             (6)    Falsely advertising their products or services, including their

18   ability to provide Solaris support or their relationship with Oracle;

19             (7)    Otherwise engaging in acts of unfair competition, unfair practices,

20   copyright infringement, false advertising or computer fraud against Oracle;

21        B.    That the Court order Defendants to file with the Court and serve on Oracle

22   within 30 days after the service on Defendants of such injunction a report in writing, under oath,

23   setting forth in detail the manner and form in which Defendants have complied with the

24   injunction;

25        C.    For an Order directing Defendants to return Oracle's property, including,

26   without limitation, Oracle's confidential, proprietary, and/or copyrighted software, firmware and

27   support materials, that Defendants took from Oracle, as set forth in this Complaint;

28        D.    For an Order impounding or destroying and all infringing materials

42

No. 5:13-cv-03385 PSG

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1 │ pursuant to 17 U.S.C. § 503;

2 │        E.        For an Order awarding Oracle punitive damages in a sum to be determined

3 │ at trial;

4 │        F.        For restitution of all ill-gotten gains unjustly obtained and retained by

5 │ Defendants through the acts complained of here;

6 │        G.        For an Order finding a constructive trust for Oracle's benefit, consisting of

7 │ all revenues received by Defendants from the wrongful conduct which should rightfully have

8 │ been received by Oracle and all profits derived from that wrongful conduct, and directing

9 │ Defendants to pay all such sums to Oracle;

10 │       H.        For damages to be proven at trial;

11 │       I.        For trebled damages;

12 │       J.        For statutory damages pursuant to 17 U.S.C. § 504;

13 │       K.        For prejudgment interest;

14 │       L.        For an Order awarding Oracle its attorneys' fees and costs; and

15 │       M.        For an Order awarding Oracle such other and further relief as the Court

16 │ deems just and proper.

17 │ DATED:  July 10, 2014

18 │

19 │                                    Bingham McCutchen LLP

20 │

21 │

22 │                         By:_____/S/Geoffrey M. Howard_____
                                        Geoffrey M. Howard
23 │                                    Attorneys for Plaintiffs
                                        Oracle America, Inc. and
24 │                                    Oracle International Corporation

25 │

26 │

27 │

28 │

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

<u>DEMAND FOR JURY TRIAL</u>

2

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle America, Inc., and

3

Oracle International Corporation demand a trial by jury on all issues triable by a jury.

4

5

DATED:  July 10, 2014

6

7

Bingham McCutchen LLP

8

9

By:_____/S/Geoffrey M. Howard_____

10

Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle America, Inc. and
Oracle International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 5:13-cv-03385 PSG

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF