UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ORACLE AMERICA, INC. and ORACLE INTERNATIONAL CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:13-cv-03385-PSG<br><br>**ORDER RE: DISCOVERY DISPUTES**<br><br>**(Re: Docket No. 208, 271, 274, 277 and 278)** |
|---|---|---|
| Plaintiffs, | | |
| v. | | |
| TERIX COMPUTER COMPANY, INC., et al., | | |
| Defendants. | | |

Before the court are a series of discovery disputes in this case that were briefed by the parties.[1] Over the past two days the parties appeared to flesh out these disputes. After considering the arguments, the court rules as follows:

| DN | RULING |
|---|---|
| | **Disputes from the Case Management Statement** |
| 208 | **1. Motion for Reimbursement for Subpoena Expenses**<br><br>DENIED. If U.S. Logic, LLC, objects to the subpoena Oracle served on it or the requirements of compliance, the appropriate response is to move to quash or move for a protective order in a court of suitable jurisdiction. |

---

[1] *See* Docket Nos. 271, 274, 277 and 278.

1

Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

| | **Maintech's Discovery Requests from Oracle** |
|---|---|
| **271** | **1. RFP Re: Solaris Non-Form Licenses** |
| | GRANTED.  Oracle shall produce all Solaris or firmware non-form licenses and general term agreements licensing Solaris or firmware or, in the alternative, amend its response to make clear that no such non-form licenses or general term agreements exist. |
| | **2. RFP Re: Third-Party Licenses for Material in Solaris** |
| | DENIED.  Maintech seeks third-party licenses on two grounds: first, the licenses may bolster its licensing defense and second the licenses may identify code in Solaris 10 that is not Oracle's.  Any bolstered license defense is entirely speculative in light of the record presented.[2]  As for identifying non-Oracle source code, the source code itself for Solaris 10 will identify what code is Oracle's and what code is not.  Maintech has long had and continues to have access to this code. |
| | **3. RFP For Documents Sufficient to Identify Authorized Distributors of Solaris Updates and Source Materials** |
| | GRANTED.  If Oracle has authorized any third-party to distribute Solaris updates and/or source materials, it must identify them.  If it has not, Oracle shall amend its response to the RFP to make this point clear. |
| | **4. RFP Re: OpenSolaris Documents** |
| | GRANTED.  Oracle can do one of two things: (1) produce the source code licenses, etc. or (2) point to a repository on the internet where Maintech can obtain these materials for itself.  Should Oracle elect the latter option, Oracle also shall stipulate to these materials authenticity. |
| | **5. RFP Re: Certain Categories of Documents Back to January 1, 2008** |
| | GRANTED.  Because Oracle seeks damages going back beyond the three-year statute of limitations period, Oracle shall produce documents concerning Defendants, their business practices and customers – including e-mail communications – as well as discovery relating to Oracle's purportedly delayed discovery and any related damages dating back to January 1, 2008. |
| | **Amended First Rule 30(b)(6) Deposition Notice** |
| | **6. Topic 2 Re: Oracle and Sun support policies** |
| | GRANTED.  Oracle's position is belied by its own Rule 30(b)(6) notices, which for Maintech included topics like, "your provision of Support Services."[3] |
| | **7. Topic 5 Re: Changes by Oracle to Sun Support Policies** |
| | GRANTED-IN-PART.  Oracle's alleged changes to Sun's support and licensing policies lie at the heart of underlying claims and defenses in this case.  At the same time, the topic is overbroad.  To balance these competing considerations, Oracle shall provide a witness on the following topics: |
| | a. Requiring customers have "all or nothing" support coverage for their Oracle/Sun systems, such that for one system to be covered by Oracle, all systems must be |

---

[2] Docket No. 271 at 3 ("For instance, if a third party required as a condition of allowing Oracle to include that third party's material in Solaris that Oracle license the resulting derivative product on a certain basis, it could affect the merits of Oracle's copyright infringement claims in this litigation.").

[3] Docket No. 271-8, Ex. G at Topic 5.

2

Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

   covered;

  b. Eliminating time and materials support services;

  c. Refusing to recognize the rights of customers who had licensed Solaris to receive patches, bug fixes and updates without paying for costly support packages from Oracle;

  d. Requiring customers to pay punitive reinstatement fees of 150% of missed support fees to regain Oracle support – i.e., access to patches, bug fixes and updates;

  e. Aggressively denying access to patches, bug fixes and updates for Solaris and firmware to customers who do not get their support coverage from Oracle;

  f. Requiring customers to have operating system support agreements with Oracle to obtain any patches, bug fixes or updates for Solaris and

  g. Requiring customer to have comprehensive system support agreements with Oracle to obtain any patches, bug fixes or updates for firmware on Oracle/Sun computer systems.

**8. Topic 6 Re: Firmware Support**

GRANTED-IN-PART. Oracle does not dispute that Oracle firmware is relevant to this litigation. At the same time, Maintech does not establish why it is entitled to go back to 2007. To balance these competing considerations, Oracle shall provide a 30(b)(6) witness on this topic dating back to January 1, 2008.

**Terix's Discovery Requests from Oracle**

**274**

**1. RFP No. 1**

GRANTED-IN-PART. *See generally* above. Oracle shall produce to Terix the same documents ordered produced to Maintech.

**2. RFP Nos. 2 & 4**

GRANTED. The documents are relevant to Oracle's policies and procedures relating to downloads without proper access credentials, Oracle's steps to safeguard material it contends should not be available to customers generally and Oracle's claimed damages.

**3. RFP No. 8**

DENIED. Terix has failed to establish how Oracle's support of third-party servers is relevant to any claim or defense in this case.

**4. RFP No. 10**

GRANTED. At a minimum, these documents are relevant to Terix's defense relating to Oracle's selective competitive targeting of third party maintenance providers. Oracle shall produce these documents or provide a response to an interrogatory or request for admission served by Terix that Oracle does not have a discount practice with regard to its service packages and does not as a matter of policy offer discounted rates to customers.

**5. RFP No. 11**

GRANTED. These documents are relevant to Terix's claim that Oracle uses back-maintenance fees to eliminate third -party support and to Oracle's damages.

**6. RFP No. 17**

DENIED. Terix has not established that the benefit of requiring Oracle to log all documents from its legal department outweighs the burden of such an exercise.

3

Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

| | |
|---|---|
| | **7. Interrogatory No. 1** |
| | DENIED.  This interrogatory is essentially a contention interrogatory aimed at the substance of Oracle's damages case.  This court, at least the undersigned, is skeptical of the value of such contention interrogatories.[4] |
| | **8. Interrogatory No. 3** |
| | GRANTED-IN-PART.  This is relevant to Oracle's claim for compensatory damages.  Oracle shall provide a response as to all former Terix customers returning to Oracle. |
| | **9. Interrogatory No. 4** |
| | GRANTED.  *See* above (RFP Nos. 2 & 4). |
| | **10. Interrogatory No. 9** |
| | GRANTED-IN-PART.  Oracle shall produce all written communications other than communications involving in-house counsel.  Oracle need not log any privileged communications or work product materials involving in-house counsel.  With respect to both logging in house communications and oral communications generally, Terix has not established that the benefit of requiring Oracle to log all documents from its legal department outweighs the burden of such an exercise. |
| | **11. Interrogatory No. 11** |
| | DENIED.  Terix has failed to establish how Oracle's support of third-party servers is relevant to any claim or defense in this case. |
| | **Oracle's Discovery Requests from Terix** |
| 277 | **1. Documents From Jan. 1, 2008, Forward for Custodians Jason Joyce, Bernd Appleby, James Olding, Atull Dhal, Ian Waters and Larry Quinn** |
| | GRANTED.  Because Oracle seeks damages going back beyond the three-year statute of limitations period, responsive documents from these six custodians shall be produced.[5] |

---

[4] *See Sandisk Corp. v. Zurich Am. Ins. Co.*, Case No. 5:12-cv-06081-LHK-PSG, 2013 WL 4875526, at *2 (N.D. Cal. Sept. 12, 2013).

> But Zurich seeks to compel this information now through a discovery tool – the contention interrogatory – that is commonly viewed with skepticism in the federal courts when improperly timed.  When fact depositions have not even begun, and trial is not scheduled until next year, a further response to Zurich's interrogatory is not yet warranted.
> Fed. R. Civ. P. 33(a)(2) provides in part that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."  In light of this guidance, courts regularly approve contention interrogatories that are served towards the close of fact discovery, after document production and deposition are complete.  But those that ask a plaintiff, or either party for that matter, to lay out its entire case, before much if any substantive discovery has taken place, ask too much.  "Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken." (citation omitted).

[5] *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).

> We conclude that § 507(b) permits damages occurring outside of the three—year window, so long as the copyright owner did not discover—and reasonably could not have discovered—the infringement before the commencement of the three-year limitation period.  Because Polar Bear did not discover Timex's infringement until within three years of filing

4
Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

> **2. Tracking Spreadsheets, Ticketing Logs, or Other Documents/Data Compilations Showing Any Defendant's Access to/use of Oracle's Websites or Solaris-Related Intellectual Property, Without Date Limitation**
>
> GRANTED-IN-PART.  *See* above.  To balance the competing discovery burdens, only documents from January 1, 2008, forward shall be produced.
>
> **3. Identification of All of Terix's Oracle Customers**
>
> GRANTED-IN-PART.  Oracle has established that each of these customers has discoverable information, but the burden to Terix also is substantial.  The right balance is that either Terix provide discovery to each of its Oracle customers or Terix will be barred from claiming that Oracle's damages calculations are speculative based on its failure to consider any customer for whom discovery was not provided.  The court is agnostic; the choice is Terix's.
>
> **4. RFP No. 47**
>
> DENIED.  The disclosure of facts and analysis was insufficiently detailed to qualify as a waiver of the attorney-client privilege.[6]

---

suit, Polar Bear may recover damages for infringement that occurred outside of the three-year window.

[6] *See McIntyre v. Main St. & Main Inc.*, Case No. 3:99-cv-5328-MJJ-EDL, 2000 WL 33117274, at *3 (N.D. Cal. Sept. 29, 2000).

> A "party cannot selectively divulge privileged information without impairing its attorney-client privilege as to the rest of that information concerning the same subject." *Chinnini v. Central DuPage Hosp. Assoc.*, 136 F.R.D. 464, 465 (N.D. Ill. 1991).  There are, however, exceptions to the general rule that voluntary disclosure of privileged communications to a third party waives the privilege.  *See, e.g.*, *Rates Tech., Inc. v. Elcotel, Inc.*, 118 F.R.D. 133, 134-35 (M.D. Fla. 1987) (providing that in some circumstances, mere restatements of an attorney's conclusion do not disclose a particular attorney-client communication and therefore does not constitute a waiver).
>
> Here, plaintiffs argue that defense counsel Fine's submission to plaintiffs of a detailed letter regarding its internal investigation waived the attorney client privilege and work product doctrine.  The letter, dated April 19, 1999, provides defendant's findings and conclusions.  While the letter does provide considerable detail regarding defendant's findings of fact and conclusions, the Court is not convinced that defendant waived the attorney-client privilege or work product doctrine.  It appears that Mr. Fine wrote the letter in response to an earlier demand letter submitted on behalf of plaintiffs, at least in part for purposes of responding to a settlement demand. (citations omitted).

*See also Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999)

> Unquestionably, "[b]y voluntarily disclosing her attorney's advice to a third party . . . a client is held to have waived the attorney-client privilege because the disclosure runs counter to the notion of confidentiality." *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir.1996).  The question here is whether the testimony by Oneida's witnesses about the "green light" and "legal ramifications of copying" disclosed attorney-client communications.
>
> Courts have perceived a difference between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice.  *In In re Dayco Corp. Derivative Securities Litigation*, 99 F.R.D. 616, 618 (S.D. Ohio 1983), for example, a litigant had retained a law firm to examine matters and events leading to litigation.  Thereafter, a two-page press release summarizing the firm's "findings" and "conclusions" was issued.  Because "neither the facts which led to those conclusions, nor the Report itself, were released," the court held that the privilege had not been waived.

5
Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

> **5. RFP No. 48**
>
> DENIED. Terix has not established that the common-interest privilege applies. The mere possibility that a communication could relate to the formulation of a common legal strategy or defense is insufficient to claim the privilege.[7]
>
> **6. RFA Nos. 15 and 16**
>
> DENIED. First, Terix's distribution of Oracle's patches, updates, etc. and whether it had a license to access Oracle's software are hotly and genuinely contested issues.[8] Second, a party may give as his reason for his inability to admit or deny the existence of a genuine

---

Similarly, in *In re Brand Name Prescription Drugs Antitrust Litigation*, Case No. 94-cv-897-MDL-997, 1995 WL 531805 at *1-2 (N.D. Ill. Aug. 8, 1995), the privilege was not waived, despite a witness's testimony that "[w]e had antitrust counsel at the major meetings where we discussed this, and the guidance we were given is that in no way can this discussion include any discussion of future impact or present impact." Because the "statements reveal [ed] nothing substantive about attorney-client communications, other than counsel's direction to comply with the law generally," waiver had not occurred. *Id.*

[7] *See Integrated Global Concepts, Inc. v. j2 Global, Inc.*, Case No. 5:12-cv-03434-RMW-PSG, 2014 WL 232211, at *2 (N.D. Cal. Jan. 21, 2014).

> The common interest doctrine is a narrow exception to the general rule that disclosing information to a third party constitutes a waiver of the attorney-client privilege. It generally applies "where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege," although it may, in rare cases, be extended to situations where there is anticipated joint litigation, but nothing pending imminently.
>
> Here, j2 relies on the common interest doctrine to shield communications with two entities when it faced no litigation, no impending threat of litigation, and which do not provide any form of legal service as their business. Moreover, j2 has failed to proffer any evidence of any written agreement with these two entities whatsoever, giving the court no evidence on which to base a finding that the communications are covered by the privilege. "While such a writing may not always be required, [j2] also has not shown that the [communications] disclosed that which the common interest privilege was designed to protect—'a pre-existing privileged document' shared among 'allied lawyers and clients—who are working together in prosecuting or defending a lawsuit or in certain other legal transaction.'" In the absence of any agreement, written or otherwise, or any evidence of a common legal foe, the communications in question fall outside the scope of the common-interest privilege. (citations omitted).

[8] *See* Fed. R. Civ. P. 36 Adv. Comm. Notes.

> Courts have also divided on whether an answering party may properly object to request for admission as to matters which that party regards as "in dispute." *Compare*, *e.g., Syracuse Broadcasting Corp. v. Newhouse,* 271 F.2d 910, 917 (2d Cir. 1959); *Driver v. Gindy Mfg. Corp.,* 24 F.R.D. 473 (E.D. Pa. 1959); with, *e.g., McGonigle v. Baxter,* 27 F.R.D. 504 (E.D. Pa.1961); *United States v. Ehbauer,* 13 F.R.D. 462 (W.D. Mo.1952). The proper response in such cases is an answer. The very purpose of the request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial. In his answer, the party may deny, or he may give as his reason for inability to admit or deny the existence of a genuine issue. The party runs no risk of sanctions if the matter is genuinely in issue, since Rule 37(c) provides a sanction of costs only when there are no good reasons for a failure to admit.

6

Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

issue. Third, deeming a RFA as admitted is a drastic remedy where a defendant has a good faith basis for doing so.[9]  Fourth, in order for the court to assess the good faith basis at issue, the court needs a more complete record. Oracle may renew its request to have the RFA deemed admitted at the final pre-trial conference.[10]

### 7. Documents and Deposition Testimony From Steve Huang, a Terix IT Employee

GRANTED. Terix's only significant objection is that Huang had not substantive interaction with Terix's customers. That objection wrongly assumes that an outward-facing role is a necessary predicate for discovery. Because Huang appears to have discoverable information regarding the key Terix activities in dispute in this case, whether external or internal, Huang shall produce documents and appear for a deposition.

### 8. A Disputed Voicemail

GRANTED. Terix shall produce any metadata associated with the Appleby voicemail.

## Oracle's Discovery Requests from Maintech

**278**

### 1. Documents From Jan. 1, 2008, Forward for Gary Messineo, John Sapone, Bob Coscia and Tony Chirico

GRANTED. Because Oracle seeks damages going back beyond the three-year statute of limitations period, responsive documents from these four custodians shall be produced.[11]

### 2. Tracking Spreadsheets, Ticketing Logs, or Other Documents/Data Compilations Showing Any Defendant's Access to/use of Oracle's Websites or Solaris-Related Intellectual Property, Without Date Limitation

GRANTED-IN-PART. *See generally* above. To balance the competing discovery burdens, only documents from January 1, 2008, forward shall be produced.

### 3. Identification of All "Tier 2" Customers

GRANTED-IN-PART. Oracle has established that each of these customers has discoverable information, but the burden to Maintech also is substantial. The right balance is that either Maintech shall provide discovery as to each of its Oracle customers or Maintech will be barred from claiming that Oracle's damages calculations are speculative based on its failure to consider any customer for whom discovery was not provided. The court is agnostic; the choice is Maintech's.

### 4. RFP No. 47

GRANTED. At the hearing, Maintech conceded that the relationship between Maintech and Volt Delta Resources, LLC is relevant and discoverable.

### 5. RFA No. 12

DENIED. First, Maintech's distribution of Oracle's firmware is a hotly and genuinely contested issue.[12]  Second, a party may give as his reason for his inability to admit or deny

---

[9] *See United States ex rel. Strom v. Scios, Inc.*, Case No. 3:05-cv-3004-CRB-JSC, 2011 WL 5444248, at *2 (N.D. Cal. 2011) (holding the "drastic remedy" of deeming a request for admission admitted improper where defendants had a good faith basis for their response).

[10] *See* Fed. R. Civ. P. 36(a)(6).

[11] *See supra* note 5.

[12] *See supra* note 8.

7

Case No. 5:13-cv-03385-PSG
ORDER RE: DISCOVERY DISPUTES

| | |
|---|---|
| | the existence of a genuine issue.  Third, deeming a RFA as admitted is a drastic remedy where a defendant has a good faith basis for doing so.[13]  Fourth, in order for the court to assess the good faith basis at issue, the court needs a more complete record.  Oracle may renew its request to have the RFA deemed admitted at the final pre-trial conference.[14] |
| | **Disputes from the Case Management Statement** |
| 316 | **2. Maintech's Financial Documents** |
| | GRANTED.  Maintech admitted the financial documents are relevant and discoverable. |
| | **3. Meet-and-Confer Prior to Filing Discovery Disputes With the Court** |
| | Only lead discovery counsel is required to meet and confer.  The conference may occur telephonically. |
| | **4. Citation to Record Materials** |
| | Discovery letters may describe, reference or proffer what the record would show.  If the court requires record materials to be produced, the court will ask for those materials to be filed.  The court adopts the parties proposed briefing schedule. |

IT IS SO ORDERED.

Dated: August 21, 2014

                                                                    _____
                                                                    PAUL S. GREWAL
                                                                    United States Magistrate Judge

---

[13] *See supra* note 9.

[14] *See* Fed. R. Civ. P. 36(a)(6).