MORGAN, LEWIS & BOCKIUS LLP
   Rollin B. Chippey, II (SBN 107941)
   Thomas S. Hixson (SBN 193033)
   Kevin M. Papay (SBN 274161)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
Email: rchippey@morganlewis.com
      thomas.hixson@morganlewis.com
      kevin.papay@morganlewis.com

ORACLE CORPORATION
   Dorian Daley (SBN 129049)
   Deborah K. Miller (SBN 95527)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114
Email: dorian.daley@oracle.com
      deborah.miller@oracle.com

LATHAM & WATKINS LLP
   Daniel M. Wall (SBN 102580)
   Christopher S. Yates (SBN 161273)
   Christopher B. Campbell (SBN 254776)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: dan.wall@lw.com
      chris.yates@lw.com
      christopher.campbell@lw.com

ORACLE CORPORATION
   Jeffrey S. Ross (SBN 138172)
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273
Email: jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle America, Inc., and
Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a Delaware corporation<br><br>       Plaintiffs,<br><br>       v.<br><br>TERIX COMPUTER COMPANY, INC., a California corporation; MAINTECH INCORPORATED, a Delaware corporation; VOLT DELTA RESOURCES, LLC, a Nevada limited liability company; SEVANNA FINANCIAL, INC., a Nevada corporation; WEST COAST COMPUTER EXCHANGE, INC., a Nevada corporation; and DOES 1-50,<br><br>       Defendants.<br><br>AND RELATED COUNTER CLAIMS | No. 5:13-cv-03385 PSG<br><br>**ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ORACLE'S AFFIRMATIVE DEFENSES**<br><br>**[REDACTED VERSION OF THE DOCUMENT SOUGHT TO BE SEALED]** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ........................................................................................................ 2

III.  ARGUMENT ........................................................................................................ 3

    A.  Oracle's Defenses And Its Proposed Amended Defenses Satisfy The *Twombly*/*Iqbal* Standard ............................................................ 4

        1.  Oracle's Statute of Limitations Defense ................................... 4

        2.  Oracle's Laches and Unclean Hands Defenses ........................ 8

        3.  Contributory Negligence and Failure To Mitigate Damages Defenses ...................................................................................... 11

        4.  Business Justification Defense ................................................. 12

    B.  The More Efficient Solution Is To Grant Oracle Leave To Amend ............... 14

        1.  Oracle's Proposed Amended Answers Are Not Futile ............ 15

        2.  Oracle's Proposed Amended Answers Are Timely And Not Prejudicial ................................................................................. 18

        3.  Oracle's Proposed Amended Answers Serve An Important Purpose ...................................................................................... 19

IV.  CONCLUSION ........................................................................................................ 20

| | |
|---|---|
| 1 | <u>**TABLE OF AUTHORITIES**</u> |
| 2 | **Page(s)** |
| 3 | **CASES** |

*Adler v. Fed. Republic of Nigeria*,
219 F.3d 869 (9th Cir. 2000) ...............................................................................8, 9

*Bolbol v. Feld Entm't, Inc.*,
No. C 11-5539 PSG, 2012 WL 5828608 (N.D. Cal. Nov. 15, 2012) ......................................15

*Bowles v. Reade*,
198 F.3d 752 (9th Cir. 1999) ...............................................................................18

*Ciampi v. City of Palo Alto*,
No. 09-CV-02655-LHK, 2010 WL 5174013 (N.D. Cal. Dec. 15, 2010) ................................19

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
No. 11-CV-05973 PSG, 2012 WL 2135498 (N.D. Cal. June 12, 2012)..................................15

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
No. 12-16526, 2014 WL 1797676 (9th Cir. May 7, 2014).............................................4

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................15

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
No. 13-CV-03999-BLF, 2014 WL 6626227 (N.D. Cal. Nov. 20, 2014)................................18

*Foman v. Davis*,
371 U.S. 178 (1962).......................................................................................15

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*
2014 U.S. Dist. LEXIS 160980 (W.D. Wash. Nov. 17, 2014) ..........................................16

*Jacobs v. Universal Development Corp.*,
53 Cal. App. 4th 692 (1997) ..............................................................................8

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
833 F.2d 1342 (9th Cir. 1987) ............................................................................13

*Oliver v. SD-3C LLC*,
751 F.3d 1081 (9th Cir. 2014) ............................................................................10

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) .............................................................................15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
134 S. Ct. 1962 (2014)....................................................................................10

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945).......................................................................................8, 9

| | |
|---|---|

*Rock River Communs., Inc. v. Universal Music Group, Inc.*,
   745 F.3d 343 (9th Cir. 2014) .............................................................................................16

*Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*,
   708 F.3d 1109 (9th Cir. 2013) ..........................................................................................15

*Sosa v. DirecTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...................................................................................2, 16, 17

*Unilogic, Inc. v. Burroughs Corp.*,
   10 Cal. App. 4th 612 (1992) ..........................................................................................8, 9

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) .............................................................................................15

**RULES**

F.R.C.P. 15(a)(2)...................................................................................................................3

# I.    INTRODUCTION

This is an unnecessary and ill-advised motion whereby Defendants—who were given four opportunities to plead their own affirmative defenses—now urge the Court to strike all of Oracle's affirmative defenses to Defendants' Second Amended Counterclaims *without* leave to amend, purportedly because they fail to meet the *Twombly* standard. Defendants impose upon the Court for such drastic relief despite already having the full factual bases in support of Oracle's affirmative defenses in the form of Oracle's sworn response to Defendants' contention interrogatories. In other words, Defendants have attacked a straw man. They knew the pleadings were soon to be superseded by detailed discovery responses, and yet filed the motion anyway.

Oracle attempted to avert this. It proposed a stipulation that would permit Oracle to amend its affirmative defenses to add the additional facts already set forth in Oracle's discovery responses, without prejudice to Defendants' ability to refile their motion, *i.e.*, the exact same approach that *Defendants* requested and received from Oracle when it moved to dismiss their affirmative defenses last May. Defendants refused. For no good reason whatever, Defendants are forcing the Court to address issues that should have been resolved without the Court's involvement—and seeking relief that is both without justification and unprecedented in this litigation.

As detailed below, Oracle believes its affirmative defenses are well-pleaded and meet the *Twombly* standard. However, with discovery now taken and the evidentiary record largely in, the most efficient path forward is to simply permit Oracle leave to amend its Answers to include the factual bases that have already been provided to Defendants. Oracle therefore opposes Defendants' motion and requests leave to amend its Answers to Defendants' Second Amended Counterclaims. *See* Oracle's Motion For Leave To File Amended Answers, filed herewith ("Motion for Leave to Amend").

Oracle also seeks leave to add one additional defense based on the *Noerr-Pennington* doctrine. Recent discovery, including the deposition of Maintech's COO on January 13, 2015, revealed that the entire basis for Defendants' state law interference claims is Oracle's

communications asserting its intellectual property rights. Pre-litigation assertions of intellectual property rights are protected by *Noerr-Pennington*. *E.g.*, *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006). As a result, Oracle seeks to add a *Noerr-Pennington* defense to its answers.

## II. BACKGROUND

The pleadings in this case are still not settled. In response to Oracle's affirmative claims, Defendants have, to date, pleaded their own affirmative defenses no less than four times. Dkt. Nos. 139, 141, 143, 146 (Answers to Complaint); 178-81 (Amended Answers to Complaint); 261-63, 265 (Answers to Second Amended Complaint); 357, 359-61 (Amended Answers to Second Amended Complaint). At each juncture, Defendants have either asked Oracle for leave to amend (which Oracle granted) or sought and received leave to amend from the Court. Indeed, at various times throughout this case, Oracle worked with Defendants to try to avoid bringing unnecessary disputes to the Court regarding the pleadings. For example, when Oracle moved to strike Defendants' first set of affirmative defenses on May 5, Defendants requested that Oracle permit them to amend their answers to plead additional facts. Oracle agreed. The parties therefore stipulated that Oracle would withdraw its motion without prejudice, and that Defendants would be permitted to file an amended answer. Dkt. No. 176.

Defendants filed their Second Amended Counterclaims on November 21, and Oracle filed its answers and affirmative defenses for the first time on December 12. Dkt. Nos. 386-87. Oracle's affirmative defenses include typical defenses asserted in an antitrust case such as statute of limitations, unclean hands, and laches, among others, and set forth in short and plain language the factual basis for Oracle's defenses. Dkt. Nos. 386-87. In parallel to the filing of Oracle's answers, Defendant Terix sought discovery on Oracle's affirmative defenses and served an interrogatory asking Oracle to "[s]tate all facts that YOU content [sic] support any affirmative defense to TERIX's Second Amended Counterclaims that YOU have asserted or intend to assert." Declaration of Christopher Campbell in Support of Oracle's Opposition to Defendants' Motion To Strike Oracle's Affirmative Defenses ("Campbell Decl."), Ex. 1.

Defendants moved to strike Oracle's affirmative defenses on January 5, largely asserting that Oracle's defenses do not meet the *Twombly* standard as it has been interpreted to apply to

affirmative defenses. Dkt. Nos. 416-17. In light of the fact that Oracle was finalizing a response to Terix's interrogatory, Oracle's counsel promptly contacted Defendants' counsel and proposed the same solution that Defendants requested and received just eight months ago: Defendants would withdraw their motion to strike without prejudice and permit Oracle to amend its answers to plead the additional facts from the interrogatory responses in support of its affirmative defenses. Campbell Decl., Ex. 2. As counsel for Oracle stated, this approach would save unnecessary motion practice and would not prejudice Defendants' ability to refile their motion in light of the amended answers. Defendants refused, demanding instead that Oracle submit its amended answers before they would agree to withdraw their motion, a proposal that—given the briefing schedule for this motion, and compounded by Defendants' refusal to give Oracle a short extension of time to oppose—would have obviated the very efficiencies that Oracle sought to achieve. Campbell Decl., Ex. 3. Oracle implored Defendants' counsel not to bother the Court with such an altogether unnecessary motion, but they persisted. As a result, this filing became necessary.

## III. ARGUMENT

Oracle's affirmative defenses, filed on December 12 and which already have been the subject of substantial discovery, meet the *Twombly* standard. Part III.A of this Memorandum addresses this. Nevertheless, Oracle has prepared detailed responses to Defendants' interrogatories seeking the facts supporting the defenses. Campbell Decl., Ex. 4. Oracle is willing to amend its affirmative defenses to reflect the factual record supporting its defenses that has been developed, and Oracle's proposed amended answers and defenses to Terix and Maintech's Second Amended Counterclaims are submitted with this brief. Motion for Leave to Amend, Exs. A, B. Defendants are already aware of all of the additional facts Oracle includes in these proposed amended pleadings—indeed, Oracle provided these facts in the form of a sworn response to Terix's contention interrogatories. Moreover, these are all facts that the parties have been taking and propounding discovery on over the past year, including in the many depositions taken in December and this month. Oracle therefore opposes Defendants' motion and requests

leave to amend its answers under Federal Rule of Civil Procedure 15(a)(2)—the far more

efficient way for both the parties and the Court to address Defendants' motion.

### A. Oracle's Defenses And Its Proposed Amended Defenses Satisfy The *Twombly/Iqbal* Standard

The Court previously applied the *Twombly* pleading standard to affirmative defenses in

this case. Dkt. No. 354 at 25-28. Oracle does not urge the Court to do otherwise here. Oracle's

affirmative defenses filed on December 12 meet the *Twombly* pleading standard, as do its

proposed amended defenses.

As the Court held in November, courts in the Ninth Circuit apply a "'two-step process' to

evaluate the sufficiency of a pleading. 'First, a court should identif[y] pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth.' 'Then a court

should assume the[] veracity of well pleaded factual allegations and determine whether they

plausibly give rise to an entitlement to relief.'" Dkt. No. 354 at 27-28 (quoting *Eclectic Props.*

*East, LLC v. Marcus & Millichap Co.*, Case No. 12-16526, 2014 WL 1797676, at *2 (9th Cir.

May 7, 2014)).

### 1. Oracle's Statute of Limitations Defense

The filed version of Oracle's statute of limitations defense states a plausible factual basis

to conclude that many of Defendants' claims are time-barred. Oracle alleges in clear language

that the conduct Defendants challenge arose no later than Oracle's acquisition of Sun

Microsystems, more than four years prior to the filing of Defendants' counterclaims. It also

explains that many of the license and support policies challenged by Defendants were put in

place by Sun years prior to Oracle's acquisition. Defendants know this, of course, because the

dates on which certain licensing and support policies "changed," and if they changed, have

always been central to this entire case. Indeed, the entire premise of Defendants' Counterclaims

is that certain Sun policies that were "friendly" to their business were changed by Oracle,

naturally leading to extensive discovery as to what changed when. Furthermore, Oracle

previously moved to dismiss the Counterclaims based on the statute of limitations, explicitly

arguing that the alleged changed occurred outside the limitations period. So the statute of

1   limitations ramifications of any "changes" have been well-understood by all.  Defendants have

2   no basis to now file a motion that implies that they have not received fair notice of Oracle's

3   position.  That is not remotely credible.  Regardless, Oracle will if need be amend its statute of

4   limitations defense to state the additional facts that Defendants already know.  Oracle's proposed

5   amended statute of limitations defense to Terix's counterclaims states:

6   > The conduct alleged in the Second Amended Counterclaim arose
    > more than four years prior to the filing of Terix's counterclaims.
7   > Most of the specific support policies challenged by Terix were
    > enacted at the latest in or around March 2010, when Oracle
8   > acquired Sun Microsystems and conformed its support offerings to
    > Oracle's two levels of Premier Support.  That process took place
9   > more than four years prior to the filing of Terix's Counterclaims.

10  > Furthermore, preexisting Sun license and support policies for
    > Solaris and Sun/Oracle servers imposed restrictions on customers'
11  > access to patches and support that were similar or identical to the
    > restrictions that Terix now challenges.  For years before Oracle
12  > acquired Sun, Sun designated certain patches as "private" and sold
    > billions of dollars of support contracts to customers that desired
13  > such patches.  Those support contracts required customers to place
    > under contract all servers on which customers wished to install
14  > private patches, and were therefore quite similar to the Oracle
    > support contracts and policies that Defendants challenge in this
15  > lawsuit.  *See* ORCLTM00548117, ORCLTM00548118; see also
    > Goe Depo. Tr. 50:6-9, 82:8-19, 186:22-188:3, 192:19-193:2,
16  > 201:13-202:15, 217:25-219:25, Ex. 1090; Henslee Depo. Tr. 58:6-
    > 20; Stonaker Depo. Tr. 192:9-194:3, 267:23-268:16; 30(b)(6) of
17  > Oracle through Richard Allison.

18  > Sun engaged in a variety of actions to enforce its longstanding
    > practice of restricting many Solaris patches to customers that had
19  > active support contracts with Sun.  For example, in 2008 Sun
    > canceled 25 Sun support contracts that Terix opened as the
20  > ostensible "agent" of various customers; as Oracle has learned in
    > discovery in this litigation (and as Terix's CEO now admits), Terix
21  > used those contracts to access and provide updates for servers that
    > were not covered by support contracts with Sun.  Appleby
22  > 12/22/14 Depo Tr. 57:2-10, 110:20-111:15.  According to Terix,
    > that cancellation caused Terix's customers to become worried and
23  > various customers did not renew their business with Terix—
    > including one of Terix's top 20 customers.  ▉▉▉▉▉▉▉▉▉▉▉
24  > ▉▉▉▉▉▉▉

25  > In 2008 and 2009, Sun significantly increased the number of
    > patches for which it required an active support contract.  As of
26  > January 2009, Sun had designated the majority of patches for
    > Solaris 8, 9 and 10 as "private," and required customers to
27  > purchase a support contract from Sun in order to access such
    > patches.  *See* ORCLTM00548117, ORCLTM00548118. In April
28  > 2009, Sun implemented a "vintage patch service" for Solaris 8,
    > which required customers that wanted patches and updates for

Solaris 8 to purchase a special support contract from Sun for the servers the customer intended to support. These changes were communicated publicly to the market, and Terix and Maintech were aware of their implementation. █████████████████

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Sun informed the market and customers about these policies and enforced them when it suspected that they were not being followed. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Terix and Maintech were aware of Sun's policies and communications with customers at the time they occurred in early 2009. Terix's President testified that he knew of several such letters having been sent, and that the intent of the letters from Sun was to convince customers that they needed to have a Sun support contract in order to get the Solaris updates that they needed. ██████████████████████████████████████████████████ He also testified that the letters caused Terix to lose support contracts. ██████████████ Nonetheless, Terix did not do anything to complain to Sun about its policies, nor did it complain to any antitrust authorities. *Id.* at 43:24-44:15. Maintech similarly did not assert any claim against Sun at that time.

Terix and Maintech were aware of these Sun support policies, which—like the Oracle support policies Defendants now challenge—restricted the availability of most or all Solaris patches to customers with active support contracts with Sun. Those policies also required customers to have a support contract in place for all servers that were to benefit from Sun support (e.g., the application of private patches), just like Oracle's matching service level policy. For whatever reason, Defendants chose not to assert the claims that are now at issue against Sun at the time they became aware of them, despite their belief that Sun's policies caused them to lose customers. Defendants' claims accrued at that time and, because Defendants delayed the filing of their counterclaims until April 14, 2014, are time-barred.

Motion for Leave to Amend, Ex. A at 17-19. Oracle's proposed amended statute of limitations

defense to Maintech's counterclaims is similar. *Id.*, Ex. B at 15-17. There can be no question

that the additional history of Sun's licenses and support policies provided in Oracle's proposed

amendments far exceeds what *Twombly* requires. The amended defenses include allegations

specifying, among other things, facts such as the date and details of Sun's support policies that allegedly give rise to Defendants' claims, Defendants' awareness of those Sun policies, Sun's attempts to enforce those policies with customers (including customers of Defendants), and the striking similarity between Sun's and Oracle's policies.

Defendants wrongly argue that Oracle's statute of limitations defense is improper because the Court "already determined that the statute of limitations was tolled by the filing of the lawsuit." Mot. at 5-6, 16. With respect to the statute of limitations, Oracle's motion to dismiss Defendants' counterclaims focused on a very limited issue—whether, as pleaded, Defendants were beyond the statute of limitations because they waited longer than four years from the date of Oracle's first Sun hardware support policies to file their claims. Dkt. No. 173 at 18-20. The Court ruled that the filing of Oracle's affirmative claims in July 2013 tolled the statute of limitations on Defendants' counterclaims. Dkt. No. 354 at 13-14. Therefore, at most, the Court's ruling moved the relevant accrual date for calculating the statute of limitations applicable to Defendants' counterclaims to July 2009 (four years prior to the date of Oracle's Complaint).

Both the pleaded and proposed amended versions of Oracle's statute of limitations defense target conduct long before that date. Oracle's December 12 answers stated that "many of the license and support policies that allegedly give rise to Defendant's claims were put in place by Sun itself many years prior to the acquisition" and that Defendants were "aware of those policies at the time they were instituted, and any claims arising out of that conduct would have accrued at that time." Dkt. Nos. 386 at 15-16, 387 at 17. Oracle's proposed amended statute of limitation defense, quoted above, adds additional factual details surrounding Sun's support policies and Defendants' awareness of them. Defendants know all about Sun's software support policies, of course, because explaining why Defendants were supposedly justified in violating them for so many years is a crucial part of their license defense. And in response to Defendants' requests for production, Oracle produced all relevant Sun licenses and support policies months ago. *See, e.g.*, ORCLTM00094869 - ORCLTM00096434 (Sun's support policies, which Oracle

produced on September 26, 2014).[1]

Oracle's decision to pursue this defense does not "fl[y] in the face of the Court's holding." Mot. at 6. To the contrary, Oracle's statute of limitation defense asserts facts that recognize and respond to the point made in the Court's order. If true, those facts would establish that the very "policy changes" that Defendants' counterclaims focus on were, in fact, instituted by Sun years before Oracle's acquisition. Defendants knew about these policies and, rather than file any claim against Sun, instead chose to evade Sun's support policies and to steal (covertly) its intellectual property for years. It was only when Oracle finally sued Defendants to put a stop to their unlawful behavior that Defendants chose to challenge the supposedly anticompetitive decision to sell Solaris updates through support contracts. Under the statute of limitations applicable to Defendants' claims, that decision came too late because Sun itself had done so for years (and earned billions doing so), which means that Defendants' claims are time-barred.

## 2. Oracle's Laches and Unclean Hands Defenses

Oracle also properly pleaded its laches and unclean hands defenses. As applied against Defendants' state law tort claims, Oracle's unclean hands defense arises under California law, where "the unclean hands doctrine applies not only to equitable claims, but also to legal ones." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Aug. 17, 2000) (citing *Jacobs v. Universal Development Corp.*, 53 Cal. App. 4th 692, 699 (1997)). Courts have a "wide range" in their use of "discretion in refusing to aid the unclean litigant" and are "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945) (quotation omitted); *see also Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 623 (1992) ("[T]he application of the doctrine [of

---

[1] These facts put the lie to the allegations that the Court was required to accept as true when evaluating Oracle's motion to dismiss Defendants' counterclaims. Most significantly, discovery confirms that Plaintiffs' claim that "Sun would supply its copyrighted and proprietary Solaris updates and firmware for nothing—or near nothing" which created a "robust, competitive aftermarket in Solaris support services" is a fabrication. *See* Dkt. 354 at 1. Sun did nothing of the sort—it charged customers billions for access to Solaris patches in a manner that was strikingly similar to the manner in which Oracle supplies patches to customers.

unclean hands] is primarily a question of fact that is within the discretion of the trial court..."
(citation and internal quotation omitted)).  Moreover, the conduct at issue "need not necessarily
have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any
character.  Any willful act concerning the cause of action which rightfully can be said to
transgress equitable standards of conduct is sufficient . . . ."  *Precision Instrument Mfg. Co.*, 324
U.S. at 815.  Courts applying California law examine "the nature of the misconduct at issue and
the misconduct's equitable impact on the relationship between the parties and the injuries
claimed."  *Adler*, 219 F.3d at 877 (citing *Unilogic*, 10 Cal. App. 4th at 619-20).  So long as the
inequitable conduct occurred in a transaction that was "directly related to the matter before the
court," the unclean hands defense is properly asserted.  *See Unilogic*, 10 Cal. App. 4th at 621
(citation and internal quotation omitted).

Oracle's unclean hands defense rests largely on the same facts that Oracle pleaded in its
Second Amended Complaint.  Indeed, in the filed version of this defense, Oracle incorporates by
reference the allegations of its Second Amended Complaint.  The filed version satisfies
*Twombly*; Oracle's proposed amended version, which adds over seven pages of additional factual
content, more than satisfies the relevant standard.  Oracle details Terix's and Maintech's
deliberate scheme to misappropriate and distribute Oracle's copyrighted software code.  The
conduct at issue is directly related to a number of Defendants' counterclaims, including, for
example, Maintech's intentional interference with prospective business advantage claim in which
Maintech alleges that Oracle interferes by "making false statements to Maintech's customers,"
presumably a reference to alleged Oracle communications informing customers that Terix and
Maintech could not lawfully provide Solaris patches and updates.  Dkt. No. 355 ¶ 88.  Terix's
interference with contract and prospective economic advantage claims are similar.  Dkt. No. 363.
Whether Oracle's statements were false depends, of course, on whether Defendants' own
conduct was, in fact, a violation of Oracle's rights—an issue squarely disputed by Oracle's
unclean hands defense.  Oracle has therefore sufficiently pleaded an unclean hands defense
alleging the details of Defendants' misconduct that is directly relevant to the counterclaims
Defendants have brought against Oracle.

1    Defendants are wrong to say that "Oracle does not state any facts relating to the doctrine

2  of laches." Mot. at 9. Oracle's well-pleaded allegations under the heading of its statute of

3  limitations defense apply equally to its laches defense, as courts in the Ninth Circuit "look to the

4  same legal rules that animate the four-year statute of limitations under [Clayton Act] section 4B"

5  when applying the laches defense to antitrust claims. *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086

6  (9th Cir. 2014). In addition, Oracle's proposed amended answers generously expand upon

7  Oracle's laches defense. Motion for Leave to Amend, Ex. A at 28-30; Ex. B at 26-28. Like the

8  proposed statute of limitations defense, Oracle's proposed laches defense provides all

9  dimensions of supporting allegations: the date and details of Sun's support policies that allegedly

10 give rise to Defendants' claims, Defendants' awareness of those Sun policies, and the similarity

11 between Sun's and Oracle's policies. *Id.*

12    In a footnote, Defendants assert that "Oracle is taking contradictory positions on the same

13 legal issue in different briefs it submits to the Court" with respect to the laches defense. Mot. at

14 9 n.1. That is incorrect, as Defendants fail to appreciate the differences between Oracle's claims

15 and Defendants' counterclaims. As Oracle pointed out in its motion to strike Defendants'

16 affirmative defenses, "all of Oracle's claims to which Defendants assert a laches defense are

17 subject to explicit statutes of limitations," Dkt. No. 388 at 8, and the Supreme Court has held that

18 "in [the] face of a statute of limitations enacted by Congress, laches cannot be invoked to bar

19 legal relief," *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1974 (2014). Under that

20 precedent, Defendants have no laches defense to any of Oracle's claims because all are subject to

21 statutes of limitations.

22    In contrast, Defendants assert claims against Oracle that are not subject to an express

23 statute of limitations, and Oracle is entitled to assert the laches defense against such claims. For

24 example, in seeking both damages and injunctive relief, Defendants brought their federal

25 antitrust claims under both section 4 of the Clayton Act (permitting private actions for damages)

26 and section 16 (permitting private actions seeking injunctive relief). Under Ninth Circuit law, "a

27 claim for injunctive relief under section 16 is . . . a distinct cause of action . . . [for which] there

28 is no statute of limitations . . . ." *Oliver*, 751 F.3d at 1085 (citation omitted). Consequently,

"[c]laims for injunctive relief [under section 16 of the Clayton Act] . . . *are subject to the equitable defense of laches*." *Id.* (emphasis added) (citation omitted). Thus, at a minimum, Oracle is entitled to assert its laches defense against Defendants' federal antitrust claims. This is entirely consistent with the arguments in Oracle's own motion to strike and simply a reflection of the fact that Oracle and Defendants have asserted different types of claims.[2]

### 3. Contributory Negligence and Failure To Mitigate Damages Defenses

Oracle has sufficiently stated its contributory negligence and failure to mitigate damages defenses. The thrust of these defenses, as pleaded and as proposed in the amended answers, is that any "harm" that Defendants suffered was the result of their own negligent, unlawful business conduct. Defendants failed to change that conduct when they were told it violated Oracle's intellectual property rights and was improper. As filed in Oracle's December 12 answers, these defenses pass the relevant pleading standard.

Oracle's proposed amended contributory negligence defense adds the following detail:

> Terix's damages were not caused by Oracle and are due solely to the fault, negligence or illegal and wrongful conduct of Terix, Maintech and other parties or individuals for which Oracle has no responsibility. Among other things, Terix's alleged damages are due to its own failure to conduct a legitimate business and its attempt to obtain customers through the theft of Oracle's intellectual property. Terix was aware that such conduct was forbidden first by Sun's and then Oracle's license agreements and support policies, but Terix nonetheless continued to violate those license agreements and policies through its chosen set of business practices. *See* Appleby 12/22/14 Depo. Tr. 43:24-44:21; see also Oracle's Responses to Terix Computer Company, Inc.'s Third Set of Interrogatories to Oracle America, Inc. and Second Set of Interrogatories to Oracle International Corporation. After Sun canceled a number of support contracts with Terix in 2008, Terix doubled down on its unlawful strategy by "implement[ing] discussions with [customers] called Clearvision around what we felt were the rights and license grants, and we would essentially purchase as an agent the contract in the customer's name as opposed to doing it in TERiX's name." Olding Depo. Tr. 24:8-25:11. And after Oracle instituted its own support policies in March 2010, Terix did not change in any material way the methods that it used to deliver Solaris and firmware updates and patches to its customers. *See* Olding Depo. Tr. 66:17-68:20, 217:4-8;

---

[2] Along with unclean hands and laches, Defendants also challenge Oracle's estoppel defense. Mot. at 9-10. Oracle does not address those arguments as Oracle's proposed amended answers no longer assert an estoppel defense.

> Appleby 10/8/14 Depo. Tr. 126:16-127:130:9. To the extent Terix asserts that its business was harmed as a result of Oracle enforcing its license agreements and support policies, that harm was not caused by any wrongful conduct by Oracle and is instead the result of Terix's decision to pursue an unlawful business strategy.

Motion for Leave to Amend, Ex. A at 30-31; Ex. B at 29.

Similarly, Oracle's proposed amended failure to mitigate damages defense states the following:

> Terix was aware of both Sun's and Oracle's license and support policies, as well as Sun's and Oracle's copyrights over their protected intellectual property. Terix admits that it did not change its business strategy in response to Sun's or Oracle's requirement of a support contract to access private Solaris patches. *See* Appleby 12/22/14 Depo. Tr. 43:24-44:21; *see also* Oracle's Responses to Terix Computer Company, Inc.'s Third Set of Interrogatories to Oracle America, Inc. and Second Set of Interrogatories to Oracle International Corporation. After Sun canceled a number of support contracts with Terix in 2008, Terix doubled down on its unlawful strategy by "implement[ing] discussions with [customers] called Clearvision around what we felt were the rights and license grants, and we would essentially purchase as an agent the contract in the customer's name as opposed to doing it in TERiX's name." Olding Depo. Tr. 24:8-25:11. And after Oracle instituted its own support policies in March 2010, Terix did not change in any material way the methods that it used to deliver Solaris and firmware updates and patches to its customers. *See* Olding Depo. Tr. 66:17-68:20, 217:4-8; Appleby 10/8/14 Depo. Tr. 126:16-127:130:9. ███████████
> ████████████████████████████████████████
> ████████████████████████████████████████ Defendants failed to take steps to prevent the harm that they allege resulted from that policy, and instead delayed any legal action until Oracle asserted its valid intellectual property and other rights against them. Terix therefore failed to mitigate the harm alleged in the Second Amended Counterclaim.

Motion for Leave to Amend, Ex. A at 32; Ex. B at 30-31. Both of these defenses far exceed what *Twombly* requires.

### 4. **Business Justification Defense**

Defendants argue that Oracle's business justification defense is not truly an affirmative defense. Mot. at 16. That claim ignores clear Ninth Circuit precedent. In the tying context, the Ninth Circuit expressly recognizes "that antitrust defendants may demonstrate a ***business justification*** for an otherwise per se illegal tying arrangement . . . . A tie-in does not violate the antitrust laws if implemented for a legitimate purpose and if no less restrictive alternative is

available . . . . The defendant bears the burden of showing that the case falls within the contours of ***this affirmative defense***." *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1348-49 (9th Cir. 1987) (emphasis added) (internal citations and quotations omitted).

Oracle's filed answer adequately states this defense, and its proposed amended answer provides the following additional factual bases:

> Oracle's conduct has been reasonable, is based on independent business and economic justifications, and was done without any purpose or intent to injure competition. Oracle's license and support policies are similar to those instituted by many other hardware and software companies in the industry. Indeed, many other companies require customers to purchase service contracts in order to get access to patches and updates for their software products. *See, e.g.*, ███████████████████████
> █████████████. Indeed, Sun did so for years before Oracle acquired Sun and generated billions of dollars in support revenue by requiring customers to have a service contract to obtain private patches and by requiring all servers receiving support (e.g., the installation of private patches) to be under support contract. Like these other companies, Oracle's support services provide valuable products and related services to customers for a reasonable fee. Oracle's support policies do not restrain competition in any relevant market and are intended to, among other things, make such products and services available while protecting Oracle's intellectual property.
>
> Oracle's matching service level policy is also motivated by legitimate business justifications. Initially, the aspect of Oracle's matching service level policy requiring customers to purchase support contracts for all servers receiving support was exactly what Sun required for years. Moreover, the aspect of Oracle's matching service level policy requiring support for all servers running Solaris 10, update 9 and later releases if any server was supported, was entirely a prospective change; indeed, the policy was announced in March 2010 and Solaris 10, update 9 was not released until September 2010. *See* 30(b)(6) deposition of Oracle through Richard Allison. The primary reason for Oracle's matching service level policy is to prevent customers from using support services on servers that are not entitled to the benefit of such services, and thus to prevent the use of Oracle's intellectual property without compensation. *See* Adams Depo. Tr. 47:19-48:14; Murphy Depo. Tr. 177:20-178:17; Amrine Depo. Tr. 234:13-235:17. Oracle expends substantial resources to develop the support services, including patches and updates, that it offers for its products. *See* Catz Depo. Tr. 160:5-17. The costs that Oracle incurs to maintain its software products are funded by the support fees that customers pay Oracle to receive the resulting patches and updates. Oracle's matching service level policy ensures that customers pay their fair share of those development costs and do not "cheat" the process by paying Oracle a nominal support fee on one or a few servers to get access to Oracle's

support website but then using the patches and updates on other servers for which no support fees have been paid. *Id.*

Oracle's back support policies are also supported by substantial and reasonable business justifications. Oracle charges back support to customers that do not have Oracle support for a period of time and then seek to return to Oracle's support offerings. Oracle charges support fees for the period that the customer was not on support because, among other reasons, the returning customer reaps the benefit of the various patches, updates and bug fixes that were developed while the customer was not on Oracle support. *See, e.g.*, Amrine Depo. Tr. 71:25-72:8. Back support fees also cover whatever degradation may have occurred in the customer's hardware, which can lead to higher cost of support going forward. *See id.* 88:11-89:13.

All of these policies are intended to protect Oracle's intellectual property and to allow Oracle to compete in the market for enterprise hardware and software. Moreover, as a result of Oracle's support policies, Oracle is able to offer a competitive, high-quality set of software and hardware products at a competitive price.

Motion for Leave to Amend, Ex. A at 19-21; Ex. B at 17-19. Oracle's business justification defense is a recognized defense in the Ninth Circuit and the proposed amended version goes far beyond what is necessary in a pleading.[3]

\* \* \*

For the foregoing reasons, Defendants' motion to strike is without merit. The Court should deny it and, for the reasons below, should grant Oracle leave to file its amended answers.

**B.     The More Efficient Solution Is To Grant Oracle Leave To Amend**

Rather than pursue the unnecessarily burdensome path that Defendants have thrust upon Oracle and the Court, the Court may summarily deny Defendants' motion and grant Oracle leave to file the amended answers Oracle has already prepared. If, after considering Oracle's amended answers, Defendants still desire to challenge the sufficiency of Oracle's defenses, they would be

---

[3]   Defendants argue that several of Oracle's other affirmative defenses are not truly affirmative defenses, including Oracle's defenses for no wrongful means and no protected injury. Mot. at 16. Oracle believes that these are properly asserted as individual affirmative defenses to the claims brought by Defendants and asserts them to provide notice of its intent to rely on the defenses. However, to the extent the Court believes that they are more properly asserted at trial as a failure of proof defense to Defendants' claims, Oracle will assert them in that context and expects that Defendants would be estopped from arguing that Oracle should not be permitted to present the evidence set forth in those defenses.

1    free to refile their motion.  Defendants have nothing to lose with this approach, and both the

2    parties and the Court avoid the burden of a full engagement with the present motion to strike on

3    pleadings that Oracle would seek to amend anyway.

4         As Defendants have successfully argued to the Court, this Circuit applies "liberal

5    standards for granting leave to amend pleadings[.]"  *Dynetix Design Solutions, Inc. v. Synopsys,*

6    *Inc.*, No. 11-CV-05973 PSG, 2012 WL 2135498, at *1 (N.D. Cal. June 12, 2012) (Grewal, J.)

7    (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)).  In fact, the

8    Ninth Circuit has instructed district courts to "grant leave to amend freely when justice so

9    requires" and apply that policy with "extreme liberality."  *Owens v. Kaiser Found. Health Plan,*

10   *Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations and internal quotations omitted).  Moreover,

11   "[c]ourts may decline to grant leave to amend only if there is strong evidence of 'undue delay,

12   bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

13   amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

14   the amendment, [or] futility of amendment, etc.'"  *Sonoma Cnty. Ass'n of Retired Employees v.*

15   *Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182

16   (1962)).  Oracle has not previously amended its answers to Defendants' counterclaims, and

17   Defendants cannot point to any evidence—much less "strong evidence"—of any of the other

18   factors here.

19              **1.      Oracle's Proposed Amended Answers Are Not Futile**

20        On motions for leave to amend, "denial of leave to amend 'is improper unless it is clear .

21   . . that the complaint could not be saved by any amendment.'"  *Bolbol v. Feld Entm't, Inc.*, No. C

22   11-5539 PSG, 2012 WL 5828608, at *7 (N.D. Cal. Nov. 15, 2012) (Grewal, J.) (quoting *United*

23   *States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)).  As discussed in detail above,

24   Oracle's proposed amended answers well satisfy the *Twombly* standard.  *See* Part III.A, *supra*.

25   That standard is beyond what is called for in a futility analysis on a motion for leave to amend.

26   Oracle has done more than is necessary to show that its proposed amendments would not be

27   futile in applying the heightened standard to its proposed amended answers.

28

Defendants argue that the timing of Oracle's filing—a month after the Court's order regarding Defendants' affirmative defenses—somehow shows that Oracle "is unable to plead its affirmative defenses in a legally sufficient fashion." Mot. at 16. Not so. Oracle's December 12 answers satisfy the relevant pleading standard. More importantly, Oracle has attached its proposed amended answers which incorporate facts developed in the extensive discovery taken (including depositions in December and January); the proposed amended answers far exceed the applicable pleading standards and are certainly "legally sufficient." Motion for Leave to Amend, Exs. A, B.

Oracle also seeks leave to add a single additional affirmative defense. Oracle does so because discovery has made clear that Defendants' interference counterclaims are based on conduct protected by *Noerr-Pennington*. The *Noerr-Pennington* doctrine "derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa*, 437 F.3d at 929 (citation omitted). This protection extends not only to direct petitions and lawsuits before the government, but also conduct "incidental to the prosecution of the suit," and the Ninth Circuit has held that the assertion of legal rights in demand and cease-and-desist communications is protected activity under *Noerr-Pennington*. *Id.* at 934-35 (citation omitted); *see also Rock River Communs., Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 351 (9th Cir. 2014); *Hard 2 Find Accessories, Inc. v. Amazon.com*, Inc., 2014 U.S. Dist. LEXIS 160980, at *5 (W.D. Wash. Nov. 17, 2014) (holding that a cease-and-desist letter from a manufacturer to a distributor demanding that the distributor stop selling certain allegedly infringing items were immune from liability under *Noerr-Pennington*).

Defendants' counterclaims assert that Oracle interfered with their existing and prospective customers. Recent discovery reveals that the basis of their interference claims are cease-and-desist letters from Oracle's legal counsel to existing or former Oracle customers informing the customer that Oracle was the only legitimate source of Solaris patches and asserting Oracle's intellectual property rights. In discovery responses served in December, Terix confirmed that Oracle's supposed interference in its relationship with ████████████ ████████████████████████████████████ were based on communications from Sun's

or Oracle's counsel that supposedly ███████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████ Campbell Decl., Ex. 5 (Terix's Amended Responses to Seventh Set of

Interrogatories Propounded by Oracle America, Inc., Interrogatory No. 27). According to Terix,

Oracle "interfered" with these customers relationships by asserting its intellectual property rights

and informing customers suspected of violating those rights that ████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████ *Id.* Maintech served similar responses confirming that its claims

are based on communications by Oracle informing customers that they were ███████████████

█████████████████████████████████████████████████ Campbell Decl., Ex. 6

(Maintech's Responses to Oracle's Fifth Set of Interrogatories, Interrogatory No. 18). Discovery

over the past few weeks has further confirmed that Defendants' interference claims rest solely on

these communications by Oracle regarding its intellectual property rights. For example, when

Maintech's COO was deposed on January 13, he confirmed that █████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████)).

     All of these communications by Oracle are protected under *Noerr-Pennington* and cannot

form the basis of a legal claim by Defendants. The Ninth Circuit is clear that pre-litigation

communications asserting a party's legal rights and position are protected activities that

"permit[] parties to frame their legal positions, often streamlining any subsequent litigation, and

thereby reducing legal costs and facilitating access to the courts." *Sosa*, 437 F.3d at 936.

"Restricting such prelitigation conduct when the same demands asserted in a petition to the court

is protected would render the entire litigation process more onerous, imposing a substantial

burden on a party's ability to seek redress from the courts." *Id.* The recent discovery confirms

that Defendants' claims seek to do just that: hold Oracle liable for asserting its rights in

situations in which customers were suspected of—and did—violate Oracle's intellectual property rights through the support services provided by Defendants. Oracle therefore seeks leave to amend its affirmative defenses to add this defense.

### 2. Oracle's Proposed Amended Answers Are Timely And Not Prejudicial

Oracle has not delayed in moving to amend its answers, which it filed just over a month ago on December 12. Nor can Defendants claim that Oracle's proposed amended answers cause them undue prejudice because of their timing or for any other reason. It is well settled that "[u]ndue delay on its own does not justify denial of a motion for leave to amend." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2014 WL 6626227, at *2 (N.D. Cal. Nov. 20, 2014) (citing *Bowles v. Reade*, 198 F.3d 752, 758-59 (9th Cir. 1999)). Such delay must cause "prejudice" to the party opposing the amendment for "denial of a motion for leave to amend . . . [to] be justified." *Id.*

Defendants argue that it would be "prejudicial" for Oracle to amend its affirmative defenses, supposedly because discovery closed on January 9. First, the timing of Oracle's answers and affirmative defenses is not Oracle's doing. Defendants did not file their counterclaims until mid-April 2014. Oracle promptly moved to dismiss the counterclaims, and the Court issued its order granting that motion in part in November. Defendants then filed their Second Amended Counterclaims, which Oracle answered in December. Oracle could not have filed an answer prior to that time, and Defendants cannot point to the date of Oracle's filing as a reason to deny Oracle leave to amend.

Second, Defendants are wrong to claim that they have not taken discovery on these facts. There is a distinction between a fact and the legal import of that fact. While Oracle may not have been able to file its affirmative defenses while it awaited the filing of Defendants' Second Amended Counterclaims in late November, the *facts* that support those defenses have been the subject of extensive discovery by Defendants since late 2013. Defendants cannot seriously argue, for example, that they have not had an opportunity to take discovery on Sun's pre-acquisition license and support policies. They have taken the depositions of Dan Goe, Steve

Murphy, Robbin Henslee, Gerry Haskins, Chris Armes, and many others on issues related to Sun's pre-acquisition policies. Those witnesses explained that Sun *always* restricted the ability of customers to access many Solaris patches without a support contract—and they therefore confirmed that Sun's policies were quite similar to the Oracle policies that Defendants now challenge. Nor can Defendants argue that they haven't had an opportunity to take discovery on their own wrongful conduct, which forms the basis of Oracle's unclean hands defense. Indeed, that is the very conduct that prompted Oracle to file its complaint in this case, and has been the primary focus of this litigation since the beginning.

Oracle's proposed amended answers do not materially change the theory of its existing affirmative defenses and propose to add one new defense based on Defendants' recent discovery responses. The proposed amended pleadings also rely on facts that Defendants have had for months; indeed, the *Noerr-Pennington* defense Oracle seeks to add is based on Defendants' sworn responses to Oracle's interrogatories and the deposition testimony of Defendants' most senior executives. In this situation, courts have found no undue prejudice even after the close of fact discovery. *See, e.g., Ciampi v. City of Palo Alto*, No. 09-CV-02655-LHK, 2010 WL 5174013, at *2 (N.D. Cal. Dec. 15, 2010) (granting motion for leave to amend after the close of fact discovery, noting that "Defendants have had equal access to the additional facts alleged and are unlikely to be unduly prejudiced by their addition to the Complaint").

### 3. Oracle's Proposed Amended Answers Serve An Important Purpose

Oracle does not seek leave to amend in bad faith or to pursue an improper motive. While Oracle's original answers meet the pleading standard, additional diligence and discovery that has been conducted since their filing will allow Oracle to expand on the factual bases for its affirmative defenses—and to add a defense based on Defendants' discovery responses, which confirm that the basis for the claimed interference is protected by *Noerr-Pennington*. Among other things, Oracle has now responded to Terix's contention interrogatory seeking the full factual bases for Oracle's affirmative defenses. Oracle now desires to supplement its answer with these additional facts.

1       There is no evidence, much less the required "strong evidence," to suggest that any of

2 these factors weigh against Oracle's motion for leave to amend its answers. The Court may

3 freely grant Oracle's motion for leave.

4 **IV.    CONCLUSION**

5       For the reasons stated, Oracle respectfully requests that the Court deny Defendants'

6 motion to strike and grant Oracle leave to amend its answers to plead additional facts and bases

7 in support of its affirmative defenses.

8

9 Dated: January 20, 2015               Respectfully Submitted,

                                 LATHAM & WATKINS LLP

10

11

                              By:   */s/ Christopher S. Yates*

12                                     Christopher S. Yates

13                                     Attorneys for Plaintiffs
                                    Oracle America, Inc. and

14                                     Oracle International Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28