MORGAN, LEWIS & BOCKIUS LLP
Rollin B. Chippey, II (SBN 107941)
rchippey@morganlewis.com
Thomas S. Hixson (SBN 193033)
thomas.hixson@morganlewis.com
Kevin M. Papay (SBN 274161)
kevin.papay@morganlewis.com
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286

ORACLE CORPORATION
Dorian Daley (SBN 129049)
dorian.daley@oracle.com
Deborah K. Miller (SBN 95527)
deborah.miller@oracle.com
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114

LATHAM & WATKINS LLP
Daniel M. Wall (SBN 102580)
dan.wall@lw.com
Christopher S. Yates (SBN 161273)
chris.yates@lw.com
Christopher B. Campbell (SBN 254776)
christopher.campbell@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095

ORACLE CORPORATION
Jeffrey S. Ross (SBN 138172)
jeff.ross@oracle.com
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273

Attorneys for Plaintiffs
Oracle America, Inc., and Oracle
International Corporation

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>TERIX COMPUTER COMPANY, INC., a California corporation; MAINTECH INCORPORATED, a Delaware corporation; VOLT DELTA RESOURCES, LLC, a Nevada limited liability company; SEVANNA FINANCIAL, INC.,  a Nevada corporation; WEST COAST COMPUTER EXCHANGE, INC., a Nevada corporation; and DOES 1–50,<br><br>Defendants. | No. 5:13-cv-03385 PSG<br><br>**ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Date:        March 17, 2015<br>Time:       10:00 a.m.<br>Location:  Courtroom 5, 4th Floor<br>Judge:      Hon. Paul S. Grewal<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 2

II.   FACTS .................................................................................................................. 4

    A.    Terix's Illicit Business Model and Scheme To Conceal It ..................... 4

    B.    Terix's Discovery Misconduct .............................................................. 5

    C.    Joyce's Eleventh Hour Forced Confession .......................................... 7

III.  REQUESTED RELIEF ......................................................................................... 8

    1.    The following orders and judicial findings: ........................................... 8

    2.    The following jury instructions: ............................................................ 8

        a.    Concealment of Evidence of Liability .................................... 8

        b.    Permissive Adverse Inference - Specific Claims .................... 9

        c.    Punitive Damages - Concealment of Evidence of Liability ..... 9

        d.    Permissive Adverse Inference - General ................................. 9

        e.    Witness Credibility ............................................................... 10

    3.    The following designated facts taken as established for trial: ............. 10

    4.    Monetary sanctions, including recovery of fees and costs associated with Oracle's filing of this motion; and ..................................................... 10

    5.    Any other or further relief deemed appropriate by the Court. ............ 10

IV.   ARGUMENT ...................................................................................................... 10

    A.    The Court May, And Should, Sanction Terix's Discovery Misconduct ............. 10

    B.    Oracle's Requested Findings of Fact and Jury Instructions Should Be Used at Trial ............................................................................................... 15

    C.    Monetary Sanctions ........................................................................... 18

V.    CONCLUSION ................................................................................................... 18

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Chicago Transit Auth.*,
    317 F.3d 696 (7th Cir. 2003)................................................................. 13

*Anderson v. Air W., Inc.*,
    542 F.2d 522 (9th Cir. 1976)................................................................. 13

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
    69 F.3d 337 (9th Cir. 1995)............................................................. 16, 17

*Aoude v. Mobil Oil Corp.*,
    892 F.2d 1115 (1st Cir. 1989)............................................................... 16

*Apple Inc. v. Samsung Elec. Co., Ltd.*,
    881 F.Supp.2d 1132 (N.D. Cal. 2012)................................................. 11

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    2012 WL 5451411 (N.D.Cal.).............................................................. 18

*Arnold v. Cnty. of El Dorado*,
    2012 WL 3276979 (E.D. Cal.).............................................................. 12

*Brown v. Oil States Skagit Smatco*,
    664 F.3d 71 (5th Cir. 2011).................................................................. 12

*Chavez v. City of Albuquerque*,
    402 F.3d 1039 (10th Cir. 2005)............................................................ 12

*Combs v. Rockwell Int'l Corp.*,
    927 F.2d 486 (9th Cir. 1991)................................................................ 16

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002)................................................................ 12

*Fendi Adele v. Filene's Basement, Inc.*,
    2009 WL 855915 (S.D.N.Y.)............................................................... 14

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001)................................................................ 11

*Halaco Eng'g Co. v. Costle*,
    843 F.2d 376 (9th Cir. 1988)................................................................ 13

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

*Keithley v. The Home Store.com, Inc.*,
  2008 WL 3833384 (N.D. Cal.)................................................................................*passim*

*Metrokane, Inc. v. Built NY, Inc.*,
  2008 WL 4185865 (S.D.N.Y.) .................................................................................. 17, 18

*In re Napster, Inc. Copyright Litigation*,
  462 F.Supp.2d 1060 (N.D. Cal. 2006) ................................................................. 12

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
  427 U.S. 639 (1976) (per curiam) ....................................................................... 11

*North Am. Watch Corp. v. Princess Ermine Jewels*,
  786 F.2d 1447 (9th Cir. 1986)............................................................................... 14

*Oracle USA, Inc. v. SAP AG*,
  2009 WL 3009059 ................................................................................................. 11

*In re PPA Products Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006)............................................................................... 13

*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997)................................................................................. 14

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010) .................................................................. 11

*Pope v. Federal Exp. Corp.*,
  974 F.2d 982 (8th Cir. 1992)................................................................................. 13

*Projects Mgmt. Co. v. Dyncorp. Intern., LLC*,
  734 F.3d 366 (4th Cir. 2013)................................................................................. 16

*Reilly v. Natwest Markets Group Inc.*,
  181 F.3d 253 (2d Cir. 1999).................................................................................. 17

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002)............................................................................ 11, 17

*Silvestri v. General Motors*,
  271 F.3d 583 (4th Cir. 2001)................................................................................. 11

*Staley v. U.S. Bank National Assoc.*,
  2013 WL 331271 (D. Idaho) ........................................................................ 12, 13, 17

*United Medical Supply Co. v. United States*,
  77 Fed. Cl. 257 (Fed. Cl. 2007) ........................................................................... 11

iii

No. 5:13-cv-03385 PSG

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
 158 F.3d 1051 (9th Cir. 1998)............................................................................................ 12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
 259 F.3d 1101 (9th Cir. 2001)............................................................................................ 11

*Zubulake v. UBS Warburg LLC*,
 229 F.R.D. 422 (S.D.N.Y. 2004) .................................................................................. 13, 15

**Federal Statutes**

18 U.S.C. § 1030 ................................................................................................................... 15

18 U.S.C. § 1621 ................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 26(e)...................................................................................................... 11, 12, 16

Fed. R. Civ. P. 37 ............................................................................................ 11, 12, 16, 17, 18

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE that on March 17, 2015 at 10:00 a.m., in Courtroom 5 of the above-listed Court, Plaintiffs Oracle America, Inc. and Oracle International Corporation (together, "Oracle") will, and hereby do, move for an order for sanctions, pursuant to the Court's inherent authority to control the judicial process and Federal Rule of Civil Procedure 37, against Defendants TERiX Computer Company, Inc., Sevanna Financial, Inc. ("Sevanna"), and West Coast Computer Exchange, Inc. ("WEX") (all together, "Terix")[1] for withholding, concealment, and untimely production of highly relevant materials.  This motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities, and Declaration of Nargues M. Eder, the pleadings on file in this matter, and such oral argument as the Court permits.

As described more fully in Part III, below, Oracle seeks an order sanctioning Terix and awarding other relief related to its discovery misconduct, including rulings on admissibility of evidence, findings of facts taken as established for trial, jury instructions, and attorneys' fees incurred in bringing this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Should Terix be sanctioned for withholding, concealing, and repeatedly offering false testimony for more than a year about highly relevant evidence both probative of Oracle's claims and fatal to Terix's central license defense?

Which sanctions are appropriate to punish and deter Terix's concerted discovery misconduct and mitigate the resulting prejudice to Oracle?

---

[1]  Defendant Sevanna is owned by Terix CEO Bernd Appleby and COO James Olding.  Dhall 145:4-14 (ED, Ex. 4).  Defendant WEX is a Terix subsidiary.  Dhall 165:10-166:4.  The evidence supporting this motion is attached to the Declaration of Nargues M. Eder and cited as "ED, Ex. __."  Deposition testimony is cited as "Deponent Page:Line."  Terix's most recent interrogatory responses are cited as "TIR".

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is about Defendants' deliberate, pervasive downloading, copying and distribution of Oracle's copyrighted software, specifically Solaris and firmware patches, bug fixes and updates (collectively, "updates" or "patches").  From the beginning, Terix's principal defense has been that it was acting as its customers' "agent," utilizing their supposed license rights by logging on to My Oracle Support ("MOS") using credentials specific to each customer to download patches for that customer, in essentially the same way that a customer would obtain patches itself.[2]  Critically, however, Terix has consistently, and vehemently, denied "cross-use" of patches—unlawfully using patches downloaded with one customer's credential to support different customers—and has admitted that doing so violates "IP rules" and "misuses" the "licensing rights" it purports to rely on.

Terix's denial is false.  As Oracle recently discovered, Terix failed to produce, concealed, and provided repeated false testimony related to critical evidence that proves its illegal downloading and distribution of patches, and undercuts Terix's central license defense, even as Terix alleges it.  On January 13, 2015, after the close of fact discovery, Terix's Technical Services and Software Support Manager, Jason Joyce, admitted for the first time that Terix had failed to produce the contents of both a Terix-issued laptop Joyce used to download and provide Oracle's patches to Terix's customers and a "repository" of Solaris patches that Joyce, with Terix CEO Bernd Appleby's approval, downloaded (using phony Terix d/b/a "Summit" credentials) and provided to various customers.  Joyce admitted, and this evidence establishes,

---

[2]  The defense rests on the fatally flawed premise that Terix could put only one of a customer's servers under support but then use patches obtained with credentials associated with that lone server to support thousands of other servers not under contract with Oracle at all.  Oracle recognizes no such license rights and requires its customers to have support contracts covering all servers needing patches and updates.  Terix nevertheless claims that it alone has discovered this alleged loophole in Oracle's license and support regimes that allowed it a way to obtain and provide, for free and forever, patches that all of Oracle's other large, sophisticated customers pay many millions of dollars for.  As the Court knows, Oracle has moved for summary judgment on Terix's license defense, which has no merit as a matter of law.

not only unlawful copying but also unlawful cross-use, contrary to Terix's repeated, sworn testimony that it did not cross-use Oracle's software.  Terix's centerpiece license defense, meritless on its own terms, does not even pretend to excuse this recently confessed conduct. (Part II.B, below).

Not only did Terix fail to produce that highly probative evidence of its misconduct for nearly a year, Joyce, Appleby, and Terix's corporate representative witness on the issue, Atull Dhall, concealed and lied under oath about its existence.[3]  In March 2014, Dhall swore that Terix did not use repositories for cross-patching between customers and that all repositories had been deleted in 2011-12.  In May, Joyce testified that no Solaris repository existed and that no customer's repository was ever cross-used for another.  In December, Appleby, who authorized Joyce to create the now identified Solaris repository and provide customers patches from it, also swore no such repository existed.  Rounding out the Terix executive team, EVP Lawrence Quinn testified that Oracle software patches existed only temporarily on Terix's FTP site (not in a repository) and had been deleted; and COO James Olding testified no Solaris repository existed. Joyce also failed to disclose his Solaris patching laptop to counsel for production and claimed he "forgot" about it, notwithstanding its obvious relevance to Oracle's claims and Terix's central license defense.[4]

---

[3]  The contents of the laptop and repository were, of course, responsive to Oracle's requests for production, including "All Documents Concerning any downloading or copying by You of any Software and Support Materials, including forensic copies of all Software and Support Materials that have ever been in Your possession, custody, or control" and "All Documents any of Your employees, including without limitation Jayson Joyce, took, acquired, copied, was sent, or brought with them from Oracle."  RFP 28 (served on 10/15/13); RFP 51 (served on 4/11/14) (ED, Exs. 1 and 2).  "Documents" includes "without limitation, … computerized, electronic, or other matter, in whatever form" and further includes "computer and network activity logs; data on hard drives; backup data; data on removable computer storage media such as tapes, disks, and cards; printouts; document image files; web pages; databases; spreadsheets; software; hardware ....".  ED, Ex. 1 at ¶ 5; Ex. 2 at ¶ 6.

[4]  Some three weeks after Appleby's confession, Terix finally produced files from the Solaris repository on February 2 and from the laptop on February 4. ED, ¶ 14.  Unfortunately, Terix's obfuscation continued in the meantime.  Its counsel claimed the repository had been "already produced" but, when pressed, admitted that was false. ED, Ex. 11.  Counsel also claimed, also wrongly, that Terix had previously produced the laptop's contents. *Id.*  Then Terix failed, contrary to its prior assurances, to produce forensic images of the laptop and repository, resulting

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

Terix's year of concerted evidence concealment violated its discovery obligations, prejudiced Oracle, and abused the judicial process.  Fact discovery is closed and expert reports are a few weeks away.  Oracle and its experts have been unable to review this highly inculpatory evidence, to take further discovery related to it, or to analyze it for inclusion in expert reports.  In addition, Defendants have bogged this case down with extensive, repetitive and burdensome discovery on their purported license defense.  While Oracle's pending summary judgment motion (filed without the benefit of the concealed evidence) will show that defense to be baseless, the defense does not even purport to reach the cross-use Joyce finally admitted and the concealed evidence proves.

Oracle therefore requests sanctions, as described below, to mitigate the prejudice it has caused Oracle and to punish Terix for its egregious discovery misconduct and perjury.

## II.    FACTS

### A.    Terix's Illicit Business Model and Scheme To Conceal It

Terix performs third party maintenance support for Oracle hardware and Solaris.  Terix admits it "███████████████████████████████████████████████████" for more than 80 of its customers, and provided firmware updates to some 50 more.  TIR 1 at 5:21-14:2 (ED, Ex. 15); Dhall 96:11-22, 142:7-21 (ED, Ex. 4).  Terix's primary business practice for performing Solaris support was to put a single customer server under support with Oracle (sometimes a server purchased for this specific purpose but not part of the customer's actual business) and then, in violation of Oracle's licenses, use the customer's login credential to obtain patches for all other servers that Terix agreed, for a fee, to support.  Olding 194:2-16 (ED, Ex. 7).  As one of many ways that it sought to mask its illegal conduct, Terix called its various support strategies "Boeing," "Tank" or "Submarine."  Appleby 39:23-40:23 (ED, Ex. 8).[5]  Terix's

_____

in omission of relevant metadata and further delay.  *See id.*  Terix re-produced the materials on February 10, less than four weeks before expert reports are due.

[5]  A "Tank" is an x86-based machine Terix would buy and register with Oracle in the customer's name, then use to access MOS and download Solaris patches to provide to Terix's customers.  Joyce 104:19-105:18 (ED, Ex. 3).  Joyce ultimately admitted that his withheld laptop was a "Tank" machine.  Part C, below.

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

1   "Playbook" for providing illicit Solaris and firmware support included a long list of "cloak and

2   dagger" code words, phony companies, made-up employees, and instructions to its employees

3   and customers to conceal its identity and avoid detection by Oracle. *See* D.I. 488 at

4   TRX0120407 (ED, Ex. 12).

5                  **B.      Terix's Discovery Misconduct**

6          Terix's concealment of its unlawful conduct did not end with the filing of this case, but

7   continued through more than a year of discovery. While conceding that Terix (purportedly under

8   license) regularly provides support for its customers' servers that were not under an Oracle

9   support contract, Terix has steadfastly denied "cross-use," the practice of using Solaris patches

10  downloaded with one customer's credential to support another. Terix's witnesses clearly

11  understood that maintaining a generic Solaris repository puts the lie to its denial of cross-use and

12  its central license defense: Solaris patches downloaded into a generic repository, using one

13  customer's MOS credentials, would invariably be distributed from it to other customers - a clear

14  copyright (and contractual and CFAA) violation unexcused by the baseless license defense.[6]

15  Appleby admitted that "obtaining a patch under one credential and then giving it to a company

16  that did not have a credential" would "violate the IP rules." Appleby 41:24-42:6 (ED, Ex. 8).

17  EVP Quinn testified (falsely) that Terix did not retain downloaded patches, because it wanted to

18  avoid them being "misused in a way of distribution to … another customer because it's specific

19  to that customer, it's specific to that customer's credential, and it's specific to that customer's

20  agency relationship with [Terix] and their licensing rights." Quinn 437:8-20 (ED, Ex. 5).

21         Throughout 2014, a half dozen Terix witnesses falsely denied under oath that Terix

22  maintained a generic "repository" of Solaris patches that it used to provide software support to

23  ───────────────────────────

24  [6] Terix's assertion that its conduct was somehow licensed expressly does not apply to cross-use.
    *See* TIR at 21:25-22:1 (Terix's license defense, in sum, is that ███████████████████████████

25  ███████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████") (ED, Ex. 15). In other words, Terix
    claims that each Oracle server or Solaris purchaser received perpetual rights to receive all

27  patches for free. The defense is meritless, but in any event does not even purport to justify using
    one customer's credential to provide patches to another.

28

                                        5                           No. 5:13-cv-03385 PSG

A/76688583 1

its customers.[7]  Terix's founder and CEO Appleby testified, "just to be clear, we don't store any

patches in our possession.  *We don't have a repository of patches that we go into.*"[8]  Appleby

(12/22/14) at 143:19-144:4 (ED, Ex. 8) (emphasis supplied); *see also* Quinn 442:6-9 (Q: Are

there any other noncustodial sources of information … that you're aware of that would contain

information about Solaris patches?  A: Not that I'm aware of, no.") (ED, Ex. 5); Huang 103:7-9

(Q: Are you aware of any Solaris patch repository at Terix?  A: No.) (ED, Ex. 6); Olding 207:24-

208:8 (same) (ED, Ex. 7).  Terix's witnesses, including Joyce, specifically and falsely testified

that no Solaris repository existed in 2014 when they were deposed.  Joyce 28:8-14(ED, Ex. 3);

Dhall 37:3-8 (ED, Ex. 4); Quinn 436:8-13 (ED, Ex. 5); Huang 103:7-15 (ED, Ex. 6). [9]

Appleby, Joyce and corporate representative Dhall also swore that no cross-use occurred.

As Appleby put it, "Whenever we do have a request for a patch, *we always initiate the patch

request using the active credentials of that particular customer.  So we don't have a repository of

Solaris patches just laying around for distribution*."  Appleby (12/22/14) at 143:25-144:4 (ED,

Ex. 8) (emphasis supplied).  Joyce explicitly testified that no repository "in place for a customer

[was] used for another customer."  Joyce 236:11-13 (ED, Ex. 3).  Terix corporate representative

Dhall affirmed: "It's our process that you would provide a patch only to the customer for whom

you have a credential."  Dhall 36:15-37:2 (ED, Ex. 4).[10]

---

[7]  The terms "repository" and "container" are used interchangeably in the testimony.  *See* Joyce 140:21-24 (ED, Ex. 3).  The difference between a "generic" repository, from which patches are distributed to various customers, and a customer-specific repository, from which patches are distributed only to that customer, is essential.  Terix's conduct related to both is unlawful, but only the former is admittedly unlicensed cross-use.  *See* below.

[8]  This is not the first time Appleby has decided to withhold information about Joyce's activities.  *See* ED, Ex. 16; Appleby 424:15-25, 428:13-429:21 (ED, Ex. 8).

[9]  Joyce expressly distinguished that situation from the generic firmware repository he said he maintained on his "personal [Terix-issued] laptop."  Joyce 28:8-29:6, 30:13-31:22 (ED, Ex. 3).  This case involves infringement of both Solaris and firmware copyrights, and related violations, but the vast majority of Defendants' illicit downloads and the parties' litigation efforts relate to Solaris.  Oddly, Terix counsel conflated the admitted firmware repository with the concealed Solaris repository in responding to Oracle's recent questions about the latter.  ED, Ex. 11.

[10]  Dhall testified as Terix's corporate representative on, among other topics, Terix's downloading or copying of Software and Support materials, including the identities of all the persons involved, the Software and support materials downloaded, where the downloaded

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583.1

### C.    Joyce's Eleventh Hour Forced Confession

On January 13, 2015, Joyce was deposed again.  He was shown a document with his notes on it, referring to Solaris 9 patches he had provided to customers from a "███" ED, Ex. 10.  After some dissembling, Joyce was forced to admit all of that prior testimony was false:  In fact, with Appleby's approval, Joyce had created and used a generic Solaris repository to provide patches to customers.  Joyce 518:18-519:17, 521:23-522:4, 526:1-20 (ED, Ex. 9).[11]  Appleby had authorized Joyce to cross-use the (fake customer) Summit credential to create the generic Solaris repository because Joyce "was afraid that Oracle was going to turn off all patch access for Solaris 8 and 9, and we just wanted to have a copy of those in case a customer ever needed it in the future."  Joyce 523:20-524:20, 525:4-7 (ED, Ex. 9).

Joyce also confessed that he had a Terix-supplied "Tank" "patching laptop" that he used to build custom Solaris patches for customers using patches he downloaded from MOS with "any of the customer credentials … or the WEX, Sevanna, or Summit" credential - another admission of cross-use.  Joyce 492:12-18 (ED, Ex. 9).  Neither the laptop nor the repository had been provided to counsel, imaged, or produced to Oracle.  Joyce 493:5-8 (ED, Ex. 9).  Joyce claimed he "had forgot [he] was even using" the laptop, and had stopped using it in 2012 or 2013 (he couldn't even remember when he had stopped).[12]  Joyce 493:5-22, 494:10-17 (ED, Ex. 9).  Even

---

Software and Support Materials are/were retained, and Terix's Use of the downloaded Software and Support Materials.  Dhall 27:12-28:1; Terix 30(b)(6) Notice at ¶11 (ED, Ex. 14).

[11]  Even when caught, Joyce tried to get out of it.  He first claimed "I don't know why I said 'repository.'  I most likely would have downloaded that [Solaris patch] just using the Summit credential."  Joyce 519:2-7.  He then admitted that was false.  In fact, he had provided the patch from a generic Solaris repository he had created in 2011.  *Id.* at 521:23-525:3.  Joyce also claimed the repository contained only "publicly available" Solaris patches he had downloaded in 2009, for which no MOS credential was required.  *Id.* at 520:14-18.  He then admitted, in fact, that he had used the (phony) Summit credential to download the Solaris 9 patches used to populate the repository in 2011, which "would have required a credential."  *Id.* at 520:3-12, 525:4-7, 526:1-20.

[12]  Joyce's memory loss is, at least, surprising.  He was regularly involved in the downloads at the heart of this case, and was questioned extensively about it.  He had also "been thinking about the tank process" for which the laptop was used since 2011, was concerned it was illegal, and had refused to do it even at the cost of his job.  Joyce had told Dhall: "This cannot in any way be above board and I will not participate in this process once the ███ [support project] is finished.

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

1    if that were true, an initial review shows that the laptop was used in July and August 2014,

2    following his initial deposition, and again in December, yet Terix never produced it until

3    February 2015, following Joyce's second deposition.  ED, ¶ 16.[13]

4    **III.    REQUESTED RELIEF**

5            Oracle requests the following relief from Terix's discovery misconduct:

6            **1.      The following orders and judicial findings:**

7                    a.      An order sanctioning Terix for its untimely production of, and false

8    testimony under oath regarding, highly relevant evidence, in the form of the Joyce patching

9    laptop and generic Solaris repository (collectively, the "concealed material") and providing the

10   specific relief set forth below.

11                   b.      Terix's, Sevanna's and WEX's sixth affirmative defenses (D.I. 359, 360,

12   and 361) do not apply to their cross-use of Oracle's credentials and copyrighted software.

13                   c.      The concealed material is deemed authentic and admissible at trial if

14   offered by Oracle for any purpose.

15                   d.      Oracle may introduce evidence of Terix's evidence concealment,

16   including false testimony, at trial.

17           **2.      The following jury instructions:**

18                   a.      *Concealment of Evidence of Liability*

19           The Court has concluded and you should accept as true the fact that the Terix Defendants

20

21   I am sorry, but if worst came to worst I do not want to be a part of the ramifications.  I need to
     protect my family."  ED, Ex. 13.  Appleby subsequently reassured Joyce, and Terix has
22   continued its Tank process to the present, despite Joyce's continued reservations that it isn't
     "aboveboard."  Joyce 460:14-461:18, 464:25-466:2 (ED, Ex. 9).  The laptop also appears to be
23   the same "Terix-issued laptop" Joyce remembered well enough back in May to testify contains a
     generic firmware (not Solaris) repository he uses to provide firmware patches to customers.
24   *Compare* Joyce 31:2-33:9 (ED, Ex. 3) *with* Joyce 491:10-19 (ED, Ex. 9).

25   [13]  There appears to have been additional activity on the laptop in 2013 and 2014, before Joyce's
26   first deposition, and contrary to his testimony that he had stopped using it.  ED, ¶ 16.  There was
     also a spike of activity on the laptop the day after Joyce's recent deposition, though Terix took
27   no affirmative steps to produce it until Oracle made a formal request.  ED, ¶ 16 & Ex. 11.
     Oracle is continuing to investigate and reserves its rights to raise issues uncovered subsequently.

28
                                                           8                   No. 5:13-cv-03385 PSG

A/76688583.1

wrongfully concealed and failed to produce in a timely fashion certain relevant evidence, namely the contents of a laptop and a generic Solaris repository that Terix employee Jason Joyce used to provide Solaris patches to various Terix customers.  Therefore, you are instructed that this evidence establishes willful infringement of Oracle's copyrighted software, breach of contract, common law fraud and computer fraud.

### b. *Permissive Adverse Inference - Specific Claims*

The Court has concluded and you should accept as true the fact that the Terix Defendants wrongfully concealed and failed to produce in a timely fashion certain relevant evidence, namely the contents of a laptop and a generic Solaris repository that Terix employee Jason Joyce used to provide Solaris patches to various Terix customers.  You may infer from the Terix Defendants' concealment of this evidence that the evidence is probative of the Terix Defendants' willful infringement of Oracle's copyrights, breach of contract, common law fraud and computer fraud.

### c. *Punitive Damages - Concealment of Evidence of Liability*

The Court has concluded and you should accept as true the fact that the Terix Defendants wrongfully concealed and failed to produce certain relevant evidence, namely the contents of a laptop and a generic Solaris repository that Terix employee Jason Joyce used to provide Solaris patches to various Terix customers.  You may consider the Terix Defendants' concealment of this evidence in your determination of the Terix Defendants' consciousness of their wrongdoing and your determination of whether the Terix Defendants' conduct that harmed Oracle was malicious, oppressive, fraudulent, or in reckless disregard of Oracle's rights.

### d. *Permissive Adverse Inference - General*

The Court has concluded and you should accept as true the fact that the Terix Defendants wrongfully concealed and failed to produce in a timely fashion certain relevant evidence, namely the contents of a laptop and a generic Solaris repository that Terix employee Jason Joyce used to provide Solaris patches to various Terix customers.  You may infer from the Terix Defendants' concealment of this evidence that the evidence is probative of Oracle's claims against the Terix Defendants and unhelpful to the Terix Defendants' affirmative defenses.

### e.   Witness Credibility

The Court has concluded and you should accept as true the fact that the Terix Defendants wrongfully concealed and failed to produce in a timely fashion certain relevant evidence, namely the contents of a laptop and a generic Solaris repository that Terix employee Jason Joyce used to provide Solaris patches to various Terix customers.  In particular, the Court has concluded that Mr. Appleby, Mr. Dhall and Mr. Joyce gave false testimony about the existence and use of the laptop and repository.  Therefore, you may choose not to believe other aspects of those witnesses' testimony.  In addition, if you decide that any other Terix witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.

**3.    The following designated facts taken as established for trial:**

a.      In the regular and ordinary course of business, the Terix Defendants unlawfully cross-used downloaded Solaris patches, in violation of Oracle's licenses.

b.      In the regular and ordinary course of business, the Terix Defendants unlawfully cross-used login credentials to access My Oracle Support, in violation of Oracle's licenses.

** For the purposes of these designated facts, "Cross-use" shall mean: (a) with respect to Oracle software and support materials, use of software and support materials licensed to a particular customer for purposes unrelated to that customer's internal business operations; and (b) with respect to login credentials, use of a particular customer's login credentials to access Oracle's support websites for purposes unrelated to that customer's internal business operations.

**4.    Monetary sanctions, including recovery of fees and costs associated with Oracle's filing of this motion**; and

**5.    Any other or further relief deemed appropriate by the Court**.

## IV.   ARGUMENT

### A.    The Court May, And Should, Sanction Terix's Discovery Misconduct

"Even in the absence of a discovery order, a court may impose sanctions on a party for

A/76688583 1

misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) (citation omitted). "This inherent power has been recognized in American jurisprudence for almost two centuries as essential to the orderly administration of the judicial process." *Apple Inc. v. Samsung Elec. Co., Ltd.*, 881 F.Supp.2d 1132, 1135 (N.D. Cal. 2012). The policy underlying this power is "the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth. . . . The courts must protect the integrity of the judicial process because, '[a]s soon as the process falters . . . the people are then justified in abandoning support for the system.'" *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2010) (alterations in original) (*quoting Silvestri v. General Motors*, 271 F.3d 583, 589 (4th Cir. 2001)). Sanctions are available to the district courts "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam). In addition, Rule 37 allows the Court to award sanctions for failure to supplement a party's document production in violation of Rule 26(e). Fed. R. Civ. Proc. 37(c)(1).

"[S]anctions are available under the Court's inherent power if 'preceded by a finding of bad faith, or conduct tantamount to bad faith,' such as recklessness 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" *Keithley v. The Home Store.com, Inc.*, 2008 WL 3833384 at *2 (N.D. Cal.), *quoting Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Terix's repeated false testimony about the Solaris repository and patching laptop demonstrates its bad faith and its improper purpose to conceal evidence of its liability and prop up its facially invalid license defense. *See United Medical Supply Co. v. United States*, 77 Fed. Cl. 257, 258-59 (Fed. Cl. 2007) ("*Aside perhaps from perjury*, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence.") (emphasis supplied).

"A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 2009 WL 3009059, at *2 (*citing Yeti by Molly, Ltd. v. Deckers*

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

*Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)); *see also Keithley*, 2008 WL 3833384, *3 ("Sanctions for violations of Rule 37, by contrast, may be imposed for negligent conduct."). Terix's yearlong failure to produce the Joyce laptop and Solaris repository violated its obligations under Rule 26(e) and thus Rule 37(c)(1). *See Staley v. U.S. Bank National Assoc.*, 2013 WL 331271, *4-5 (D. Idaho).

"Available sanctions range from monetary sanctions to adverse inference instructions to dismissal." *Keithley*, 2008 WL 3833384 at *2, **16-20 (awarding mandatory adverse inference instruction and hundreds of thousands in monetary sanctions under the court's inherent power and Rule 37 for spoliation, late production, and misrepresentations about existence of highly relevant evidence); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006) (under inherent power, district courts have "'broad discretion to make ... evidentiary rulings conducive to the conduct of a fair and orderly trial.'") (citations omitted).

Terix's false testimony, repeated by all of its key witnesses for nearly a year, by itself, warrants severe, even terminating, sanctions.

> Perjury is much more than simply a "gotcha," harmful in effect only for the reason that one got caught. Litigation is not a game in which perjury warrants a five yard penalty for a minor untruth, fifteen yards if the perjury was really serious. Rather, perjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process. If one can be punished for perjury with up to five years imprisonment, 18 U.S.C. § 1621, it should not seem out of place that a civil action might be dismissed for the same conduct.

*Arnold v. Cnty. of El Dorado*, 2012 WL 3276979, at *4 (E.D. Cal.); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (upholding default sanction against party who, although ultimately producing relevant documents, "not only failed to produce documents as ordered, but also misrepresented to both counsel and to the district court that the documents did not exist."); *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998) ("There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result."); *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 81 (5th Cir. 2011) (dismissal with prejudice was warranted for plaintiff's perjury at his deposition); *Chavez v.*

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

1     *City of Albuquerque*, 402 F.3d 1039 (10th Cir. 2005) (perjury in deposition and interrogatory

2     answers warranted dismissal); *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003)

3     (dismissal sanction for repeated discovery-related perjury was proper); *Pope v. Federal Exp.*

4     *Corp.*, 974 F.2d 982 (8th Cir. 1992) (affirming dismissal for perjured testimony).

5          Where a party produces documents late, "[p]rejudice from unreasonable delay is

6     presumed." *In re PPA Products Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006).[14] Here, the

7     delay – more than a year after the documents were requested, three weeks after the discovery

8     cut-off and five weeks before expert reports are due – was manifestly unreasonable, so prejudice

9     is presumed. But presumed or not, the prejudice is real and substantial. "[T]he effect of late

10    production cannot be underestimated." *Zubulake v. UBS Warburg LLC*. 229 F.R.D. 422, 436

11    (S.D.N.Y. 2004). Oracle and its experts should have been able to use this important evidence to

12    design and implement discovery and frame its summary judgment motion on the license

13    defense.[15] *See Anderson v. Air W., Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (the fact that this is an

14    "involved, complex case increases the prejudice from the delay. Early preparation and

15    participation are essential under such circumstances."). Had it been produced on time, Oracle

16    would have pursued different and additional lines of questioning with Terix's witnesses. It

17    cannot go back and start over. *See Staley*, 2013 WL 331271, *5 (late produced information

18    "would have been quite useful in the context of dispositive motions" and receiving party "must

19    go to trial without having had the chance to conduct additional discovery or depositions on these

20    very relevant facts").

21          Defendants' misconduct thus "deprived [Oracle] of any meaningful opportunity to follow

22

23    [14] Under the Court's inherent power, consideration of "the existence and degree of prejudice to the wronged party … is purely optional." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988).

24    [15] Oracle will not know the full extent of the prejudice until its experts have had time to analyze

25    the newly produced material. The production from the laptop alone contained 32 GB of data.

26    However, in the short time since the repository and laptop were produced, Oracle has determined that they were not produced in a forensically sound manner, nor in the manner in which Terix maintained them in the ordinary course. As a result, metadata has been lost, further prejudicing

27    Oracle and its experts' ability to analyze the new information while they wait for Terix to try again. ED, Ex. 11.

28

up on that [late-produced] information, or to incorporate it into [its] litigation strategy," and was highly prejudicial.  *See Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (affirming sanctions; "[m]any of the discovery responses eventually tendered by the plaintiffs came only as the discovery period was drawing to a close, or after it had already closed"); *North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir. 1986) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts."); *Fendi Adele v. Filene's Basement, Inc.*, 2009 WL 855955, *5 (S.D.N.Y.) ("[E]ven if the discovering party ultimately obtains, through Herculian and expensive effort, the discovery to which it was entitled, that does not preclude it from being awarded appropriate relief to remedy the injury, including monetary relief, that it has suffered."); *Keithley*, 2008 WL 3833384, *15 ("Plaintiffs have suffered prejudice; by making these late productions, Plaintiffs have so far been unable to engage in follow-up discovery, and the discovery they took based on the prior production of [related material] is incomplete.").

Terix's concealment and admittedly false testimony related to its cross-use of Oracle's MOS credentials and copyrighted software also allowed it to perpetuate its baseless license defense.  While, as its witnesses admitted, Terix has no license defense to cross-use, its discovery misconduct allowed it to waste Oracle's and the Court's time with that defense.  Terix questioned no fewer than 14 Oracle witnesses about Oracle's licenses and support policies (D.I. 426-1 at 2:13-15), and forced Oracle to develop and file its summary judgment motion without the benefit of the concealed evidence.  While meritless in any event, the license defense is an admitted non-starter given the cross-use Terix adamantly denied and concealed for a year but finally conceded.

Defendants' repeated false testimony, concealment and untimely production of highly probative evidence justifies, and requires, sanctions.  *See Keithley*, 2008 WL 3833384, * 16 ("Defendants' pattern of deceptive conduct and malfeasance in connection with discovery and production of documents under this Court's order and reckless and frivolous misrepresentations to the Court amounts to bad faith for purposes of sanctions under the Court's inherent power.");

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

1  *Zubulake v. UBS Warburg LLC.*, 229 F.R.D. 422, 436 (S.D.N.Y. 2004) (holding late production

2  "may well breach a party's duties to its opponent and to the court," and warrant imposition of

3  sanctions) (citation omitted).

**B.    Oracle's Requested Findings of Fact and Jury Instructions
        Should Be Used at Trial**

6        Terix's bad faith and willfulness in withholding relevant evidence and repeatedly offering

7  false testimony to conceal that evidence and its unlawful activities support (really, require) an

8  issue preclusion sanction.  This was no innocent mistake.  Terix denied and concealed evidence

9  of Solaris cross-use for nearly a year.  Terix's CEO Appleby and EVP Quinn admitted they knew

10  that each Oracle customer's license rights and MOS credentials are "specific to that customer,"

11  and that "obtaining a patch under one credential and then giving it to a company that did not

12  have a credential" would "misuse" Oracle's software and "violate the IP rules."  Quinn 437:8-20

13  (ED, Ex. 5); Appleby 41:24-42:6. (ED, Ex. 8)   Appleby and Joyce, the two masterminds of the

14  generic, cross-used Solaris repository, both testified unequivocally, and falsely, that no such

15  cross-use occurred or repository existed.  So did corporate representative Dhall, and others.

16  Even when confronted with his own reference to a Solaris "███," Joyce tried to deny it, and

17  Terix continued to withhold the laptop even after Joyce "remembered" and used it no later than

18  July 2014.  Part II.C, above.[16]  Joyce's (eventual) admitted use of "any of the customer

19  credentials" or the "WEX, Savanna, or Summit" credentials (Joyce 492:12-18 (ED, Ex. 9)) to

20  download Solaris patches for Terix's other customers constitutes knowing copyright

21  infringement, breach of the MOS terms of use, computer fraud and common law fraud.[17]

---

22  [16]  Joyce also claimed he "forgot" about his laptop, central to Terix's "Tank" support strategy

23  and also used for cross-use.  *Id.*  Even if that were true, it would not matter.  *See Zubulake v.*

24  *UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) (holding parties have an obligation to
   investigate how responsive documents are stored).  It was not true.  Joyce had used the laptop
   continually right up to January 2015.  Part C, above.  Still, Terix failed to produce it.

25  [17]  Terix admits that cross-use infringes and that MOS credentials are, according to the MOS

26  terms of use, "customer-specific."  *See* above.  The CFAA prohibits intentionally accessing
   Oracle's support websites without, or exceeding, authorization and obtaining information,

27  including Oracle software, from them.  18 U.S.C. § 1030.  Terix fraudulently misrepresented to
   its customers that its support activities were lawful, knowing they were not.

28

A/76688583.1

Accordingly, the Court should find, and instruct the jury, that the willfully concealed evidence establishes Terix's willful infringement (unexcused by license), breach of contract, and computer and common law fraud.  Requests for Relief 1.b, 2.a & 3, above; *cf.*, *e.g.*, *Projects Mgmt. Co. v. Dyncorp. Intern., LLC*, 734 F.3d 366, 374 (4th Cir. 2013) (affirming dismissal under inherent authority where plaintiff "made a calculated effort to shield its damages claim from the crucible of discovery by providing false answers to interrogatories, providing false deposition testimony, withholding a large number of relevant documents during discovery, and making late disclosures of material significance that continued until the day before trial was to begin."); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying a deposition[;] … the court's inherent powers, can be called upon to redress such mendacity."); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (holding that fraud on the court was shown "clearly and convincingly" to support dismissal where party had submitted false evidence and concealed authentic evidence); Fed. R. Civ. P. 37(b)(2)(A)(i) (trial court may enter order "directing that … designated facts be taken as established for purposes of the action, as the prevailing party claims"); Fed. R. Civ. P. 37(b)(2)(A)(ii) (court may enter order "prohibiting the disobedient party from supporting or opposing designated claims or defenses"); Fed. R. Civ. P. 37(c)(1)(B) (court may make jury aware of failure to provide information under Rule 26(e)).  In addition, the Court should instruct the jury that it may choose to disbelieve Appleby's, Dhall's and Joyce's other testimony.  *See* California Civil Jury Instructions (CACI) 107; Request for Relief 2.e.

Oracle's requested adverse inference instructions are also appropriate to remedy Defendants' concealment and untimely production.  "[I]t is appropriate to presume that where documents relevant to the merits of the litigation have been concealed the deception casts doubt on the concealing party's case." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995).  "In drawing an adverse inference, a court need not," but certainly could here, "find bad faith arising from intentional, as opposed to inadvertent, conduct." *Keithley*, 2008 WL 3833384, *3.

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

The requested adverse inference instructions are warranted here, without serious dispute. The Solaris repository and patching laptop were responsive to several discovery requests and Terix had no basis to withhold them. But it's much worse than that. Terix's senior executives admitted that cross-use infringes, falsely claimed that none occurred, and lied about and withheld evidence that proves it did. That evidence is highly relevant to Oracle's claims and Terix's central license defense, and its late production was prejudicial, presumptively and in fact. (Part A, above) In light of the case schedule and the importance of this information, it is only fair to help level the evidentiary playing field and punish Terix's discovery violations by permitting the jury to infer that its active concealment of the Solaris repository and patching laptop establishes its willful infringement of Oracle's copyrights, breach of contract, common law fraud, and computer fraud. *See Residential Funding*, 306 F.3d at 110 ("intentional or grossly negligent acts that hinder discovery support such an inference [that the evidence was harmful to the negligent party], *even if* those acts are not ultimately responsible for the unavailability of the evidence"); *see Staley*, 2013 WL 331271, **4-5 (granting adverse inference instruction, including that defendant "failed to comply with its discovery obligation[s]" under Rule 37 for late production of relevant information); *Keithley*, 2008 WL 3833384 at *16; Request for Relief 2.b, above.

Terix's concerted concealment of the repository and laptop also supports a permissive inference instruction that making them available to Oracle in discovery would have been unhelpful to Terix, and helpful to Oracle, in proving both liability and punitive liability. Requests for Relief 2.c & d, above. There can be no legitimate dispute about that, either. It is settled, and common sense, that the jury may infer that a party that fails to produce evidence would have been hurt, not helped, by it. *See, e.g.*, *Anheuser-Busch*, 69 F.3d at 354; *see also Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("eleventh hour" production before trial supported adverse inference instruction); *Metrokane, Inc. v. Built NY, Inc.*, 2008 WL 4185865, *3 (S.D.N.Y.) (granting adverse inference instruction where relevant emails authored by one of plaintiff's key employees were, after the close of fact discovery,

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1

revealed through a third-party's production; "There is no question that the e-mails are highly relevant to the claims and defenses in this case, and there is no dispute that they come within the scope of [defendant]'s written discovery requests. There is also no serious question that if [defendant] had received them in a timely fashion from [plaintiff], it would have pursued questioning about them with one or more of [plaintiff]'s representatives . . . .").

### C.    Monetary Sanctions

Oracle requests an order awarding monetary sanctions to reimburse Oracle for its fees and costs in submitting this motion. *See*, *e.g.*, Fed. R. Civ. P. 37(c)(1)(a); *Metrokane*, 2008 WL 4185865, at *5. Oracle's fees and costs incurred through January 31 are discussed in the Declaration of Thomas S. Hixson. The declaration sets forth, for each attorney, the number of hours reasonably expended on this motion, the specific tasks performed, and the 2015 hourly rate. Hixson Decl., ¶¶ 3-10. The hourly rates are reasonable, as confirmed by the 2013 American Intellectual Property Law Association's Billing Survey (for 2012 rates). *See id.* ¶¶ 14-15 & Exs. C and D; *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 5451411, *6-7 (N.D.Cal.) (approving 2012 rates of $219.84 to $800 for Samsung's counsel and $275 to $768 for Apple's counsel, based on AILPA survey). Oracle will supplement this information for fees incurred related to filing its reply brief, the hearing on this motion, and other related matters.

## V.    CONCLUSION

Oracle's requested sanctions are well-earned. Terix's blatant discovery misconduct has prejudiced Oracle and abused the judicial process. The motion should be granted.

DATED: February 10, 2014

Morgan, Lewis & Bockius LLP


By:        /s/Thomas S. Hixson
Thomas S. Hixson
Attorneys for Plaintiffs
Oracle America, Inc. and
Oracle International Corporation

ORACLE'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

A/76688583 1