John V. Picone III
Phone (408) 286-9800
Fax: (408) 938-6219
jpicone@hopkinscarley.com
Attorneys for Defendants and Counter-claimants Terix Computer Company, Inc., Sevanna Financial, Inc., West Coast Computer Exchange, Inc.

Thomas S. Hixson
Phone: 415.393.2000
Fax: 415.393.2286
thomas.hixson@morganlewis.com
Attorneys for Plaintiffs
Oracle America, Inc. and Oracle International Corporation

February 17, 2015

*Via ECF Filing*

The Honorable Paul Singh Grewal
United States Courthouse
Courtroom 5, 4th Floor
280 South 1st St.
San Jose, CA  95113

*Re:  Oracle America, Inc., et al., v. TERiX Computer Company, Inc., et al.,
Case No. 5:13-cv-3385-PSG*

Your Honor:

    Terix Computer Company, Inc. ("Terix"), Sevanna Financial ("Sevanna"), Inc., West Coast Computer Exchange, Inc. ("WEX") (collectively, "Terix Defendants") and Plaintiffs and Counter-Defendants Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle"), submit this joint letter brief regarding Oracle's inability to produce the website known as SunSolve, and other Sun websites, in this litigation.[1]  Defendants seek an order barring Oracle from introducing any evidence relating to the SunSolve or other Sun/Oracle websites at trial or in other proceedings in this litigation.  Oracle opposes such an order.

---

[1] The parties are presenting this dispute, consistent with prior practice and the Court's 8/21/14 Order, as a letter brief with no attachments.  At the Court's request, the parties will submit any of the various discovery requests and evidence cited below.  The parties request a hearing or telephone conference with the Court.

733\1188821.6

I.   **TERIX DEFENDANTS' STATEMENT**

The Terix Defendants asked Oracle to produce SunSolve and other Sun websites or permit inspection of same through a timely demand for inspection and request for production of documents pursuant to Fed. R. Civ. P. 34.  Oracle has not produced nor allowed inspection of the SunSolve website in this litigation because it destroyed the website in or around 2011.  Notably, Oracle should have preserved SunSolve and other Sun websites as early as 2010 when it: i) made a conscious business decision to change Sun's policies and procedures relating to current and future customers in an attempt to monetize Sun's intellectual property; and ii) received letters from the Service Industry Association and the Michigan Assistant Attorney General, and potentially others, challenging its changes to Sun's policies and licenses relating to Sun's intellectual property, including access to Solaris patches and updates.  Despite its failure to preserve clearly relevant evidence, Oracle has indicated that it may attempt to introduce into evidence portions of the SunSolve website that it was able to locate using the Internet Archive's Wayback Machine.[2]  Because Oracle failed to preserve SunSolve and other Sun websites, despite the known likelihood of potential litigation, this Court should exercise its inherent power to preclude Oracle from introducing any evidence from SunSolve, or any other Sun website, in this matter.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006) (noting that spoliation sanctions can be imposed pursuant to either the court's "inherent power" or under Rule 37).

In addition, Oracle has refused to allow inspection of My Oracle Support ("MOS"). Inspection of MOS is necessary because the Terix Defendants must be able to explore MOS and determine, among other things: i) what software and information can/could be downloaded; ii) under what terms and conditions software and information can/could be downloaded; iii) how any terms of use or other "agreements" contained on MOS changed over time; and iv) when those changes occurred.  In response to the Terix Defendants' inspection demand and requests for production, Oracle has responded that it has produced the information that Oracle deems relevant to proving their case.  This is not sufficient, especially given that Oracle has the burden of proof on these issues.  The Terix Defendants are entitled to test Oracle's theories and explore MOS for the reasons identified herein.[3]

Lastly, the Terix Defendants request that Oracle not be permitted to introduce any evidence from Oracle.com as it has failed to produce all versions of any agreements or terms of use residing thereon and the changes in those agreements and terms of use from 2010 to the present.[4]  It is Oracle's burden of proof on its claims for relief that incorporate any terms and conditions, agreements or materials from these referenced websites, and to the extent Oracle refused to allow inspection of MOS, failed to produce these seminal documents from

---

[2] "The Wayback Machine is a digital archive of the World Wide Web and other information on the Internet created by the Internet Archive, a non-profit organization, based in San Francisco, California."  *See* http://en.wikipedia.org/wiki/Wayback_Machine.

[3] For example, the Second Amended Complaint ("SAC") cites to MOS Terms of Use and Oracle.com Terms of Use as a basis for various allegations and claims for relief therein.  While portions of those terms of use and agreements are seemingly quoted in the SAC, there are no attachments to the SAC showing the date or complete language of the alleged terms of use.  These terms of use changed over time and Terix Defendants are entitled to inspect MOS to determine what terms of use and other agreements, if any, were in effect and the content of those terms of use during the relevant dates and time frames.

[4] Oracle was also obligated to produce all terms of use, other agreements and all iterations of same from 2010 to present that existed on Oracle.com in order to prove their contentions in this case.  Terix Defendants are not required to simply take Oracle's word that these cut and paste portions of terms of use were on the respective websites, word for word, on a particular date and at a particular time that the Terix Defendants may have accessed these websites.

Oracle.com, and failed to preserve Sunsolve, other Sun websites, MOS or Oracle.com for purposes of litigation, Oracle should be barred from introducing any evidence relating to same in this case.

### A. Oracle's Destruction of Relevant Websites/Information

After Oracle acquired Sun, it changed Sun's policies and procedures regarding Sun's intellectual property. Prior to this time, some Solaris patches and updates and firmware were publically available for free. Specifically, Oracle moved Solaris patches and updates as well as firmware from SunSolve to its own MOS (My Oracle Support) system. These changes led to widespread concerns from trade organizations within the industry such as Service Industry Association ("SIA")[5], as well as several State Attorneys General regarding potential antitrust implications of Oracle's changes to Sun's policies. As a result, on December 27, 2010, the Michigan Assistant Attorney General wrote to Oracle expressing the concerns with Oracle's changes to Sun's longstanding policies. Oracle was therefore on notice as early as December 2010 that it should be preserving all relevant evidence, including the SunSolve website.

Oracle's 30(b)(6) witness John Allen testified that shortly thereafter, in the "middle to the end of 2011," Oracle destroyed the SunSolve website. This was only months after Oracle received the letter from the Michigan Assistant Attorney General; and it was clear at that time that Oracle had an obligation to preserve evidence relating to these issues as the potential for litigation on these issues was high.[6]

During meet and confer, Oracle confirmed that it could not retrieve or reconstruct SunSolve or other Sun websites as they previously existed. Despite the destruction of the most relevant portion of SunSolve and other Sun websites, Oracle has indicated that it can still seek to introduce incomplete remnants of SunSolve it was able to retrieve from the Wayback Machine in this action.[7]

### B. Oracle Should Be Precluded From Introducing Portions Of The SunSolve Website In This Litigation

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation <u>or when a party should have known that the evidence may be relevant to</u>

---

[5] SIA, founded in 1985, is the aftermarket high technology service association that promotes partnerships, networking, customer choices and the bridge for communications between the manufacturer and service provider. SIA's goal is to equip its members with the information and resources that will help them thrive in the markets they service and compete on a level playing field around the globe. http://www.servicenetwork.org/.

[6] In addition, Oracle brought the first litigation regarding access to Solaris patches and updates against Service Key, LLC on February 17, 2012, just months after it destroyed the SunSolve website. *See Oracle America, Inc. v. Service Key, LLC et al*, Case No. 4:12-cv-00790-SBA (N.D. Cal. 2012). Oracle was certainly anticipating litigation on issues relating to access to Solaris patches and updates at some time prior filing the complaint against Service Key. Nonetheless, Oracle did not preserve SunSolve or other Sun websites before it undertook its current litigation campaign against third parties providing service and support services for Sun products.

[7] The only remnants of SunSolve are small portions of the website archived through the Wayback Machine. The Wayback Machine did not archive all of SunSolve and there is no complete archive showing which Solaris patches, updates and firmware were available and under what terms and conditions. Terix Defendants do not believe that self-serving print outs from the Wayback Machine from a particular date and time that contains information helpful to Oracle's case are sufficient to establish its burden of proof. The Wayback Machine information is not within Oracle's possession, custody and control and therefore it has no responsibility to search for relevant and responsive information contained therein as it would for documents within its possession, custody or control.

future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003) (emphasis added). "As a general matter, there is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced." *Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012). In the Northern District, the courts "generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" *Id*. at 991.

Here, Oracle was under a duty to preserve evidence relating to historical access to Solaris and Sun websites almost immediately after it acquired Sun and began its campaign to change Sun's policies and procedures in an effort to monetize Sun's intellectual property. This evidence included SunSolve and other Sun websites. Oracle raised industry-wide concerns regarding the changes it made to Sun's policies almost immediately after the acquisition. Oracle was then contacted by SIA and the Michigan Assistant Attorney General in 2010. Despite the clear indication that there was potential for litigation, Oracle chose to destroy SunSolve and other Sun websites. Moreover, Oracle was apparently contemplating its own litigation against third party providers of service and support for Sun products as early as 2011 or early 2012. This contemplated litigation provides yet another reason Oracle should have preserved SunSolve and other Sun websites instead of destroying them. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001) (Spoliation "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." [emphasis added]).

### C. Oracle Should Be Precluded From Introducing Evidence From Oracle.com In This Litigation, Oracle Should Be Compelled To Allow Inspection Of MOS, Or Alternatively, Oracle Should Be Precluded From Introducing Evidence From MOS In This Litigation

Oracle has refused to allow inspection of MOS despite the fact that Oracle accuses the Terix Defendants of improperly accessing it in this litigation. During meet and confer, the Terix Defendants made it clear that they were only seeking to inspect the portions of MOS that were relevant to this case. The Terix Defendants are not seeking unfettered access to all of the irrelevant portions of MOS relating to Oracle products not at issue in this litigation. Oracle has also not produced Oracle.com terms of use documents or other agreements contained on Oracle.com that comprises the allegations and claims for relief in the SAC. The terms of use, other agreements, methods of accepting any terms of use and the changes in those agreements and terms of use from 2010 to the present found on MOS and Oracle.com are central issues in this litigation. How can Oracle prove that Terix Defendants breached any contract with Oracle if it refuses to provide the terms of the contract that it contends Terix Defendants breached? The simple answer is - it cannot. In the alternative, if Oracle does not permit inspection of the MOS system, it should be precluded from introducing any evidence from MOS in this litigation.

### D. Conclusion

Oracle has failed to preserve and/or produce highly relevant evidence in this case. As a result the Court should issue a sanction commensurate with Oracle's conduct and bar it from introducing into evidence any materials from Sunsolve, other Sun websites, MOS or Oracle.com to the extent it refuses to allow inspection of same.

II.     ORACLE'S STATEMENT

        1. **There is No Basis For Preclusion**

Terix's motion is based on a string of false premises, including that Sun made all Solaris patches available for free, that Oracle changed that state after it acquired Sun, and that Oracle had a purported duty to preserve the entire SunSolve website when it decommissioned it in 2011. Terix claims that Oracle had a duty to preserve because shortly after Oracle acquired Sun, SIA sent Oracle a letter regarding alleged changes Oracle made to Sun's support policies. SIA asserted that Oracle was "denying end-user access to firmware updates, time and material support, instituting onerous support reinstatement terms and fees and mandating that end users purchase support for their entire non-EOL Sun install base." SIA stated that "[w]e look forward to hearing from a representative of Oracle" to "begin a constructive dialogue on how the SIA membership and Oracle may work together." In December 2010, the Michigan Attorney General's office sent Oracle a form letter, stating "[e]nclosed is a copy of a complaint recently filed with this office," by the SIA. The form letter said "[w]e receive a large number of complaints," "we do not make judgments about their validity until there is an opportunity for a response," and "[w]e hope this will be our only request." It was. Oracle responded to the letters from the SIA and Michigan AG (the "Letters"), explained that SIA's grievances had no merit, and no litigation or threats of litigation followed.

SunSolve, which was never mentioned in the Letters, was a *website*. Customers could login to SunSolve and download Solaris patches and firmware. After Oracle acquired Sun, it migrated the Solaris patches and firmware from SunSolve to MyOracleSupport.com ("MOS"), the website Oracle uses for online support. In December 2010, the switch to MOS was complete and SunSolve was no longer customer-facing. A year later – a year after the Letters that led to nothing – Oracle decommissioned SunSolve. Oracle preserved all SunSolve terms of use and click through agreements that governed the use of the site, and produced them in this case. In addition, Oracle retained Sun's former support policies, the updated polices Oracle released post-CIC (which, contrary to Terix's contention, were similar in most respects to Sun's policies), and produced them all in this case.

Terix's attempt to gin up a spoliation claim on these facts is frivolous. "A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (2003)); *see also*, *AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-CV-3403 PSG, 2013 WL 3733390, at *2 (N.D. Cal. July 15, 2013).

If letters inviting "a constructive dialogue" gave rise to a legal obligation to preserve, no corporation could ever decommission any website. The Letters had nothing to do with the SunSolve website, which they don't mention. The SIA letter specifically complained about the March 16, 2010 version of Oracle's Hardware and Systems Support policies. Oracle produced those support policies and provided a 30(b)(6) witness to testify about them at length. *See* 30(b)(6) deposition of Allison Adams and Depo. Exs. 1003-1015, 1019-1037. The form letter

from the Michigan AG's office did not have any content to it, but simply attached a letter from the SIA, making the same arguments about the March 16, 2010 version of Oracle's hardware support policies. No one reading these letters would have understood that the website used to deliver software patches was somehow at issue.

The Letters bear no resemblance to instances where courts have found a duty to preserve. *See Apple*, 881 F. Supp. 2d at 1145 ("Apple delivered, in person, a comprehensive summary of its specific patent infringement claims against specific Samsung products."); *Zubulake IV*, 220 F.R.D. at 217 (finding duty triggered when supervisors called for termination of employee under circumstances where "almost everyone associated with [employee] recognized the possibility that she might sue"). Nor did Oracle's *2012* filing of the *ServiceKey* lawsuit reach back in time to create a duty to preserve SunSolve in *2011*. Moreover, Oracle's Complaint alleged violations of the MOS terms of use and copyright infringement and related claims arising out of improper access to MOS. It alleged nothing concerning the use of SunSolve. *See* No. CV 12-0790, D.I. 1, ¶¶ 25-34, 45, 52, 73-75, 79, 95, 99, 102-03, 105-09, 112-18, 121-23, 125-26, 148.

The remaining *Zubulake* requirements – that Oracle destroyed evidence relevant to what it had a duty to preserve, or that Oracle had a culpable state of mind – are also not present.
The specific website customers use to obtain patches is irrelevant to the claimed support policy changes questioned in the Letters. *See Zubulake IV*, 220 F.R.D. at 217 (noting that the scope of the duty to preserve does not extend to "every document in its possession"); *see also AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-CV-3403 PSG, 2013 WL 3733390, at *3 (N.D. Cal. July 15, 2013)("a litigant has an obligation to preserve only evidence 'which it knows or reasonably should know is relevant to the action'"). SunSolve is not needed to confirm which patches were public during the Sun period. Oracle has already produced extensive data and records confirming that Sun always required support contracts for private patches and that over 70% of patches were private by early 2009, confirming the falsity of Terix's claim that most Solaris patches were "publically available for free" at Sun. And Terix makes no attempt to show that Oracle had a "culpable state of mind" when it decommissioned SunSolve. Indeed, Oracle acted just as it did when it acquired other numerous software companies and moved support delivery to MOS – confirming that Terix cannot show a "culpable state of mind."

Terix's arguments suffer from other fatal flaws as well. Not only was SunSolve irrelevant to the 2010 Letters, but Terix also identifies nothing that Oracle failed to preserve from SunSolve that would be relevant to this case. For instance, Oracle retained and produced the SunSolve terms of use that governed access to the site; audit logs going back to January 2009 showing which patches were public and that the overwhelming majority were private; relevant information about customer support contracts; and the prior Solaris licenses. Terix cannot identify anything else that Oracle supposedly should have retained. Tellingly, the relief Terix seeks in this motion is to preclude Oracle from introducing evidence from SunSolve that *was* preserved. But Terix cites no authority for the proposition that relevant, preserved evidence should be precluded when irrelevant information was not preserved.

### 2. Live Inspection of MOS is Improper and Unwarranted

Terix's request for "direct access to MOS" is improper and cynical, considering that Terix has

accessed MOS (albeit illegally) on a constant basis for years.[8] The request would, if granted, subvert the rules governing discovery by giving Defendants access to hundreds of millions of electronic records regardless of whether they constitute trade secrets or are relevant to any claim or defense. This would be especially improper here, where Defendants stand accused of illegally accessing Oracle's systems and infringing Oracle's intellectual property. Terix's assertion that this information is necessary is further belied by the last minute nature of this request; Terix included its request to access MOS in its 99 requests for production and inspection served on December 10, 2014, the last possible day to serve discovery requests.

Terix suggests it needs direct access to MOS to identify the terms of use governing access to the website. This request is suspicious because Oracle has already produced the relevant information stored on MOS – among other things, the terms of use and other agreements referred to in the SAC for the years at issue in the case. Terix's assertion to the contrary is either a matter of inexcusable inadvertence or a deliberate attempt to mislead the Court.[9] Further, the terms of use for oracle.com and myoraclesupport.com are not behind the MOS paywall; anyone in the world with an internet connection can access them. Access behind the MOS paywall would give Terix access to Oracle's copyrighted software, not the terms of use, and there is no dispute that none of this software is publicly available on MOS so there could be no legitimate reason for Terix to have further access (beyond what it already has helped itself to) related to this case. Terix's request is not saved by its unenforceable promise to search only the parts of MOS that Terix believes are "relevant." If Terix obtains access to MOS, Oracle has no control over what portions of the site Terix would actually search.

It is well established that litigants are not entitled to direct access to an adversary's databases and information systems. *See In re Ford Motor Company*, 345 F.3d 1315 (11th Cir. 2003) (denying direct access and noting that FRCP 34(a) "allows the responding party to search his records to produce the required, relevant data . . . [but] does not give the requesting party the right to conduct the actual search"). *See also, Balfour Beatty Rail, Inc. v. Vaccarello*, 2007 WL 169628, at *3 (M.D. Fla.); *Diepenhorst v. City of Battle Creek*, 2006 U.S. Dist. LEXIS 48551, at *9-10 (W.D. Mich.); *Powers v. Thomas M. Cooley Law School*, 2006 WL 2711512, at *5 (W.D. Mich.); *Han v. Futurewei Technologies, Inc.*, 2011 WL 4344301, at *5 (S.D. Cal.). Notably, each of these cases involved narrow requests for access to particular computer hard drives– rather than live access to entire computer systems, as requested by Terix – but each court denied the requests all the same.

---

[8] *See* 1/13/15 Deposition of Jason Joyce admitting that he regularly uses a credential registered to a fake name to access MOS. 344:17-346:10; and 518:18-519 (showing access as recent as January 2015).

[9] For example, Oracle's Response to Terix's Interrogatory 25 clearly explains that "the terms and conditions applicable to the distribution of Oracle's and Sun's Software during the time periods relevant to this litigation are indicated by the terms of use, support policies, and other documents concerning access to Oracle's and Sun's support websites and support materials that Oracle has produced in this litigation….includ[ing]: Depo. Ex. 86, ORCLTM00000041 (MOS Terms Of Use); ORCLTM00000043 (MOS Terms of Use); ORCLTM00000045 (MOS Terms of Use); ORCLTM00000047 (Oracle.com Terms of Use); ORCLTM00000052 (Oracle.com Terms of Use); ORCLTM00015929 (Terms of Use)."

733\1188821.6

Dated:  February 17, 2015	MORGAN, LEWIS & BOCKIUS, LLP

By:  */s/ Thomas S. Hixson*
    Thomas S. Hixson
    Attorneys for Plaintiffs and Counter-
    Defendants Oracle America, Inc. and
    Oracle International Corp.

Dated:  February 17, 2015	HOPKINS & CARLEY, a Law Corporation

By:  */s/ John V. Picone III*
    John V. Picone III
    Attorneys for Defendants and Counter-
    Claimants Terix Computer Company, Inc.,
    Sevanna Financial, Inc., West Coast Computer
    Exchange, Inc.

733\1188821.6