UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ORACLE AMERICA, INC., et al. | ) | Case No. 5:13-cv-03385-PSG |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING-IN PART** |
| v. | ) | **ORACLE'S MOTION TO STRIKE,** |
| | ) | **GRANTING MAINTECH'S MOTION** |
| TERIX COMPUTER COMPANY, INC., et al., | ) | **TO STRIKE AND GRANTING-IN-** |
| | ) | **PART MOTION FOR LEAVE TO** |
| Defendants. | ) | **FILE AMENDED ANSWER** |
| | ) | |
| | ) | **(Re: Docket Nos. 388, 416, 434)** |

Even as this case moves past the close of fact discovery and toward dispositive motions and trial, the parties continue to dispute the sufficiency of the pleadings. They specifically dispute whether the other's affirmative defenses are sufficient.

Having already ruled once on these matters, the court again finds itself in the mix of *Twombly*, *Iqbal*, Rule 8(b)(1) and Rule 12(f). As explained below, the court GRANTS Plaintiffs Oracle America, Inc. and Oracle International Corporation's motion to strike, but only in very limited part. The court also GRANTS Defendant Maintech's motion to strike and GRANTS-IN-PART Oracle's motion for leave to file an amended answer.

United States District Court
For the Northern District of California

**I.**

In 1992, Sun Microsystems released its first version of Solaris.[1]  Solaris is a UNIX-based operating system designed and used to operate server, blade, storage and related hardware.[2]  This includes hardware that is critical for legal, regulatory or business reasons, and therefore requires extremely high support levels.[3]  It also includes less critical systems for test, development and back-up.[4]  Sun regularly made available updates and firmware for Solaris that enhanced performance or simply fixed bugs in the system.[5]  Sun routinely permitted its customers—as well as third-party support providers servicing them—to obtain Solaris updates and firmware promptly upon release at little or no cost.[6]

Things changed in 2011 after Sun was acquired by Oracle.  Now customers who want Solaris updates and firmware must sign an annual contract for technical support services to be performed by Oracle.[7]  No customer may purchase updates or firmware without these services.[8]  Oracle also prices the combination of updates, firmware and both services at less than Oracle's cost.[9]  Customers that sign a support agreement—either directly with Oracle or through a reseller

---

[1] *See* Docket No. 269 at ¶ 10.  The major releases of Solaris at issue are Solaris 7 (released November 1998), Solaris 8 (February 2000), Solaris 9 (May 2002), Solaris 10 (January 2005) and Solaris 11 (November 2011).  *See id.*

[2] *See id.* at ¶¶ 10-12.

[3] *See id.* at ¶ 14.

[4] *See id.* at ¶ 15.

[5] *See id.* at ¶ 25.

[6] *See id.*

[7] Oracle brands its support services as "Oracle Premier Support for Operating Systems" and "Oracle Premier Support for Systems." *See id.* at ¶¶ 50-53.  The difference between the two offerings is that only the latter includes hardware support services. *See id.* at ¶ 55.

[8] As a result of the new Oracle policy, 22% of all "SPARC" Solaris 8 Solaris Updates were supported by Sun before the acquisition, compared with 93% supported by Oracle a year later.  The comparable figures of x86 Solaris 8, SPARC Solaris 9, x86 Solaris 9, SPARC Solaris 10, and x86 Solaris 10 were 13%-97%, 18%-92%, 13%-95%, 14%-78% and 12%-74%, respectively. *See* Docket No. 269 at ¶ 52.

[9] *See id.* at ¶¶ 54-56.

2

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

authorized by Oracle—receive a Customer Support Identification number linked to the products covered by the agreement.[10]  The CSI number allows customers to create login credentials to access Oracle's secure support website.[11]  Using these credentials, the customer may download Solaris updates and firmware for the hardware systems that are covered by the support agreement.[12]  The customer may not share or use its CSI number for the benefit of others or for the benefit of unsupported Oracle hardware—only customers who pay for and maintain an agreement with Oracle for the hardware at issue may download Solaris updates and firmware and only for their own internal business use on specified computers.[13]

Defendants Terix Computer Company, Inc., Maintech Incorporated, Volt Delta Resources, Sevanna Financial, Inc. and West Coast Computer Exchange, Inc. offer their own support services for Solaris hardware.[14]  Each either contracts directly with customers to provide this support or indirectly as a subcontractor to another entity, such as its co-defendant.[15]

Oracle filed this suit against Defendants for copyright infringement, fraud and other torts,[16] and Defendants promptly counterclaimed, alleging antitrust violations, unfair competition and other torts.[17]  After granting-in-part motions to dismiss the complaint and counterclaims,[18] the court turned to the adequacy of the parties' affirmative defenses.  In November of last year, the court dismissed Defendants' 87 affirmative defenses with leave to amend based on the

---

[10] *See* Docket No. 249 at ¶ 7.

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See* Docket No. 269 at ¶ 30.

[15] *See id.*

[16] *See* Docket No. 249 at 30-41.

[17] *See* Docket No. 356-5 at 12-24.

[18] *See* Docket Nos. 61, 354.

3

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

1   insufficiency of the underlying facts.[19]  Defendants subsequently amended their answers.[20]  Now

2   Oracle moves to strike several of the defenses as re-pleaded.  Defendants similarly move to strike

3   Oracle's affirmative defenses, prompting Oracle to move further for leave to amend its defenses.

## II.

5        This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further

6   consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

7        Under Fed. R. Civ. P. 8(b)(1), an answer must "state in short and plain terms its defenses to

8   each claim asserted against it."  Affirmative defenses are subject to the heightened pleading

9   standard set forth in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.[21]  Pleadings must

10  contain enough factual assertions to provide "plausible grounds" to infer that the alleged conduct in

11  fact took place.[22]  A claim has "plausibility when the plaintiff pleads factual content that allows the

12  court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .

13  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

14  do not suffice."[23]

15  [19] *See* Docket No. 354.

16  [20] *See* Docket Nos. 359, 360, 361, 391.

17  [21] *See Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1171-
18  72 (N.D. Cal. 2010) ("Rule 8's requirements with respect to pleading defenses in an answer
    parallel[] the Rule's requirements for pleading claims in a complaint.") ("the vast majority of
19  courts [in this district] presented with the issue have extended *Twombly*'s heightened pleading
    standard to affirmative defenses"); *Hernandez v. Dutch Goose, Inc.*, Case No. 13-cv-03537, 2013
20  WL 5781476, at *4 (N.D. Cal. Oct. 25, 2013) ("[T]here is widespread agreement among courts in
    this district that the *Iqbal-Twombly* pleading standard for claims for relief also applies to
21  affirmative defenses."); *Perez v. Gordon & Wong Law Grp., P.C.*, Case No. 11-cv-03323, 2012
    WL 1029425, at *7 (N.D. Cal. March 26, 2012) (applying *Twombly* and *Iqbal* to affirmative
22  defenses because "'[a]ffirmative defenses are governed by the same pleading standards as
    complaints.'") (quoting *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal.
23  2004)); *Bottoni v. Sallie Mae, Inc.*, Case No. 10-cv-03602, 2011 WL 3678878, at *1 (N.D. Cal.
    Aug. 22, 2011) ("courts in this district consistently have applied the *Twombly-Iqbal* pleading
24  standard to the pleading of affirmative defenses, requiring a defendant to allege enough facts to
    state a claim to relief that is plausible on its face."); *Ujhelyi v. Vilsack*, Case No. 12-cv-04282,
25  2013 WL 6174491, at *2 (N.D. Cal. Nov. 25, 2013) ("the majority of courts within this District
    have applied *Twombly* and *Iqbal* to affirmative defenses.").

26  [22] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

27  [23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

28
                                        4
    Case No. 5:13-cv-03385-PSG
    ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
    MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
    FILE AMENDED ANSWER

A party may move to strike affirmative defenses pursuant to Fed. R. Civ. P. 12(f).[24]  In the Ninth Circuit, the court considers "a two-step process" to evaluate the sufficiency of a pleading.[25] "First, a court should 'identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[26]  "Then a court should 'assume the[] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief.'"[27]

### III.

Oracle moves to strike ten of Defendants' affirmative defenses: (1) waiver, (2) estoppel, (3) laches, (4) copyright misuse, (5) unclean hands, (6) failure to mitigate, (7) fair use, (8) privileged conduct and good faith, (9) acts, conduct or omissions of others and (10) innocent infringement.[28]  Oracle also seeks dismissal of Defendants' copyright misuse counterclaim.  The court addresses each of these in turn.

***First***, Defendants have adequately pleaded facts in their affirmative defenses to plausibly assert a waiver defense.  In *A&M Records, Inc. v. Napster, Inc.*, the Ninth Circuit found that an abandonment of copyright occurs only if there is intent by the copyright proprietor to surrender rights in his work.[29]  Oracle seeks to strike Defendants' affirmative defense on the basis that

---

[24] *See, e.g.*, *Allen v. AVT Event Techs., Inc.*, Case No. 13-cv-01922, 2013 WL 3157905, at *2 (N.D. Cal. June 20, 2013) (striking all of defendant's affirmative defenses because they all failed the *Twombly-Iqbal* pleading standards); *Ansari v. Elec. Document Processing, Inc.*, Case No. 12-cv-01245, 2012 WL 3945482, at *5 (N.D. Cal. Sept. 10, 2012) (same); *Starbuzz Tobacco, Inc. v. Saeed*, Case No. 13-cv-03837, 2013 WL 6354438, at *2 (N.D. Cal. Dec. 5, 2013) (same); *Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*, Case No. 13-cv-00575, 2013 WL 5496961, at *8-9 (N.D. Cal. Oct. 3, 2013) (same); *Polo v. Shwiff*, Case No. 12-cv-04461, 2013 WL 1797671, at *5 (N.D. Cal. Apr. 29, 2013) (same); *J&J Sports Prods., Inc. v. Mendoz-Govan*, Case No. 10-cv-05123, 2011 WL 1544886, at *7 (N.D. Cal. Apr. 25, 2011) (same).

[25] *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, Case No. 12-cv-16526, 2014 WL 1797676, at *2 (9th Cir. May 7, 2014).

[26] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[27] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[28] The unclean hands, failure to mitigate, privileged conduct and good faith, acts, conduct or omissions of others and innocent infringement defenses are asserted by Maintech only.

[29] *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

5

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO FILE AMENDED ANSWER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Defendants have not alleged any activity by Oracle that could suggest such an intent.  But

2    Defendants do allege that Oracle "fail[ed] to take steps" to prevent unauthorized downloads by

3    third parties, thereby abandoning their copyright claims as to the downloads at issue.  Whether that

4    argument carries the day has yet to be seen, but the defense is sufficiently pleaded.

5            *Second*, Defendants' estoppel defense is similarly adequately pleaded to survive at this

6    juncture.  To assert an estoppel defense, Defendants must allege (1) that Oracle knew the facts of

7    Defendants' infringing conduct; (2) that Oracle intended that its conduct be acted on or acted in

8    such a way to suggest the same; (3) that Defendants were ignorant of the true facts; and (4) that

9    Defendants relied on Oracle's conduct to their injury.[30]

10           Terix alleges that Oracle discovered Terix's allegedly infringing behavior, notified Terix

11   that its conduct was improper, but then took no further steps to stop Terix.  This inaction suggested

12   to Terix that Oracle no longer thought that Terix was doing anything unlawful, and Terix continued

13   to build its business accordingly.  Taken as true, Terix has alleged facts sufficient to support an

14   estoppel defense.

15           As to Maintech, there is no allegation that Oracle knew of Maintech's alleged infringement

16   or confronted Maintech about its business practices.  Rather, Maintech bases its estoppel claim on

17   Terix's position.  Oracle argues that Maintech cannot base an estoppel defense on the actions of a

18   co-defendant, but cites no authority that precludes a defendant such as Maintech—who is alleged

19   to have contributorily or vicariously assisted Terix's infringement—from asserting an estoppel

20   defense to Oracle's claim.  In the absence of such authority, the defense may proceed.

21           *Third*, as to Defendants' laches defense, because the statute does not set out a specific

22   limitations period, the defense may apply to Oracle's Lanham Act claims.  But it is barred as to all

23   other claims.  In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, the Supreme Court held that "in [the] face

24   of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief."[31]

---

25   [30] *See McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1101 (E.D. Cal. 2009)
26   (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)).

27   [31] 134 S. Ct. 1962, 1973 (2014).

28
Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

United States District Court
For the Northern District of California

1    While the case primarily addressed the Copyright Act, the Court's reasoning logically extends the

2    basic premise to all statutory frameworks that include a statute of limitations.[32]  Defendants object

3    that *Petrella* does not absolutely bar laches defenses where statutes of limitations exist because the

4    Court left open an exception in extraordinary circumstances.[33]  And Defendants argue that this

5    situation is such an extraordinary circumstance because Oracle's conduct led to "the creation of an

6    entire third party support industry" that now might crumble as a result of this lawsuit.[34]  But the

7    analogy is not properly drawn.  The Supreme Court's notion of "extraordinary circumstances" is

8    based on a case where "the defendants were alleged to have used without permission, in planning

9    and building a housing development, the plaintiffs' copyrighted architectural design."[35]  Below, the

10   Sixth Circuit—finding that laches could not bar a copyright infringement claim brought within the

11   three-year limitations period—nevertheless had held that "[t]he plaintiffs, even if they might

12   succeed in proving infringement of their copyrighted designs, would not be entitled to an order

13   mandating destruction of the housing project."[36]  Defendants are not so positioned here.  The

14   argument that the third-party support industry would not have developed absent Sun and Oracle's

15   actions simply is not plausible.

16          Finally, in a last-ditch effort to save their laches defense, Defendants argue that the

17   Supreme Court "made no finding or ruling about whether laches applies to bar in their entirety state

18   law claims with applicable statutory limitation period," and on that basis this court should allow the

19   laches defense as to all state law claims.[37]  But Defendants have cited no authority suggesting that

20

21   [32] *Id.* (finding "[t]here is nothing at all 'different' about copyright cases in this regard").

22   [33] *Id.* at 1977 ("In extraordinary circumstances, however, the consequences of a delay in
     commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation,
23   curtailment of the relief equitably awardable.").

24   [34] Docket No. 420 at 9-10.

25   [35] *Petrella*, 134 S. Ct. at 1977.

26   [36] *Id.*

27   [37] Docket No. 421 at 7-8.

28
                                                    7
     Case No. 5:13-cv-03385-PSG
     ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
     MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
     FILE AMENDED ANSWER

any different outcome might be appropriate.  The Supreme Court clearly identified the logic underlying its ruling: "[t]he expansive role for laches MGM envisions careens away from understandings, past and present, of the essentially gap-filling, not legislation-overriding, office of laches.  Nothing in this Court's precedent suggests a doctrine of such sweep."[38]  Absent any authority suggesting that laches is applied differently under state law than under federal law, the court sees no reason to treat statutes of limitation under these separate regimes differently either.

*Fourth*, contrary to Oracle's assertions, Defendants' copyright misuse defense is more robust than its previous iteration and is sufficient to pass muster.  The Ninth Circuit has recognized the copyright misuse defense, finding that license restrictions prohibiting licensees from using competitors' products constituted copyright misuse[39] and noting that the standard for copyright misuse is more lenient than that applicable to antitrust claims.[40]  Oracle argues that the Ninth Circuit's ruling in *Triad Systems Corp. v. Southeastern Exp. Co.*,[41] is dispositive of the issue because the court rejected a copyright misuse defense based on the allegation that "[b]y restricting third party use of its software, 'Triad ha[d] used its intellectual property monopoly over Triad software to leverage its position in the Triad computer maintenance market.'"[42]  Under this theory, Defendants' copyright misuse defense would be barred because Oracle did not curtail Defendants' ability develop their own services platform.

---

[38] *Petrella*, 134 S. Ct. at 1976.

[39] *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997), *amended by* 133 F.3d 1140 (9th Cir. 1998); *Apple v. Psystar*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("The copyright misuse doctrine does not prohibit using conditions to control use of copyrighted material, but it does prevent copyright holders from using the conditions to stifle competition.").

[40] *See Practice Mgmt. Info. Corp.*, 121 F.3d at 521 ("a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense.").

[41] 64 F.3d 1330 (9th Cir. 1995).

[42] *Psystar*, 658 F.3d at 1158 (quoting *Triad Sys. Corp. v. Southeastern Exp. Co.*, Case No. 92-cv-01539, 1994 WL 446049, at *3 n.1 (N.D. Cal. Mar. 18, 1994)).

8

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

United States District Court
For the Northern District of California

1    While Oracle's contention may well carry the day in the end, the copyright misuse defense

2 at issue in *Triad* was dismissed at the summary judgment phase.[43]  At the pleadings stage,

3 Defendants have sufficiently alleged copyright misuse by demonstrating that Solaris license terms

4 specifically curtailed the ability of third parties to access software or patches to repair or provide

5 technical services to Solaris users.[44]  With such facts alleged, striking the defense is

6 inappropriate.[45]

7    **Fifth**, Maintech's unclean hands defense is adequately pleaded to survive.  In the Ninth

8 Circuit, unclean hands is a defense to copyright infringement "when the plaintiff's transgression is

9 of serious proportions and relates directly to the subject matter of the infringement action."[46]

10 Oracle argues that unclean hands is rarely recognized, and when it is, the defendants have been

11 able to establish that "plaintiff's evidence was false and that plaintiff was involved in a scheme to

12 defraud the public."[47]  But in the same opinion, the Ninth Circuit asserts that "[t]he defense of

13 unclean hands by virtue of copyright misuse prevents the copyright owner from asserting

14

15 ───────────────

16 [43] *See Triad*, 64 F.3d at 1337.

16 [44] *See* Docket No. 391 at 24; Docket Nos. 359, 360, 361 at 39:

17    The scope of your license does not include any right, express or implied, (i) to access,
reproduce, distribute, display or use the Software or Information to provide diagnostic,
18    maintenance, repair or technical support services on behalf of any third party for your
direct or indirect commercial gain or advantage without Sun's prior written authorization,
19    or (ii) for any third party to access, reproduce, distribute, display or use the Software or
Information to provide diagnostic, maintenance, repair or technical support services on
20    your behalf for such party's direct or indirect commercial gain or advantage, without Sun's
prior written authorization.
21

22 [45] For these reasons, the court also DENIES dismissal of Defendants' copyright misuse
counterclaims.

23 [46] *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990-91 (9th Cir. 2009); *Schloss v.
24 Sweeny*, 515 F. Supp. 2d 1068, 1082 (N.D. Cal. 2007) (citing *Brother Records, Inc. v. Jardine*, 318
F.3d 900, 909 (9th Cir. 2003) ("To prevail on an unclean hands defense, a defendant in a copyright
25 infringement action must demonstrate that (1) the plaintiff's conduct is inequitable and (2) the
conduct relates to the subject matter of its claims.")).

26
27 [47] *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th
Cir. 1986).

28

9

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

infringement and asking for damages when the infringement occurred by his dereliction of duty."[48]
Maintech bases its defense on Oracle's alleged anti-competitive conduct, which Oracle disputes on
the basis that such a dereliction of duty is not directly related to the infringement action.  But to the
contrary, the Maintech conduct that Oracle seeks to curb is the very conduct that Maintech alleges
should be permitted.  This is sufficient.

   **Sixth**, Maintech successfully substantiates its failure to mitigate defense.  The failure to
mitigate "generally refers to the defense that the plaintiff could have avoided reasonably all or part
of the claimed damages."[49]  Maintech alleges that Oracle was aware of Terix's interpretation of the
license terms—that customers were entitled to receive future Solaris patches, fixes and updates and
that Terix was delivering updates on that basis.[50]  Maintech further alleges that as early as
November 2007, Sun employees suspected that Terix's conduct was illegal, yet Oracle waited six
years before it took steps to halt the resulting damages.[51]  For pleading purposes, this is sufficient.

   **Seventh**, Defendants' fair use defense is sufficiently alleged.  To determine whether
something falls within the fair use defense, courts consider (1) the purpose and character of the use;
(2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used and
(4) the effect upon the original work.[52]  In the Ninth Circuit, "[w]hile a transformative use
generally is more likely to qualify as fair use, 'transformative use is not absolutely necessary for a
finding of fair use.'"[53]

---

[48] *Id.*

[49] *E & J Gallo Winery v. Grenade Beverage, LLC*, Case No. 13-cv-00770, 2014 U.S. Dist. LEXIS 60769, at *5 (E.D. Cal. Apr. 30, 2014) (quoting 22 Am. Jr. 2d Damages § 346 (2014) (internal quotation marks omitted)); *see* Restatement (Second) of Torts § 918 (1979) ("[O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.").

[50] *See* Docket No. 391 at 40.

[51] *See id.* at 41.

[52] *See* 17 U.S.C.S § 107; *A&M Records*, 239 F.3d at 1015-19.

[53] *The Swatch Grp. Mgmt. Serv. LTD v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (quoting *Campbell v. Accuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).

10

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

**United States District Court**
For the Northern District of California

1    Defendants contend that their alleged copying of Oracle software was to analyze and

2    extract information in order perform maintenance on their clients' computer systems, and thus

3    transformative.  What constitutes a transformative use is not confined to changes, and can include

4    uses that are themselves transformative: "[A] secondary work 'can be transformative in function or

5    purpose without altering or actually adding to the original work.'"[54]  Once again, whatever their

6    ultimate merits, Defendants' allegations at this stage are sufficient.

7    **_Eighth_**, Maintech's privileged conduct defense to Oracle's claim for intentional

8    interference with prospective economic advantage is plausibly alleged.  A privileged conduct

9    defense "requires a two step analysis.  The first step is to determine if the relationship between the

10   parties involves the type of interests that the privilege is designed to protect.  The second step is to

11   determine whether, in light of the nature and importance of the above relationship, the advisor's

12   intent in inducing the breach was proper."[55]  Of paramount importance is the intent behind the

13   interference.  If it is done in good faith and at least in part to advance one's own competitive

14   prospects, then the privileged conduct defense applies.[56]  Maintech alleges that its conduct was

---

[54] _The Swatch Grp. Mgmt. Serv. LTD v. Bloomberg L.P._, 756 F.3d 73, 84 (2d Cir. 2014) (quoting _A.V. ex rel Vanderhye v. iParadigms, LLC_, 562 F.3d 630, 639 (4th Cir. 2009) (holding that making an exact digital copy of a student's thesis for the purpose of determining whether it included plagiarism is a fair use)); _see also Perfect 10, Inc. v. Amazon. Com, Inc._, 508 F.3d 1146, 1165 (9th Cir. 2007) (holding that a search engine's publication of low-resolution, thumbnail copies of copyrighted images was 'highly transformative' because the thumbnails were 'incorporat[ed] . . . into a new work, namely, an electronic reference tool'").

[55] _Los Angeles Airways, Inc. v. Davis_, 687 F.2d 321, 325 (9th Cir. 1982).

[56] _See_ Restatement (Second) of Torts § 768 (1979):

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
   (a) the relation concerns a matter involved in the competition between the actor and the other and
   (b) the actor does not employ wrongful means and
   (c) his action does not create or continue an unlawful restraint of trade and
   (d) his purpose is at least in part to advance his interest in competing with the other.

11

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

taken in good faith and in an effort to effectively compete in the services market.  At this stage of the case, this is sufficient.[57]

**Ninth**, as to the defenses stricken above, the court DENIES leave to amend.  Defendants have already had the opportunity to amend their defenses, and the court finds that any further amendment would be futile.[58]

## IV.

Maintech separately moves to strike several of Oracle's affirmative defenses: (1) statute of limitations, (2) business justification/no intent to injure competition, (3) no wrongful means, (4) laches/estoppel/unclean hands, (5) contributory negligence, (6) no protected injury and (7) failure to mitigate damages.  Almost concurrent with its opposition, Oracle filed a motion for leave to amend the very defenses that Maintech seeks to strike.  It is the court's understanding that the parties failed to reach an agreement by which Oracle might amend its answers by stipulation and obviate the need for resolution on the underlying motion to strike.  Upon consideration of Oracle's proposed amended answer and in light of the fact that Oracle has not yet had an opportunity to amend, the court finds that granting leave to amend is appropriate, with one exception: Oracle is not permitted to add the *Noerr-Pennington* defense to its amended answer.

Putting aside the merits of the defense itself, when deciding whether to allow amendment, Fed. R. Civ. P. 15(a) counsels that "[t]he court should freely give leave when justice so requires."[59] But here, justice counsels against allowing Oracle to add the *Noerr-Pennington* defense.  As Maintech points out, Oracle did not seek to amend its answer until the day before fact discovery

---

[57] Maintech has withdrawn its acts, conduct or omissions of others defense.  The motion to strike as to that defense thus is DENIED as moot.  Maintech also failed to respond to Oracle's motion to strike its innocent infringement defense.  The court thus GRANTS the motion to strike as to innocent infringement.

[58] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[59] Fed. R. Civ. P. 15(a).

12

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

closed.[60]  And allowing a new defense now would be inequitable without reopening discovery.
With the trial date looming, that is impossible.

What is more, Oracle represents to the court that it seeks to add this defense based on
newly-discovered information that Maintech bases its state law interference claims entirely on
cease-and-desist letters that Oracle sent its customers.  But according to Maintech, Oracle has been
aware since November 21, 2014, if not earlier, that the cease-and-desist letters were at play in the
litigation.  The court cannot shift such a burden onto Maintech as a result of Oracle's unwarranted
delay—whether inadvertent or sincere.

**V.**

Oracle's motion to strike is GRANTED-IN-PART.  Defendants' laches defense is stricken
as to all claims except those under the Lanham Act.  Maintech's innocent infringement defense is
stricken in whole.  All other defenses remain intact.

Maintech's motion to strike is GRANTED.

Oracle's motion for leave to amend is GRANTED-IN-PART.  Oracle shall not add the
*Noerr-Pennington* defense.  Any amendment shall be filed within seven days.

**SO ORDERED.**

Dated: April 24, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[60] *See, e.g.*, *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138 (9th Cir. 1998) (finding prejudice where party sought leave to amend two weeks before discovery deadline); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160-61 (9th Cir. 1989) (denying leave to amend, in part, upon a finding that moving party would suffer prejudice if plaintiff were allowed to amend late in the litigation, even though there was no finding that discovery had closed).

Case No. 5:13-cv-03385-PSG
ORDER GRANTING-IN-PART ORACLE'S MOTION TO STRIKE, GRANTING
MAINTECH'S MOTION TO STRIKE AND GRANTING-IN-PART MOTION FOR LEAVE TO
FILE AMENDED ANSWER

United States District Court
For the Northern District of California