1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., et al. | Case No. 5:13-cv-03385-PSG |
| Plaintiffs, | **ORDER DENYING MOTION FOR** |
| v. | **SANCTIONS** |
| TERIX COMPUTER COMPANY, INC., et al., | **(Re: Docket No. 498)** |
| Defendants. | |

Plaintiffs Oracle America, Inc. and Oracle International Corporation cry foul after learning in a deposition about two previously unidentified sources of discoverable information.  Oracle now moves for sanctions against Defendants Terix Computer Company, Inc., Sevanna Financial, Inc. and West Coast Computer Exchange, Inc.  Because the court is not persuaded that the sources were unreasonably withheld or that the surrounding deposition testimony was deceptive, the motion is DENIED.

**I.**

In 1992, Sun Microsystems released its first version of Solaris.[1]  Solaris is a UNIX-based operating system designed and used to operate server, blade, storage and related hardware.[2]  This

---

[1] *See* Docket No. 269 at ¶ 10.  The major releases of Solaris at issue are Solaris 7 (released November 1998), Solaris 8 (February 2000), Solaris 9 (May 2002), Solaris 10 (January 2005) and Solaris 11 (November 2011).  *See id.*

[2] *See id.* at ¶¶ 10-12.

includes hardware that is critical for legal, regulatory or business reasons, and therefore requires extremely high support levels.[3]  It also includes less critical systems for test, development and back-up.[4]  Sun regularly made available updates and firmware for Solaris that enhanced performance or simply fixed bugs in the system.[5]  Sun routinely permitted its customers—as well as third-party support providers servicing them—to obtain Solaris updates and firmware promptly upon release at little or no cost.[6]

In 2011 after Sun was acquired by Oracle.  Since at least that time, customers who want Solaris updates and firmware must sign an annual contract for technical support services to be performed by Oracle.[7]  No customer may purchase updates or firmware without these services.[8] Customers that sign a support agreement—either directly with Oracle or through a reseller authorized by Oracle—receive a Customer Support Identification number linked to the products covered by the agreement.[9]  The CSI number allows customers to create login credentials to access Oracle's secure support website.[10]  Using these credentials, the customer may download Solaris updates and firmware for the hardware systems that are covered by the support agreement.[11]  The customer may not share or use its CSI number for the benefit of others or for the benefit of unsupported Oracle hardware—only customers who pay for and maintain an agreement with

---

[3] *See id*. at ¶ 14.

[4] *See id*. at ¶ 15.

[5] *See id*. at ¶ 25.

[6] *See id*.

[7] Oracle brands its support services as "Oracle Premier Support for Operating Systems" and "Oracle Premier Support for Systems." *See id*. at ¶¶ 50-53.  The difference between the two offerings is that only the latter includes hardware support services.  *See id*. at ¶ 55.

[8] As a result of the new Oracle policy, 22% of all "SPARC" Solaris 8 Solaris Updates were supported by Sun before the acquisition, compared with 93% supported by Oracle a year later.  The comparable figures of x86 Solaris 8, SPARC Solaris 9, x86 Solaris 9, SPARC Solaris 10, and x86 Solaris 10 were 13%-97%, 18%-92%, 13%-95%, 14%-78% and 12%-74%, respectively.  *See* Docket No. 269 at ¶ 52.

[9] *See* Docket No. 249 at ¶ 7.

[10] *See id*.

[11] *See id*.

Case No. 5:13-cv-03385-PSG
ORDER DENYING MOTION FOR SANCTIONS

Oracle for the hardware at issue may download Solaris updates and firmware and only for their own internal business use on specified computers.[12]

Defendants offer their own support services for Solaris hardware.[13]  Each either contracts directly with customers to provide this support or indirectly as a subcontractor to another entity, such as its co-defendant.[14]

Oracle filed this suit against Defendants for copyright infringement, fraud and other torts.[15] Among its defenses, Defendants maintain that they benefit from Oracle's customer licenses. Defendants also counterclaimed, alleging antitrust violations, unfair competition and other torts.[16] As part of its discovery, Oracle deposed various defense witnesses, including Jason Joyce,[17] Bernd Appleby,[18] Lawrence Quinn[19] and Atull Dhall.[20]  The depositions focused on Defendants' alleged cross-use of Solaris patches.  Oracle specifically alleges that Defendants downloaded patches into a generic repository using the My Oracle Support credentials of one customer and distributed them to another.  Each witness denied that Defendants maintained such a repository or that Defendants engaged in any cross-use.[21]

---

[12] *See id.*

[13] *See* Docket No. 269 at ¶ 30.

[14] *See id.*

[15] *See* Docket No. 249 at 30-41.  Oracle also brought claims against Maintech Incorporated and Volt Delta Resources LLC.  Pursuant to stipulation, the court recently entered judgment on those claims.  *See* Docket No. 614.

[16] *See* Docket No. 356-5 at 12-24.

[17] Jason Joyce is Terix's Technical Services and Software Support Manager.

[18] Bernd Appleby is Terix's CEO.

[19] Lawrence Quinn is a Terix Executive Vice President.

[20] Atull Dhall is Terix's corporate representative witness about the existence of repositories and cross-use.

[21] *See* Docket No. 499-8 ("obtaining a patch under one credential and then giving it to a company that did not have a credential" would "violate the IP rules.") ("just to be clear, we don't store any patches in our possession.  We don't have a repository of patches that we go into.") ("Whenever we do have a request for a patch, we always initiate the patch request using the active credentials of that particular customer.  So we don't have a repository of Solaris patches just laying around for distribution); Docket No. 499-5 (Defendants wanted to avoid patches being "misused in a way of

Case No. 5:13-cv-03385-PSG
ORDER DENYING MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

1     On January 13, 2015, Oracle deposed Joyce a second time.  He was shown a document with

2 notes on it, referring to Solaris 9 patches he had provided to customers from a "repo."[22]  Joyce

3 admitted that the term likely referred to a repository: "I don't know why I said 'repository.'  I most

4 likely would have downloaded that [Solaris patch] just using the Summit credential."[23]  Joyce also

5 stated that he had created and used a generic Solaris repository to provide patches to customers at

6 Appleby's direction because he "was afraid that Oracle was going to turn off all patch access for

7 Solaris 8 and 9, and [Defendants] just wanted to have a copy of those in case a customer ever

8 needed it in the future."[24]

9     During the same deposition, Joyce also referenced for the first time a laptop that he used to

10 build custom Solaris patches for customers using patches he downloaded from MOS.[25]  Joyce

11 testified he "had forgot[ten] [he] was even using" the laptop and that he had stopped using it in

12 2012 or 2013.[26]  A preliminary review of the laptop, which was produced within a month, revealed

13 that in fact Joyce used it almost weekly to sync it to his current laptop, review his MOS credential,

14 access Oracle's website and download patches.  This use continued right up to one week before the

15 first deposition.[27]

16     Convinced that Joyce previously lied about the existence of a patches repository and that

17 Defendants intentionally withheld Joyce's laptop, Oracle now moves for sanctions.

---

distribution to . . . another customer because it's specific to that customer, it's specific to that customer's credential, and it's specific to that customer's agency relationship with [Defendants] and their licensing rights.") ("It's our process that you would provide a patch only to the customer for whom you have a credential); Docket No. 499-3 (no repository "in place for a customer [was] used for another customer").

[22] *See* Docket No. 501-15.

[23] Docket No. 499-9.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *See* Docket No. 563 at ¶¶ 10-16.

4

United States District Court
For the Northern District of California

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to magistrate judge jurisdiction under 28 U.S.C. §636(c) and Fed. R. Civ. P. 72(a).

Under Fed. R. Civ. P. 37, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."[28]  In addition to or in place of this sanction, the court also may order payment of attorney's fees, inform the jury of the party's failure, or direct that certain facts be taken as established by the jury, among others.[29]  "A court need not find bad faith before imposing sanctions for violations of Rule 37."[30]

Where Rule 37 does not apply, the court nevertheless has additional discretion to respond to abusive litigation practices under its inherent authority.[31]  The policy underlying this power is "the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth. . . . The courts must protect the integrity of the judicial process because, '[a]s soon as the process falters . . . the people are then justified in abandoning support for the system.'"[32]  Sanctions are available to the district courts "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to

---

[28] Fed. R. Civ. P. 37(c).

[29] *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(iv), (c).

[30] *Oracle USA, Inc. v. SAP AG*, Case No. 07-cv-01658, 2009 WL 3009059, at *2 (N.D. Cal. Sept. 17, 2009) (*citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)); *see also Keithley v. The Home Store.com, Inc.*, Case No 03-cv-04447, 2008 WL 3833384, at *3 (N.D. Cal. Aug. 12, 2008) ("Sanctions for violations of Rule 37 . . . may be imposed for negligent conduct.").

[31] *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 881 F. Supp. 2d 1132, 1135-36 (N.D. Cal. 2012) (citing *Shepherd v. Am. Broad. Co., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)).

[32] *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2010); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.") (citation omitted); *Keithley*, 2008 WL 3833384, at *2 ("[S]anctions [also] are available under the Court's inherent power if 'preceded by a finding of bad faith, or conduct tantamount to bad faith,' such as recklessness 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'") (quoting *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001)).

Case No. 5:13-cv-03385-PSG
ORDER DENYING MOTION FOR SANCTIONS

1    such conduct in the absence of such a deterrent."[33]   Sanctions under a court's inherent powers must

2    always be exercised with restraint and be appropriate to the conduct that triggered the sanction.[34]

### III.

4         Oracle asks this court to decide two issues: (1) whether Defendants should be sanctioned

5    for withholding, concealing and repeatedly offering false testimony related to Defendants' license

6    defense and (2) what kinds of sanctions are appropriate to punish and deter Defendants' purported

7    discovery misconduct and mitigate the resulting prejudice to Oracle.   As a threshold issue, Rule 37

8    sanctions are not available here.   Oracle concedes that Defendants' conduct did not violate a court

9    order, and because Defendants promptly produced the repository and laptop after Joyce's

10   testimony, the conduct did not implicate Defendants' duties under Rule 26.[35]   This leaves the court

11   to determine whether to issue sanctions under its inherent authority, which requires a finding of bad

12   faith or conduct tantamount to bad faith.[36]   Upon careful review of the record, the court is not

13   convinced that the alleged discovery misconduct was as nefarious as Oracle suggests.

14        *First*, Oracle has not shown that in his later deposition Joyce intentionally misrepresented

15   the existence of the laptop.   When initially confronted about the laptop, Joyce testified that he had

16   forgotten that he was using it and could not remember the last time he actually used it.[37]   Joyce

17   later declared that since "April or May 2013," "[he] ha[d] periodically booted up [his]

18   Supplemental Laptop in order to sync it with the SyncBack software.   [H]e may have also used the

19   Supplemental Laptop for work-related tasks."[38]   As noted earlier, the forensic evidence confirms

20   _____

[33] *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

[34] *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 987 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

[35] *See* Fed. R. Civ. P. 26(a), (e).   Oracle offers no proof Defendants knew its production was incomplete before the deposition.

[36] *See Keithley*, 2008 WL 3833384 at *2 ("[S]anctions are available under the Court's inherent power if 'preceded by a finding of bad faith, or conduct tantamount to bad faith,' such as recklessness 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'") (quoting *Fink*, 239 F.3d at 994).

[37] *See* Docket No. 501-14 at 493:2-22.

[38] Docket No. 555-7 at ¶ 6.

Case No. 5:13-cv-03385-PSG
ORDER DENYING MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that he used the laptop on an almost weekly basis up until the date of his deposition.[39]  While this may be a frustrating result, witnesses routinely forget information from several years ago for many reasons during the course of depositions.  Joyce's inconsistencies almost certainly expose Defendants to a difficult cross-examination at trial, but they are not sanctionable.

    ***Second***, while Oracle fashions a compelling and inconsistent string of testimony from Joyce and Terix executives about the repository, a careful read of the full deposition testimony of each individual shows little to suggest that Defendants' employees intentionally lied.  For example, Oracle contrasts Appleby's denial of a patches repository—"just to be clear, we don't store any patches in our possession.  We don't have a repository of patches that we go into. . . . Whenever we do have a request for a patch, we always initiate the patch request using the active credentials of that particular customer.  So we don't have a repository of patches just laying around for distribution"[40]—with Joyce's testimony where he, too, initially insisted that there was no repository for systematic customer distribution but later admits that he had created a generic Solaris repository in 2011 full of publicly available patches at Appleby's direction.[41]  But this alone is not problematic.  There is a distinction between housing a repository of patches requiring a customer credential and a repository of publicly available patches.

    Where Oracle thinks it corners Defendants—but ultimately fails—is in relation to one specific customer interaction where Joyce "got approval from Mr. Appleby to [use a repository to get a patch to send to the customer] because the customer was screaming."[42]  In response to an inquiry about which repository Joyce used, he indicated that he probably did not use a repository,[43] that he probably just used the Summit credential to download the patch[44] and that if he had

---

[39] *See* Docket No. 563 at ¶¶ 14-15.

[40] Docket No. 499-8 143:19-144:4.

[41] *See* Docket No. 501-14 at 518-26.

[42] *Id.* at 518-20.

[43] *See id.*

[44] *See id.*

7

United States District Court
For the Northern District of California

1  retrieved anything from the repository, it would have been for versions of Solaris 8 and 9 for which

2  a credential was not required anyway.[45]  The testimony undeniably shows a blanket denial by

3  Appleby that any patches were ever stored and an explicit recitation by Joyce of an instance in

4  which Appleby authorized at least use of publicly available patches from a repository.  But it is not

5  unusual for witnesses to contradict each other.  Nor is it a situation where the same witness is asked

6  "what color is the sky" and answers "blue" one day and "red" the next.  Again, Oracle is welcome

7  to test the bounds of these inconsistencies in front of a jury.  But without clear evidence of bad

8  faith, sanctions are inappropriate.

9       ***Third***, even if Oracle could show bad faith, Oracle can point to no real prejudice resulting

10  from this late production.  Defendants admit that they failed to produce these two data sources.[46]

11  But as soon as Oracle asked for the repository and laptop, Defendants produced both sets of

12  materials within a month.[47]  Oracle does allege loss of certain metadata resulting from the

13  production.  But this was not spoliation; indeed errors in production can occur no matter the timing

14  of production.  While the delay undoubtedly was inconvenient, any prejudice was minimal.

15       Oracle argues that its ability to produce expert reports has been severely hampered, but

16  Defendants point out that a substantial portion of the expert reports on cross-use rely on Oracle's

17  own data about which patches were downloaded by Defendants.  While Oracle's expert used

18  Defendants' spreadsheets to determine what patches went to which customers, a significant portion

19  of this information was available in spreadsheets previously produced in December 2014.[48]  So the

20  ultimate question is whether the delay of two months was unduly prejudicial.  The case law teaches

21  that where production failure is due to delay rather than destruction and where the delay does not

22  impair Oracle's ability to go to trial, sanctions are unwarranted.[49]

---

[45] *See id.*  He also testified that he did not recall populating the repository with patches that were not publicly available.  *Id.*

[46] *See* Docket No. 555-5 at 6.

[47] *See id.* at 9-10.

[48] *See* Docket No. 564-14; Docket No. 562-7.

[49] *See United States v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1992) (finding that the prejudice inquiry looks to whether the non-moving party's actions impaired the moving party's

Case No. 5:13-cv-03385-PSG
ORDER DENYING MOTION FOR SANCTIONS

Finally, the contents of the repository and the laptop are largely duplicative of information previously produced.[50]  As to the former, the 10 Solaris patch and firmware files had been previously identified by Oracle in its interrogatory responses as downloads by Defendants.[51]  So, as of August 4, 2014, Oracle was already in possession of the relevant information.  As to the Joyce laptop, the contents of the supplemental laptop were transferred—in large part—to Joyce's current laptop, which was timely produced in this litigation.[52]

**IV.**

Oracle's motion is DENIED.

**SO ORDERED.**

Dated: May 19, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

ability to go to trial or threatened to interfere with the rightful decision of the case); *Network Appliance, Inc. v. Bluearc Corp.*, Case No. 03-cv-05665, 2005 WL 1513099, at *9 (N.D. Cal. June 27, 2005) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)) (finding delayed production of documents rarely sufficient to justify terminating sanctions).

[50] *See* Docket No. 555-5 at 6.

[51] *See* Docket No. 555-11; Docket No. 555-13.

[52] Oracle repeatedly urges that the laptop and directory prove cross-use, but the existence of these devices provides nothing more than a starting point for the inference that Defendants were using certain customers' logins to provide patches to all of their customers.  For the purposes of this sanctions motion, the court need not rule on this issue.

Case No. 5:13-cv-03385-PSG
ORDER DENYING MOTION FOR SANCTIONS

United States District Court
For the Northern District of California