1                                                    PAGES 1 – 60

2                        UNITED STATES DISTRICT COURT

3                      NORTHERN DISTRICT OF CALIFORNIA

4              BEFORE THE HONORABLE ELIZABETH D. LAPORTE

5    ORACLE AMERICA, INC., A DELAWARE    )
     CORPORATION; ORACLE INTERNATIONAL   )
6    CORPORATION, A CALIFORNIA           )
     CORPORATION,                        )
7                                        )
                     PLAINTIFFS,         )
8                                        )
       VS.                               ) NO. 3:16-CV-01393-JST-EDL
9                                        )
     HEWLETT PACKARD ENTERPRISE          )
10   COMPANY, A DELAWARE CORPORATION;    )
     AND DOES 1-50,                      )
11                                       )  SAN FRANCISCO, CALIFORNIA
                     DEFENDANTS.         )  MONDAY
12                                       )  OCTOBER 24, 2016
     _____)

13

14

15      **TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

16            **RECORDING  3:06 P.M. – 4:22 P.M.**

17   **APPEARANCES**:

18   **FOR PLAINTIFFS**          LATHAM & WATKINS LLP
                                 505 MONTGOMERY STREET
19                               SUITE 2000
                                 SAN FRANCISCO, CALIFORNIA 94111
20                          BY:  **CHRISTOPHER CAMPBELL, ESQUIRE**
                                 **BRITTANY LOVEJOY, ESQUIRE**
21                               (VIA TELEPHONE)

22   (FURTHER APPEARANCES ON FOLLOWING PAGE)

23

24   *TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                       *RETIRED OFFICIAL COURT REPORTER, USDC*

25

2

1   **APPEARANCES (CONTINUED):**

2

3   **FOR DEFENDANTS**                GIBSON, DUNN & CRUTCHER LLP
                                       555 MISSION STREET, SUITE 3000
4                                      SAN FRANCISCO, CALIFORNIA 94105
                              BY:   **JOSEPH GORMAN, ESQUIRE**
5                                      (VIA TELEPHONE)

6                                      GIBSON, DUNN & CRUTCHER LLP
                                       333 SOUTH GRAND AVENUE
7                                      LOS ANGELES, CALIFORNIA 90071
                              BY:   **SAMUEL LIVERSIDGE, ESQUIRE**
8                                      (VIA TELEPHONE)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   MONDAY, OCTOBER 24, 2016                        3:06 P.M.

2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                        ---OoO---

6                       **PROCEEDINGS**

7         **THE CLERK:**  NOW CALLING CASE 16-CV-1393, ORACLE

8   AMERICA INC., ET AL. VERSUS HEWLETT PACKARD ENTERPRISES

9   COMPANY.

10              COUNSEL ON THE PHONE BEGINNING WITH PLAINTIFF, STATE

11  YOUR APPEARANCES.

12        **MR. CAMPBELL:**  GOOD AFTERNOON.  THIS IS CHRISTOPHER

13  CAMPBELL OF LATHAM & WATKINS ON BEHALF OF PLAINTIFF ORACLE

14  AMERICA, INC.  WITH ME IS BRITTANY LOVEJOY ALSO OF LATHAM &

15  WATKINS ON BEHALF OF ORACLE.

16        **THE COURT:**  THANK YOU.

17        **MR. GORMAN:**  GOOD AFTERNOON.  THIS IS JOSEPH GORMAN

18  ON BEHALF OF DEFENDANT HEWLETT-PACKARD ENTERPRISES COMPANY FROM

19  GIBSON, DUNN & CRUTCHER.

20        **THE COURT:**  OKAY.  GOOD AFTERNOON.

21        **MR. LIVERSIDGE:**  ALSO ON THE LINE IS SAM LIVERSIDGE

22  OF GIBSON, DUNN & CRUTCHER FOR DEFENDANT HEWLETT-PACKARD

23  ENTERPRISE COMPANY.

24        **THE COURT:**  THANK YOU.

25              ALL RIGHT.  I WANT TO GO OVER THESE AND SEE ABOUT

1    RESOLVING THEM, THE VARIOUS DISPUTES.

2            NOW LET ME ASK AS A PRELIMINARY MATTER, IS IT CORRECT

3    THAT IN THE INITIAL -- THE RESPONSES TO THE DOCUMENT REQUESTS,

4    THAT DEFENDANT DIDN'T GIVE A DEADLINE FOR ITS RESPONSES TO BE

5    PRODUCED?

6            **MR. CAMPBELL:**  YOUR HONOR, THIS IS CHRISTOPHER

7    CAMPBELL.

8            THAT'S CORRECT.

9            **THE COURT:**  HP, IS THERE ANY COMMENTS ON THAT?

10           **MR. GORMAN:**  YOUR HONOR, THAT IS CORRECT.  WE HAVE

11   MET AND CONFERRED EXTENSIVELY SINCE SERVING THOSE RESPONSES.

12   HP HAS STATED THAT IT WILL SUBSTANTIALLY COMPLETE ITS

13   PRODUCTION BY THANKSGIVING.

14           **THE COURT:**  OKAY.

15           **MR. GORMAN:**  AND IT'S WORKING VERY HARD TO ACCOMPLISH

16   THAT GOAL.

17           **THE COURT:**  AND WHAT WAS THE REASON FOR NOT DOING

18   THAT ORIGINALLY?

19           **MR. GORMAN:**  WE HAD INTENDED TO MEET AND CONFER WITH

20   DEFENDANTS -- WITH PLAINTIFFS ON THAT, YOUR HONOR, AND I

21   BELIEVE IT WAS AN OVERSIGHT TO NOT INCLUDE THAT INFORMATION IN

22   THE INITIAL RESPONSE, WHICH WE QUICKLY RESOLVED DURING THE MEET

23   AND CONFER PROCESS.

24           **THE COURT:**  OKAY.  AND ORACLE WAS ALSO STATING -- AND

25   I HAVEN'T HAD A CHANCE TO FULLY READ THE RESPONSES YET -- BUT

1    THAT THE OBJECTIONS WEREN'T STATING WHETHER ANY RESPONSIVE

2    MATERIALS WERE BEING WITHHELD ON THE BASIS OF THE OBJECTION.

3          I HAVEN'T BEEN ABLE TO READ FULLY.  IT SEEMS AS

4    THOUGH AT LEAST IN SOME CASES, PERHAPS ALL, I DON'T KNOW, THAT

5    HP DID STATE SOMETHING ALONG THE LINES OF A BUNCH OF

6    OBJECTIONS, AND THEN WE WILL PRODUCE X, Y AND Z, OR X, PERHAPS,

7    LIKE CERTAIN CONTRACTS, AND I THINK THAT MAY BE SUFFICIENT,

8    BECAUSE BY -- ACCORDING TO THE COMMITTEE NOTES ON THE RULES

9    THAT -- BY STATING WHAT YOU WILL PRODUCE, THE COROLLARY TO THAT

10   IS YOU'RE NOT PRODUCING ANYTHING ELSE.

11          ANY COMMENTS BY ORACLE OR HP ON THAT?

12          **MR. CAMPBELL:**  YOUR HONOR, THAT'S HELPFUL GUIDANCE.

13   YOU KNOW, WE DID MEET AND CONFER ON THAT ISSUE.  OUR

14   QUESTION -- THE QUESTION RAISED WITH RESPECT TO THE INITIAL

15   RESPONSES WAS SIMPLY WHETHER THAT WAS THE CASE AND WHETHER THEY

16   WERE WITHHOLDING DOCUMENTS BASED ON THE OBJECTIONS STATED.

17          THE INITIAL RESPONSES, IN OUR VIEW, WERE NOT CLEAR ON

18   THAT ISSUE, AND SO WE RAISED IT WITH HEWLETT PACKARD'S COUNSEL

19   AND MET AND CONFERRED ON THAT TOPIC.  I THINK AT THIS POINT

20   THROUGH A MEET AND CONFER WE HAVE PROBABLY ADDRESSED IT,

21   CERTAINLY RECENTLY.  BUT, IN OUR VIEW, THE INITIAL RESPONSES

22   JUST WERE NOT CLEAR ON THAT FRONT.

23          **THE COURT:**  OKAY.  AND, HP, ANY COMMENTS ON THAT?

24          **MR. GORMAN:**  YES, THAT GUIDANCE IS HELPFUL, YOUR

25   HONOR, AND WE VIEW OUR RESPONSES AS COMPLYING WITH RULE 34 ON

1    THAT ISSUE, BUT WE PROVIDED FURTHER CLARIFICATION TO ORACLE

2    DURING THE MEET AND CONFER PROCESS TO THE EXTENT ANY OF THAT

3    WAS NOT CLEAR.

4         **THE COURT:**  OKAY.  AND THEN LET'S GO TO ONE OF THE

5    KEY DISPUTES.  AND AT THE END OF THIS, IF I HAVEN'T TOUCHED ON

6    ALL THE DISPUTES, I'M SURE YOU WILL LET ME KNOW, AND I DO WANT

7    YOU TO, ACTUALLY.

8         BUT ON THE RELEVANT SERVICES, I THINK THE DISPUTE IS

9    ESSENTIALLY WHETHER IT INCLUDES ONLY SOFTWARE SUPPORT RELATED

10   TO THE SOLARIS AND CERTAIN RELATED -- I FORGET THE EXACT WORDS.

11   YOU CAN HELP ME WITH THAT -- I THINK ORACLE FIRMWARE, OR

12   WHETHER IT GOES BEYOND THAT TO OTHER SOFTWARE AND/OR TO

13   HARDWARE.

14        AND THEN, FURTHER, MY UNDERSTANDING IS THAT HP IN

15   GENERAL IS AGREEING THAT IF IT RELATES TO BOTH, THE SAME --

16   BECAUSE THERE WAS ESSENTIALLY A PACKAGE OF HARDWARE AND

17   SOFTWARE, BUT THE SOFTWARE RELATED TO SUPPORT RELATED TO ANY

18   PARTICULAR CUSTOMER WAS INCLUDED AND DID RELATE TO THE SOLARIS

19   OR THE FIRMWARE, THEN THAT'S WITHIN THE SCOPE, BUT IF IT'S

20   OUTSIDE OF THAT, SUCH AS, FOR EXAMPLE, HARDWARE ONLY OR

21   SOFTWARE THAT DOESN'T RELATE TO THOSE TYPES OF SOFTWARE, THEN

22   IT WOULD NOT BE WITHIN THE SCOPE OF THE CLAIMS AND DEFENSES.

23        IS THAT THE DISPUTE?  AND, OF COURSE, THAT'S HP'S

24   POSITION, WHEREAS ORACLE SAYS MORE BROADLY, WE USE THE WORDS

25   "INCLUDING," FOR EXAMPLE, AND WE'RE NOT LIMITING IT TO THAT.

1          I'LL HAVE BOTH OF YOU CLARIFY THAT, IF YOU WOULD.

2          **MR. CAMPBELL:**  YES, YOUR HONOR.  THIS IS CHRISTOPHER

3  CAMPBELL FOR ORACLE.

4          I THINK THAT'S CLOSE TO WHAT THE DISPUTE IS.  IF I

5  COULD -- I'LL JUST PROVIDE A LITTLE ADDITIONAL CONTEXT TO SORT

6  OF FLESH IT OUT A LITTLE.

7          **THE COURT:**  YES.

8          **MR. CAMPBELL:**  OUR CLAIMS FOCUS ON THE SOFTWARE.  THE

9  COPYRIGHT INFRINGEMENT CLAIM, IT'S FOCUSED ON SOFTWARE, WHICH

10  IS THE COPYRIGHT INTELLECTUAL PROPERTY THAT WHICH WE ALLEGE WAS

11  INFRINGED BY HP DIRECTLY, CONTRIBUTORALLY, AND VICARIOUSLY.

12          WE ALSO HAVE THE INTERFERENCE CLAIM.

13          **THE COURT:**  AND THAT BEING THE SOLARIS AND THE

14  FIRMWARE?

15          **MR. CAMPBELL:**  THOSE ARE TWO EXAMPLES OF THE SOFTWARE

16  THAT WE ALLEGE WERE INFRINGED.  WE DON'T BELIEVE THOSE WERE THE

17  ONLY SOFTWARE PRODUCTS THAT WERE INFRINGED.  AND SO THAT'S SORT

18  OF A SEPARATE DISPUTE BETWEEN THE PARTIES, WHICH IS ALSO IN THE

19  LETTER, AS TO WHICH SOFTWARE HP SHOULD PROVIDE DISCOVERY ON.

20          WITH RESPECT TO THE SERVICES AT ISSUE, WHICH I THINK

21  WAS THE FIRST CATEGORY THAT YOU RAISED, FROM OUR PERSPECTIVE

22  THE FOCUS AT THE END OF THE DAY IS WHETHER HP INFRINGED OUR

23  SOFTWARE AND INTERFERED WITH ORACLE'S RELATIONSHIP WITH THESE

24  CUSTOMERS.

25          THE PARTICULAR RELATIONSHIP, OR, TO PUT IT MORE

1  SUCCINCTLY, HP'S DEFINITION OF THE RELATIONSHIP WITH THE

2  CUSTOMER, DOESN'T REALLY MATTER IF THERE WAS INFRINGEMENT OR IF

3  THERE WAS INTERFERENCE AS TO THAT CUSTOMER.

4        THE ISSUE WE'VE RUN UP AGAINST VERY EARLY IN

5  DISCOVERY, AND I THINK THE DISPUTE THAT'S LAID OUT IN LETTER,

6  IS WHETHER HP SHOULD BE PERMITTED IN RESPONDING TO OUR RFPS AND

7  INTERROGATORIES TO MAKE THAT DETERMINATION ON ITS OWN

8  UNILATERALLY AT THE OUTSET AND SAY, THESE ARE THE -- THIS IS

9  THE LIST OF CUSTOMERS THAT WE, HP, ARE GOING TO SAY WERE ONLY

10  SOFTWARE SUPPORT CUSTOMERS, SO WE'LL PROVIDE INFORMATION ON

11  THEM; BUT THESE ARE CUSTOMERS THAT WE, HP, ARE JUST SAYING AND

12  REPRESENTING WERE HARDWARE CUSTOMERS ONLY AND ONLY RECEIVED

13  HARDWARE SUPPORT, SO WE'RE NOT EVEN GOING TO -- WE'RE NOT GOING

14  TO PROVIDE ANY INFORMATION OR EVEN IDENTIFY THEM TO ORACLE.

15        THE PROBLEM IS WE HAVE, ONE, NO IDEA HOW THEY'RE

16  MAKING THAT DETERMINATION.  WE DON'T KNOW HOW THEY'RE DECIDING

17  WHETHER A CUSTOMER WAS JUST HARDWARE SUPPORT, JUST SOFTWARE

18  SUPPORT, OR SOME COMBINATION OF HARDWARE AND SOFTWARE SUPPORT.

19  WE JUST DON'T KNOW.

20        AND THE OTHER PROBLEM, AND PERHAPS MORE PRESSINGLY,

21  IS THAT WE DON'T KNOW IF HP DID DECIDE OR DEFINE A CUSTOMER'S

22  HARDWARE ONLY, WHETHER, ON THE GROUND, IN THE CONTEXT OF THE

23  ACTUAL RELATIONSHIP WITH THAT CUSTOMER, THAT IS, IN FACT, WHAT

24  WAS PROVIDED.  IN OTHER WORDS, HP COULD HAVE HAD A CONTRACT

25  WITH THE CUSTOMER FOR HARDWARE SUPPORT ONLY, AND THAT'S WHAT

```
 1    THE CONTRACT SAID, AND SO HP MAY NOW BE TAKING THE POSITION

 2    THAT THAT'S A HARDWARE-ONLY SUPPORT CUSTOMER.  BUT WE DON'T

 3    KNOW WHETHER, IN FACT, SOFTWARE SUPPORT OR SOFTWARE UPDATES

 4    WERE PROVIDED TO THAT CUSTOMER IN THE CONTEXT OF THAT

 5    RELATIONSHIP.

 6            AND FROM OUR PERSPECTIVE, THIS IS A VERY PRESSING

 7    ISSUE, BECAUSE IN THE TERIX CASE -- WHICH I'M SURE YOU GOT OUR

 8    LETTER, AND I'M HAPPY TO PROVIDE ADDITIONAL CONTEXT ON THAT

 9    PREVIOUS LITIGATION -- WE DID FIND CUSTOMERS THAT OSTENSIBLY IN

10    THE CONTRACT, OR WHEREVER ELSE, WERE DEFINED AS HARDWARE

11    SUPPORT CUSTOMERS BUT, IN FACT, DID RECEIVE INFRINGING SOFTWARE

12    FROM TERIX IN THAT CASE.

13            SO WE KNOW THIS IS NOT A HYPOTHETICAL ISSUE, AND WE

14    KNOW THIS IS SOMETHING THAT VERY LIKELY DID OCCUR, AND, FROM

15    OUR PERSPECTIVE, WE JUST NEED DISCOVERY ON IT.  WE JUST NEED TO

16    KNOW WHAT THE SCOPE OF THE INFRINGEMENT AND THE INTERFERENCE

17    WAS.

18            THE COURT:  ALL RIGHT.  AND HP ON THAT POINT?

19            MR. GORMAN:  YES, YOUR HONOR.

20            SO I THINK ONE OF THE MISUNDERSTANDINGS BETWEEN THE

21    PARTIES IS THAT WE ARE NOT DEFINING HARDWARE SUPPORT SOLELY BY

22    THE SCOPE OF THE CONTRACT AT ISSUE.

23            SO CHRIS GAVE THE EXAMPLE OF A TERIX-SUPPORTED

24    CUSTOMER WHO HAD A CONTRACT FOR HARDWARE BREAK-FIX SUPPORT ONLY

25    AND, NEVERTHELESS, RECEIVED SOFTWARE PATCHES AND UPDATES.  IN
```

1    OUR VIEW, THAT CUSTOMER WOULD BE INCLUDED IN THIS LITIGATION,

2    AND WE WOULD PROVIDE DOCUMENTS FOR THAT CUSTOMER.

3            THAT INFORMATION IS IN ORACLE AND TERIX'S POSSESSION,

4    WHICH CUSTOMERS RECEIVED THAT TYPE OF SUPPORT FROM TERIX,

5    BECAUSE THEY LITIGATED THIS ISSUE FOR YEARS IN THE *TERIX* CASE.

6            ANY TIME ORACLE HAS IDENTIFIED A CUSTOMER THAT IT

7    THINKS IS AT ISSUE, WE CONDUCT AN INVESTIGATION INTO THAT

8    CUSTOMER TO DETERMINE WHETHER IT IS AT ISSUE AND TO TALK TO

9    PEOPLE THAT WORKED ON THAT ACCOUNT, REVIEW DOCUMENTS AND

10   CONTRACTS FOR THAT ACCOUNT TO DETERMINE IF IT RECEIVED ANY TYPE

11   OF SOFTWARE SUPPORT.

12           WE'VE CONDUCTED OVER 175 FACT INVESTIGATION

13   INTERVIEWS TO DETERMINE THE APPLICABLE SCOPE OF CUSTOMERS.  SO

14   THAT IS TERIX-SUPPORTED CUSTOMERS.

15           THERE'S ALSO THE ALLEGATION THAT HP DIRECTLY PROVIDED

16   SOFTWARE SUPPORT TO CUSTOMERS, AND ORACLE HAS IDENTIFIED ONE

17   SUCH CUSTOMER, SYMANTEC.  AND WE HAVE CONDUCTED AN ADDITIONAL

18   FACTUAL INVESTIGATION TO DETERMINE IF THERE ARE ANY OTHER

19   CUSTOMERS THAT RECEIVED SOFTWARE SUPPORT FROM HP.

20           IT'S IMPORTANT TO NOTE THAT HARDWARE BREAK-FIX

21   SUPPORT IS PERFORMED FOR HUNDREDS OF CUSTOMERS AT HP, AND IT IS

22   ENTIRELY LAWFUL.  IT DOES NOT INVOLVE SOFTWARE AT ALL.  ORACLE

23   ADMITTED IN PARAGRAPH 6 OF ITS COMPLAINT AND AGAIN IN RESPONSE

24   TO HP'S 11TH INTERROGATORIES THAT, QUOTE:

25                       "ORACLE'S CUSTOMERS ARE FREE TO

1          PROCURE HARDWARE BREAK-FIX SUPPORT FROM OTHER

2          VENDORS IF THEY CHOOSE, AND A NUMBER OF

3          HIGHLY SOPHISTICATED CLIENTS DO SO."

4          AND BECAUSE MANY CUSTOMERS RECEIVED ONLY HARDWARE

5  BREAK-FIX SUPPORT, NO SOFTWARE SUPPORT AT ALL, NO PATCHES OR

6  UPDATES, NO ADVISORY SUPPORT FOR SOFTWARE, THOSE CUSTOMERS

7  SHOULD NOT BE AT ISSUE IN THIS CASE.

8          IF THEY ARE BROUGHT AT ISSUE INTO THIS CASE, IT COULD

9  INCREASE DISCOVERY POTENTIALLY TENFOLD.

10          **THE COURT:**  ALL RIGHT.  WELL, LET ME ASK ORACLE.

11          I THINK -- I DON'T THINK YOU WOULD DISAGREE THAT

12  HARDWARE-ONLY CUSTOMERS FOR WHOM NO SOFTWARE SUPPORT WAS

13  PROVIDED, EITHER THROUGH TERIX OR HP ONLY, TERIX NOT BEING

14  INVOLVED, BUT IT WAS STRICTLY HARDWARE, IS OUTSIDE THE SCOPE OF

15  THE CASE.

16          WHAT IT SEEMS IS YOU'RE SUSPICIOUS THAT THEY ARE

17  UNDERCOUNTING.  WHAT WAS JUST SAID IS THAT THEY ARE INCLUDING

18  THAT WITHIN THE SCOPE.  WHAT DO YOU MAKE OF THAT ON ORACLE'S

19  SIDE?

20          **MR. CAMPBELL:**  YES.  THANK YOU, YOUR HONOR.  JUST A

21  COUPLE OF POINTS IN RESPONSE.

22          IN TERMS OF THE INVESTIGATION THAT THEY ARE OR ARE

23  NOT CONDUCTING, THE PROBLEM THAT WE HAVE IS WE HAVE NO IDEA

24  WHAT INVESTIGATION, ANALYSIS, OR CRITERIA THEY'RE APPLYING TO

25  DECIDE WHETHER THEY'RE GOING TO IDENTIFY A CUSTOMER OR THEY'RE

1    NOT GOING TO IDENTIFY A CUSTOMER.

2             I UNDERSTAND WHAT MR. GORMAN IS SAYING.  I APPRECIATE

3    THAT.  BUT WE DON'T KNOW WHAT THEY'RE DOING OR HOW THEY'RE

4    MAKING THAT DETERMINATION.  AND, FRANKLY, THIS IS THE FIRST

5    TIME WE HEARD IT EXPRESSED IN THESE TERMS.

6             IT'S, FROM OUR PERSPECTIVE, SOMEWHAT OF A BLACK BOX,

7    AND WE JUST DON'T KNOW HOW THEY'RE DECIDING WHICH CUSTOMERS

8    THEY'RE GOING TO CHOSE TO IDENTIFY AND WHICH ONES THEY'RE NOT.

9             THERE'S ALSO A SORT OF SUBISSUE HERE THAT WAS RAISED

10   BY MR. GORMAN'S COMMENTS, WHICH IS, I THINK HE WAS IMPLYING

11   THAT ORACLE ALREADY KNOWS WHICH CUSTOMERS RECEIVED SOFTWARE

12   UPDATES FROM DISCOVERY IN THE *TERIX* LITIGATION.

13             (SIMULTANEOUS SPEAKING.)

14        **THE COURT:**  AS TO FROM TERIX, I THINK HE'S SAYING.

15        **MR. CAMPBELL:**  RIGHT.  SO -- RIGHT, IF THAT'S WHAT HE

16   WAS SAYING IN TERMS OF CUSTOMERS THAT WE WERE ABLE TO DISCOVER

17   HAD OBTAINED SOLARIS UPDATES FROM TERIX, THAT WE DID GET

18   DISCOVERY IN TO.

19             BUT IN TERMS OF DISCOVERY AS TO HP'S -- AS TO HP'S

20   CONDUCT AND CUSTOMERS TO WHICH IT SUPPLIED SOLARIS UPDATES, WE

21   HAVE NOT HAD DISCOVERY INTO THAT.

22             AND THAT ALSO RAISES THE ISSUE THAT IS SORT OF A

23   SEPARATE ISSUE HERE, WHICH IS WHICH TPMS ARE AT ISSUE, BECAUSE

24   WE KNOW THAT HP PARTNERS WITH MANY TPMS, AND THAT'S -- YOU

25   KNOW, WE HAVE NO REASON TO THINK THAT HP'S CONDUCT IS SOMEHOW

1    LIMITED TO TERIX.

2            THE ONLY DISCOVERY WE HAVE SO FAR WAS FROM THE *TERIX*

3    LITIGATION, AND SO SORT OF BY DEFINITION IS WHAT WE LEARNED

4    FROM TERIX OR FROM HP ABOUT TERIX.

5            BUT, YOU KNOW, WE'RE FOCUSED IN THIS LITIGATION ON HP

6    AND HP CUSTOMERS.  WE DON'T KNOW WHICH OF THOSE CUSTOMERS

7    RECEIVED SOLARIS UPDATES IN THE CONTEXT OF THESE RELATIONSHIPS.

8    WE JUST DON'T --

9            **THE COURT:**  OKAY, OKAY.

10           **MR. CAMPBELL:**  AND SO WE NEED DISCOVERY ON THAT.

11           **THE COURT:**  THAT'S HELPFUL.  BUT DON'T REPEAT

12   YOURSELF, OKAY?  BECAUSE I DON'T HAVE ALL DAY.  I'M ON CRIMINAL

13   DUTY, AND I'M SQUEEZING THIS IN.  SO IT'S GOING TO BE -- WE'RE

14   NOT GOING TO GET THROUGH IT IF THERE'S ANY REPETITION.

15           ALL RIGHT.  SO ON ORACLE'S SIDE, THOSE ARE TWO

16   DIFFERENT ISSUES.  WE'LL GET TO THE SECOND, WHICH IS OTHER

17   TPMS, BUT LET'S -- DO YOU -- WHAT'S YOUR RESPONSE ON THE THEORY

18   THAT IT'S A BLACK BOX?

19           **MR. GORMAN:**  THIS IS JOE GORMAN, YOUR HONOR.

20           I WOULD LIKE TO RESPOND TO ONE POINT RAISED BY

21   MR. CAMPBELL.  WE DID -- I DON'T THINK THIS IS THE FIRST TIME

22   WE'VE CHARACTERIZED OUR RESPONSE THIS WAY.  I THINK WE'VE BEEN

23   CONSISTENT ON THAT.

24           IN OUR LETTER, FOR EXAMPLE, WE STATE THAT IF ORACLE

25   CLAIMS THAT TERIX ALSO PROVIDED SOFTWARE SUPPORT FOR A

1  CUSTOMER, THAT CONTRACT IS ONLY FOR HARDWARE SUPPORT.  HP HAS

2  ALREADY AGREED TO PROVIDE DOCUMENTS FOR THAT CUSTOMER.

3        WE DON'T THINK IT'S BLACK BOX.  DISCOVERY DOESN'T

4  WORK IN THE SENSE -- IN THE WAY THAT ORACLE HAS DESCRIBED.

5  ORACLE CAN'T JUST CLAIM THAT IT DOESN'T TRUST HP TO PROVIDE

6  DOCUMENTS FOR CUSTOMERS THAT RECEIVED SOFTWARE SUPPORT AND,

7  THEREFORE, IT GETS AN AUDIT INTO HP'S ENTIRE MULTI-VENDOR

8  SUPPORT BUSINESS.  ORACLE HAS TO STATE A BASIS FOR DISCOVERY,

9  AND THEN HP WILL PROVIDE DOCUMENTS FOR THAT DISCOVERY.

10        HP IS NOT WITHHOLDING ANY DOCUMENTS RELATING TO ANY

11  CUSTOMER WHO RECEIVED SOFTWARE SUPPORT DIRECTLY FROM HP.  WE'RE

12  CONDUCTING A VERY THOROUGH AND EXTENSIVE FACTUAL INVESTIGATION

13  TO COME UP WITH THOSE CUSTOMERS, AND WE WILL PRODUCE THEIR

14  IDENTITY AND DOCUMENTS RELATING TO THE SUPPORT THEY RECEIVED.

15        **THE COURT:**  OKAY.

16        **MR. GORMAN:**  IT'S WORTH NOTING THAT IT WAS VERY RARE

17  FOR THIS TYPE OF DIRECT SUPPORT RELATIONSHIP THAT SYMANTEC HAD

18  THAT FORMS THE ENTIRE BASIS FOR ORACLE'S DIRECT INFRINGEMENT

19  CLAIMS.

20        SO IN TERMS OF PROPORTIONALITY, IT SEEMS GROSSLY

21  DISPROPORTIONATE TO HAVE A WINDOW INTO THE ENTIRE DIRECT

22  SUPPORT BUSINESS JUST BASED ON THIS ONE CUSTOMER RELATIONSHIP

23  THAT WAS PARTICULARLY UNUSUAL.

24        **THE COURT:**  AND DIRECT SUPPORT, YOU MEAN WITHOUT A

25  THIRD PARTY, WITHOUT A TPM, BUT ORACLE WAS DOING THE SOFTWARE

1   SUPPORT DIRECTLY?

2           **MR. GORMAN:**  HP AND TERIX WERE BOTH CONTRACTED WITH

3   SYMANTEC, BUT THE CONTRACTUAL ARRANGEMENT WAS THAT, RATHER THAN

4   HAVE -- THE TYPICAL RELATIONSHIP WAS THAT SYMANTEC WOULD

5   CONTRACT WITH HP AND THEN HP WOULD SUBCONTRACT WITH TERIX, BUT

6   IN THIS RELATIONSHIP, ALLEGEDLY TERIX DOWNLOADED THE PATCHES

7   AND UPDATES, PROVIDED THEM TO HP, AND THEN HP INSTALLED THEM

8   FOR SYMANTEC.

9           **THE COURT:**  OKAY.  SO WHAT -- I MEAN, I THINK THE

10  NORMAL THING IN DISCOVERY IS THAT YOU SAY WHAT YOU'RE DOING AND

11  WHAT YOU'RE PRODUCING AND WHAT YOU'RE NOT PRODUCING.  AT LEAST

12  THAT SHOULD BE IN THE NORMAL NOW, BUT IT PROBABLY ISN'T.  BUT

13  NORMATIVE WAY REQUIRED.

14          BUT YOU DON'T NECESSARILY SAY HOW YOU ASCERTAINED

15  THAT.  NOW -- I MEAN, THIS IS NOT A -- IT SOUNDS LIKE YOU'RE

16  DOING THIS TO SOME DEGREE IN THE OLD-FASHIONED WAY, LIKE

17  INTERVIEWING PEOPLE AND THE LIKE.

18          I MEAN, HOW MANY -- WHAT IS THE ORDER OF MAGNITUDE OF

19  DIFFERENCE BETWEEN HOW YOU'RE RESPONDING VERSUS IF YOU WENT

20  THROUGH AND INVESTIGATED EVERY SINGLE ENTITY WITH WHOM YOU HAD

21  ON THE SURFACE A HARDWARE-ONLY CONTRACT?  HOW MANY ARE WE

22  TALKING ABOUT?

23          **MR. GORMAN:**  IT COULD INCREASE TENFOLD.  AND --

24          (SIMULTANEOUS SPEAKING.)

25          **THE COURT:**  BE MORE -- "COULD INCREASE TENFOLD" IS

1    EXTREMELY VAGUE.  IT'S BETTER THAN SAYING "A LOT," BUT IT'S A

2    LITTLE UNCLEAR.  AND "COULD," I DON'T KNOW WHAT THAT MEANS.

3             **MR. GORMAN:**  SO THE WAY THAT DISCOVERY BASICALLY

4    WORKS IN THIS CASE IS ONCE AN ACCOUNT IS IDENTIFIED, THEN YOU

5    HAVE TO -- EACH ACCOUNT HAS ITS OWN PEOPLE TO WORK ON THAT

6    ACCOUNT, AND DISCOVERY GOES BACK TEN YEARS.  SO YOU OFTEN HAVE

7    TO SPEAK TO A FEW DIFFERENT PEOPLE TO FIND OUT WHERE THE

8    RELEVANT DOCUMENTS ARE IN THIS CASE.

9             IN SOME CASES THERE ARE HIGH-LEVEL PEOPLE THAT YOU

10   CAN TALK TO ABOUT EVERYTHING AT ISSUE IN THE CASE.  THIS IS NOT

11   SUCH A CASE, WHICH IS WHY IT'S SO IMPORTANT TO HP TO NARROW THE

12   SCOPE OF THE CUSTOMERS TO ONLY THOSE CUSTOMERS WHO RECEIVED THE

13   RELEVANT SUPPORT.

14            I WOULD SAY APPROXIMATELY 20 TO 30 CUSTOMERS

15   OPERATING UNDER HP'S DEFINITION.  THAT COULD INCREASE IF WE

16   LEARN MORE FROM ORACLE ABOUT CUSTOMERS THAT CLAIM THAT TERIX

17   PROVIDED SOFTWARE SUPPORT TO THAT WE ARE NOT AWARE OF RIGHT

18   NOW.

19            IF IT INCREASES THE HARDWARE BREAK-FIX ONLY

20   INTERNATIONALLY, THAT WOULD BE HUNDREDS.  IT WOULD PROBABLY BE

21   300 OR MORE, BUT I CAN'T GIVE YOU AN EXACT NUMBER.

22            **THE COURT:**  WELL, WHEN YOU SAY THAT SYMANTEC IS

23   UNUSUAL, HAVE YOU LOOKED TO SEE WHETHER IT IS, IN FACT, UNIQUE?

24            **MR. GORMAN:**  ABSOLUTELY.  WE HAVE TALKED TO MANY

25   COMPANIES WHO RECEIVED SUPPORT FROM HP AND ANY NUMBER OF

1    DIFFERENT MULTI-VENDOR SUPPORT ARRANGEMENTS, AND I HAVE

2    ACTUALLY NOT COME ACROSS A SINGLE COMPANY WITH A RELATIONSHIP

3    LIKE THAT ONE.

4         **THE COURT:**  OKAY.  AND LET ME ASK ORACLE.

5         I DON'T BELIEVE THAT IN TERMS OF RELEVANT TO THE

6    EXISTING PLED CLAIMS AND DEFENSES THROWING IN THE WORD

7    "INCLUDING" MAKES ANY DIFFERENCE AT ALL.

8         SO THE QUESTION IS, WHAT INFORMATION, IF ANY, DO YOU

9    HAVE THAT HP IS -- IF THEY'RE WHAT THEY SAY THEY'RE DOING, I

10   THINK THAT'S SUFFICIENT.  WHAT INFORMATION DO YOU HAVE TO THINK

11   THAT THAT IS NOT SUFFICIENT?  WHAT ACTUAL BASES DO YOU HAVE?

12        **MR. CAMPBELL:**  WELL, YOUR HONOR, THE DISCOVERY THAT

13   WE HAVE SO FAR IS LIMITED TO CUSTOMERS THAT WERE IDENTIFIED IN

14   THE *TERIX* LITIGATION.  WHAT I UNDERSTOOD MR. GORMAN TO BE

15   SAYING IS THAT ONCE WE, ORACLE, IDENTIFY A CUSTOMER THAT WE

16   THINK MAY HAVE BEEN OR WAS THE TARGET OF INFRINGEMENT, THAT

17   THEN THEY WILL GO OUT AND PERFORM AN INVESTIGATION AND FIND OUT

18   WHO HAS RELEVANT DOCUMENTS AND SO FORTH.

19        THAT PUTS THE BURDEN ON ORACLE OF IDENTIFYING WHICH

20   CUSTOMERS HP PROVIDED SOLARIS UPDATES TO AND --

21        (SIMULTANEOUS SPEAKING.)

22        **THE COURT:**  RIGHT.  AND I DON'T THINK THAT'S THE

23   PROPER BURDEN, BUT I'M NOT SURE.  I THINK WHAT HE WAS SAYING

24   WAS --

25        **MR. CAMPBELL:**  THAT'S NOT --

1              **THE COURT:**  -- HE'S DOING EVERYTHING HE CAN TO

2    IDENTIFY THEM, BUT IF HE MISSES SOMEONE AND YOU COME UP WITH

3    THAT, THEN THEY LOOK AT THAT PERSON, TOO, OR THAT ENTITY.  IS

4    THAT CORRECT OR NOT?

5              **MR. CAMPBELL:**  THAT'S CORRECT.

6              **THE COURT:**  GO AHEAD.

7              **MR. GORMAN:**  I CAN CLARIFY, TOO.

8              **THE COURT:**  YEAH.

9              **MR. GORMAN:**  ON THE DIRECT SUPPORT CUSTOMERS LIKE

10   SYMANTEC, WE UNDERSTAND THAT ORACLE MAY NOT HAVE ANY

11   INFORMATION FROM THE *TERIX* CASE THAT COULD HELP THEM IDENTIFY

12   ANY MORE CUSTOMERS.  AND SO WE ARE, OBVIOUSLY, CONDUCTING A

13   FACT INVESTIGATION TO IDENTIFY THOSE CUSTOMERS.

14              ON THE TERIX-SUPPORTED CUSTOMERS, WE'RE ALSO

15   CONDUCTING A FACT INVESTIGATION TO FIND OUT THAT INFORMATION.

16              WE THINK THAT ORACLE ALSO HAS HELPFUL INFORMATION

17   THAT IT CAN PROVIDE TO US AND SAY, HEY, YOU DIDN'T IDENTIFY

18   THIS CUSTOMER, AND WE KNOW FROM THE *TERIX* CASE THAT THEY GOT

19   SOFTWARE SUPPORT.

20              IF WE GET THAT INFORMATION FROM ORACLE, WE WILL GO

21   LOOK INTO THAT CUSTOMER, AND WE HAVE BEEN DOING THAT, BECAUSE

22   ORACLE IDENTIFIED CUSTOMERS IN RESPONSE TO OUR INTERROGATORIES

23   THAT WERE NOT ON OUR LIST, AND WE INVESTIGATED THEM.

24              **THE COURT:**  WELL, LET ME ASK YOU THIS:  I THINK WHEN

25   ORACLE DOES THAT, THEN THAT SHOWS THERE'S SOMETHING WRONG WITH

1  OR INSUFFICIENT WITH HOW YOU'RE INVESTIGATING ON YOUR OWN.  AND

2  SO HAVE YOU FIGURED OUT WHY YOU MISSED THOSE ENTITIES?  AND

3  THEN APPLY THAT GOING FORWARD.

4        **MR. GORMAN:**  WELL, I DON'T THINK WE MISSED THEM

5  BECAUSE THEY TURNED OUT TO, FOR EXAMPLE, BE INTERNATIONAL ONLY,

6  OR THEY WERE HARDWARE BREAK-FIX ONLY.

7        **THE COURT:**  OKAY.  SO THEY WEREN'T REALLY WITHIN --

8        (SIMULTANEOUS SPEAKING.)

9        **MR. GORMAN:**  FOR EXAMPLE, ONE CUSTOMER I THINK -- WE

10  ACTUALLY HAVEN'T TALKED ABOUT THIS WITH ORACLE, BUT ONE

11  CUSTOMER WE FOUND THAT TERIX WAS NOT PROVIDING SUPPORT FOR SUN

12  SERVERS.  IT WAS PROVIDING SUPPORT FOR LIKE IBM AND DELL

13  SERVERS.  AND SO WE -- YOU KNOW, WE FIND OUT DIFFERENT THINGS

14  WHEN WE GO INVESTIGATE THE CUSTOMERS.

15        BUT OUR FACT INVESTIGATION IS ONGOING.  WE HAVEN'T

16  REPRESENTED THAT WE HAVE A COMPLETE LIST OF CUSTOMERS YET.

17  PEOPLE ARE --

18        **MR. CAMPBELL:**  YOUR HONOR --

19        **MR. GORMAN:**  -- CONDUCTING INTERVIEWS

20  (INDISCERNIBLE).

21        **MR. CAMPBELL:**  IF I COULD JUST ADD ONE ADDITIONAL

22  POINT HERE?

23        **THE COURT:**  SAY WHO'S TALKING, PLEASE.

24        **MR. CAMPBELL:**  I APPRECIATE --

25        **THE COURT:**  EXCUSE ME.  EVERY TIME YOU TALK, PLEASE

1    SAY WHO YOU ARE.

2             **MR. CAMPBELL:**  ABSOLUTELY, YOUR HONOR.  CHRISTOPHER

3    CAMPBELL --

4             **THE COURT:**  ALL RIGHT.

5             **MR. CAMPBELL:**  -- FOR ORACLE.

6             I GUESS ONE ISSUE THAT I HAVE AND ONE THING, FRANKLY,

7    I MAY JUST NOT QUITE UNDERSTAND AT THIS POINT.  MR. GORMAN IS

8    REPRESENTING THAT THEY'RE GOING OUT BEYOND THE LIST OF

9    CUSTOMERS THAT WE HAVE IDENTIFIED TO SOME BROADER LIST OF

10   CUSTOMERS AND TRYING ASCERTAIN FOR WHICH OF THOSE CUSTOMERS

11   SOLARIS UPDATES WERE PROVIDED.

12            I GUESS WHAT I STILL DON'T UNDERSTAND IS WHETHER HE

13   IS ACTUALLY GOING OUT TO THE CUSTOMERS THAT HP BELIEVES AT THE

14   OUTSET WERE HARDWARE ONLY AND CONFIRMING THEY WERE HARDWARE

15   ONLY.  AND THE REASON I RAISE THIS AND THE REASON WE SUSPECT

16   THAT THAT DISTINCTION MAY -- THAT STANDING DISTINCTION MAY

17   ACTUALLY NOT HOLD OUT AT THE END OF THE DAY IS BECAUSE THESE

18   SPECIFIC CUSTOMERS THAT WE IDENTIFIED IN OUR COMPLAINT AND HAVE

19   THE COURT DOCUMENTS FROM, SHOWING THAT HP AND TERIX WERE

20   PROVIDING SOLARIS UPDATES TO THE CUSTOMERS, OPERATING UNDER

21   CONTRACTS THAT HP WOULD SAY FORBADE TERIX FROM PROVIDING

22   SOLARIS UPDATES.

23            AND SO IF THEY WERE USING SOME EX-ANTI- -- WHETHER

24   IT'S THE CONTRACT OR SOMETHING ELSE SOME EX-ANTI-DISTINCTION TO

25   SAY THESE ARE THE CUSTOMERS WE ARE GOING TO FULLY INVESTIGATE,

1    BUT THESE ARE THE CUSTOMERS WE'RE NOT GOING TO FULLY

2    INVESTIGATE, THAT IS RELEVANT TO THE CUSTOMERS THAT ULTIMATELY

3    ARE IDENTIFIED TO US OR IDENTIFIED AND DETERMINED THROUGH THIS

4    INTERNAL INVESTIGATION NEVER RECEIVED ANY SOLARIS UPDATES.  WE

5    STILL DON'T KNOW THAT.

6         **THE COURT:**  OKAY.  YOU CAN RESPOND.  I THINK HEARD

7    YOU SAY EARLIER YOU WERE NOT LIMITING IT TO WHAT THE WORDS IN

8    THE CONTRACT SAID.

9         **MR. GORMAN:**  THAT'S ABSOLUTELY CORRECT.  WE ARE NOT

10   LIMITING IT TO WHAT THE WORDS IN THE CONTRACT SAY AT ALL.

11        **MR. CAMPBELL:**  I GUESS THE QUESTION THEN IS, ARE YOU

12   LIMITING IT AT ALL?  ARE YOU INVESTIGATING ALL OF YOUR SUPPORT

13   CUSTOMERS THAT HAD ORACLE HARDWARE OR SOFTWARE?  IS IT

14   EVERYBODY THAT WAS RUNNING ORACLE PRODUCTS?  I GUESS THAT'S THE

15   RELEVANT QUESTION HERE.

16        **MR. GORMAN:**  IS THE RELEVANT QUESTION WHAT CRITERIA

17   WE'RE USING OR -- I'M SORRY.  I DON'T UNDERSTAND QUESTION.

18        **MR. CAMPBELL:**  RIGHT.  IS HP GOING OUT TO -- YOU SAY

19   YOU DON'T WANT TO INCLUDE HARDWARE SUPPORT OR BREAK-FIX ONLY

20   CUSTOMERS IN THE SCOPE OF DISCOVERY.  BUT IN CONDUCTING THIS

21   INVESTIGATION IN DETERMINING WHICH CUSTOMERS RECEIVED SOFTWARE

22   SUPPORT, IS HP GOING OUT TO ALL -- OR INVESTIGATING ALL OF ITS

23   SUPPORT CUSTOMERS THAT WERE RUNNING ORACLE PRODUCTS?

24        **THE COURT:**  EVEN IF THEY WERE OSTENSIBLY HARDWARE

25   ONLY.

1          **MR. GORMAN:**  YEAH, WE ARE DOING THAT.  WE ARE

2     INVESTIGATING -- I HESITATED ON THE WORD "ALL," BECAUSE WE'RE

3     GETTING OUR LIST FROM VARIOUS DOCUMENTS, LIKE ORACLE'S INITIAL

4     DISCLOSURES, TERIX'S INTERROGATORY RESPONSES, ORACLE'S

5     COMPLAINT, ORACLE'S RESPONSES TO HP'S INTERROGATORIES.

6          WHEN A CUSTOMER NAME COMES UP, WE INVESTIGATE IT, AND

7     WE DO NOT INVESTIGATE IT BECAUSE IT HAS A HARDWARE

8     BREAK-FIX-ONLY CONTRACT.  WE TALK TO THOSE PEOPLE WHO WORKED ON

9     THE ACCOUNT AND LEARNED WHAT OCCURRED ON THE ACCOUNT.

10          **THE COURT:**  WELL, I GUESS WHAT THE PLAINTIFF IS

11     ASKING, YOU HAVE YOUR OWN INFORMATION ABOUT YOUR CUSTOMERS.

12     THEY HAVE, ALMOST BY DEFINITION, LESS INFORMATION THAN YOU DO

13     ABOUT ALL YOUR CUSTOMERS.

14          **MR. GORMAN:**  RIGHT.

15          **THE COURT:**  AND ARE YOU USING THAT, OR YOU ARE ONLY

16     LOOKING AT THE ONES THAT COME UP IN DISCOVERY THAT'S COME TO

17     YOU, AS OPPOSED TO YOU'RE DOING --

18          **MR. GORMAN:**  NO.

19          **THE COURT:**  OKAY.  SAY THAT AGAIN THEN BECAUSE --

20          **MR. GORMAN:**  YES.  WE ARE NOT LIMITING IT TO -- FOR

21     THE TERIX CUSTOMERS, I WOULD SAY THAT WE -- THAT IS OUR BASIC

22     APPROACH, IS TO LIMIT IT TO ANY CUSTOMERS IDENTIFIED IN THE

23     DISCOVERY RESPONSES AND THE DISCLOSURES, WHICH WERE MANY

24     CUSTOMERS.

25          BUT FOR THE HP DIRECT SUPPORT CUSTOMERS, NO, WE

```
 1   UNDERSTAND THAT WE HAVE THAT INFORMATION, AND WE ARE

 2   IDENTIFYING THE CUSTOMERS AND CONTACTING THEM.

 3            AND THE WAY WE DID THAT IS WE TALKED TO PEOPLE WHO

 4   ARE HIGHER UP AT HP TO GET THE NAMES OF CUSTOMERS WHO RECEIVED

 5   DIFFERENT TYPES OF SUPPORT, AND THEN WE WENT DOWN TO THE ACTUAL

 6   ACCOUNT AND SPOKE TO THE PEOPLE WHO WORKED ON THE ACCOUNT.

 7            THE COURT:  ALL RIGHT.  I MEAN THAT SEEMS LIKE A

 8   REASONABLE METHOD.

 9            MR. CAMPBELL:  YOUR HONOR, I GUESS FROM OUR

10   PERSPECTIVE, IT'S STILL EXCLUDING CUSTOMERS THAT WE HAVE NEVER

11   LEARNED ABOUT FROM TERIX OR OTHERWISE.

12            AS HE SAID, THEY ARE LIMITING -- FOR ANYONE THAT HE'S

13   NOT CLAIMING A DIRECT SUPPORT CUSTOMERS, IT COULD BE ANYONE WHO

14   PARTNERED WITH ANOTHER TPM, INCLUDING TERIX --

15            (SIMULTANEOUS SPEAKING.)

16            THE COURT:  WELL, LET'S GET TO THAT.  NOW --

17            (SIMULTANEOUS SPEAKING.)

18            MR. CAMPBELL:  -- INVESTIGATING THE CUSTOMER --

19            THE COURT:  OKAY.  WHAT IS HP'S POSITION ON CUSTOMERS

20   THAT YOU PARTNERED WITH OTHER TPMS, BESIDES TERIX?

21            MR. GORMAN:  OUR POSITION IS THAT -- OUR POSITION IS

22   THAT THOSE CUSTOMERS ARE NOT RELEVANT.

23            THE COURT:  OKAY.  AND THAT IS BASED ON WHAT?

24            MR. GORMAN:  ORACLE HAS NOT IDENTIFIED ANY CUSTOMER

25   WHO -- ALL OF THE ALLEGATIONS IN THE COMPLAINT RELATE TO TERIX
```

1    PROVIDING PATCHES AND UPDATES TO A CUSTOMER DIRECTLY OR

2    PROVIDING THOSE PATCHES AND UPDATES TO HP AND INSTRUCTING HP TO

3    PROVIDE THEM DIRECTLY TO THE CUSTOMER.

4         THERE'S NO ALLEGATION IN THE COMPLAINT RELATING TO

5    ANY OTHER TPMS.  WE'VE AGREED TO PROVIDE ORACLE WITH A LIST OF

6    THE TPMS THAT SUPPORTED SUN SERVERS, IN ADDITION TO TERIX, BUT

7    WE HAVE NOT AGREED TO PROVIDE DOCUMENTS, YOU KNOW, FULSOME

8    DOCUMENTS RELATING TO THOSE TPM'S PROVISION OF SUPPORT FOR SUN

9    SERVERS.

10        **THE COURT:**  ALL RIGHT.  AND WHAT INFORMATION, IF ANY,

11   DOES HP HAVE -- I MEAN -- AND, AS I SAY, I GIVE ABSOLUTELY NO

12   WEIGHT TO THE WORD "INCLUDING" IN THE COMPLAINT AS SOMEHOW

13   EXPANDING THE CLAIMS AND DEFENSES.  IT'S GOT TO BE INFORMATION

14   THAT'S RELEVANT TO THE EXISTING CLAIMS AND DEFENSES, NOT TO

15   DEVELOP NEW CLAIMS.

16        SO WHAT -- WHAT BASIS DO YOU HAVE TO SAY THAT THEY --

17   THEY NEED TO PRODUCE -- TO DO INVESTIGATION TO OTHER TPMS?

18        **MR. CAMPBELL:**  I THINK ONE THING -- I'M NOT SURE IF

19   THAT WAS DIRECTED TOWARDS ORACLE OR --

20        **THE COURT:**  YES, TOWARDS ORACLE.

21        **MR. CAMPBELL:**  -- HP.

22        (SIMULTANEOUS SPEAKING.)

23        **THE COURT:**  YEAH, TOWARDS ORACLE.

24        **MR. CAMPBELL:**  OKAY.

25        **THE COURT:**  AND IS THIS -- SAY WHO YOU ARE AGAIN.

1          **MR. CAMPBELL:** YES, YOUR HONOR.  MY APOLOGIES.  I

2     THOUGHT THAT WAS QUESTION FOR OPPOSING COUNSEL.  THIS IS CHRIS

3     CAMPBELL FROM LATHAM & WATKINS.

4          SO, YOU KNOW, FROM OUR PERSPECTIVE, THE ONLY

5     INFORMATION THAT WE HAVE -- WE HAVE BEEN ABLE TO GET SO FAR IS

6     INFORMATION THAT WE OBTAINED IN THE *TERIX* LITIGATION FROM HP OR

7     TERIX.  SO THE THRUST OF THAT INFORMATION SO FAR IS RELATED TO

8     TERIX, NOT SURPRISINGLY.

9          WE HAVE NO REASON TO BELIEVE THAT HP'S CONDUCT

10    THEY'VE -- THEY RUN A MULTI-VENDOR SUPPORT BUSINESS.  THEY

11    PARTNER WITH A NUMBER OF OTHER TPMS.  WE DON'T KNOW WHICH ONES

12    YET.  THEY HAVE NOT IDENTIFIED THEM YET, BUT MR. GORMAN SAID

13    THEY'VE ARE AGREED TO DO SO.

14         WE JUST HAVE NO INFORMATION ABOUT WHAT THEY'VE DONE

15    WITH RESPECT TO THOSE OTHER TPMS, BUT WE HAVE NO REASON TO

16    BELIEVE THIS WAS CONDUCT THAT WAS SOMEHOW LIMITED TO TERIX,

17    PARTICULARLY GIVEN THE DIRECT INFRINGEMENT ALLEGATIONS AGAINST

18    HP AND EVIDENCE THAT THEY INSTALLED PATCHES DIRECTLY.

19         **THE COURT:** ALL RIGHT.  AND WHAT'S HP'S RESPONSE

20    THAT?

21         **MR. GORMAN:** JUST TO RESPOND TO THAT --

22         **THE COURT:** YES.

23         **MR. GORMAN:** I COULD RESPOND TO THAT QUICKLY.  THIS

24    IS JOE GORMAN FROM GIBSON DUNN.

25         I THINK THERE IS A BASIS TO FROM ORACLE'S OWN

1    ALLEGATIONS THAT THE CONDUCT IS LIMITED TO TERIX, SINCE TERIX

2    WAS INVOLVED IN EVERY SINGLE ACCOUNT IDENTIFIED BY ORACLE TO

3    DATE, INCLUDING THE DIRECT INFRINGEMENT ACCOUNT, SYMANTEC.

4            THAT WAS AN ACCOUNT THAT WAS STRUCTURED DIFFERENTLY

5    THAN THE TYPICAL TERIX AS A SUBCONTRACTOR, BUT IT DID INVOLVE

6    TERIX ACTUALLY DOWNLOADING THE PATCHES AND UPDATES AND

7    PROVIDING THEM TO HP TO INSTALL, ALLEGEDLY, ACCORDING TO

8    ORACLE.

9            AND SO THERE IS REALLY NO BASIS TO EXPAND THE

10   COMPLAINT TO OTHER ACCOUNTS, ESPECIALLY BECAUSE, YOU KNOW,

11   AFTER THAT -- OTHER TPMS, EXCUSE ME -- ESPECIALLY SINCE AFTER

12   THAT, THE *TERIX* LAWSUIT WAS FILED AND ONGOING.  HP DISCONTINUED

13   ITS RELATIONSHIP WITH TERIX ON THESE ACCOUNTS AND REPLACED IT

14   WITH OTHER TPMS.

15           AND SO THEN WE'RE GOING TO HAVE A SITUATION WHERE

16   WE'RE JUST REALLY EXPANDING THE SCOPE OF DISCOVERY BY DOUBLING

17   IT, BECAUSE ALL OF THESE ACCOUNTS NOW DO NOT HAVE TERIX AS

18   THEIR TPM.

19           **THE COURT:**  SO AT -- HOW DID -- HOW DID ORACLE FIND

20   OUT ABOUT TERIX?  AND WAS IT ONLY THROUGH THE *TERIX* LITIGATION

21   THAT THE HP ISSUE EMERGED?

22           **MR. CAMPBELL:**  YOUR HONOR, CHRISTOPHER CAMPBELL FOR

23   ORACLE.

24           THAT'S CORRECT.  THE CLAIMS AGAINST TERIX WERE FIRST

25   DISCOVERED THROUGH CONVERSATIONS WITH A CUSTOMER THAT

1    ACTUALLY -- THAT PARTICULAR CUSTOMER IS NOT AN ISSUE IN THIS

2    LITIGATION, BUT THE CUSTOMER ESSENTIALLY WITHDREW ALL OF ITS

3    SERVERS FROM ORACLE SUPPORT, AND, THEREFORE, WAS NO LONGER

4    PERMITTED TO ACCESS AND USE THE SOLARIS UPDATES.  IN

5    CONVERSATIONS WITH THAT CUSTOMER, IT BECAME CLEAR THE CUSTOMER

6    WAS STILL ACCESSING SOLARIS UPDATES AND THEY WERE DOING SO

7    THROUGH TERIX AND WITH TERIX'S HELP.

8            AND IT WAS THAT SORT OF REVELATION AND THE ABILITY

9    THROUGH THAT CUSTOMER AND INFORMATION RELATED TO THAT CUSTOMER

10   TO ACTUALLY PROVE THAT WAS WHAT WAS HAPPENING.  THAT LED TO THE

11   *TERIX* LITIGATION.

12           IN THE COURSE OF THAT LITIGATION AND THROUGH

13   DISCOVERY IN THAT LITIGATION, HP'S INVOLVEMENT WITH TERIX AND

14   HP'S INVOLVEMENT WITH REGARD TO THE SPECIFIC CUSTOMERS AT ISSUE

15   IN THAT CASE CAME TO LIGHT THROUGH DISCOVERY BOTH FROM HP,

16   TERIX, AND CERTAIN THIRD PARTIES.  IT WAS PARTIAL DISCOVERY,

17   BUT IT WAS ENOUGH TO MAKE CLEAR TO US THAT WE HAD A GOOD-FAITH

18   BASIS TO ASSERT THESE CLAIMS AGAINST HP.

19           I'LL JUST NOTE THAT THE CONTEXT IN WHICH HP PROVIDES

20   THESE DIRECT SERVICES AND INDIRECTLY PROVIDES SERVICES THROUGH

21   TPMS LIKE TERIX, IT IS MULTI-VENDOR SUPPORT BUSINESS, AND THAT

22   BUSINESS IS BY NO MEANS LIMITED TO TERIX.  IT IS -- AS WE

23   UNDERSTAND IT, THEY USE A NUMBER OF DIFFERENT TPMS IN THEIR

24   PROCEDURES AND (INDISCERNIBLE) SO FORTH FOR SUPPORTING ORACLE

25   PRODUCTS.

1          WE HAVE NO REASON TO BELIEVE THAT IS SOMEHOW

2    DIFFERENT THAN TERIX THAN FOR TPMS.  AND SO WHAT WE'RE SEEKING

3    AT THIS POINT, FRANKLY, ARE JUST BASIC DISCOVERY ON WHICH TPMS

4    THESE PROVIDED --

5          (SIMULTANEOUS SPEAKING.)

6          **THE COURT:**  WELL, THEY SAID THEY WERE GOING TO

7    PROVIDE A LIST OF TPMS.

8          NOW, IT STRIKES ME THAT THE TIMING OF WHEN THE TPMS

9    WERE EMPLOYED IS -- MAY BE RELEVANT.  IN OTHER WORDS, BUT --

10   BUT TELL ME WHAT YOU THINK ABOUT THIS.

11         MY THOUGHT IS THAT IF TERIX, ESSENTIALLY, BECAME

12   CLEAR IN THAT LITIGATION THEY WERE DOING SOMETHING ILLEGAL, AND

13   THEY WERE INVOLVED WITH HP IN THAT, AND AT THE VERY LEAST HP

14   WAS CONTRACTING WITH A TPM THAT WAS DOING SOMETHING ILLEGAL,

15   AND THEN THEY REPLACED TERIX WITH OTHER TPMS, IT SEEMS

16   EXCESSIVELY RISKY AND, THEREFORE, UN- -- MORE UNLIKELY THAT

17   THEY WERE THEN CONTINUING TO DO THAT WITH REPLACEMENT TPMS.

18         ON THE OTHER HAND -- WHO AGREES WITH THAT?

19         **MR. CAMPBELL:**  YOUR HONOR, THIS IS CHRISTOPHER

20   CAMPBELL.

21         UNFORTUNATELY, I DISAGREE WITH THAT STATEMENT.  AND

22   JUST BEFORE YOU GO ON, I JUST WANTED TO POINT OUT IT'S NOT OUR

23   UNDERSTANDING THAT HP REPLACED TERIX.  IT, IN FACT, IS OUR

24   UNDERSTANDING THAT HP CONTINUED TO WORK WITH TERIX.  AND FROM

25   WHAT WE KNOW, BASED ON DISCOVERY IN TERIX AND SOME OTHER

1  DISCOVERY IN A RELATED ACTION TO THIS ONE THAT IS ONGOING

2  TODAY, HP STILL WORKS WITH TERIX TODAY.  THAT'S WHAT WE KNOW AT

3  THIS POINT.

4          AGAIN, WE'RE TAKING DISCOVERY TO THOSE ISSUES, BUT

5  OUR LATEST INFORMATION IS THAT THEY'RE STILL WORKING TOGETHER.

6          **THE COURT:**  ALL RIGHT.  AND I'LL WANT TO HEAR FROM HP

7  ON THAT.  BUT IF IT WERE THE CASE THAT YOU SEVERED TIES WITH

8  TERIX, WHICH SOUNDS LIKE IT'S IN DISPUTE, THAT WOULD STILL

9  LEAVE THE ISSUE OF WHAT YOU WERE DOING WITH OTHER TPMS

10 CONTEMPORANEOUS WITH THE TERIX MISCONDUCT AND LAW VIOLATIONS.

11         ON THE OTHER HAND -- SO IT MAY BE THAT THOSE LISTS

12 NEED TO SAY -- HAVE THE DATES OF WHEN THE TPMS HAD THE

13 RELATIONSHIP, WHETHER IT'S ONGOING OR NOT IN THE RELEVANT TIME

14 FRAME, AND I'LL LET YOU COMMENT ON THIS.

15         AND THEN I GUESS THE -- I THINK IT'S A CLOSE QUESTION

16 BECAUSE, ON THE ONE HAND, ORACLE ONLY HAS SPECIFICS AS TO TERIX

17 BEING A TPM THAT THEN INVOLVED HP IN ALLEGEDLY ILLEGAL CONDUCT.

18 ON THE OTHER HAND, THERE IS CERTAINLY SOME PLAUSIBILITY THAT IF

19 HP IS WILLING TO ENGAGE IN THAT PATTERN WITH TERIX, THEN IT HAS

20 SOME KIND OF STANDARDIZED, YOU KNOW, APPROACH TO CONTRACTING

21 WITH MULTIPLE TPMS AT THE SAME TIME, DOES SEEM PLAUSIBLE THAT

22 THE SAME KIND OF CONDUCT WOULD BE HAPPENING POTENTIALLY.

23         I THINK IT'S A CLOSE QUESTION WHETHER I'D ALLOW

24 DISCOVERY.  IF I DID ALLOW IT, I THINK IT WOULD BE ON A SORT OF

25 SAMPLING BASIS.  IN OTHER WORDS, YOU'D PROVIDE A LIST.  THEN

1    ORACLE MIGHT BE ABLE TO IDENTIFY A SMALL SUBSET AND REQUIRE

2    MORE INFORMATION ABOUT THEM TO SEE IF IT WAS THE CASE, BUT

3    NOT -- I THINK IT'S CERTAINLY -- IT'S PRETTY CLEAR IT WOULD BE

4    DISPROPORTIONATE TO SAY, THEN INVESTIGATE ALL OF THE OTHERS,

5    BECAUSE THERE IS -- NOW, WE DON'T KNOW IF TERIX IS THE

6    EXCEPTION, AN OUTLIER, OR IS MORE A MODUS OPERANDI OR SOMETHING

7    IN BETWEEN.

8            HP, DO YOU WANT TO COMMENT ON THAT?

9            **MR. GORMAN:**  YES, YOUR HONOR.  WE ARE AGREEABLE TO

10   PROVIDING THAT LIST WITH THE DATES INCLUDED.

11           I'M A LITTLE SURPRISED THAT THIS CAME UP, BECAUSE WE

12   THOUGHT THAT WAS OUR AGREEMENT WITH ORACLE, WAS THAT THAT WOULD

13   BE THE FIRST STEP; WE WOULD PROVIDE THAT LIST AND THEN WE WOULD

14   MOVE ON FROM THERE.  THAT WAS THE COMPROMISE WE REACHED DURING

15   THE MEET AND CONFER.  SO WE'RE HAPPY TO DO THAT AND TO PROVIDE

16   THE LIST.  WE CONTINUE TO BELIEVE THAT THEY ARE -- THE OTHER

17   TPMS ARE IRRELEVANT.

18           AS FOR THE DISCOVERY THAT MR. CAMPBELL MENTIONED

19   INDICATING THAT -- CERTAIN THINGS THAT HE MENTIONED, WE HAVEN'T

20   OBTAINED THAT DISCOVERY FROM ORACLE.  IN FACT, WE HAVEN'T

21   RECEIVED A SINGLE PAGE OF ORACLE OR TERIX DOCUMENTS.  THE ONLY

22   DOCUMENTS WE'VE GOTTEN FROM ORACLE IN DISCOVERY SO FAR ARE

23   THIRD-PARTY PRODUCTIONS THAT WE JOINTLY REQUESTED FROM

24   CUSTOMERS THAT WERE PRODUCED IN THE *TERIX* CASE.  SO I CAN'T

25   REALLY COMMENT ON THAT SINCE I DON'T HAVE THE DISCOVERY FROM

```
1    ORACLE YET.

2            BUT AS FOR THE ISSUE AT HAND, WE ARE WILLING TO

3    PROVIDE THAT LIST, AND WE THINK THAT SOUNDS LIKE A GOOD

4    SOLUTION.

5            THE COURT:  WELL, AND THEN ONCE THE LIST IS OBTAINED,

6    THEN I THINK -- I THINK AT THIS POINT THEN I WOULD NOT RULE ON

7    WHETHER THERE SHOULD BE FURTHER DISCOVERY REGARDING SIMILAR

8    DISCOVERY, BUT -- OF THOSE NON-TERIX-RELATED CUSTOMERS OF

9    ORACLE THAT WERE SUPPORTED THROUGH THESE OTHER TPMS, BUT I

10   WOULD WANT TO YOU MEET AND CONFER.

11           BUT, AS I SAY, MY GUIDANCE WOULD BE THAT IT WOULD

12   SOUND LIKE AT MOST THEN, WITH ORACLE HAVING THE RIGHT TO MAKE

13   THE CHOICES AT LEAST TO SOME EXTENT, THAT YOU WOULD GET FURTHER

14   DISCOVERY ON A SMALL SUBSET OR SAMPLE OF SOME KIND, AND THEN

15   SEE IF IT EITHER DID OR DIDN'T RAISE ANYTHING THAT REQUIRED --

16   THAT THAT WOULD SUGGEST THAT THIS WAS A STANDARD PATTERN OR A

17   TOTAL OUTLIER OR SOMETHING IN BETWEEN.

18           MR. CAMPBELL:  YOUR HONOR, THIS IS CHRISTOPHER

19   CAMPBELL FOR ORACLE.

20           I THINK THAT SOUNDS LIKE A PERFECTLY SENSIBLE

21   APPROACH.  I THINK THE FIRST STEP IS JUST IDENTIFICATION OF THE

22   TPMS WHICH THEY'VE AGREED TO AND WITH THE DATES --

23           (SIMULTANEOUS SPEAKING.)

24           THE COURT:  RIGHT.  BECAUSE, I MEAN, YOU STILL HAVE

25   THE ABILITY TO TALK TO CUSTOMERS OR SEE IF THERE WERE CUSTOMERS
```

1    THAT ABRUPTLY STOPPED BUYING ORACLE'S STUFF DIRECTLY AND THINGS

2    OF THAT NATURE.  SO YOU WOULD BE ABLE TO GET SOME INFORMATION

3    YOURSELVES ONCE YOU SEE THAT LIST.

4                **MR. CAMPBELL:**  RIGHT.  AND I THINK THE SAMPLING

5    APPROACH, BASED ON THAT APPROACH YOU DESCRIBED, I THINK THAT

6    DOES MAKE SENSE, AND I THINK WE CAN MEET AND CONFER ON WHAT AN

7    APPROPRIATE SAMPLE WOULD BE ONCE WE SEE THE LIST.

8                **THE COURT:**  ALL RIGHT.  THEN LET'S GO TO SOME OF THE

9    THESE OTHER ISSUES.  I THINK WE'VE NOW ADDRESSED ALREADY THE

10   RELEVANT SOFTWARE AND RELEVANT SERVICES.

11               GEOGRAPHICAL LIMITS I THINK IS THE NEXT ISSUE.  AND

12   I'M VERY UNCLEAR ON WHAT FACTUALLY IS BEING STATED HERE ABOUT

13   THE INTERNATIONAL CUSTOMERS.  NOW, I THINK -- I DON'T THINK

14   ANYBODY IS REALLY DISAGREEING WITH THE LAW, WHICH IS THAT IF AN

15   ACT OF INFRINGEMENT OCCURS HERE, THAT THEN IS DIRECTLY TIED TO

16   SUPPORTING INTERNATIONAL CUSTOMERS, SUCH AS THE CASE WHERE,

17   SAY, YOU PIRATE A COPY OF, LET'S SAY -- A DIFFERENT CONTEXT

18   BUT, YOU KNOW, A FAMOUS MOVIE OR SOMETHING, AND THEN YOU USE

19   THAT PIRATED COPY TO EXPORT TO MULTIPLE CUSTOMERS ABROAD, BUT

20   YOU PIRATE IT IN THE U.S., YOU COPY IT IN THE U.S., THEN THOSE

21   CUSTOMERS WOULD BE RELEVANT FOR DAMAGES AND INFRINGEMENT, AND

22   YOU'D GET DISCOVERY ON THEM.

23               ON THE OTHER HAND, IF THERE'S -- I'M NOT CLEAR ON

24   WHAT ACT IT IS THAT IS SIMILAR THAT'S ALLEGED HERE THAT

25   OCCURRED IN THE U.S. THAT IS ONLY FOR -- THAT RELATES TO

1    OTHERWISE INTERNATIONAL CUSTOMERS ONLY; IN OTHER WORDS,

2    CUSTOMERS -- SO IT'S JUST MERE AUTHORIZATION.  IF YOU SAID, GO

3    AHEAD AND INFRINGE WHEN YOU'RE IN CHINA, THAT WOULDN'T BE

4    ENOUGH, I THINK.

5            **MR. CAMPBELL:**  YOUR HONOR, CHRISTOPHER CAMPBELL FOR

6    ORACLE.

7            I THINK -- I THINK YOU HIT THE NAIL ON THE HEAD IN

8    TERMS OF WHAT THE LEGAL STANDARD IS HERE, WHICH IS SO LONG AS

9    THERE IS AN ACT OF INFRINGEMENT THAT OCCURS IN THE UNITED

10   STATES, IF THAT ACT OF INFRINGEMENT IS THEN EXPLOITED ABROAD,

11   THOSE FOREIGN ACTS AND EXPLOITATIONS OF CUSTOMERS ARE CERTAINLY

12   WITHIN THE SCOPE OF THE COPYRIGHT ACT AND OBVIOUSLY WITHIN THE

13   SCOPE OF DISCOVERY.

14           THE ACT OF INFRINGEMENT, THE DOMESTIC ACT OF

15   INFRINGEMENT THAT IS ALLEGED IN THIS CASE, AND THAT WE KNOW

16   OCCURRED ALREADY FROM THE *TERIX* LITIGATION, IS THE DOWNLOADING

17   AND COPYING OF SOLARIS UPDATES HERE IN THE UNITED STATES BY

18   TERIX, WHICH IS A CALIFORNIA ENTITY AND CONDUCTS MANY OF ITS

19   OPERATIONS HERE IN CALIFORNIA AND ELSEWHERE WITHIN THE UNITED

20   STATES, AND AS FAR AS WE KNOW ALSO BY HP, WHICH DID THE SAME.

21           NOW, ONE THING WE LEARNED IN THE *TERIX* LITIGATION IS

22   TERIX'S ENTIRE SUPPORT MODEL WAS TO PUT A SINGLE CUSTOMER

23   SERVER UNDER SUPPORT, DOWNLOAD A SOFTWARE UPDATE, AND THEN USE

24   THAT UPDATE TO SUPPORT ALL OF THE REST OF THE CUSTOMER'S

25   SERVERS.  NOW IF THOSE SERVERS WERE ALL IN THE UNITED STATES,

1    THE FURTHER ACT OF INFRINGEMENTS AFTER MAKING THE INITIAL

2    COPIES AFTER THAT DOWNLOAD, THEN FURTHER ACTS OF INFRINGEMENT

3    OCCURRED IN THE UNITED STATES.

4              IF THOSE SERVERS OR SOME OF THOSE SERVERS WERE

5    ABROAD, WHICH WE'RE TALKING ABOUT VERY LARGE INTERNATIONAL

6    COMPANIES HERE WHICH CERTAINLY DID HAVE SERVERS ABROAD, THEN

7    THOSE FURTHER ACTS OF INFRINGEMENT AFTER THAT INITIAL COPY WAS

8    MADE ARE CERTAINLY WITHIN THE SCOPE OF *ALLIED NEWS* AND WITHIN

9    THE SCOPE OF THE COPYRIGHT ACT.  AND IN THAT REGARD, FACTUALLY,

10   THIS IS ACTUALLY QUITE SIMILAR TO *ALLIED NEWS* AND THE COPYING

11   OF VIDEO IN THAT CASE.

12             THE OTHER THING THAT WE LEARNED IN *TERIX* IS THAT

13   TERIX WOULD ACTUALLY DOWNLOAD SOFTWARE UPDATES AND STORE THEM

14   LIKE IN A LIBRARY OF UPDATES AND USE THAT LIBRARY OR REPOSITORY

15   OF UPDATES TO SERVICE MULTIPLE CUSTOMERS.  SO IT WAS NOT JUST

16   DOWNLOAD FOR ONE CUSTOMER AND SERVICE THAT CUSTOMER.  IT'S

17   DOWNLOAD FROM THE ORACLE SECURE SUPPORT WEBSITE AND THEN

18   SERVICE MULTIPLE CUSTOMERS.

19             SO THAT INITIAL DOWNLOADING AND COPYING IS AN ACT OF

20   INFRINGEMENT, AND THEN THE SUBSEQUENT DISTRIBUTION AND COPYING

21   FOR OTHER CUSTOMERS IS FURTHER -- IS FURTHER INFRINGEMENT.

22             NOW, WE ALSO KNOW FROM TERIX THAT HP AND TERIX HAD

23   MULTIPLE JOINT FOREIGN CUSTOMERS.  THEY HAD DOMESTIC CUSTOMERS.

24   THEY ALSO HAVE FOREIGN CUSTOMERS.  AND FOR MANY OF THOSE

25   CUSTOMERS, TERIX HAS ALREADY ADMITTED THAT IT'S ACCESSED AND

1    PROVIDED SOLARIS UPDATES TO THAT CUSTOMER.

2            SO IT'S NOT A HYPOTHETICAL CONCERN.  WE KNOW THERE

3    ARE FOREIGN CUSTOMERS FOR WHICH TERIX DOWNLOADED THE UPDATES

4    AND THEN DISTRIBUTED THE SOFTWARE AND WE JUST NEED DISCOVERY TO

5    UNDERSTAND HOW THAT OCCURRED AND WHAT THE SCOPE OF IT WAS.

6            **THE COURT:**  SO DOWNLOADED THE SOFTWARE IN THE U.S.?

7            **MR. CAMPBELL:**  CORRECT.

8            **THE COURT:**  AND THEN EXPORTED IT?

9            **MR. CAMPBELL:**  RIGHT.  AND IN MANY, MANY CASES MADE

10   ADDITIONAL COPIES IN THE UNITED STATES, THEREFORE --

11           **THE COURT:**  RIGHT.

12           **MR. CAMPBELL:**  (INDISCERNIBLE.)

13           **THE COURT:**  WELL, ALL RIGHT.

14           SO, HP, WOULDN'T THAT BE WITHIN THE SCOPE?

15           **MR. GORMAN:**  POTENTIALLY, YOUR HONOR -- THIS IS JOE

16   GORMAN FROM GIBSON DUNN.  A COUPLE OF COMMENTS.

17           THIS IS THE FIRST TIME WE'VE HEARD ORACLE NARROW THE

18   SCOPE OF GEOGRAPHY AT ALL.  THEIR PREVIOUS POSITION WAS THAT

19   ANY CUSTOMER ANYWHERE IN THE WORLD, REGARDLESS OF ANYTHING

20   ELSE, IS RELEVANT TO THIS CASE.

21           WHAT WE'VE BEEN DOING IS TALKING TO COMPANIES -- FOR

22   EXAMPLE, I JUST SPOKE TO A COMPANY THAT IS ENTIRELY IN INDIA.

23   THEY DON'T HAVE A SINGLE SERVER IN THE UNITED STATES, AND THEY

24   ARE SUPPORTED BY HP OVER THERE.

25           AND SO OUR POSITION IS THEY ARE NOT RELEVANT TO THE

1    CASE, AMONG OTHER REASONS, BECAUSE THEY ARE INTERNATIONAL.  SO

2    IF THERE WAS ANY COPYRIGHT INFRINGEMENT IT COULD HAVE ONLY

3    OCCURRED IN THAT COUNTRY.  IF THEY HAD A SINGLE SERVER IN THE

4    U.S. AND A THOUSAND SERVERS IN INDIA, UNDER OUR VIEW, THEY

5    WOULD BE RELEVANT.  THAT'S HOW WE HAVE BEEN APPROACHING IT.

6              **THE COURT:**  OKAY.

7              (SIMULTANEOUS SPEAKING.)

8              **THE COURT:**  LET ME SEE IF I UNDERSTAND.  THERE'S

9    TWO -- I THINK WHAT I'M HEARING IS IT'S UNDISPUTED IF A COMPANY

10   WAS BEING SUPPORTED AND HAD A SERVER IN THE U.S. FOR WHICH

11   THERE WAS AN ILLEGALLY DOWNLOADED SOFTWARE THAT WAS ACCESSED

12   AND THEN USED TO SUPPORT FROM ONE ORIGINAL PERSON WHO WAS

13   AUTHORIZED AND EVERYBODY ELSE WASN'T AND THIS WAS THE EVERYBODY

14   ELSE, OR -- OR THEY WERE ALLOWED TO FOR THE ONE SERVER BUT NOT

15   FOR MORE THAN ONE, THAT IF THEY HAD SERVERS ABROAD BUT ONE IN

16   THE U.S., THEY WOULD BE WITHIN THE SCOPE.  I THINK THAT

17   EVERYONE AGREES ON THAT.

18             WHAT I THINK YOU'RE DISAGREEING NOW IS, WHAT IF

19   SOMEONE WAS A PURELY INDIA COMPANY AND HAD NO SERVERS AT ALL IN

20   THE U.S., WOULD IT STILL BE WITHIN THE SCOPE?

21             **MR. CAMPBELL:**  YOUR HONOR, CHRISTOPHER CAMPBELL FOR

22   ORACLE.

23             THAT FACTUAL SCENARIO THAT MR. GORMAN JUST DESCRIBED,

24   THAT IS EXACTLY THE SITUATION IN *ALLIED NEWS* WHERE THE ULTIMATE

25   RECIPIENTS OF THE VIDEO IN THAT CASE WERE IN EUROPE AND AFRICA

1    ENTIRELY.  THAT IS THE ONLY PLACE THAT THEY RESIDED.  THE

2    INITIAL ACTS OF INFRINGEMENT, HOWEVER, WERE COPYING THE VIDEO

3    IN NEW YORK WHICH THEN WAS SENT OUT TO THOSE CUSTOMERS THAT

4    WERE ENTIRELY ABROAD.

5            THE SAME SETUP STRUCTURALLY IS ALLEGED HERE, WHICH IS

6    THAT HP AND TERIX WOULD DOWNLOAD AND MAKE COPIES OF THE SOLARIS

7    UPDATES IN THE UNITED STATES, AND THEN EVEN IF THEY HAD A

8    FOREIGN CUSTOMER THAT WAS ENTIRELY ABROAD, IF THEY THEN USED

9    THAT COPY TO SERVICE THAT CUSTOMER, THAT'S A FURTHER ACT OF

10   INFRINGEMENT, AND IT'S EXPLOITING THE DOMESTIC CONDUCT THAT IS

11   WELL WITHIN THE COPYRIGHT ACT.  IT'S SORT OF A PURE *ALLIED NEWS*

12   STYLE CLAIM, AND THAT'S THE DISCOVERY THAT WE'RE LOOKING FOR AT

13   THIS POINT.

14           **THE COURT:**  OKAY.

15           **MR. CAMPBELL:**  CUTTING ALL OF THAT OFF AT THIS POINT

16   WOULD REALLY SUMMARILY ADJUDICATE THIS ISSUE WITHOUT ANY

17   DISCOVERY --

18           **THE COURT:**  ALL RIGHT.  HANG ON.  STOP.

19           **MR. CAMPBELL:**  (INDISCERNIBLE.)

20           **THE COURT:**  STOP, STOP.

21           SO, HP, QUESTION IS, NUMBER ONE, DO YOU AGREE THAT

22   HYPOTHETICALLY THAT WOULD BE THE CASE -- WHICH IT DOES SEEM

23   CORRECT -- THAT IF, LET'S SAY, TERIX DOWNLOADED SOMETHING FOR

24   ONE CUSTOMER AND THEN SNUCK IN A LIBRARY AND THEN LET HP USE IT

25   AS WELL AND THEN THAT THAT WAS EXPORTED TO INDIA, THAT THAT

1    WOULD BE SOMETHING THAT IS AT LEAST DISCOVERABLE?  DO YOU AGREE

2    WITH THAT?

3              **MR. GORMAN:**  THIS IS JOE GORMAN FROM GIBSON DUNN.

4              I DON'T DISAGREE, YOUR HONOR.  THAT IS NOT ALLEGED IN

5    THE COMPLAINT.

6              **THE COURT:**  WELL, ALL RIGHT.  THAT WAS GOING TO BE MY

7    NEXT QUESTION.  I DON'T -- I'M NOT CONVINCED THAT IT IS ALLEGED

8    IN THE COMPLAINT EITHER.  IT SOUNDS LIKE IT COULD BE IN AN

9    AMENDED COMPLAINT, BUT I DON'T THINK THAT IT -- I'M NOT

10   CONVINCED RIGHT NOW THAT IT IS.  I'D HAVE TO GO BACK AND LOOK

11   AT THE COMPLAINT, BUT THAT'S MY IMPRESSION, TOO, THAT IT'S MUCH

12   VAGUER.

13             **MR. CAMPBELL:**  YOUR HONOR, CHRISTOPHER CAMPBELL FOR

14   ORACLE.

15             **THE COURT:**  THAT IT'S MUCH VAGUER, THAT WHEN IT COMES

16   TO INTERNATIONAL, THEY'RE SORT OF VAGUELY STATED THAT THEY WERE

17   TOLD TO LIE ABOUT, YOU KNOW, WITH A PHONEY ADDRESS, WHICH BY

18   ITSELF I DON'T THINK IS AN ACT OF INFRINGEMENT THAT WOULD

19   JUSTIFY INTERNATIONAL SCOPE.

20             NOW, I THINK YOU WERE STARTING TO TALK ABOUT ONE THAT

21   WOULD.

22             **MR. CAMPBELL:**  RIGHT.  YOUR HONOR, CHRISTOPHER

23   CAMPBELL FOR ORACLE.

24             THE COMPLAINT, TO BE CLEAR, ALLEGES ACTS OF

25   INFRINGEMENT WITHOUT GEOGRAPHICAL RESTRICTION AT ALL.  SO IT

1    DOES NOT ALLEGE PURE -- IT DOES NOT JUST ALLEGE INFRINGEMENT AS

2    TO DOMESTIC CUSTOMERS OR JUST INFRINGEMENT AS TO INTERNATIONAL

3    CUSTOMERS.  IT ALLEGES INFRINGEMENT AS TO THESE CUSTOMERS THAT

4    HP WAS PROVIDING SUPPORT FOR.

5                (SIMULTANEOUS SPEAKING.)

6           **THE COURT:**  RIGHT, BUT THAT DOESN'T SEEM TO BE GOOD

7    ENOUGH.  I MEAN, THAT RAISED THE QUESTION FOR ME, WELL, WHAT

8    ARE -- WHY IS THIS COVERED?  I MEAN, JUST BECAUSE YOU SAY THAT

9    DOESN'T MEAN IT'S THEN -- THE FACTS DON'T SEEM -- IT'S THE

10   FACTUAL ALLEGATIONS THAT I HAVE TO LOOK AT FOR THE *ALLIED NEWS*

11   STANDARD.

12          **MR. CAMPBELL:**  RIGHT.  I THINK WHAT *ALLIED NEWS*

13   REQUIRES IS THAT WE ALLEGE INFRINGEMENT, AND *ALLIED NEWS* THEN

14   SAYS IF DOMESTIC ACTS OF INFRINGEMENT ARE EXPLOITED ABROAD,

15   THOSE DAMAGES ARE RECOVERABLE UNDER THE COPYRIGHT ACT.

16          I DON'T THINK WHAT *ALLIED NEWS* OR ANY OTHER CASE SAID

17   IS THAT WE ARE REQUIRED IN FILING OUR COMPLAINT TO SEPARATELY

18   PARSE OUT INTERNATIONAL CUSTOMERS VERSUS DOMESTIC CUSTOMERS AND

19   ALLEGE EVERY FACT INVOLVED IN THE DISTRIBUTION OF THAT

20   (INDISCERNIBLE).

21          AT THE OUTSET WE'RE MERELY REQUIRED TO MAKE

22   GOOD-FAITH ALLEGATIONS THAT AT THE END OF THE DAY ARE GOING TO

23   SUSTAIN OUR CLAIMS.  I DON'T THINK WE'RE REQUIRED TO GO TO THE

24   LEVEL OF SPECIFICITY THAT MR. GORMAN OR YOUR HONOR ARE

25   SUGGESTING.

1       **THE COURT:**  WELL, I CERTAINLY THINK YOU NEED TO GO TO

2  THAT LEVEL OF SPECIFICITY TO ME TODAY TO UPHOLD YOUR DEMAND FOR

3  THE REQUEST.  SO UNTIL WHAT YOU JUST ARTICULATED, I DID NOT

4  THINK YOU WERE -- YOU HAD NOT SHOWN THAT YOU WERE ENTITLED TO

5  THAT.

6       THEN THE QUESTION BECOMES WHETHER IT'S ENOUGH TO

7  REPRESENT THAT, AND I MAY HAVE TO LOOK AT THAT MORE CLOSELY,

8  AND MAYBE YOU NEED TO TOO.  BUT THE ALLEGATIONS THAT -- I THINK

9  IT RUNS INTO IS IT RELEVANT AT ALL, AND EVEN IF IT IS, IS IT

10  PROPORTIONATE WHEN YOU, BY THE COMPLAINT, HAVEN'T REALLY

11  ESTABLISHED THAT YOU ARE ENTITLED TO THAT.

12       SO SOMETHING NEEDS TO BE DONE TO FIX THAT.  WHETHER

13  IT'S ENOUGH THAT YOU JUST REPRESENTED THAT, WHETHER YOU NEED TO

14  FILE A DECLARATION, WHETHER YOU NEED TO FILE AN AMENDED

15  COMPLAINT, I DON'T KNOW.  WE DON'T HAVE THE BENEFIT OF A FULLY

16  BRIEFED MOTION HERE.  SO I'M TRYING TO EXPEDITE THIS, BUT THAT

17  DOES CAUSE THAT PROBLEM.  SO --

18       **MR. GORMAN:**  YOUR HONOR, THIS IS JOE GORMAN -- I'M

19  SORRY TO INTERRUPT.

20       **THE COURT:**  YES, GO AHEAD.

21       **MR. GORMAN:**  THIS IS JOE GORMAN FROM GIBSON DUNN.

22       I WOULD JUST ADD, TOO, THAT THE DISCOVERY THAT

23  MR. CAMPBELL REFERENCED WHERE HE DESCRIBED TERIX HAVING THIS

24  LIBRARY WHERE PATCHES AND UPDATES WERE DOWNLOADED AND THEN

25  INSTALLED INTERNATIONALLY.

1          AGAIN, WE DON'T HAVE THAT DISCOVERY.  OUR POSITION --

2   AND WE WILL PRESENT THIS IN OUR NEXT JOINT BRIEF -- IS THAT

3   IT'S JUST SITTING ALL OVER THERE AT ORACLE, THIS DISCOVERY, AND

4   WE DON'T HAVE IT.

5          **THE COURT:**  OKAY.  BUT I DON'T WANT TO HEAR ABOUT THE

6   NEXT DISPUTE.  I CAN BARELY KEEP UP WITH THIS ONE AND WE'VE

7   BEEN ON THE PHONE FOR ALMOST AN HOUR NOW.

8          **MR. GORMAN:**  THAT'S FAIR.

9          **THE COURT:**  I HAVE AGENTS WAITING FOR ME.  SO, I

10  MEAN, THAT IS JUST NOT -- YOU'RE GOING TO GET YOUR TIME ONCE

11  YOU FILE YOUR LETTER, THOUGH I HOPE YOU'LL TAKE INTO ACCOUNT

12  EVERYTHING WE'VE DISCUSSED TODAY, BOTH OF YOU.

13         BUT I'M JUST --

14         **MR. CAMPBELL:**  YOUR HONOR, JUST TO CLOSE THIS

15  DISCUSSION OUT, I WOULD JUST RESPECTFULLY POINT YOU TO

16  PARAGRAPH 33 WHICH DOES ALLEGE THAT THERE WERE FOREIGN

17  CUSTOMERS AND THAT GENERALLY THEY WERE SERVICED UNDER THE VERY

18  DETAILED FACTUAL ALLEGATIONS ABOUT HOW THE TERIX BUSINESS MODEL

19  WAS SET UP.  IT WOULD BE OUR POSITION THAT THAT IS SUFFICIENT

20  TO ALLOW --

21         (SIMULTANEOUS SPEAKING.)

22         **THE COURT:**  WELL, I'LL TAKE A FURTHER LOOK, BUT --

23  AND IF I DON'T THINK IT'S SUFFICIENT, WE'LL HAVE TO -- I THINK

24  THAT THE REPRESENTATIONS YOU'VE MADE ABOUT WHAT YOU COULD SHOW

25  WOULD BE SUFFICIENT, BUT WHETHER YOU NEED TO DO MORE TO GET

1    THAT FORMALLY REPRESENTED, I'M NOT SURE AT THIS POINT, BUT I

2    WILL TAKE A LOOK.  YOU MAY BE RIGHT.

3              **MR. CAMPBELL:**  THANK YOU.  YOUR HONOR.

4              **THE COURT:**  ALL RIGHT.  AND THEN -- ALL RIGHT.  SO WE

5    TALKED ABOUT THE INTERNATIONAL.  THEN SUPPORT SERVICES, I THINK

6    WE'VE -- I THINK WE'VE -- I THINK A LOT OF THESE OTHER DISPUTES

7    ARE COVERED BY WHAT WE'VE ALREADY ESTABLISHED.  AM I RIGHT?

8    UNTIL WE GET THE --

9              **MR. GORMAN:**  (INDISCERNIBLE), YOUR HONOR.

10             **THE COURT:**  BUT THEN WE GET TO THE BUSINESS PLANS,

11   THAT I THINK -- GOING ON TO THAT, I THINK WE'VE RESOLVED

12   THROUGH THE -- UP UNTIL THE BUSINESS PLAN ISSUE.  AM I CORRECT?

13             **MR. CAMPBELL:**  YOUR HONOR, JUST ONE BEFORE THAT.

14   REQUEST NUMBER 39 IS ABOUT IP ADDRESSES.

15             **THE COURT:**  YES.

16             **MR. CAMPBELL:**  AND YOU CAN SEE WHAT WE WROTE IN THE

17   LETTER ON THAT TOPIC, BUT JUST TO PROVIDE ADDITIONAL CONTEXT,

18   THE ONLY WAY THAT ORACLE CAN REALLY IDENTIFY WHO WAS ACCESSING

19   ITS SECURE WEBSITES TO DOWNLOAD PATCHES AND UPDATES IS BY

20   COMPARING THE IP ADDRESS THAT WAS USED TO ACCESS THAT MATERIAL

21   WITH SOME IDENTIFIED IP ADDRESS FROM HP, IN THIS CASE, AS TO

22   THOSE EMPLOYEES THAT WERE PROVIDING THAT TYPE OF SUPPORT.

23   WITHOUT THAT, WE REALLY DON'T HAVE THE ABILITY INTO WHO WAS

24   ACTUALLY ACCESSING OUR WEBSITE AND DOWNLOADING PATCHES.  SO WE

25   VIEW THAT AS PARTICULARLY CRITICAL HERE IN TERMS OF

1    ESTABLISHING THAT HP WAS THE ENTITY THAT WAS ACCESSING THE

2    WEBSITE.

3            **THE COURT:**  SO I THINK --

4            **MR. CAMPBELL:**  (INDISCERNIBLE.)

5            (SIMULTANEOUS SPEAKING.)

6            **THE COURT:**  EXCUSE ME.  IF -- I WOULD BE INCLINED, IN

7    RELATION TO THAT, I THINK LIMITED TO THE RELEVANT SOFTWARE

8    BEING SOLARIS AND ORACLE FIRMWARE, THEN THE ADDRESSES -- SOME

9    DOCUMENTS SUFFICIENT TO SHOW THE IP ADDRESSES THAT ACCESSED

10   THOSE IP ADDRESSES AT -- AT HP, PEOPLE EMPLOYED BY HP --

11           **MR. CAMPBELL:**  THANK YOU, YOUR HONOR.

12           **THE COURT:**  -- THAT ACCESS THAT.

13           I THINK THAT'S MORE NARROW, BUT IT DOES SEEM TO BE

14   RELEVANT.  I DON'T KNOW IF THERE'S A TIME FRAME ALSO THAT YOU

15   AGREED ON.

16           **MR. CAMPBELL:**  THERE IS, YOUR HONOR, AND I THINK THAT

17   THAT IS AN APPROPRIATE LEVEL OF INFORMATION (INDISCERNIBLE).

18           **THE COURT:**  HP, ANY -- THAT'S MY STRONG INCLINATION

19   UNLESS YOU HAVE ANYTHING FURTHER TO ADD TO THAT?

20           **MR. GORMAN:**  NO.  THIS IS JOE GORMAN, AND THAT IS

21   FINE.  THE REQUEST INITIALLY REQUESTED A MUCH BROADER --

22           **THE COURT:**  MUCH BROADER.

23           **MR. GORMAN:**  (INDISCERNIBLE.)

24           (SIMULTANEOUS SPEAKING.)

25           **THE COURT:**  AND THEN 41, I THINK, IS SIMILARLY

1    LIMITED.

2         **MR. CAMPBELL:**  YES, I THINK THAT'S RIGHT.  THIS IS

3    CHRISTOPHER CAMPBELL.

4         I THINK THAT'S -- I THINK IT'S -- SIMILARLY, IF YOUR

5    APPROACH IS TO NARROW THE PREVIOUS REQUEST, I THINK NARROWING

6    41 IN THE SAME WAY WOULD PROBABLY BE CONSISTENT.

7         **THE COURT:**  ALL RIGHT.

8         **MR. GORMAN:**  I AGREE.

9         **THE COURT:**  SO THEN WE'RE GETTING TO THE BUSINESS

10   PLANS.  NOW, IT STRUCK ME THAT IN THE ONES WHERE YOU HAVE SORT

11   OF COUPLED TWO TOGETHER LIKE 28 AND 29 AND SOME OF THESE

12   OTHERS, THAT THE FIRST ONE IS QUITE BROAD, AND THE SECOND ONE

13   IS ASKING FOR A SUBSET OF THE SAME DOCUMENTS, BUT IT'S SOMEWHAT

14   MORE FOCUSED.  AND I MAY NOT BE READING THOSE PRECISELY ENOUGH,

15   BUT THAT WAS MY IMPRESSION.  AND CERTAINLY WITH RESPECT TO 28

16   AND 29.  AND I WAS CONCERNED THAT THERE WAS OVER BREADTH AND

17   DISPROPORTIONALITY IN THE SWEEPINGNESS OF THIS.  ON THE OTHER

18   HAND, THAT THEY WERE CERTAINLY GETTING AT, ALBEIT TOO BROADLY,

19   SOME RELEVANT INFORMATION.

20        **MR. CAMPBELL:**  YOUR HONOR, CHRISTOPHER CAMPBELL.

21        I BELIEVE, STILL ON 28 AND 29, I ACTUALLY WOULD

22   PERHAPS SEPARATE THOSE OUT.

23        ON 28, JUST TO SORT OF FOCUS IN ON WHAT WE'RE REALLY

24   AFTER HERE, THE HP MULTI-VENDOR SUPPORT BUSINESS IS THE

25   BUSINESS THAT PROVIDED THE SUPPORT.  IT'S THE BUSINESS THAT

1    PARTNERED WITH TERIX.

2              **THE COURT:**  RIGHT.

3              **MR. CAMPBELL:**  AND SUPPORTED -- (INDISCERNIBLE).

4              **THE COURT:**  I UNDERSTAND THAT.

5              **MR. CAMPBELL:**  (INDISCERNIBLE.)

6              AND SO WHAT WE'RE REALLY AFTER ARE THE BUSINESS

7    DOCUMENTS SHOWING WHAT ITS STRATEGY WAS AND HOW IT PURSUED

8    CUSTOMERS TO SOLICIT AND THEN PROVIDE THAT SUPPORT.

9              YOU KNOW, WE TRIED TO NARROW IT HERE JUST TO,

10   OBVIOUSLY, THE CUSTOMERS THAT WERE RUNNING ORACLE PRODUCTS,

11   BECAUSE WE THINK THAT IS AN APPROPRIATE NARROWED FOCUS.  BUT WE

12   NEED THE BUSINESS STRATEGY DOCUMENTS TO BETTER UNDERSTAND

13   WHETHER HP WAS GOING OUT AND INTERFERING WITH RELATIONSHIPS BY

14   REPRESENTING TO CUSTOMERS THAT THEY COULD RECEIVE SOLARIS

15   UPDATES ONCE THEY CAME TO HP FOR SUPPORT.  THAT'S REALLY WHAT

16   WE'RE AFTER.

17             **MR. GORMAN:**  AND THIS IS JOE GORMAN IN RESPONSE TO

18   THAT.

19             I BELIEVE WE HAVE AGREED TO PRODUCE THE DOCUMENTS

20   THAT MR. CAMPBELL JUST DESCRIBED IN RESPONSE TO OTHER REQUESTS

21   ON THE BASIS THAT THEY WOULD BE RELEVANT TO THE INTERFERENCE

22   CLAIM.  SO IF THERE ARE COMMUNICATIONS OR WHETHER THEY ARE

23   MARKETING PLANS OR WHATEVER WITH THE CUSTOMERS AT ISSUE IN THE

24   CASE, THEN WE HAVE AGREED TO PRODUCE THOSE.

25             BUT THIS GETS AT, I THINK, REQUEST NUMBER 28, A MUCH

1    BROADER CATEGORY OF DOCUMENTS RELATING TO THE WHOLE

2    MULTI-VENDOR SUPPORT BUSINESS, WHICH INVOLVES IBM SUPPORT, DELL

3    SUPPORT AND MANY OTHER TYPES OF SUPPORT THAT ARE WHOLLY

4    UNRELATED TO ORACLE OR THE CLAIMS IN THIS CASE.

5         AND SO I THINK WE ARE GETTING TO A NARROWER CATEGORY

6    OF DOCUMENTS THAT WE COULD AGREE ON.

7         **THE COURT:**  WELL, WHEN YOU SAY "WHOLLY UNRELATED," I

8    MEAN IN BOTH OF THESE REQUESTS, 28 AND 29, THEY DO USE THE

9    WORDS "ORACLE HARDWARE," BUT I'M NOT SURE -- I GUESS YOU'RE

10   SAYING MARKETING PLANS FOR SOME INDIVIDUAL CUSTOMER, AS OPPOSED

11   TO AN OVERALL BUSINESS STRATEGY, IS WHAT YOU'RE PRODUCING?  I

12   DON'T REALLY UNDERSTAND THE DISTINCTION.

13        **MR. GORMAN:**  THAT'S CORRECT.  WE ARE PRODUCING THOSE

14   DOCUMENTS AND --

15        **THE COURT:**  WHICH DOCUMENTS?

16        **MR. GORMAN:**  -- I DON'T THINK WE'D BE OPPOSED TO

17   PRODUCING THE SPECIFIC COMMUNICATIONS WITH THE CUSTOMERS.  AND

18   I DON'T THINK WE WOULD BE OPPOSED TO PRODUCING THE OVERALL

19   GENERAL PLANS EITHER, SO LONG AS THEY ARE RELATED TO ORACLE, AS

20   YOU MENTIONED, AND ALSO SOFTWARE.  SO I THINK THAT'S THE SECOND

21   THING THAT YOU JUST -- THAT THESE GET AT HARDWARE, WHEREAS THIS

22   CASE IS ONLY ABOUT SOFTWARE.

23        **THE COURT:**  ORACLE, CAN YOU RESPOND ON THAT?

24        **MR. CAMPBELL:**  YES, YOUR HONOR.  CHRISTOPHER

25   CAMPBELL.

1          SO WE ARE AFTER -- THIS GOES BACK TO THE DISPUTE WE

2    TALKED ABOUT EARLIER ABOUT RELEVANT SERVICES, BUT THE INTENT IN

3    USING THE TERM "ORACLE HARDWARE" HERE IS TO PROVIDE JUST THE

4    FOCUS THAT MR. GORMAN WAS SUGGESTING SHOULD BE HERE, WHICH IS

5    CUSTOMERS RUNNING THE ORACLE PRODUCT.

6          NOW, I UNDERSTAND THEY WANT TO LIMIT THIS TO SOFTWARE

7    SUPPORT.  THE FACT OF THE MATTER IS CUSTOMERS ARE RUNNING

8    ORACLE HARDWARE AND ORACLE SOFTWARE, SO THIS LIMITATION IS

9    REALLY INTENDED TO --

10          (SIMULTANEOUS SPEAKING.)

11          **THE COURT:**  WELL, I'M NOT COMFORTABLE WITH JUST THE

12   WAY IT'S WRITTEN THAT DOESN'T REFERENCE SOFTWARE SOMEHOW,

13   BECAUSE -- I MEAN, ULTIMATELY, IT DOESN'T MATTER WHAT THEY WERE

14   DOING WITH THESE VENDORS IF THEY WEREN'T ILLEGALLY USING ORACLE

15   SOFTWARE THAT WASN'T ENTITLED TO HELP WITH THE HARDWARE.

16          SO, YES, THEY HAD TO HAVE --

17          (SIMULTANEOUS SPEAKING.)

18          **THE COURT:**  -- ORACLE HARDWARE TO EVEN WANT TO HAVE

19   ORACLE SOFTWARE, OBVIOUSLY.

20          BUT THEN -- I THINK THEY'RE OVERBROAD AND THAT'S THE

21   PROBLEM, AND I'M NOT SURE WHAT -- I THINK YOU -- WHAT I HEAR IS

22   KIND OF AN INCHOATE AND NOT FULLY FLESHED OUT MEET AND CONFER

23   THAT YOU CAN AGREE ON SOMETHING, BUT I DON'T KNOW EXACTLY WHAT

24   IT IS.

25          **MR. CAMPBELL:**  LET ME -- YOUR HONOR, CHRISTOPHER

1    CAMPBELL.

2              LET ME JUST SUGGEST THAT IF YOU ARE ULTIMATELY GOING

3    TO RESOLVE THE SUPPORT SERVICES ISSUE BY FOCUSING IN ON

4    SOFTWARE SUPPORT, THAT PERHAPS THIS REQUEST CAN BE RESOLVED IN

5    THE CONTEXT OF THAT CATEGORICAL SERVICE RESOLUTION.

6              AGAIN, WE THINK ALL THE HARDWARE SERVICES SHOULD BE

7    INCLUDED, BUT IF YOU ARE GOING TO GO THE OTHER WAY ON THAT

8    ONE --

9              (SIMULTANEOUS SPEAKING.)

10             **THE COURT:**  WELL, I THINK IT WAS SOMEWHAT NUANCED.  I

11   DON'T WANT TO GO BACK.  I'D HAVE TO GO BACK AND LISTEN TO

12   MYSELF ON THIS RECORDING.

13             THE POINT BEING, OF COURSE, IF ON ITS FACE IT WAS

14   SUPPOSED TO BE HARDWARE ONLY, BUT IN PRACTICE THERE WAS SUPPORT

15   OF THE SOFTWARE, BECAUSE YOU WANTED TO KEEP HAVING THE HARDWARE

16   BUSINESS, THEN THAT WOULD BE WITHIN THE SCOPE.  BUT IT CAN'T BE

17   WITH NO TETHERING TO THAT SOFTWARE.

18             **MR. CAMPBELL:**  OKAY.  THAT'S HELPFUL GUIDANCE, YOUR

19   HONOR.

20             **THE COURT:**  SO IF YOU -- I THINK, YOU KNOW, WITH SOME

21   OF THESE BOTH, I'M GOING TO NEED YOU TO -- I THINK WITH BOTH --

22   WITH ALL OF THESE, BUT SOME OF THEM I'M MORE CLEAR ON THAN

23   OTHERS, SOME OF THEM YOU NEED TO DO MORE HOMEWORK, MEETING AND

24   CONFERRING AND FOLLOWING UP IN LIGHT OF THE GUIDANCE, TO COME

25   BACK TO ME WITH A JOINT, I GUESS, PROPOSED ORDER AS TO THE

1   SPECIFIC LANGUAGE THAT YOU'VE AGREED ON AS TO WHAT YOU ARE

2   GOING TO DO WHEN WE'VE EXPLORED HAVING A SORT OF COMPROMISED

3   POSITION.  THAT'S CERTAINLY ONE OF THEM.  OKAY?

4           **MR. GORMAN:**  THAT SOUNDS LIKE A GOOD APPROACH, YOUR

5   HONOR.  THIS IS JOE GORMAN.

6           AND I THINK THE NEXT REQUEST FALLS INTO THAT CATEGORY

7   AS WELL.  I THINK THERE IS ROOM FOR MEETING AND CONFERRING ON

8   THAT ONE.

9           **THE COURT:**  WHICH IS?

10          **MR. GORMAN:**  WHICH IS REQUEST NUMBER 30.

11          **THE COURT:**  30, YEAH.

12          **MR. GORMAN:**  YES.

13          **THE COURT:**  AND THAT SOUNDS LIKE YOU WERE WILLING TO

14  MEET AND CONFER ON THAT, AND I MEAN IT -- YOU KNOW, THE GENERAL

15  RULE WOULD BE THINGS WITHIN THE STATUTE OF LIMITATIONS ARE

16  ACTIONABLE, YOU'RE MORE ENTITLED TO MORE INFORMATION ABOUT.

17  THERE COULD BE SOME RELEVANCE TO PRIOR TO SHOW WILLFULNESS OR

18  THINGS OF THAT NATURE, BUT IT WOULDN'T PROBABLY REQUIRE

19  ANYWHERE NEAR THE DETAIL THAT YOU WOULD FOR YOUR -- YOU KNOW,

20  YOUR ACTUAL HARD DAMAGE CALCULATIONS, FOR EXAMPLE.

21          **MR. CAMPBELL:**  RIGHT.  AND THIS IS CHRISTOPHER

22  CAMPBELL.

23          JUST TO PROVIDE A LITTLE CONTEXT FOR THAT ONE, IT'S

24  OUR VIEW THAT, CERTAINLY THE EARLIER PERIOD IS RELEVANT TO

25  WILLFULNESS -- THAT'S PART OF WHAT WE STATE IN THE LETTER.

1    BUT, YOU KNOW, REGARDLESS, IT IS RELEVANT TO OUR STATE LAW

2    CLAIMS AND THE THOSE -- THE COPYRIGHT STATUTE OF LIMITATION IS

3    NOT A BASIS TO RESTRICT ALL DISCOVERY.

4          **THE COURT:**  WELL, HOW LONG ARE THE STATE LAW CLAIMS?

5    WHAT'S THE STATUTE FOR THEM?

6          **MR. CAMPBELL:**  I'D HAVE TO CHECK, YOUR HONOR.  I'D

7    HAVE TO CHECK, YOUR HONOR.  I BELIEVE THEY GO BACK FURTHER, BUT

8    I'D HAVE TO --

9          **THE COURT:**  BECAUSE IF THEY DON'T, THEN THAT DOESN'T

10   ADD ANYTHING.

11         **MR. CAMPBELL:**  RIGHT.  BUT IT DOES RAISE A PUNITIVE

12   DAMAGES ISSUE.

13         (SIMULTANEOUS SPEAKING.)

14         **THE COURT:**  WELL, PUNITIVE DAMAGES, AGAIN, I THINK

15   WHAT I JUST SAID WAS TAKING THAT INTO ACCOUNT.  THAT WAS THE

16   POINT YOU MADE, WHICH IS THAT THE WILLFULNESS AND THE DEGREE OF

17   BAD BEHAVIOR WOULD HAVE SOME RELEVANCE TO PUNITIVE DAMAGES.

18         ON THE OTHER HAND, YOU'RE NOT ALLOWED TO ACTUALLY GET

19   AMOUNTS OF PUNITIVE DAMAGES TO COMPENSATE YOU FOR A TIME PERIOD

20   THAT'S NOT AT ISSUE.  SO THE DETAIL OF -- YOU KNOW, TO ACTUALLY

21   HAVE AN EXPERT SAY, YOU KNOW, FOR THESE PRE-STATUTE OF

22   LIMITATIONS, WE'RE ENTITLED TO "X" IN REAL DAMAGES AND ACTUAL

23   DAMAGES, AND, THEREFORE, TO "Y" OF PUNITIVE DAMAGES, THAT WOULD

24   NOT BE PERMITTED.  SO IT'S --

25         **MR. CAMPBELL:**  I UNDERSTAND, YOUR HONOR.

1          **THE COURT:**  -- IT'S A QUESTION OF DEGREE.

2          **MR. CAMPBELL:**  RIGHT.  CHRISTOPHER CAMPBELL.

3          OUR POSITION IS JUST THAT, WHETHER OR NOT THE STATUTE

4     OF LIMITATIONS CUTOFF SHOULD BE PLACED WHERE IT SAYS IT SHOULD

5     BE PLACED, WHICH I DON'T THINK WE HAVE ENOUGH DISCOVERY TO

6     DETERMINE THAT AT THIS POINT.  CERTAINLY, THE WILLFULNESS

7     ISSUES ARE GOING TO INFORM WHAT WE WERE ENTITLED TO.

8          (SIMULTANEOUS SPEAKING.)

9          **THE COURT:**  PLEASE STOP REPEATING YOURSELF.  IT'S

10    4:10.  WHAT I JUST SAID WAS THERE'S SOME RELEVANCE, BUT IT'S

11    LESS, AND SO YOU WOULDN'T GET AS MUCH AS.  I ALREADY SAID THAT

12    ABOUT THREE TIMES.  SO DID YOU GET THAT MESSAGE?

13          **MR. CAMPBELL:**  THANK YOU, YOUR HONOR.

14          **THE COURT:**  YEAH.  I'M JUST -- BECAUSE I'M RUNNING

15    OUT OF TIME, AND I'M TRYING TO SQUEEZE THIS IN, BUT WE CAN'T

16    HAVE REPETITION.  SO I DIDN'T DISAGREE WITH YOU THAT THERE'S

17    SOME RELEVANCE.  IT'S JUST PROPORTIONATELY YOU ARE NOT GOING TO

18    GET THE DEGREE OF DETAIL ON REVENUES THAT ARE PRE-STATUTE OF

19    LIMITATIONS.  I THINK YOU AGREE WITH THAT, RIGHT?

20          **MR. CAMPBELL:**  UNDERSTOOD.  I DO.  THANK YOU, YOUR

21    HONOR.

22          **THE COURT:**  ALL RIGHT.  SO LET'S -- AND IT'S JUST

23    WORSE ON THE PHONE, BECAUSE I CAN'T DIRECT YOU, SO I DON'T MEAN

24    TO -- IT'S NOT THAT YOU'RE DOING ANYTHING WRONG.  IT'S JUST

25    THAT I CAN'T TELL YOU WHEN IT'S TIME TO MOVE ON WITHOUT BEING

1   VERY SPECIFIC, BECAUSE YOU CAN'T SEE ME AND I CAN'T SEE YOU.

2   SO I'D RATHER HAVE YOU IN PERSON, BUT I THOUGHT IT WOULD BE

3   LESS CONVENIENT FOR YOU.

4           **MR. CAMPBELL:**  UNDERSTOOD.  I APPRECIATE THE

5   GUIDANCE, YOUR HONOR.

6           **THE COURT:**  ALL RIGHT.  SO LET'S -- SO KNOWLEDGE AND

7   INDUSTRY PRACTICE, WHERE ARE YOU ON THAT?  I MEAN, I THINK

8   THERE'S SOME RELEVANCE, BUT OBVIOUSLY NOT -- AGAIN, IT'S

9   LIMITED.  YOU DON'T NEED TO KNOW EVERYTHING ABOUT HP'S OWN

10  POLICIES.  YOU JUST NEED SORT OF SUFFICIENT TO KNOW, I SUSPECT,

11  THAT, YOU KNOW, OR -- MAYBE EVEN A REQUEST FOR ADMISSION.  I

12  MEAN, I THINK IT'S HIGHLY LIKELY THAT THERE WAS A VERY SIMILAR

13  POLICY ON THE DEFENDANT'S PART.

14          **MR. CAMPBELL:**  YOUR HONOR, YOUR HONOR --

15          **THE COURT:**  I THINK WE KNOW THIS IS THE

16  (INDISCERNIBLE) THROUGH PRIOR LITIGATION.

17          YEAH, GO AHEAD.

18          **MR. CAMPBELL:**  YES, YOUR HONOR.  CHRISTOPHER CAMPBELL

19  FOR ORACLE.  THAT IS EXACTLY WHAT WE'RE AFTER, ARE JUST

20  DOCUMENTS SUFFICIENT TO SHOW.

21          **THE COURT:**  RIGHT.

22          **MR. GORMAN:**  WELL, YOUR HONOR, THIS IS JOE GORMAN.

23          WE VIEWED THESE FOUR REQUESTS 21, 22, 45 AND 46 AS

24  COMPLETELY IRRELEVANT AND OVERBROAD FOR THE REASONS IN OUR

25  LETTER.  FOR EXAMPLE --

```
 1              (SIMULTANEOUS SPEAKING.)
 2          THE COURT:  WELL, I THINK THEY'RE IRRELEVANT.  I
 3   DON'T -- I MEAN, I THINK THEY'RE OVERBROAD.  I DON'T THINK
 4   THEY'RE COMPLETELY IRRELEVANT.  I MEAN, TOWARDS WILLFULNESS AND
 5   TOWARDS POTENTIALLY PUNITIVE DAMAGES, I THINK INDUSTRY PRACTICE
 6   WHICH, YOU KNOW, YOU'RE A BIG PART OF THE INDUSTRY, YOUR
 7   CLIENT, AND I THINK IT ALMOST CERTAINLY IS YOUR PRACTICE --
 8          MR. GORMAN:  ONE NUANCE -- THIS IS JOE GORMAN.
 9          JUST TO ADD TO THAT, HP SUPPORT FOR ITS SOFTWARE
10   PRODUCTS IS GOVERNED BY A SEPARATE LICENSE BETWEEN HP AND ITS
11   CUSTOMERS THAT IS PHRASED DIFFERENTLY FROM ORACLE'S LICENSES
12   WITH ITS CUSTOMERS THAT IT GOVERNS WHAT'S PERMITTED, WHAT TYPE
13   OF (INDISCERNIBLE) IS PERMITTED THERE.
14          SO EVEN IF ORACLE GOT THE DOCUMENTS SHOWING HOW HP
15   INTERPRETS ITS LICENSE AND HOW HP ENFORCES ITS LICENSE, I THINK
16   IT WOULD BE COMPLETELY IRRELEVANT TO THE QUESTION OF WHETHER HP
17   WILLFULLY COMMITTED A VIOLATION OF ORACLE'S LICENSE RELATING TO
18   A DIFFERENT SUBSET OF SOFTWARE.
19          THE COURT:  WELL --
20          MR. GORMAN:  SO I DON'T --
21          THE COURT:  WHAT -- LET ME ASK YOU THIS, THOUGH, I
22   MEAN, IF YOU HAVE -- IF THERE IS A STANDARD LICENSE, WOULDN'T
23   THAT -- WHAT ABOUT JUST PROVIDING THAT?
24          MR. GORMAN:  THAT WOULD DEFINITELY BE MORE
25   PROPORTIONAL AND SOMETHING THAT WE WOULD CONSIDER, AND I'D
```

1   OBVIOUSLY HAVE TO TALK ABOUT IT WITH THE CLIENT.  BUT THAT IS

2   NARROWER AND MORE APPEALING TO ME THAN THE REQUEST AS WRITTEN

3   NOW.

4            **THE COURT:**  AND --

5            **MR. GORMAN:**  IT JUST FELT LIKE A FISHING EXPEDITION.

6            (SIMULTANEOUS SPEAKING.)

7            **THE COURT:**  I DEFINITELY THINK IT'S OVERBROAD.  I

8   AGREE WITH YOU ON THAT.  I JUST DON'T THINK IT'S COMPLETELY

9   IRRELEVANT BECAUSE -- I MEAN, AS TO KNOWLEDGE AND INDUSTRY

10  PRACTICE.  I THINK IT DOES HAVE SOME BEARING ON THAT, BUT I

11  THINK THE REQUESTS ARE QUITE OVERBROAD, AND I THINK THEY NEED

12  TO BE MUCH MORE TARGETED.  AND I DO AGREE IT'S DISPROPORTIONATE

13  AS STATED.

14           BUT WHAT ABOUT THAT, ORACLE?  AND MAYBE THAT'S

15  WITHOUT PREJUDICE TO IF THERE'S SOMETHING IN THAT THAT OPENS TO

16  DOOR TO NEEDING MORE, YOU GET IT, BUT I DON'T -- I MEAN, THESE

17  THINGS CAN'T BE HIGHLY SECRET, YOU KNOW, IF EVERY CUSTOMER HAS

18  TO GET ONE.

19           **MR. CAMPBELL:**  RIGHT.  CHRISTOPHER CAMPBELL.

20           FOR REQUESTS 21 AND 22, I THINK THAT SOUNDS LIKE A

21  VERY GOOD APPROACH.

22           I WOULD JUST ADD THAT, IN ADDITION TO THE LICENSE, WE

23  ALSO NEED IDENTIFICATION OF THE SUPPORT POLICIES, BECAUSE THE

24  TWO SORT OF WORK TOGETHER.  BUT, AGAIN IT'S JUST DOCUMENTS

25  SUFFICIENT TO IDENTIFY.  WE'RE NOT ASKING FOR EVERYTHING.  SO,

1    AS LONG AS ITS THE LICENSE AND THE SUPPORT POLICIES TOGETHER, I

2    THINK THAT WILL GET US A GOOD WAY THE WAY THERE, AND THEN WE

3    CAN SORT OF SEE WHERE WE'RE AT.

4           **THE COURT:**  WELL -- AND WHAT WOULD THAT ENTAIL?

5    AGAIN, I'D LIKE TO SEE SOMETHING THAT'S JUST LIKE IF THERE'S A

6    STANDARD TEMPLATE FOR SUPPORT SERVICES AS OPPOSED TO, YOU KNOW,

7    THOUSANDS OF AGREEMENTS.

8           WHAT DOES HP THINK OF THAT?

9           **MR. GORMAN:**  I'M NOT SURE IF IT'S POSSIBLE.  I DON'T

10   KNOW THAT HP HAS A FORM AGREEMENT LIKE ORACLE CLAIMS TO HAVE,

11   ALTHOUGH IT HASN'T PRODUCED ANY OF ITS AGREEMENTS YET, SO WE

12   DON'T KNOW, BUT --

13          (SIMULTANEOUS SPEAKING.)

14          **THE COURT:**  WELL, CAN YOU FIND OUT AND LOOK INTO

15   THAT, AND THEN MEET AND CONFER FURTHER, AND FOLLOW UP WITH ME

16   WITH A JOINT LETTER AND A PROPOSED ORDER --

17          **MR. GORMAN:**  VERY GOOD.

18          **THE COURT:**  -- OR SOMETHING OF THAT NATURE.

19          SO WHEN -- HOW MUCH TIME DO YOU NEED TO DO THAT, TO

20   GET BACK ON THOSE --

21          **MR. GORMAN:**  I THINK WE COULD DO IT RIGHT AWAY IN THE

22   NEXT FEW DAYS.  I DON'T WANT TO SPEAK FOR CHRIS.  I DON'T KNOW

23   WHAT HE HAS GOING ON THIS WEEK.

24          **MR. CAMPBELL:**  CRISP CAMPBELL.

25          I -- YOU KNOW, I THINK PART OF IT DEPENDS ON JUST HOW

1    LONG IT'S GOING TO TAKE HP TO COME -- TO GET FURTHER

2    INFORMATION ON THESE ISSUERS.  WE'RE HAPPY TO MEET AND CONFER

3    WHENEVER IT'S CONVENIENT --

4            (SIMULTANEOUS SPEAKING.)

5            **THE COURT:**  DO YOU WANT TO -- WHY DON'T I SET A

6    DEADLINE OF ONE WEEK FROM NOW TO FOLLOW UP WITH A PROPOSED

7    ORDER AS TO THESE SPECIFIC REQUESTS THAT WE'VE DISCUSSED

8    TODAY -- AND, YOU KNOW, I MAY WRITE SOMETHING MORE EXTENSIVE,

9    BUT YOU'RE GOING TO BE BETTER AT FRAMING EXACTLY WHAT YOU ARE

10   AGREEING TO PRODUCE OR NOT PRODUCE.

11           AND IF THERE'S STILL ANY, YOU KNOW, OPEN ISSUE BUT

12   THAT'S BEEN MORE CLARIFIED, COMPETING PROPOSALS, IF ANY, BUT,

13   OBVIOUSLY, I PREFER FOR YOU TO RESOLVE THEM.  DOES THAT MAKE

14   SENSE?

15           (SIMULTANEOUS SPEAKING.)

16           **MR. CAMPBELL:**  THAT SOUNDS DOABLE.  JUST FOR CLARITY,

17   SHOULD WE AIM TO ADDRESS ALL OF THE ISSUES RAISED IN THE JOINT

18   LETTER, OR IS THIS JUST ON THE ONES YOU ASKED US TO MEET AND

19   CONFER ON?

20           **THE COURT:**  WELL, I THINK BOTH, BUT THE ONES -- BUT

21   THE MEET AND CONFER, YOU KNOW, WOULD BE MORE FULSOME.  WHAT I'M

22   JUST CONCERNED ABOUT -- AND I CAN'T REMEMBER WITHOUT GOING

23   THROUGH THE LIST -- IS THAT THE WORDING THAT ISSUES IS EXACTLY

24   HOW WE PUT IT.  TO THE EXTENT THERE'S A LOT OF TECHNICAL TERMS

25   AND THINGS LIKE THAT, I THINK IT WOULD BE BETTER FOR YOU TO

1    AGREE.  IT'S SORT OF LIKE THE PROPOSED FORM OF ORDER WHEN I'VE

2    MADE A RULING, AND THEN MEET AND CONFER WOULD HAVE TO BE

3    SOMEWHAT MORE FULSOME.  I MEAN, I HAVEN'T -- I WILL KNOW LESS

4    ABOUT THAT.  DOES THAT MAKE SENSE?

5           **MR. CAMPBELL:**  UNDERSTOOD.  THANK YOU.

6           **THE COURT:**  THEN IF YOU NEED MORE TIME ON SOMETHING,

7    YOU CAN JOINTLY REQUEST IT IN A WEEK.  BUT, HOPEFULLY, YOU

8    DON'T, BUT IF YOU DO, I'M NOT FORECLOSING THAT.

9           **MR. GORMAN:**  THANK YOU, YOUR HONOR.

10          **MR. CAMPBELL:**  THANK YOU, YOUR HONOR.

11          **THE COURT:**  ALL RIGHT.  I APPRECIATE --

12          (SIMULTANEOUS SPEAKING.)

13          **THE COURT:**  SORRY.  WHAT?

14          **MR. GORMAN:**  I JUST HAD ONE HOUSEKEEPING QUESTION FOR

15   YOU AND --

16          **THE COURT:**  YES.

17          **MR. GORMAN:**  -- AND THIS IS JUST ABOUT FURTHER

18   LETTERS THAT WE --

19          **THE COURT:**  YES.

20          (SIMULTANEOUS SPEAKING.)

21          **MR. GORMAN:**  -- (INDISCERNIBLE) FIRST CHANCE WE'RE

22   HAVING --

23          **THE COURT:**  RIGHT.

24          **MR. GORMAN:**  -- TO TALK TO YOU.

25          I KNOW YOUR LETTER -- YOUR STANDING ORDER SPECIFIES,

```
 1    I BELIEVE IT'S A FIVE-PAGE JOINT LETTER FOR DISCOVERY DISPUTES.

 2    SHOULD WE ASSUME WE'RE OPERATING UNDER THAT PROTOCOL FOR

 3    FURTHER DISPUTES DOWN THE LINE?

 4           THE COURT:  YES, BUT I WILL SAY THAT I'M -- I AM OPEN

 5    TO HAVING IT BE LONGER IF BOTH SIDES THINK THAT, YOU KNOW, IT

 6    SHOULD BE EIGHT PAGES, FOR EXAMPLE, OR SOMETHING LIKE THAT.

 7           AND I'M ALSO OPEN TO -- IT'S SORT OF AN INTAKE

 8    MECHANISM, IF YOU WILL.  THERE COULD WELL BE SOME MATTERS THAT

 9    END UP NEEDING A NOTICED MOTION, LIKE IF THERE WAS SOME

10    COMPLICATED PRIVILEGE ISSUE THAT ARISES IN THE FUTURE, OR

11    SOMETHING LIKE THAT.

12           SO -- AND I DON'T KNOW.  I MEAN, IS THIS CASE GOING

13    TO BE ONE THAT'S -- AS YOU PROBABLY KNOW, I HAD A LOT OF

14    CONTACT WITH ORACLE VERSUS SAP -- BECAUSE THERE WERE JUST SO

15    MANY ISSUES.  I DON'T KNOW THAT THIS IS GOING TO BE OF THAT

16    MAGNITUDE AND THAT DEGREE OF ISSUES.  I DON'T KNOW IF THE

17    PARTIES HAVE ANY THOUGHTS ON THAT.

18           IF IT IS, WE DID ESTABLISH --

19           MR. CAMPBELL:  YOUR HONOR --

20           THE COURT:  SORRY.  GO AHEAD.

21           MR. CAMPBELL:  THIS IS CHRISTOPHER CAMPBELL.

22           I WAS GOING TO SAY, I WASN'T -- I DIDN'T REPRESENT

23    ORACLE IN THAT CASE, SO I DON'T KNOW THAT I COULD VENTURE A

24    GUESS.

25           THE COURT:  RIGHT.  WELL, WE HAD EXCELLENT
```

1    REPRESENTATION ON BOTH SIDES, JEFF HOWARD, NOW BEING ON THE

2    BENCH.  AND -- BUT BOTH SIDES WERE EXCELLENT, AND WE ENDED UP

3    HAVING A METHOD WHERE WE MET SORT OF ROUTINELY APPROXIMATELY

4    ONCE A MONTH IN PERSON AND THEN DISCUSSED -- YOU KNOW, WITH

5    SOME WRITTEN PREVIEW AND THEN DISCUSSED HOW TO HANDLE THINGS

6    AND -- WHICH RESULTED IN HAVING A FEW NOTICED MOTIONS OF THINGS

7    THAT WERE PARTICULARLY COMPLICATED OR INVOLVED, YOU KNOW, MAJOR

8    RULINGS ON, YOU KNOW, AKIN TO SANCTIONS OR SOMETHING OF THAT

9    NATURE.  AND OTHER THINGS WE RESOLVED JUST WITH SOME GUIDANCE

10   FROM ME, AND IT WORKED VERY WELL.

11         BUT I'M NOT -- I'M NOT AT ALL SURE THAT THIS CASE IS

12   GOING TO MERIT THAT.  BUT I'M PUTTING THAT OUT AS A POSSIBILITY

13   IF IT SEEMS LIKE IT'S BECOMING THAT KIND OF CASE.

14         **MR. CAMPBELL:**  THANK YOU, YOUR HONOR.  CHRISTOPHER

15   CAMPBELL.

16         WE'RE HAPPY TO DISCUSS THAT WITH HP AS THINGS

17   PROGRESS, AND THAT SEEMS LIKE A HELPFUL MECHANISM.  THAT'S

18   HELPFUL TO KNOW.

19         **THE COURT:**  I MEAN, THERE IS -- YOU KNOW, THE

20   DISADVANTAGE IN THE PHONE -- I'M ALWAYS WILLING TO HAVE YOU IN

21   PERSON.  FOR ME IT'S JUST AS EASY BECAUSE I'M HERE ANYWAY, BUT

22   I KNOW IT'S MORE TROUBLE FOR YOU IN GENERAL.

23         BUT, AS YOU KNOW, IT'S HARDER FOR ME TO CUT YOU OFF.

24   AND I DON'T MEAN TO BE HARSH ON EITHER OF YOU, IT'S JUST THAT,

25   YOU KNOW, WE CAN'T MARCH THROUGH THINGS AS EFFICIENTLY QUITE

```
 1    WITH THE PHONE MECHANISM.  SO THINK ABOUT THAT AS WELL.

 2              MR. CAMPBELL:  ABSOLUTELY.  THANK YOU, YOUR HONOR.

 3              MR. GORMAN:  WE WILL.  THANK YOU, YOUR HONOR.

 4              THE COURT:  THANK YOU BOTH.  ALL RIGHT.

 5              AND WHEN AM I GETTING THIS NEXT LETTER?

 6              MR. GORMAN:  WE HAVE OUR FINAL TRIAL COUNSEL MEET AND

 7    CONFER ON THURSDAY AT 10:00 A.M. AND THEN WE PLAN TO GIVE

 8    ORACLE OUR PORTION THAT DAY.

 9              THE COURT:  OKAY.

10              MR. GORMAN:  AND WE'LL FILE IT AS SOON AS WE GET

11    THEIR RESPONSE, HOPEFULLY MONDAY OR TUESDAY.

12              THE COURT:  ALL RIGHT.  WELL, HOPEFULLY, SOME OF WHAT

13    YOU HEARD TODAY WILL HELP GUIDE THE DISCUSSION.

14              ALL RIGHT.  THANK YOU.

15              MR. CAMPBELL:  THANK YOU, YOUR HONOR.

16              MR. GORMAN:  THANK YOU, YOUR HONOR.

17              (PROCEEDINGS ADJOURNED AT 4:22 P.M.)

18

19

20

21

22

23

24

25
```

## <u>CERTIFICATE OF TRANSCRIBER</u>

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF
THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE
U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE
PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE
ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,
RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN
WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT
FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE
ACTION.

*jncolumbini*

JOAN MARIE COLUMBINI

NOVEMBER 10, 2016